## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WESTCHESTER FIRE INSURANCE
COMPANY, as subrogee of JURYS DOYLE
HOTEL GROUP USA, LTD. d/b/a
JURYS DOYLE HOTEL, LLC

    *Plaintiff,*

v.                No. 05-cv-11375-MLW

DJ PLUMBING & HEATING, INC.,

    *Defendant.*

## DEFENDANT DJ PLUMBING & HEATING, INC.'S MOTION
## TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant DJ Plumbing & Heating, Inc. ("DJ Plumbing") moves this Court to dismiss

Plaintiff Westchester Fire Insurance Company's ("Westchester") First Amended Complaint (the

"Amended Complaint") for failure to state a claim upon which relief can be granted pursuant to

Fed. R. Civ. P. 12(b)(6). Westchester's Amended Complaint consists of but one count in which

it seeks to recover in subrogation from DJ Plumbing for insurance payments that Westchester

made under a builder's risk insurance policy to the owner of the Jurys Hotel in Boston,

Massachusetts. Westchester made those payments for alleged property damage (water

infiltration and flooding) to the hotel during a renovation project. Westchester alleges that such

property damage was caused by DJ Plumbing's "willful and wanton misconduct, gross

negligence, carelessness and recklessness" in connection with its work as a plumbing

subcontractor during the hotel renovation project.

As set forth below and in DJ Plumbing's accompanying memorandum of law, Westchester's action fails to state a claim and should be dismissed because Westchester is barred as a matter of law from bringing any subrogation claims against DJ Plumbing for the alleged property damage. Specifically, as part of the comprehensive risk allocation program in the construction contracts and builder's risk policy referenced in the Amended Complaint, both Westchester and the owner of the Jurys Hotel expressly agreed to waive subrogation claims that they might be able to assert against all contractors and subcontractors, including DJ Plumbing, for any property damage occurring during the construction and renovation of the hotel. Waiver of subrogation provisions such as that at issue in this case are designed to allocate and shift to the building owner's insurer the risk of all property damage that may occur during construction projects so that the building owner and contractors can avoid costly litigation over whether any party is responsible for the property damage. Waivers of subrogation clauses are fully enforceable as a matter of Massachusetts law and public policy and bar all subrogation claims based on both alleged negligence and, as alleged here by Westchester, gross negligence, willful and wanton misconduct, carelessness, and recklessness.

As specific grounds for this motion, DJ Plumbing states as follows:

1.     Westchester brings this suit as subrogee of Jurys Doyle Hotel Group USA, LTD, d/b/a Jurys Doyle Hotel, LLC ("Jurys Doyle") and seeks reimbursement from DJ Plumbing for money that Westchester allegedly paid to Jurys Doyle for property damage to a building owned by Jurys Doyle and located in downtown Boston, Massachusetts ("the Jurys Hotel"). See Amended Complaint, ¶ 20, a true and accurate copy of which is attached hereto as Exhibit 1. Westchester alleges that the property damage at the Jurys Hotel (flooding from a broken water supply pipe in May 2004) was caused by DJ Plumbing's work as a subcontractor in connection

with the renovation and conversion of the Jurys Hotel from a municipal office building. Amended Complaint ¶¶ 17, 19.

2.    By contract dated June 15, 2002, Jurys Doyle contracted with Suffolk Construction Company ("Suffolk"), the general contractor, to renovate the Jurys Hotel (the "Jurys/Suffolk contract"). Amended Complaint, ¶ 8. The Jurys Doyle/Suffolk contract as produced by Westchester in its Fed. R. Civ. P. 26(a)(1) initial disclosures ("Westchester's initial disclosures") is attached hereto as Exhibit 2. Suffolk then subcontracted with DJ Plumbing to perform the plumbing work in connection with the renovation and conversion of the Jurys Hotel (the "Suffolk/DJ Plumbing subcontract"). Amended Complaint, ¶ 9. The Suffolk/DJ Plumbing subcontract as produced in Westchester's initial disclosures is attached hereto as Exhibit 3.

3.    The Jurys/Suffolk contract consists of three standard contract forms created by the American Institute of Architects ("AIA") for use in construction projects: (1) the "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum," Form A101-1997 (Ex. 2, WFI 0305-0310); (2) the "General Conditions of the Contract for Construction," AIA Form A201-1997 (the "General Conditions") (Ex. 2, WFI 0337-0425); and (3) the "Supplemental General Conditions," Modifying AIA A201 (1997 Edition) (Ex. 2, WFI 0311-0336).

4.    The Jurys/Suffolk contract expressly provides that any property damage sustained during this project would be the responsibility of the "builder's risk" insurer from whom Jurys Doyle obtained insurance coverage with respect to the project, and that the parties waived any right to bring suit against each other and their subcontractors with respect to any claim for damages arising from their activities to the extent such damages were covered under the builder's risk insurance policy. See Ex. 2 at WFI 0372. Specifically, Section 11.4.1 of the

General Conditions in the Jurys/Suffolk contract (AIA Form A201-1997) provides in relevant

part that "the Owner shall purchase and maintain . . . property insurance written on a builder's

risk, "all-risk" or equivalent policy form . . . . This insurance shall include the interests of the

Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project." Id.

     5.     Moreover, Section 11.4.7 of the General Conditions of the Jurys/Suffolk contract,

under the heading "Waivers of Subrogation," provides in pertinent part that:

> **The Owner and Contractor waive all rights against** (1) each
> other **and any of their subcontractors**, sub-subcontractors, agents
> and employees, each of the other . . . **for damages** caused by fire
> or other causes of loss **to the extent covered by property
> insurance obtained pursuant to this Paragraph 11.4** or other
> property insurance applicable to the Work, except such rights as
> they have to proceeds of such insurance held by the Owner as
> fiduciary. . . . A waiver of subrogation shall be effective as to a
> person or entity even though that person or entity would otherwise
> have a duty of indemnification, contractual or otherwise, did not
> pay the insurance premium directly or indirectly, and whether or
> not the person or entity had an insurable interest in the property
> damaged.

See Ex. 2 at WFI 0373-74 (emphasis supplied).

     6.     Pursuant to Section 11.4.1 of the General Conditions in the Jurys/Suffolk contract,

Jurys Doyle purchased a builder's risk insurance policy from Westchester respect to the Jurys

Hotel project, under Policy No. I20517694, effective October 11, 2002 through July 31, 2004

(the "Westchester builder's risk policy"). Amended Complaint, ¶ 4. The Westchester builder's

risk policy as produced in Westchester's initial disclosures is attached hereto as Exhibit 4.

Subsection L of the "Loss Conditions" section of the Westchester builder's risk policy, entitled

"Transfer of Rights of Recovery Against Others to Us," provides that if Westchester pays a claim

under the policy, it is entitled "to the extent of [its] payment, to take over [Jurys Doyle's] related

rights of recovery from other people and organizations." See Ex. 4 at WFI 0051. However, that

same section of the policy expressly grants Jurys Doyle, the policyholder, the right to waive its own and Westchester's subrogation rights with respect to the Jurys Hotel project. Id. (providing that the policyholder "may waive [its] rights against another party in writing: 1. Prior to *loss* to Covered Property . . . ).

8.     As set forth in DJ Plumbing's accompanying memorandum of law, waiver of subrogation clauses are common features in commercial construction contracts between and among sophisticated parties such as those involved in this action.  They are designed to allocate and shift to the building owner's insurer the risk of all damage to the construction property during the project so that the building owner and contractors can avoid work interruptions and delays and costly litigation over whether any of the contracting parties was responsible for the property damage.  Quite simply, the standard waiver of subrogation clause serves two functions: first, it requires the building owner to purchase property insurance for the benefit of itself and all other parties involved in the construction project; second, it allocates to the builder's risk insurer all liability for damage to the construction property .  Waiver of subrogation provisions are not exculpatory clauses that immunize the contracting parties from liability and leave the injured party without any legal recourse for the harm sustained.  In fact, under the standard waiver of subrogation provision, the owner of the property has direct recourse against its insurer for any damage to the property during the project and the owner and its insurer are barred from seeking recourse against other contracting parties only to the extent insurance is available to pay the owner for damage to its property.

9.     Because waiver of subrogation clauses are risk allocating, and not exculpatory, mechanisms, they are fully enforceable as a matter of Massachusetts law and public policy and bar all subrogation claims, whether based on alleged ordinary negligence or, as Westchester

alleges here, on gross negligence, willful and wanton misconduct, carelessness, and recklessness. There is no basis in Massachusetts law or public policy for narrowly interpreting the waiver clause to bar only claims sounding in ordinary negligence. The waiver of subrogation provision at issue in this action is broadly framed to permit the contracting parties to avoid costly and protracted litigation concerning liability for damage to the project property and it is not limited by its terms to negligence claims. Allowing this suit to proceed on a theory of gross negligence and willful and wanton misconduct would be directly contrary to Massachusetts law which has long recognized the validity, and value to the construction industry, of this type of provision that promotes project harmony by allocating to the building owner's insurer all liability for damage to the construction property. If Westchester can evade the bar of the waiver of subrogation provision and force litigation to proceed through discovery and a trial simply by asserting gross negligence as a theory of liability, the contracting parties will be stripped of the substantial benefit of their bargain in undertaking the hotel project – namely, avoiding the expense and distraction of lengthy litigation.

WHEREFORE, Defendant DJ Plumbing & Heating, Inc. respectfully requests that this Court enter an order dismissing the Amended Complaint in this action with prejudice for failure to state a claim upon which relief can be granted.

## REQUEST FOR ORAL ARGUMENT

Defendant DJ Plumbing & Heating, Inc. respectfully requests oral argument on this

motion.

Respectfully submitted,

DJ PLUMBING & HEATING, INC.,

By its attorneys,

/s/ Kurt M. Mullen
John Stadler, BBO No. 548485
jstadler@nixonpeabody.com
Kurt M. Mullen BBO No. 651954
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110-2131
(617) 345-1000

Dated:  June 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on June 15, 2006.

/s/ Kurt M. Mullen
Kurt M. Mullen

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTCHESTER FIRE INSURANCE COMPANY :
as subrogee of JURYS DOYLE HOTEL GROUP  :
USA, LTD. d/b/a JURYS DOYLE HOTEL, LLC  :  CIVIL ACTION NO. 05-11375-MLW
                                        :
               Plaintiff                :
                                        :
       v.                               :
                                        :
DJ PLUMBING & HEATING, INC.             :
                                        :
                                        :
               Defendant                :

## FIRST AMENDED COMPLAINT

Plaintiff, Westchester Fire Insurance Company, as subrogee of Jurys Doyle Hotel Group

USA, LTD. d/b/a Jurys Doyle Hotel, LLC, by and through its undersigned counsel, complaining

of Defendant, hereby avers, upon information and belief, as follows:

### PARTIES

1.    Plaintiff, Westchester Fire Insurance Company a/s/o Jurys Doyle Hotel Group

USA, LTD. d/b/a Jurys Doyle Hotel, LLC (hereinafter "Westchester"), is a corporation duly

organized and existing under the laws of the State of New York with a principal place of

business located at 1133 Avenue of the Americas, 32nd Floor, New York, New York 10036,

which at all relevant times was engaged in the insurance business and was licensed to issue

insurance policies in the Commonwealth of Massachusetts.

2.    Defendant, DJ Plumbing & Heating, Inc. (hereinafter "D J Plumbing"), is a

corporation organized and existing under the laws of the Commonwealth of Massachusetts with

its principal place of business located at 250 North Street, Unit B-1, Danvers, Massachusetts

01923.

3.    At all relevant times, Jurys Doyle Hotel Group USA, LTD. d/b/a Jurys Doyle Hotel, LLC (hereinafter "Jurys Doyle") owned the building located at 154 Berkley Street, Boston, Massachusetts 02116 ("premises").

4.    At all relevant times, Westchester insured Jurys Doyle's business property and business operations.

## GENERAL ALLEGATIONS

5.    Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    Venue is proper in this district based on 28 U.S.C. § 1391(a) in that the event giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

7.    Plaintiff incorporates by reference the preceding averments as though fully set forth herein at length.

8.    Jurys Doyle contracted with Suffolk Construction Company as the general contractor for the project to renovate and convert the premises at 154 Berkley Street, Boston, Massachusetts into a boutique hotel.

9.    Suffolk Construction Company subcontracted with DJ Plumbing to perform the plumbing work in connection with the renovation and conversion project.

10.    Upon information and belief, DJ Plumbing knowingly and materially misrepresented that it would use properly licensed, skilled and supervised workmen to perform the plumbing work and services.

11.    Upon information and belief,  DJ Plumbing knowingly and materially misrepresented that it would perform its work in a good and workmanlike manner in accordance

2

with all applicable national, state, and local building and plumbing codes, and plumbing industry standard customs and practices.

12.   Upon information and belief, DJ Plumbing knowingly and materially misrepresented that it would supply a sufficient number of properly skilled, licensed and qualified workmen for the job and that it would use materials of the proper quality.

13.   Upon information and belief, DJ Plumbing knowingly failed to provide a sufficient number of properly licensed, skilled, qualified and supervised workmen to perform the work and services.

14.   Upon information and belief, DJ Plumbing knowingly failed to perform its work and services in a good and workmanlike manner, and knowingly used inferior and unacceptable materials and substandard plumbing techniques and methods.

15.   Upon information and belief, Defendant DJ Plumbing knowingly failed to perform its work and services in accordance with applicable law, ordinances, rules, regulations, building codes, and plumbing codes and demonstrated a flagrant disregard for the most fundamental plumbing industry customs and practices.

16.   Prior to May 12, 2004, DJ Plumbing installed a water supply pipe connecting the public water main to the domestic plumbing system inside the premises.

17.   On May 12, 2004, the water supply pipe located in the basement of the premises separated, flooding the lower levels of the premises.

18.   Upon information and belief, DJ Plumbing violated applicable building and plumbing codes and demonstrated a flagrant disregard for the most fundamental plumbing industry customs and practices.

19.   As a direct and proximate result of defendant's willful, wanton and reckless conduct, and gross negligence, carelessness and recklessness,  the aforementioned water supply

pipe separated, causing flooding that severely damaged and destroyed Jurys Doyle's property and business.

20.    As a result of the aforementioned water supply pipe separation and subsequent flooding, Westchester paid its insured, Jurys Doyle, in excess of $1,500,000.00 to repair and replace its damaged property, and is subrogated to the rights of its insured to the extent of its payment.

## COUNT I

21.    Plaintiff incorporates by reference the preceding averments as though fully set forth herein at length.

22.    As the plumbing subcontractor that installed the water supply pipe in the premises, defendant DJ Plumbing owed Jurys Doyle a duty to design, install, inspect and test the water supply pipe in a good, safe and workmanlike manner, and to make sure that the installation was free from hazardous defects that could cause failure and flooding.

23.    Defendant DJ Plumbing's work violated applicable building and plumbing codes and demonstrated a flagrant disregard for the most fundamental and basic plumbing industry customs and practices.

24.    The water supply pipe failure and the resulting damages to Jurys Doyle's property were caused by the willful and wanton misconduct, gross negligence, carelessness, recklessness and grossly negligent omissions of defendant, its agents, servants and/or employees acting within the course and scope of their employment in:

        a)    knowingly violating applicable building and plumbing codes;

        b)    failing to exercise reasonable care in the design and installation of the subject water supply pipe;

        c)    knowingly failing to employ agents, servants and/or employees with proper licenses, knowledge, training and experience to design

and install the subject water supply pipe, as required by applicable laws, regulations and codes;

d)      failing to properly train, oversee and supervise its employees, agents and subcontractors;

e)      knowingly and improperly designing and installing the water supply pipe in a manner that created a clear risk of failure and flooding;

f)      knowingly failing to properly install thruster rods to support and secure the subject water supply pipe;

g)      knowingly failing to perform its work and services in a good and workmanlike manner and in accordance with all applicable Massachusetts building and plumbing codes and standards, and industry custom and practice;

h)      failing to properly inspect the water supply pipe at the subject premises to insure that it was designed and installed properly in accordance with all applicable Massachusetts plumbing and building codes;

i)      otherwise failing to use due care under the circumstances.

25.      As a direct and proximate result of defendant's willful and wanton misconduct, and gross negligence, carelessness, and recklessness, Jurys Doyle sustained severe and extensive damages.

WHEREFORE, Plaintiff demands judgment against defendant, in an amount of excess of $75,000, together with interest and the cost of this action.

BY:    /s/ Patrick J. Loftus, III
PATRICK J. LOFTUS, III
9 Park Street
Boston, MA  02127
617-723-7770
BBO# 303310

OF COUNSEL:
Kevin J. Hughes, Esquire
Sean P. O'Donnell, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2089
Facsimile:   (215) 665-2013

ATTORNEYS FOR PLAINTIFF,
WESTCHESTER FIRE INS. CO. A/S/O
JURYS DOYLE HOTEL GROUP USA, LTD.
D/B/A JURYS DOYLE HOTEL, LLC

6

### CERTIFICATION OF ELECTRONIC FILING

The undersigned certifies that a copy of Plaintiff's First Amended Complaint was electronically filed on April 28, 2006, and a copy was electronically served on counsel for all parties registered with the ECF for this case.


BY:___/s/ Patrick J. Loftus, III_____
      PATRICK J. LOFTUS, III



# Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a* STIPULATED SUM

## AIA Document A101-1997
### 1997 Edition -Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

AGREEMENT made as of the <u>15th</u> day of <u>June</u> in the year of <u>Two Thousand Two</u>
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*
<u>Jurys Doyle U.S. Holdings, Inc.</u>
<u>1500 New Hampshire Avenue</u>
<u>Washington, DC 20036</u>

and the Contractor
*(Name, address and other information)*
<u>Suffolk Construction Co., Inc.</u>
<u>65 Allerton Street</u>
<u>Boston, MA 02119</u>

The Project is:
*(Name and location)*
<u>Headquarters Hotel</u>
<u>154 Berkeley Street</u>
<u>Boston, MA</u>

The Architect is:
*(Name, address and other information)*
<u>The Architectural Team</u>
<u>50 Commandants Way</u>
<u>Chelsea, MA</u>

The Owner and Contractor agree as follows.

## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties

© AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKHDQTRS -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A101-1997
1

WFI0305

hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
**Commencement date shall be established in a Notice to Proceed or the issuance of all permits necessary for construction, whichever date is later.**

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

3.2 The Contract Time shall be measured from the date of commencement.

3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than  days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*
**Contractor shall achieve substantial completion of the Work on or before April 30, 2004 .  In the event that the Contractor shall fail to achieve Substantial Completion by the agreed upon date, subject to extensions of time to which it is entitled, Contractor shall be liable to Owner for liquidated damages of $*** per day until such date as Contractor shall achieve Substantial Completion.  Except for termination remedies under Sections 14.2.1 through 14.2.4 inclusive, recover of such liquidated damages shall be Owner's sole and exclusive remedy in the event of Contractor's unexcused delay in achieving Substantial Completion. *** Reference 8.2.1 of the Supplemental General Conditions.**

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4 CONTRACT SUM

4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be **Twenty-nine Million Eight Hundred Thousand and 00/100** Dollars ($ **29,800,000.00** ), subject to additions and deductions as provided in the Contract Documents.

4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*

4.3     Unit prices, if any, are as follows:

## ARTICLE 5 PAYMENTS
### 5.1 PROGRESS PAYMENTS
5.1.1    Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

© AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKHDQTRS -- 11/15/2002. AIA License Number 1002744, which expires on 1/2/2003.

Electronic Format  A101-1997
2.

**5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**5.1.3** Provided that an Application for Payment is received by the Architect not later than the lastday of a month, the Owner shall make payment to the Contractor not later than the last day of the next month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than twenty (20) days after the Architect receives the Application for Payment.

**5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.1.5** Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of Five percent ( 5 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997; Reference Article 15 "Retainage" of the Supplemental General Conditions.

.2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or. if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing). less retainage of Five percent ( 5 %);

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts. if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997 See 5.1.8 below.

**5.1.7** The progress payment amount determined in accordance with Subparagraph 5.1.6 shall be further modified under the following circumstances:

.1 ~~Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and~~ Reference Article 15 "Retainage" of the Supplemental General Conditions.
*(Subparagraph 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety. if any.)*

.2 Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of AIA Document A201-1997.

**5.1.8** ~~Reduction or limitation of retainage, if any, shall be as follows:~~
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Clauses 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

**5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

© AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKHDQTRS -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A101-1997
3

WFI0307

**5.2 FINAL PAYMENT**

5.2.1   Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2   a final Certificate for Payment has been issued by the Architect.

5.2.2   The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 6 TERMINATION OR SUSPENSION

6.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

6.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

## ARTICLE 7 MISCELLANEOUS PROVISIONS

7.1 Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

7.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
**Fleet Bank of Massachusetts Prime Rate**

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**7.3 The Owner's representative is:**
*(Name, address and other information)*
**Steve Cunningham**
**13 Lower Merchants Road**
**Galway, Ireland**

**7.4 The Contractor's representative is:**
*(Name, address and other information)*
**Anthony Papantonis**
**65 Allerton Street**
**Boston, MA 02119**

7.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

7.6 Other provisions:
**7.6.1 In the event of a dispute between the Owner and the Contractor, the Contractor shall continue to perform its obligations under this Agreement without interruption or delay pending the resolution or settlement of such dispute, and the Contractor shall not directly or indirectly stop or delay the performance of the work. The Owner shall continue to make payments of undisputed amounts in accordance with the terms of this Agreement.**

**7.6.2 Should the Contractor, or anyone performing work called for under this Agreement, case damage to the property or any public authority or any other person or entity, the Contractor shall forthwith repair all such damage and restore the damaged property to its prior condition. The Contractor agrees to defend, indemnify and hold harmless the Owner from and against all claims of any such property**



© AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKHDQTRS -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A101-1997
4

owners for damage done to any sidewalks, streets, trees, utilities or other public ways caused by it or anyone performing work called for under this Agreement.

7.6.3  The Contractor shall not display any signs, posters or other advertising material on or around the Project or the Project Site without written permission of the Owner, which permission will not be withheld unreasonably.

7.6.4  Contractor will, at its sole expense, promptly following notice, bond the lien of any subcontractor, sub-subcontractor, labor or materialman who may have filed or recorded any notice, statement or other claim for a lien under G.L.C. 254 and shall forthwith cause such notice, statement or other claim to be discharged so as to remove the same as an encumbrance affecting title to the Project Site.  If Contractor fails to discharge such notice, statement or other claim, Owner may take any action which deems appropriate to clear title to the Project Site at Contractor's expense.  The cost of all such bonds is included in the Contractor's Contract Sum.

## ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS

8.1  The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows: **See Exhibit "A"**

8.1.1   The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

8.1.2    The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

8.1.3    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated  , and are as follows:

| Document | Title | Pages |
|---|---|---|

8.1.4    The Specifications are those contained in the Project Manual dated as in Subparagraph 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|
| **See Exhibit "A"** | | |

8.1.5    The Drawings are as follows, and are dated  unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|
| **See Exhibit "A"** | | |

8.1.6    The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| **See Exhibit "A"** | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

8.1.7    Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
**Exhibit "B" -- Qualifications and Assumptions / Value Engineering**

8.1.8  In the event of any conflict among Contract Documents, the Documents shall be construed

© AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKHDQTRS -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A101-1997

**according to priorities set forth in Subparagraph 1.1.1 of the General Conditions.**

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER *(Signature)*          CONTRACTOR *(Signature)*

P. A. McCaN C.E.O.      **WALTER K. McDONOUGH**
                                  **VICE PRESIDENT / GENERAL COUNSEL**

*(Printed name and title)*          *(Printed name and title)*

OWNER (Signature)

PETER HILARY    DIRECTOR
*(Printed name and title)*

AIA DOCUMENT A101 - OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKHDQTRS -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format .A101-1997

6

WFI0310

# SUPPLEMENTAL GENERAL CONDITIONS

## Modifying AIA A201 (1997 Edition)

The "General Conditions of the Contract for Construction", AIA Document A-201, 1997 Edition, Articles 1 through 14 inclusive are a part of this Contract. The following supplements modify, delete and/or add to the General Conditions. Where any article, paragraph or subparagraph in the General Conditions is supplemented by one of the following paragraphs, the provisions of such article, paragraph or subparagraph shall remain in effect and the supplemental provisions shall be considered as added thereto. Where any article, paragraph or subparagraph in the General Conditions is amended, voided or superseded by any of the following paragraphs, the provisions of such article, paragraph or subparagraph not so amended, voided or superseded shall remain in effect. Unless otherwise noted, provisions below which do not correspond to an existing provision of the General Conditions are to be inserted in the order indicated.

**ARTICLE 1:   CONTRACT DOCUMENTS**

1.1.1        Delete the first sentence and replace with the following : -

The Contract Documents shall consist of the Agreement between Owner and Contractor (hereinafter the "Agreement"), all items enumerated as Contract Documents therein, and all Modifications issued after execution of the Agreement.

Add the following at the end of subparagraph 1.1.1:

In the event of a conflict among the Contract Documents, the Contract Documents shall be construed according to the following priorities: -

| | |
|---|---|
| First Priority: | Modifications (with later date having greater priority) |
| Second Priority: | Agreement with Exhibits/Attachments |
| Third Priority: | Q&A Issues as per Suffolk Construction Company Inc Addendum dated 8/28/02 Revised ⌐─ and the Value Engineering worksheets |
| Fourth Priority: | Addenda to Drawings and Specifications |
| Fifth Priority: | Drawings and Specifications with "drawings to govern as to location and quantity and specifications to govern as to quality of performance." |
| Sixth Priority: | Supplementary General Conditions |

-1-

WFI0311

Seventh Priority:    General Conditions of the Contract for Construction

In drawings, large scale details shall govern small scale drawings. All indications or notations which apply to one of a number of similar situations, materials or processes shall be deemed to apply to all such situations, materials or processes wherever they appear in the Work, except where a contrary result is clearly indicated by the Contract Documents. In case of conflicts between drawings and specifications, or within either of the documents themselves, the work shall be done by the method of highest quality and greatest expense, unless otherwise specifically directed by the Architect upon request for interpretation by the Contractor.

1.1.2    Delete the last sentence and insert the following in its place: -

"The Architect and the Owners Representative shall act on behalf of the Owner in its dealings with the Contractor".

1.1.3    Insert the following after the last sentence: -

(1)    Notwithstanding any conflicting portions of this Contract, it is the intent of the parties with respect to this project that the Contractor will provide to the Owner a completed piece of work. The project consists of both new construction and the conversion of an existing building, and as a consequence exact quantities and an accurate detailed design and description of all Contract work may not be possible prior to the commencement and prosecution of the work.

(2)    Omissions from the drawings or specifications, or the omission or misdescription of details of work which are manifestly necessary to carry out the intent of the drawings and specifications, or which are customarily performed, shall not relieve the Contractor from performing such omitted or misdescribed details of the work, but they shall be performed as if fully and correctly set forth and described by the plans and specifications.

(3)    The plans and specifications are intended to be cooperative, and what is required by either shall be binding as if called for by both. Moreover, the Contractor acknowledges that coordination between and among plans, between and among specifications, and between and among plans and specifications, including but not limited to the Architect's component and all of the other professional design components needed to provide the Owner with a completed piece of work, may require extra work.

(4)    The Contractor has participated in the initial stages of building exploration, conceptual design preparation, hazardous waste identification and removal, and has participated with the Architect and the design team to produce this Contract set of documents, all in an effort to be able to guarantee the agreed to lump sum value of this Contract Agreement.

(5)    The Contractor agrees to perform any and all extra work if required to produce a completed piece of work and further agrees that it shall not

WFI0312

(5) be entitled to any additional payment, remuneration, allowance, damages, or time extensions on account of such extra work. It is specifically understood and agreed that the owner neither warrants nor guarantees the existing conditions, nor the plan coordination which the Contractor has reviewed, participated in, and accepts as a condition precedent to entering into this Agreement.

(6) In recognition of the facts the Contractor and Owner hereby agree that it is the intent of both, subject only to the Contractor's Qualifications and Assumptions to limit any Change Orders to the Contract to only increased costs that are the result of:

1. Owner directed changes
2. Third Party mandated changes.

(7) If any such extra work is required, the Contractor may elect the most economical means available to perform the extra work, only after the means intended to be implemented has been submitted, discussed, and approved by the Architect, whose approval will not be unreasonably withheld. The Contractor's performance with respect to this extra work will be consistent with the overall quality of the work necessary to comply with the intent of these documents.

(8) The Contractor must carefully inspect the buildings and site prior to the commencement of construction to fully understand the Project's existing conditions and the intent of the Contract Documents. The Owner agrees to allow the Contractor access to the Project prior to giving the Notice to Proceed so that the Contractor may conduct examinations and tests to ascertain the conditions at the Site. No claim for extra compensation or extension of time will be allowed on account of the Contractor's failure to estimate properly the quantities, materials, location, and measurement of all items required to complete the work.

1.1.5(insert)    <u>1.1.5</u>

The Drawings are diagrammatic only, and are not intended to show the exact physical locations, alignments, or configurations of the work. Such work shall be installed to clear all obstructions within reason, permit proper clearances for the work of other trades, and present an orderly appearance where exposed. Exact locations of fixtures and outlets shall be obtained from the Architect before the Work is roughed in; defective work installed without such information from the Architect shall be corrected and relocated at the Contractor's expense. A full mock up on a shell basis for each room type shall be agreed at an early date and in advance of the installation of fixtures and outlets to the guestrooms.

The Mechanical, Electrical and Fire Protection Drawings are diagrammatic only, and are not intended to show the alignment, physical locations or configurations of such Work. Such work shall be installed without additional cost to the Owner to clear all obstructions within reason, permit property clearances for the Work or other trades, and present an orderly appearance where exposed. Prior to beginning such Work, the Contractor shall prepare coordination drawings showing the exact alignment, physical location and

-3-

WFI0313

configuration of the Mechanical, Electrical and Fire Protection installations, with structural improvements, and demonstrating to the Architect's satisfaction that the installations will comply with the preceding sentence.

2.2.2        Deleted in its entirety and insert 2.2.2A

2.2.2A      The Contractor shall be responsible for obtaining all necessary easements or permits, except for the Building Permit which has been dealt with by the Owner, for construction staging and for any use of public sidewalks or streets as necessary, for arrangements for parking for persons working on the site, and for furnishing and maintaining in a safe condition all barricades, temporary enclosures, railings and lights and all other safety protection measures required by its obligation to protect the occupants and their visitors of the Project and by traffic, municipal and state safety regulations, and for removing the same on completion of the job.

2.2.3        Deleted in its entirety and insert 2.2.3A

2.2.3A      Subject to the Contractor's Qualifications and Assumptions, the Contractor shall secure and pay for the street excavation permits, all utility company permits, deposits, backcharges from utility companies, except for charges incurred prior to the commencement of the work, or other companies related to new service or new line installations, and fees, and all other permits and governmental fees, including building permits, licenses, fees necessary for the proper execution and completion of the Work and lawful use and occupancy of the Project except that the cost of the Certificates of Occupancy of the Work, the Contractor shall deliver the original Permits, Licenses and Certificates to the Owner. All amounts for such deposits or fees previously paid by the Owner shall be reimbursed to the Owner by the Contractor.

Before proceeding with any excavation work, the Contractor shall obtain all available information from the local government and private utility companies with regard to utilities located in the area of the project, and the Contractor shall make all necessary arrangements with such municipal and/or utility officials for relocation, abandonment or temporary shut-off of said facilities, as necessary. All excavation work shall comply with all applicable provisions of the "Dig Safe" statute in effect in the Commonwealth of Massachusetts.

2.2.5.      Delete entirely and insert the following: -

2.2.5. Unless otherwise provided in the Contract Documents, the Contractor shall be furnished free of charge one (1) reproducible set of all Contract Documents. The Contractor's cost of reproducing, for use by the Subcontractors, all copies of the Contract Documents reasonably necessary for the execution of the Work shall be included in the Contract Sum.

-4-

WFI0314

## ARTICLE 3 : CONTRACTOR

3.2.1   Delete entirely and insert the following : -

3.2.1   The Contractor represents that it has carefully inspected the site and all existing improvements constituting the Project, has ascertained for itself the conditions which are likely to be encountered during the performance of the Work, and has carefully studied and compared the Agreement, General and Supplemental Conditions of the Contract Documents and agrees that such documents appear to contain all items necessary for the construction of the Project in accordance with good and generally accepted construction practices as well as with current, applicable building and similar codes. The Contractor represents that it has made prudent investigation of the site and the existing improvements in order to determine the likely existence and extent of concealed conditions.

3.2.3   Delete in its entirety

3.4.2   Delete in its entirety and insert:

3.4.2A  Notwithstanding anything to the contrary herein, if the Contractor proposes to use a material or method which, while suitable for the intended use, deviates in any way from the detailed requirements of the Contract Documents, it shall inform the Architect in writing of the nature of such deviations at the time the material or method is submitted for approval, and shall request written approval of the deviations from the requirements of the Contract Documents. The Owner and Architect will not approve as equal to materials specified proposed substitutes which, in their opinion, would be out of character, obtrusive, or otherwise inconsistent with the character or quality or design of the Work. Should the Contractor make a request for substitution as provided in this paragraph, the Contractor: -

.1   represents that the Contractor has personally investigated the proposed substitute and determined that it is equal or superior in all respects to that specified; and

.2   represents that the Contractor will provide the same warranty for the substitution that the Contractor would for the product or method specified.

Any additional cost, or any loss or damage arising from the substitution of any material or any method for those originally specified shall be borne by the Contractor, notwithstanding approval or acceptance of such substitution by the Owner or the Architect, unless such substitution was made at the written request or direction of the Owner or the Architect.

-5-

WFI0315

3.5            Warranty

               Insert at end of paragraph:

               3.5.1  The Contractor shall procure and deliver to the Architect for transmittal to the Owner, no later than the date claimed by the Contractor as the date of Final Completion, bound together with a Table of Contents thereto, two sets of all Warranties required by the Contract Documents or applicable to the Work, endorsed by the Contractor. Delivery of the same by the Contractor shall constitute the Contractor's guarantee to the Owner that the Warranty(s) confirm to the Contract Documents and that the Contractor has performed the Work in accordance with the manufacturer's written instructions. Whenever in the Specifications, the Contractor is to comply with manufacturer's instructions "except as otherwise indicated" or "except to the extent more stringent requirements are indicated" or "except as manufacturer's representative shall otherwise indicate" or some similar exception, Contractor shall identify and describe in detail, in writing, the exception followed and a copy thereof, signed by the Contractor and, if relevant, the manufacturer, shall be sent to the Architect for transmittal to the Owner.

3.9.1          Delete the first sentence of subparagraph 3.9.1 and substitute the following :-

               The Contractor shall employ a competent superintendent and project manager who shall be approved by the Owner. Any change in the assigned personnel must be approved by the Owner prior to any change being made. The superintendent shall be in attendance at the project site full-time during the progress of the Work until the date of Substantial Completion, and for such additional time thereafter as may be necessary for the expeditious completion of the Work.

3.9.2   (insert) 3.9.2  The Contractor, at its expense, shall properly verify existing conditions of the site's grades, lines, levels, column, wall and partition lines required in laying out the Work. The Contractor shall compare all grades, lines, levels and dimensions as shown on the drawings with actual site conditions, and shall promptly report to the Architect, before commencing work, any inconsistencies it may discover.

3.9.3   (insert) 3.9.3  The Contractor shall coordinate and supervise the work performed by the Subcontractors to the end that the Work is carried out without conflict between trades and so that no trade, at any time, causes delay in the general progress of the Work.

3.12.1         Delete entirely and substitute the following : -

               Shop Drawings are drawings, diagrams, illustrations, schedules, performance charges, and other data which are prepared by the Contractor, manufacturer, supplier, or distributor, and which illustrate some portion of the work. Printed brochures will not be accepted as a substitute for shop drawings, although they may be required separately or in addition to Shop Drawings. Shop Drawings shall be submitted by the Contractor in the form of one reproducible sepia transparency and one blackline print per drawing and one printed

-6-

WFI0316

brochure in packets of 5 copies each. If resubmission is required by the Architect, the Contractor shall promptly make the necessary corrections on the original drawing and resubmit a sepia transparency copy of the corrected drawing. Approval of Shop Drawings by the Architect and/or Engineer is for accuracy and conformance to the Contract Documents and does not represent approval of dimensions, quantities, or methods of installation. The Contractor shall be responsible for correctness, as respect quantities, design of adequate connections, and details for the satisfactory construction of all Work and the furnishing of materials as contemplated by the Shop Drawings, notwithstanding the fact that any Shop Drawings that have been approved by the Architect may be lacking or deficient in any such respect. The Contract Documents remain the controlling factor in case of disputes over installed items or work and the Contractor shall replace any item or Work which does not conform to the Contract Documents at its own expense.

3.12.3.     Add the following at the end: -

"Each sample shall be clearly labelled as to its material, type or make, manufacture, size or gauge, and other pertinent data as approved or directed by the Architect".

3.12.7.1     Add the following sentence at the end : -

"The Contractor shall indicate this verification and approval of Shop Drawings submitted by a Subcontractor by stamping all copies of the Shop Drawings prior to submittal to the Architect. Shop Drawings submitted without the Contractor's stamp may be returned for re-submittal.

3.12.11 (insert) 3.12.11. The Contractor, immediately after being awarded the Contract, shall prepare and submit for the Architect's approval a schedule of Shop Drawings, printed brochures, and samples required to be submitted for the Work all in accordance with the Submittal Procedures as per Specification Section 01330 1.4D contained within the Project Manual and dated June 28, 2002. The schedule shall indicate by trade the date by which each such item is to be submitted and the date by which final approval of each item must be obtained, and shall be revised as required by conditions of the Work, subject to the Architect's approval. Upon receipt of required support documentation from the Contractor, as determined by the Architect, the Architect shall complete review of Shop Drawings, printed brochures and samples within ten (10) working days of submittal. Submission of Shop Drawings, printed brochures, and samples shall reasonably conform to the approved schedule, and must be properly identified by specification section number, dated and specifically point out any deviations from the Contract Documents.

3.13.1     Add the following sentence at the end: -

"The Contractor shall comply with all laws, ordinances, rules, orders and regulations relating to performance of the work, the protection of adjacent property and the maintenance of passageways, guard fences or other protective facilities".

WFI0317

3.13.1 (insert) 3.13.2  The Contractor shall be responsible for obtaining all necessary easements (with the exception of permanent easements which are the Owner's responsibility) or permits for construction staging and for any use of public sidewalks or streets as necessary, and for arrangements for parking for persons working on the site and for furnishing and maintaining in a safe condition all barricades, temporary enclosures, railings and lights and all other safety protection measures required by its obligation to protect the occupants and their visitors of the Project and by traffic, municipal and state safety regulations, and for removing the same on completion of the job.

3.13.3. (insert) 3.13.3  All Work carried out outside of regular working hours shall be done at the Contractor's expense, and no extras will be allowed. The use of "overtime" shall be at the Contractor's sole option and expense except as requested expressly by the Owner in writing. No Work shall be done before 7.00 a.m. without written approval of the Owner.

3.13.4. (insert) 3.13.4  The Contractor shall confine its apparatus and store its materials as required by standards of good care, and shall not unreasonably encumber the site with its materials. The Contractor shall keep the corridors and exits clear of debris, materials, etc. at all times, to provide for normal and fire egress from all buildings. The site shall be maintained in a safe, orderly condition at all times.

3.13.4  (a)    The Contractor shall maintain the areas of the site and buildings where the Work is in progress rubbish-free, and shall provide metal barrels into which all construction or Work-related refuse shall be deposited. All such barrels shall have tight-fitting covers.

(b)    The Contractor and Subcontractors shall store materials so they do not create natural pockets for papers or other combustible materials.

(c)    Combustible materials stored on the site during construction shall be located within easy reach of fire protection equipment and shall be stored with extreme care.

(d)    An approved number of fire extinguishers shall be placed throughout the work areas, temporary paint shop and within easy reach of mechanics who are operating plumbers' furnaces, burning or welding apparatus. The number and location shall be approved from time to time by the local fire department, if so required.

(e)    Every precaution shall be taken to see that all building materials and equipment and all parts of the buildings under construction are properly braced and secured against winds and all persons nearby are protected from injury by water, fire, accident or other cause during work hours and non-working hours.

(f)    The Contractor shall provide weather-tight and secure enclosures for all exterior openings in the buildings at all appropriate times.

-8-

WFI0318

(g)    All damage to materials or completed Work caused by the Contractor or its Subcontractors, or material suppliers prior to Substantial Completion shall be replaced by the Contractor at no cost to the Owner provided, however, that the Contractor does not waive its rights to purse recovery from the "All Risk" Insurance purchased under this Contract, as and if applicable.

(h)    The Contractor shall keep all means of access, roads and walks clear of construction equipment, materials, debris, and all other items. The Contractor shall be responsible for repairing all property that was damaged during construction, and shall leave it is as good as or better condition after completion as found before the Work started.

(i)    The Contractor shall provide protection for all concrete and finished floors, treads, platforms and the like against mechanical damage, plaster droppings, oil, grease, paint or other materials that will stain the surface finish.

(j)    Roofs and waterproof surfaces shall neither be subjected to traffic nor used for storage of materials. When these surfaces must be used, the Contractor shall provide large plywood sheets to protect them from damage or otherwise comply with the applicable instructions from the manufacturers.

(k)    All temporary protection and coverings shall be removed at Final Completion or Final Acceptance, if applicable.

(k)    All temporary work shall be removed when it is no longer required. Prior to Substantial Completion of the Work, the Contractor shall remove all spots, stains, dirt and dust from all surfaces that were the result of the construction Work.   Before Final Completion, arrangements must be made with the Owner and the Architect to inspect the areas completed.

3.13.5 (insert) The Contractor shall take all necessary steps to prevent unauthorised access to the Work areas, including but not limited to, posting appropriate danger signs and other warning against hazards, and erecting and maintaining adequate barriers and lights in all locations where materials are stored or the Work is in progress. The Contractor shall take all actions reasonably necessary to inform occupants and visitors to the Site of any potentially hazardous conditions or other matters potentially affecting their safety.

3.15.1 (insert at end)    The Contractor shall ensure that all the building is adequately cleaned upon completion of the project, including removal of dust, debris, equipment and similar items. All damaged, broken, or scratched items shall be replaced by the Contractor without cost to the Owner.

WFI0319

## ARTICLE 4 :  ADMINSTRATION OF CONTRACT

4.1.2          Delete in line 3 the word "Contractor".

4.2.1          Insert a period after the word "Documents" in the 2nd line and delete
               the remainder of the sentence.  Delete the 3rd sentence entirely.

4.2.2          Delete the balance of the first sentence after the words "the site" on
               line 1 and insert the following : -

               "periodically to review the progress of the Work in accordance with the
               Contract between the Owner and the Architect", and delete the 2nd
               sentence.

4.2.3          Delete the 1st sentence.   Insert at the end of the last sentence
               "Nothing in this subparagraph shall relieve the Architect from liability
               under any other provision of the Contract Documents and the Owner-
               Architect Contract".

4.3.3 (insert)  Waiver of the Claim.  The Contractor shall have no claim for damages
               against the Owner for matters under Paragraph 4.3.2 unless notice of
               such claim has been given in accordance with Paragraph 4.3.2 within
               21 calendar days after the date on which the Contractor has
               knowledge,  or  should  reasonably  have  knowledge,  of  the
               circumstances giving rise to such claim.  Any claims shall be made
               pursuant to the procedures established by this Article 4.

4.3.4          Delete in its entirety

4.3.5          Delete in its entirety

4.3.7.1        Delete in its entirety

4.3.9          Delete in its entirety

4.6.2 (insert)  Arbitration under this Paragraph 4.6 and all hearings in connection
               therewith shall be held in Boston, Massachusetts.  All witnesses who
               testify at such hearings shall be sworn and subject to cross-
               examination by the adverse party.

4.6.3 (insert)  The Contractor shall proceed diligently with the performance of the
               Work in accordance with the Contract Documents, notwithstanding
               any pending litigation or arbitration and, furthermore, notwithstanding
               the fact that any such pending litigation or arbitration relates to a
               determination of whether or not the Contractor is obligated to continue
               to proceed with the Work.  It is agreed by the parties that a demand for
               Arbitration will not be applicable unless the value of the claim exceeds
               $100,000 as a single demand, or $250,000 in the aggregate.

4.6.4 (insert)  The Contractor shall include the provisions of this Paragraph 4.6 in all
               subcontracts into which it may enter for labor to be performed on, or
               materials or supplied to be delivered to, used in, or incorporated into

WFI0320

the Work, and if any dispute subject to arbitration under this Paragraph 4.6. involves labor, materials or supplies furnished under any such subcontract, the rights and liabilities of the Owner, Contractor and all Subcontractors who are or may be involved shall be determined in the single arbitration proceeding.

5.2.1    Add the following at the end:

"The Contractor at or before Substantial Completion or, if applicable, each Certificate of Final Acceptance, shall provide the Owner with a complete, written list of all actual Subcontractors and suppliers of equipment and materials for the Work with the address and telephone number (including an emergency telephone number) of each and a description of the portion of the Work performed by each.

5.3.2 (insert)    <u>5.3.2</u>    The Contractor shall require in its written contract with each Subcontractor that, in the event of any default by the Contractor under the Contract, or in the event of the termination of this Contract, the Owner shall have the right, but not the obligation, prior to termination of the Subcontract and after notice by the Subcontractor to the Owner of such default, or in the case of termination of the Contract, after notice by Owner to Subcontractor of such termination, to assume the Subcontract arising after such notice.

5.3.4 (insert)    <u>5.3.4</u>    The Contractor shall procure materials from such sources and shall manage its own forces and the forces of its Subcontractors and Sub-subcontractors in such a manner as will result in harmonious relations on the job site.   The Contractor shall employ, and shall require its Subcontractors to employ, men and women on the Work who will at all times work in harmony with others engaged in the Work. Should the work for any reason be stopped or materially delayed, in the reasonable judgement of the Owner, due to a labor dispute involving the employees of, or directed at, any Subcontractor or any of its Subcontractors, the Owner shall have the right to require the Contractor, to the extent the Contractor is legally able to do so, to substitute a Subcontractor acceptable to the Owner.  The Contractor shall require each Subcontractor to agree by its Subcontract to be bound by the provisions of this Subparagraph 5.3.4. Nothing in this Subparagraph 5.3.4 shall create any third party beneficiary relationship between the Owner and the Subcontractor.

5.4.2    Delete in its entirety

6.2.6 (insert)    It is acknowledged and understood by the Contractor that the Owner will be awarding significant separate Contracts for work commonly referred to as furniture, fixtures/finishes, and equipment (F.F.&E).  The Contractor shall provide for and coordinate with these separate Contractors to gain access to any and all portions of the building required for the installation and completion of all "F.F.&E" separate Contracts, but shall not be required to suspend or interrupt the progress of the Work.  All costs associated with providing access to the entire building such as material hoisting, temporary use of elevators, and personnel required by specific agreements to operate such services will be included by the Contractor as part of its

-11-

WFI0321

stipulated sum per the allowance included in the Contractor's
Qualifications and Assumptions.

WFI0322

**ARTICLE 7:    CHANGES IN THE WORK**  *DELETE ARTICLES 7.1.1 AND 7.1.2 AND REPLACE WITH THE FOLLOWING.*

7.1            Changes in the Work may be accomplished after execution of the Contract and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and Article 1.1.3.

7.1.2          In the event that Owner orders a change in the Work, or such change becomes necessary due to third party actions, then Contractor shall be entitled to an increase in the Contract Sum, which increase shall be calculated according to one of the following methods:

    .1    A stipulated sum, agreed upon between Owner and Contractor.

    .2    Adjustments to unit prices and/or allowances, to the extent provided for in the Contract Documents.

    .3    Contractor's, Subcontractor's and suppliers' actual cost (including the cost of any extended or additional supervision costs to Contractor made necessary by such change), plus a fee to Contractor on such actual cost, for Contractor's overhead and profit of 5%.

| Articles | | |
|---|---|---|
| 7.2 | 7.3 | |
| 7.2.1 | 7.3.1 | |
| 7.2.2 | 7.3.2 | |
| | 7.3.3 | |
| | 7.3.4 | |
| | 7.3.5 | |
| | 7.3.6 | |
| | 7.3.7 | |
| | 7.3.8 | |
| | 7.3.9 | |

All shall be deleted in their entirety.

-13-

WFI0323

**ARTICLE 8:    TIME**

8.1.1            Delete the words "Unless otherwise provided" from line 1.  Add the
                 following at the end : -

                 The parties agree that the Contract Time is the 15 day of June
                 2002 to  the 30th day of April 2004 and that this period allows for
                 beneficial occupation by the Owner for the installation of FF&E items
                 on an agreed phased basis.   The beneficial occupation of guestrooms
                 on a floor by floor basis and access to other public and other back of
                 house areas for beneficial occupation by the owner will be the subject
                 of a Beneficial Occupation Certificate issued by the Architect.

                 Where a Certificate for Beneficial Occupation is issued by the
                 Architect it will list clearly the outstanding work to be completed and
                 the Contractor undertakes to attend to this promptly.   The list of
                 outstanding work will be divided into two headings:

                 (i)  Priority punch list items which will be completed within 15 days
                      from the date of Beneficial Occupation so as to enable the room to
                      be let
                 (ii) The secondary punch list items will be completed within 45 days
                      from the date of Beneficial Occupation

                 and in any event within 15 days from  the date of Beneficial
                 Occupation.

                 The date of final completion of the work or designated portion hereof
                 is the date certified by the Architect under subparpagraph 9.10.1 when
                 the work is acceptable under the Contract documents or upon receipt
                 of a Certificate of Occupancy.

8.1.3            Delete the period at the end, and add the following : -

                 ,   any remaining Work is minor and can be completed within 30 days
                 and will not interfere with the Owner's use and occupancy of the
                 building, and all applicable Certificates and Final Acceptance have
                 been issued.  The Contractor shall secure and deliver to the Architect
                 all Certificates of Occupancy, and other approvals and documents
                 required herein as a condition precedent to Substantial Completion as
                 to each Phase and as to all the Work.

8.2.1 (insert
at the end)      The Owner has made the Contractor aware that time is of the essence
                 of this Contract, and that the Owner has contemplated that
                 commencing on the day of Substantial Completion (as established by
                 the Architect's Certificate of Substantial Completion) a significant
                 revenue stream will be created and is being relied upon by the owner.
                 In recognition of these recitals, Contractor and Owner hereby agree
                 that, in the event Contractor shall fail to achieve Substantial
                 Completion of the Work on or before the date set forth in Article 3 of
                 the Agreement, Contractor shall be liable to Owner for liquidated
                 damages of:

                      •   $7,500 per day for the first 10 days

                                    -14-

- $12,500 per day from the 10th up to the 20th day
- $20,000 per day from the 20th to the 30th day
- $30,000 per day from the 30th day until such time as Contractor achieves Substantial Completion.

Contractor and Owner agree that Owner's damages in the event of such delay are and would be difficult to ascertain with certainty. Therefore, Owner and Contractor agree that such liquidated damages represent a reasonable approximation of such damages and shall be Owner's sole and exclusive remedy in the event of Contractor's unexcused delay in achievement of Substantial Completion of the Work.

8.3.1          Delete entirely and substitute the following : -

8.3.1. If the Contractor is delayed at any time in the performance or progress of the work by any act, omission or neglect of the Owner or the Architect, or by an employee of either, or by changes ordered in the Work, unavoidable casualties, or by labor disputes not directed specifically at the Contractor or its Subcontractors, or by delay authorised by the Owner pending arbitration, then the Contract Time shall be extended by Change Order for such reasonable time not exceeding the length of such delay as the Architect may determine.

Notwithstanding any other provisions of the contract Documents, no extension of time shall be granted because of weather conditions except in the event of hurricane, earthquake, or other similar, unanticipated catastrophic condition. Such weather conditions shall be wholly at the risk of the Contractor, whether occurring within the time originally scheduled for completion or within the period of any extension granted. Any additional cost of operations or conditions caused by weather shall be the responsibility of the Contractor. The Contractor shall use its best efforts to avoid all labor conflicts, especially those between union and non-union employees. All direct and consequential losses due to labor disputes except those of a national, state, or city wide nature and not directed at the Contractor or its Subcontractors shall be borne by the Contractor.

8.3.4 (insert)    8.3.4   The Contractor hereby agrees that it shall have no claim for damages of any kind on account of any delay in the commencement of the Work and/or any delay or suspension of any portion of the Work, whether such delay is caused by the Owner or the Architect but only on the basis that the Contractor has provided notice in advance of such a delay to the Owner or the Architect.   The Contractor acknowledges that its sole remedy for any such delay and/or suspension will be an extension of time as provided in this Article.
In the event of a delay for which Contractor is entitled to an extension of time hereunder, Contractor agrees that it shall not be entitled to any increase in the Contract Sum for any costs associated with such extension, except in the event such delay is caused by the act or omission of the Owner. In such instance, Contractor shall be entitled to its actual increased costs of performance for such extended period of time. For any extension of the Contract Time caused by an act of God, abnormal weather or other cause beyond Owner's control,

WFI0325

Contractor shall be entitled to an extension of the Contract Time only, and shall not recover any increased costs of performance for such extended period of time.

WFI0326

## ARTICLE 9: PAYMENTS AND COMPLETION

9.2.1          Delete entirely and insert the following : -

9.2.1 Attached to the Agreement as Exhibit [              C              ] is a Schedule of Values.  At the time of each Application for Payment, the Contractor shall, if requested by the Architect or the Owner, indicate (a) by percentage and dollar amount, the extent to which each such portion of the Work has been completed, and (b) the dollar amount of each payment which is allocated to (i) labor and materials incorporated into the Work, and (ii) materials not incorporated into the Work.   The Schedule of Values shall be used as a basis for the Contractor's Application for Payment, but for no other purpose.

9.3.1          Delete that portion of the first sentence through the word "payment" And insert the following : -

At the time and in the manner set forth in the Agreement,

On the 3rd line, delete "if required".

At the end:

Each Application for Payment shall be on AIA Document No. G702 or such other forms as Owner's lender(s) require and shall be accompanied by (a) a Certificate from the Contractor stating the amount outstanding by it to the Subcontractor, to suppliers of materials, or either, furnished for the purpose of the performance of the Work, and (b) a Certificate addressed to the Owner's lender(s) in such form as such lender(s) may require. The Contractor agrees further to deliver prior to payment of the next requisition for payment a written statement from each subcontractor, supplier or labourer which acknowledges receipt of all prior payments due and acknowledges that such payments are payments in full (less any stated retainage) of all Work previously performed or supplied by each such person which written statement shall, if requested, be in a form sufficient for recording with the Registry of Deeds.

9.3.1.1        Delete in its entirety

9.3.2          Add the following at the end: -

"If the Contractor seeks reimbursement for materials stored off site, such materials shall be in a bonded warehouse and evidence of such storage must be submitted with a request for payment and approved by the Owner's Representative".

9.3.3          At the beginning of this section, insert the following "No materials or supplies for the work shall be purchased by the Contractor or by any Subcontractor subject to any chattel mortgage or under a conditional sale contract or other agreement by which an interest is retained by the seller.   The Contractor warrants that it has good title to all materials and supplies used by it in the work, free from all liens, claims or encumbrances.

-17-

WFI0327

9.3.4 (insert)    9.3.4  In the event a lien is filed or claimed against the work by any Subcontractor, Sub-subcontractor, labourer or supplier of materials, the Contractor agrees, unless covered by the lien bond required pursuant to Subparagraph 11.4.1 hereof, immediately to bond such lien in accordance with the provisions of M.G.L. c.254 or to cause such lien to be discharged.  If the Contractor shall fail to do so, the Owner may, at its option and at the expense of the Contractor, bond such lien or cause it to be discharged.

9.3.5 (insert)    The Owner shall provide the Contractor with written notice of unpaid claims of a Subcontractor, labourer or material man if such notice is delivered to the Owner. Unless the Contractor asserts in writing within fourteen (14) work days of receipt of Owner's Notice, in an Application for Payment that an unpaid claim of a Subcontractor, labourer, or material man is in dispute as to the amount owed, the Owner shall have the right to pay any such unpaid claim by check payable to the Contractor and the claiming party, and any such payment shall be a discharge of an equal amount of the Owner's obligation to pay the Contractor hereunder.

9.3.6 (insert)    9.3.6  The Contractor warrants and guarantees (and agrees to provide certificates to this effect with each Application for Payment) that title to all Work, materials and equipment covered by an Application for Payment will have passed to the Owner when incorporated in the Project.  The Contractor further agrees that the submission of any Application for Payment and the Contractor's receipt of payment thereof shall conclusively be deemed to waive all liens with respect to said Work, materials and labour to which the Contractor then may be entitled.

9.4.1    Delete in its entirety and substitute the following : -

9.4.1  The Architect shall, within 7 working days after the receipt of the Contractor's Application for Payment, either (a) issue a Certificate for Payment to the Owner, with a copy to the Contractor, for the amount requested by the Application, or (b) issue a Certificate of Payment to the Owner, with a copy to the Contractor for the amount the Architect determines is properly due, notifying the Contractor in writing of its reasons for certifying less than the amount requested as provided in subparagraph 9.5.1 or (c) withhold its Certificate entirely and notify the Contractor in writing its reasons for withholding a Certificate as provided in subparagraph 9.5.1.

9.8.2    In the 4th Line after the word "Payment" add a comma and insert,

(subject, however, to a list of minor uncompleted or uncorrected items which do not interfere with the Owner's use and enjoyment of the Project (the "Punch List"), and with respect to which Owner shall withhold 200% of the reasonable cost of fully completing same as determined by the Architect).

9.9.4 (insert)    9.9.4  The Contractor shall cooperate with the Owner in making available for the Owner's use and benefit during partial occupancy such building services as heating, ventilating, cooling, water, lighting,

-18-

WFI0328

telephone, elevators and security for the portion or portions to be occupied, and if the Work required to furnish such services is not entirely completed at the time the Owner desires to occupy the aforesaid portion or portions, the Contractor shall make every reasonable effort to complete such Work and/or make temporary provisions for such Work as soon as possible so that the aforementioned building services may be put into operation and use.

9.11 (insert)     9.11    Neither the issuance of a Certificate for Payment nor any payment (whether progress payment, payment upon Substantial Completion or Final payment) nor any Partial or Total Acceptance or Occupancy of the Project by the Owner (either in writing or de facto) shall constitute approval of any costs included in any Application for Payment, or an acceptance of any Work not in accordance with the Contract Documents nor shall any inspection or test by the Owner or the Architect be an acceptance of any Work not in accordance with the Contract Document.

ARTICLE 10:

10.2.8 (insert) 10.2.8    the Contractor shall provide and maintain in good operating condition suitable and adequate fire protection equipment and services, in compliance with City of Boston and Massachusetts Code of Practice and with any recommendations required by the fire insurance company carrying insurance on the WorkThe area within the site limits shall be kept orderly and clean, and all combustible rubbish shall be promptly removed from the site.

10.3.2          Delete in its entirety.

Insert:    The Owner has provided the Contractor with an "Environmental Site Assessment and Hazardous Materials Survey", prepared by TGG Environmental, Inc. and dated March 2001.  With respect to dealing with, and the disposal of asbestos, lead paint, Polychlorinated Biophenyl (PCB) or other hazardous substances, if any, located on the site, the Contractor shall be responsible for the proper removal of such substances and shall provide to the owner all necessary insurance certificates, documentation of proper removal and disposal of such substances, and all documentation as may be required by various local, state or Government agencies having jurisdiction over this process.

10.3.2.1 (insert) The Contractor will be solely responsible for compliance with all applicable laws and regulations governing the handling, storage, use or disposal of toxic or hazardous substances or materials or wastes used, stored, generated, removed, or disposed of in connection with construction of the Work, including, without limitation, asbestos and lead paint, and shall obtain all permits and approvals, give all required notices, and observe all applicable procedures prescribed by the U.S. Environmental Protection Agency, the Massachusetts Department of Environmental Protection, and other governmental authorities having jurisdiction with respect to such activities.  At the Owner's request, the Contractor shall furnish the Owner promptly with evidence satisfactory to Owner and Owner's lender demonstrating the Contractor's compliance with such procedures, the giving of such notices, and the

WFI0329

issuance of such permits and approvals, and shall indemnify Owner and hold Owner harmless with respect to any loss, damage or liability resulting from Contractor's failure to observe such procedures, give such notices, or obtain such permits and approvals. The Contractor will be responsible for removal and disposal of all lead paint and asbestos within the Project, but only such "oil" and "hazardous material" as defined by Massachusetts General Laws, c. 21E, and such other materials or substances as is required to be removed by the Contract Documents or is placed on the site by the Contractor or any Sub-Contractor.

10.3.3          Delete in its entirety.

WFI0330

**ARTICLE 11: INSURANCE AND BONDS (SUBJECT TO REVIEW BY JURYS BROKERS)**

11.1.2          Delete in its entirety and insert:

11.1.2: The insurance required by subparagraph 11.1.1 with respect to the Contractor shall be written for not less than the following:

.1      Workman's Compensation

      a)  State                              Statutory
      b)  Employer's Liability              Statutory

.2      Comprehensive  General  Liability  (Including  Premises-Operations; Independent Owner's and Contractor's Protective; Products and Completed Operations Broad Form Property Damage)

      b.  Bodily Injury

          1)  Each Occurrence        $1,000,000
          2)  Annual Aggregate       $1,000,000

      c.Property Damage

          1)  Each Occurrence        $1,000,000
          2)  Annual Aggregate       $5,000,000

.3      Personal Injury

          Annual Aggregate       $1,000,000

.4      Completed Operations and Products Liability as well as Contractor's Liability coverage insuring the indemnity agreement in this Contract shall be maintained for two (2) years after Final Payment.

.5      Property Damage Liability Insurance shall include coverage for the following hazards:

      X (excavation)          C (collapse)          U (underground)

In addition the policy shall be endorsed to insure against liability for damage resulting from blasting or pile driving operations, undermining and for damage to underground pipes and utilities caused by digging with mechanical equipment.

.6      Comprehensive Automobile Liability

      a) Bodily Injury

          1)  Each Person            $1,000,000
          2)  Annual Occurrence      $1,000,000

WFI0331

b) Property Damage

1) Each Occurrence    $250,000

.7    Renewal certificates shall be addressed to and filed with both the Contractor and the Owner at least thirty (30) days prior to the expiration date of required policies.

.8    Unless, in particular cases, the Owner and Contractor shall agree otherwise in writing, the Contractor shall require all Subcontractors to maintain insurance conforming to the provisions of this Paragraph 11.1 and the Contractor shall maintain on file all such required Certificates of Insurance, which file shall be available for inspection by the Owner upon request.

.9    In addition to the Comprehensive General Liability coverage required to be carried by the Contractor pursuant to this Article 11, the Contractor shall also provide the Owner with Certificate(s) of Insurance under a Blanket Excess Liability policy. Said policy shall contain limits of coverage for Personal Injury and Property Damage in amounts not less than $2,000,000 per each occurrence, $5,000,000 aggregate and the Owner and Owner's Representatives shall be added as named insured thereon.

All policies shall be written on an occurrence (not a claims-made) basis and shall provide that the insurance provided shall be primary to other insurance in the event of a covered loss.

11.3.3    Delete the 4th word (not) from the first sentence

-22-

WFI0332

ARTICLE 13:    MISCELLANEOUS PROVISIONS

13.1.2 (insert)    13.1.2    Each and every provision of law and clause required by law to be inserted in this Contract shall be deemed to be inserted herein and the Contract shall be read and enforced as though it were included herein, and if through mistake or otherwise any such provision is not inserted, or is not correctly inserted, then upon the application of either party the Contract shall forthwith be physically amended to make such insertion or correction.

13.2.1    Add the following after the last sentence:    "In case the Contractor assigns all or any part of any monies due or to become due under this Contract, the instrument of assignment shall contain a clause substantially to the effect that it is agreed that the right of the assignee in and to any monies due or to become due to the Contractor shall be subject to prior claims for all persons, firms and corporations of services rendered or materials supplied for performance of the Work"

WFI0333

## ARTICLE 14: TERMINATION OF THE CONTRACT

14.1.1        Replace the word "30" with the word "60" in the 1st line.

14.2.1        Delete and substitute the following:

14.2.1 If a petition is filed by the Contractor, or against the Contractor with his consent, under any federal or state law concerning bankruptcy, reorganization, insolvency or relief from creditors, or if such petition is filed against the Contractor without his consent and is not dismissed within thirty (30) days, or if the Contractor is generally not paying his debts as they become due, or if the Contractor becomes insolvent, or if the Contractor consents to the appointment of a receiver, trustee, liquidator, custodian or the like of the Contractor or of all or any substantial portion of its assets, or if a receiver, trustee, liquidator, custodian or the like is appointed with respect to the Contractor or takes possession of all or any substantial portion of its assets or if the Contractor makes an assignment for the benefit of creditors, or if the Contractor refuses or fails to supply enough properly skilled workmen or proper materials, or if he fails to make prompt payment to any Subcontractor, or for materials or labour in accordance with the respective agreements between the Contractor and the Subcontractor, or disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a violation of any provision of the Contract Documents, or if the Owner has determined that the Contractor has engaged in fraud, waste, mismanagement, misuse of funds or criminal activity with any funds provided by this Contract; or if the Contractor has failed, for any reason, to fulfil in a timely and proper manner its obligations under this Contract including compliance with applicable federal, state or local laws and regulations, the Owner may, without prejudice to any other right or remedy, and after giving the Contractor and his surety, if any, seven (7) days written notice, terminate the employment of the Contractor and take possession of the site and of all materials, equipment, tools, construction equipment and machinery thereon owned by the Contractor, accept assignment of subcontractors pursuant to Paragraph 5.4 and may finish the Work by whatever method Owner may deem expedient.

14.2.2        Delete from the word "upon" on line 1 to the words "such action" on line 2.

14.2.4        Insert the following after "thereby" in the 2nd line:

plus Owner's direct damages as a result of Contractor's default.

Insert the following at the end:

The Owner may terminate the Contract, at its option, in the case of a casualty, condemnation or other event not within the Owner's reasonable control, without prior notice.    In the event of such termination, the Contractor shall be entitled to payment in accordance with the provisions of Paragraph 14 of these General Conditions.

WFI0334

14.2.5 (insert) Notwithstanding anything herein to the contrary, in the event of any such termination, the Surety shall have the right to take over and perform the Contract; provided, however, that if the Surety does not commence performance within (ten) 10 days from the date of the mailing to such Surety of notice of termination, the Owner may take over the work and prosecute the same to completion at the expense of the Contractor and the Contractor and his Surety shall be liable to the Owner for any excess cost occasioned by the Owner thereby, and in such event the Owner may take possession of and utilize in completing the work, such materials, appliances and plant as may be on the site of the work and necessary therefor.

14.2.6 (insert) 14.2.6   If the Owner determines that a continuation of work on the Project would endanger the life, health, or safety of those working or living at or near the Project site, or that immediate action is necessary to protect public funds and/or property the Owner may suspend work or terminate this agreement by providing notice to the Contractor in the form of telegram, mailgram, hand-carried letter, or other appropriate means.

In the event a court shall refuse to enforce any term or provision of this Contract, such a determination shall not affect the validity or enforceability of the balance thereof or of any other term or provision of this Contract, and all other terms shall remain full force and effect to the fullest extent permitted by law.

WFI0335

## ARTICLE 15: RETAINAGE

Retainage will apply at 5% of the Interim Valuations throughout the course of the Contract up to Substantial Completion.  On Substantial Completion retainage will be reduced to 200% of the value of the punch list items as determined and assessed by the Architect.

-28-

WFI0336

# General Conditions of the Contract for Construction

### AIA Document A201 - 1997
### 1997 Edition - Electronic Format

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, ©1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

## TABLE OF ARTICLES

1.  GENERAL PROVISIONS

2.  OWNER

3.  CONTRACTOR

4.  ADMINISTRATION OF THE CONTRACT

5.  SUBCONTRACTORS

6.  CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7.  CHANGES IN THE WORK

8.  TIME

9.  PAYMENTS AND COMPLETION

10. PROTECTION OF PERSONS AND PROPERTY

11. INSURANCE AND BONDS

12. UNCOVERING AND CORRECTION OF WORK

13. MISCELLANEOUS PROVISIONS

14. TERMINATION OR SUSPENSION OF THE CONTRACT

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0337

# INDEX

Acceptance of Nonconforming Work
  9.6.6, 9.9.3, 12.3
Acceptance of Work
  9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
Access to Work
  **3.16**, 6.2.1, 12.1
Accident Prevention
  4.2.3, 10
Acts and Omissions
  3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1, 9.5.1,
  10.2.5, 13.4.2, 13.7, 14.1
Addenda
  1.1.1, 3.11
Additional Costs, Claims for
  4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3
Additional Inspections and Testing
  9.8.3, 12.2.1, 13.5
Additional Time, Claims for
  4.3.4, 4.3.7, 8.3.2
**ADMINISTRATION OF THE CONTRACT**
  3.1.3, 4, 9.4, 9.5
Advertisement or Invitation to Bid
  1.1.1
Aesthetic Effect
  4.2.13, 4.5.1
Allowances
  **3.8**
All-risk Insurance
  11.4.1.1
Applications for Payment
  4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10,
  11.1.3, 14.2.4, 14.4.3
Approvals
  2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2, 13.5
Arbitration
  4.3.3, 4.4, 4.5.1, 4.5.2, 4.6, 8.3.1, 9.7.1, 11.4.9, 11.4.10
Architect
  **4.1**
Architect, Definition of
  4.1.1
Architect, Extent of Authority
  2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6, 7.4, 9.2,
  9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1,
  13.5.2, 14.2.2, 14.2.4
Architect, Limitations of Authority and Responsibility
  2.1.1, 3.3.3, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3,
  4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 4.4, 5.2.1, 7.4, 9.4.2,
  9.6.4, 9.6.6
Architect's Additional Services and Expenses
  2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4

Architect's Administration of the Contract
  3.1.3, **4.2**, 4.3.4, 4.4, 9.4, 9.5
Architect's Approvals
  2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
  3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
  1.6
Architect's Decisions
  4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5, 4.4.6,
  4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
  13.5.2, 14.2.2, 14.2.4
Architect's Inspections
  4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
  3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2
Architect's Interpretations
  4.2.11, 4.2.12, 4.3.6
Architect's Project Representative
  4.2.10
Architect's Relationship with Contractor
  1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1, 3.7.3,
  3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4, 4.4.1,
  4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9,
  10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5
Architect's Relationship with Subcontractors
  1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7
Architect's Representations
  9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
  4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
  10.3.1
Attorneys' Fees
  3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
  6.1.1, 6.1.2
Award of Subcontracts and Other Contracts for Portions of the
Work
  **5.2**
Basic Definitions
  **1.1**
Bidding Requirements
  1.1.1, 1.1.7, 5.2.1, 11.5.1
Boiler and Machinery Insurance
  11.4.2
Bonds, Lien
  9.10.2
Bonds, Performance, and Payment
  7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Building Permit
  3.7.1
Capitalization
  1.3

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License
Number 1002744, which expires on 3/2/2003.

WFI0338

Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
Certificates for Payment
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 4.3.4, 4.3.9, 5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1, 9.10.3, 11.4.1.2, 11.4.4, 11.4.9, 12.1.2
Change Orders, Definition of
7.2.1
**CHANGES IN THE WORK**
3.11, 4.2.8, **7**, 8.3.1, 9.3.1.1, 11.4.9
Claim, Definition of
**4.3.1**
Claims and Disputes
3.2.3, **4.3**, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3, 9.10.4, 10.3.3
Claims and Timely Assertion of Claims
**4.6.5**
Claims for Additional Cost
3.2.3, 4.3.4, **4.3.5**, 4.3.6, 6.1.1, 7.3.8, 10.3.2
Claims for Additional Time
3.2.3, 4.3.4, **4.3.7**, 6.1.1, 8.3.2, 10.3.2
Claims for Concealed or Unknown Conditions
**4.3.4**
Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1
Cleaning Up
**3.15**, 6.3
Commencement of Statutory Limitation Period
13.7
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6, 11.5.1
Commencement of the Work, Definition of
8.1.2
Communications Facilitating Contract Administration
3.9.1, 4.2.4
Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 9.10.4.2, 12.2, 13.7
Compliance with Laws

1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4, 4.6.6, 9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3
Concealed or Unknown Conditions
4.3.4, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4
Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contingent Assignment of Subcontracts
**5.4**, 14.2.2.2
Continuing Contract Performance
4.3.3
Contract, Definition of
1.1.2
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 11.4.9, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1
Contract Documents, The
1.1, 1.2
Contract Documents, Copies Furnished and Use of
1.6, 2.2.5, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2
Contract Sum, Definition of
9.1
Contract Time
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2
Contract Time, Definition of
8.1.1
**CONTRACTOR**
3
Contractor, Definition of
3.1, 6.1.2
Contractor's Construction Schedules
1.4.1.2, **3.10**, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contractor's Employees

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 – 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

3

3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1,
11.4.7, 14.1, 14.2.1.1.
Contractor's Liability Insurance
  11.1
Contractor's Relationship with Separate Contractors and Owner's
Forces
  3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
  1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.4.1.2,
  11.4.7, 11.4.8
Contractor's Relationship with the Architect
  1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1, 3.7.3,
  3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4, 4.4.1,
  4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, .5, 9.7, 9.8, 9.9,
  10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5
Contractor's Representations
  1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the Work
  3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Contractor's Review of Contract Documents
  1.5.2, 3.2, 3.7.3
Contractor's Right to Stop the Work
  9.7
Contractor's Right to Terminate the Contract
  4.3.10, 14.1
Contractor's Submittals
  3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3, 9.8.2,
  9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2
Contractor's Superintendent
  3.9, 10.2.6
Contractor's Supervision and Construction Procedures
  1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4, 7.1.3,
  7.3.4, 7.3.6, 8.2, 10, 12, 14
Contractual Liability Insurance
  11.1.1.8, 11.2, 11.3
Coordination and Correlation
  1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
  1.6, 2.2.5, 3.11
Copyrights
  1.6, 3.17
Correction of Work
  2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, 12.2,
  13.7.1.3
Correlation and Intent of the Contract Documents
  1.2
Cost, Definition of
  7.3.6
Costs
  2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3,
  7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2, 10.5, 11.3, 11.4, 12.1,
  12.2.1, 12.2.4, 13.5, 14
Cutting and Patching
  6.2.5, 3.14

Damage to Construction of Owner or Separate Contractors
  3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1, 11.4,
  12.2.4
Damage to the Work
  3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4
Damages, Claims for
  3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
  11.4.5, 11.4.7, 14.1.3, 14.2.4
Damages for Delay
  6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work, Definition of
  8.1.2
Date of Substantial Completion, Definition of
  8.1.3
Day, Definition of
  8.1.4
Decisions of the Architect
  4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5, 4.4.6,
  4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
  13.5.2, 14.2.2, 14.2.4
Decisions to Withhold Certification
  9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and
Correction of
  2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3,
  9.10.4, 12.2.1, 13.7.1.3
Defective Work, Definition of
  3.5.1
Definitions
  1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 4.3.1, 5.1,
  6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
  3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1,
  7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Disputes
  4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8
Documents and Samples at the Site
  3.11
Drawings, Definition of
  1.1.5
Drawings and Specifications, Use and Ownership of
  1.1.1, 1.3, 2.2.5, 3.11, 5.3
Effective Date of Insurance
  8.2.2, 11.1.2
Emergencies
  4.3.5, 10.6, 14.1.1.2
Employees, Contractor's
  3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1,
  11.4.7, 14.1, 14.2.1.1
Equipment, Labor, Materials and
  1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6,
  4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1,
  10.2.4, 14.2.1.2
Execution and Progress of the Work

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License
Number 1002744, which expires on 3/2/2003.

1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7, 3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3, 7.3.4, 8.2, 9.5, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3

**Extensions of Time**
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3, 7.4.1, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2

**Failure of Payment**
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6

**Faulty Work**
(See Defective or Nonconforming Work)

**Final Completion and Final Payment**
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3

**Financial Arrangements, Owner's**
2.2.1, 13.2.2, 14.1.1.5

**Fire and Extended Coverage Insurance**
11.4

**GENERAL PROVISIONS**
1

**Governing Law**
13.1

**Guarantees (See Warranty)**

**Hazardous Materials**
10.2.4, 10.3, 10.5

**Identification of Contract Documents**
1.5.1

**Identification of Subcontractors and Suppliers**
5.2.1

**Indemnification**
3.17, 3.18, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7

**Information and Services Required of the Owner**
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4

**Injury or Damage to Person or Property**
4.3.8, 10.2, 10.6

**Inspections**
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.2, 9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5

**Instructions to Bidders**
1.1.1

**Instructions to the Contractor**
3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2

**Insurance**
3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 9.10.5, 11

**Insurance, Boiler and Machinery**
11.4.2

**Insurance, Contractor's Liability**
11.1

**Insurance, Effective Date of**
8.2.2, 11.1.2

**Insurance, Loss of Use**
11.4.3

**Insurance, Owner's Liability**
11.2

**Insurance, Project Management Protective Liability**
11.3

**Insurance, Property**
10.2.5, 11.4

**Insurance, Stored Materials**
9.3.2, 11.4.1.4

**INSURANCE AND BONDS**
11

**Insurance Companies, Consent to Partial Occupancy**
9.9.1, 11.4.1.5

**Insurance Companies, Settlement with**
11.4.10

**Intent of the Contract Documents**
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4

**Interest**
13.6

**Interpretation**
1.2.3, 1.4, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4

**Interpretations, Written**
4.2.11, 4.2.12, 4.3.6

**Joinder and Consolidation of Claims Required**
4.6.4

**Judgment on Final Award**
4.6.6

**Labor and Materials, Equipment**
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2

**Labor Disputes**
8.3.1

**Laws and Regulations**
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14

**Liens**
2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10

**Limitation on Consolidation or Joinder**
4.6.4

**Limitations, Statutes of**
4.6.3, 12.2.6, 13.7

**Limitations of Liability**
2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18, 4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.10.4, 10.3.3, 10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5, 13.4.2

**Limitations of Time**
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14

**Loss of Use Insurance**
11.4.3

**Material Suppliers**
1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A201-1997

WFI0341

Materials, Hazardous
  10.2.4, 10.3, 10.5
Materials, Labor, Equipment and
  1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.23, 3.12, 3.13, 3.15.1,
  4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2,
  10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of
Construction
  3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
  4.4.8
Mediation
  4.4.1, 4.4.5, 4.4.6, 4.4.8, 4.5, 4.6.1, 4.6.2, 8.3.1, 10.5
Minor Changes in the Work
  1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, 7.4
MISCELLANEOUS PROVISIONS
  13
Modifications, Definition of
  1.1.1
Modifications to the Contract
  1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
  10.3.2, 11.4.1
Mutual Responsibility
  6.2
Nonconforming Work, Acceptance of
  9.6.6, 9.9.3, 12.3
Nonconforming Work, Rejection and Correction of
  2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1,
  13.7.1.3
Notice
  2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.12.9, 4.3, 4.4.8,
  4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2,
  12.2.4, 13.3, 13.5.1, 13.5.2, 14.1, 14.2
Notice, Written
  2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5, 5.2.1,
  8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4,
  13.3, 14
Notice of Testing and Inspections
  13.5.1, 13.5.2
Notice to Proceed
  8.2.2
Notices, Permits, Fees and
  2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
Observations, Contractor's
  1.5.2, 3.2, 3.7.3, 4.3.4
Occupancy
  2.2.2, 9.6.6, 9.8, 11.4.1.5
Orders, Written
  1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
  14.3.1
OWNER
  2
Owner, Definition of
  2.1

Owner, Information and Services Required of the
  2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3, 6.1.4,
  6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4,
  13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Owner's Authority
  1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3,
  4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1,
  7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.9.1, 9.10.2, 10.3.2,
  11.1.3, 11.3.1, 11.4.3, 11.4.10, 12.2.2, 12.3.1, 13.2.2, 14.3,
  14.4
Owner's Financial Capability
  2.2.1, 13.2.2, 14.1.1.5
Owner's Liability Insurance
  11.2
Owner's Loss of Use Insurance
  11.4.3
Owner's Relationship with Subcontractors
  1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
  2.4, 12.2.4, 14.2.2.2
Owner's Right to Clean Up
  6.3
Owner's Right to Perform Construction and to Award Separate
Contracts
  6.1
Owner's Right to Stop the Work
  2.3
Owner's Right to Suspend the Work
  14.3
Owner's Right to Terminate the Contract
  14.2
Ownership and Use of Drawings, Specifications and Other
Instruments of Service
  1.1.1, 1.6, 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3
Partial Occupancy or Use
  9.6.6, 9.9, 11.4.1.5
Patching, Cutting and
  3.14, 6.2.5
Patents
  3.17
Payment, Applications for
  4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10.1,
  9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3
Payment, Certificates for
  4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3,
  13.7, 14.1.1.3, 14.2.4
Payment, Failure of
  4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Payment, Final
  4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5,
  12.3.1, 13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
  7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Payments, Progress

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License
Number 1002744, which expires on 3/2/2003.

WFI0342

4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3

**PAYMENTS AND COMPLETION**
9
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2
PCB
10.3.1
Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**
Permits, Fees and Notices
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2

**PERSONS AND PROPERTY, PROTECTION OF**
10
Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
3.12.2
Product Data and Samples, Shop Drawings
3.11, **3.12**, 4.2.7
Progress and Completion
4.2.2, 4.3.3, **8.2**, 9.8, 9.9.1, 14.1.4
Progress Payments
4.3.3, 9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3
Project, Definition of the
1.1.4
Project Management Protective Liability Insurance
11.3
Project Manual, Definition of the
1.1.7
Project Manuals
2.2.5
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.4

**PROTECTION OF PERSONS AND PROPERTY**
10
Regulations and Laws
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14
Rejection of Work
3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2, 13.2.1
Resolution of Claims and Disputes
4.4, 4.5, 4.6
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage

9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field Conditions by Contractor
1.5.2, **3.2**, 3.7.3, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by Contractor
3.12
Rights and Remedies
1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, 13.4, 14
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
4.6.2
Safety of Persons and Property
10.2, 10.6
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.6
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, **3.12**, 4.2.7
Samples at the Site, Documents and
**3.11**
Schedule of Values
**9.2**, 9.3.1
Schedules, Construction
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1, 11.4.7, 12.1.2, 12.2.5
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, **3.12**, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
Specifications, Definition of the
1.1.6
Specifications, The
1.1.1, **1.1.6**, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17
Statute of Limitations
4.6.3, 12.2.6, 13.7
Stopping the Work
2.3, 4.3.6, 9.7, 10.3, 14.1

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 – 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0343

Stored Materials
  6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
Subcontractor, Definition of
  5.1.1
SUBCONTRACTORS
  5
Subcontractors, Work by
  1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
Subcontractual Relations
  5.3, 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1,
  14.2.1, 14.3.2
Submittals
  1.6, 3.10, 3.11. 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3, 9.8,
  9.9.1, 9.10.2, 9.10.3, 11.1.3
Subrogation, Waivers of
  6.1.1, 11.4.5, 11.4.7
Substantial Completion
  4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 9.10.4.2,
  12.2, 13.7
Substantial Completion, Definition of
  9.8.1
Substitution of Subcontractors
  5.2.3, 5.2.4
Substitution of Architect
  4.1.3
Substitutions of Materials
  3.4.2, 3.5.1, 7.3.7
Sub-subcontractor, Definition of
  5.1.2
Subsurface Conditions
  4.3.4
Successors and Assigns
  13.2
Superintendent
  3.9, 10.2.6
Supervision and Construction Procedures
  1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4,
  7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14
Surety
  4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of
  9.10.2, 9.10.3
Surveys
  2.2.3
Suspension by the Owner for Convenience
  14.4
Suspension of the Work
  5.4.2, 14.3
Suspension or Termination of the Contract
  4.3.6, 5.4.1.1, 11.4.9, 14
Taxes
  3.6, 3.8.2.1, 7.3.6.4
Termination by the Contractor
  4.3.10, 14.1

Termination by the Owner for Cause
  4.3.10, 5.4.1.1, 14.2
Termination of the Architect
  4.1.3
Termination of the Contractor
  14.2.2
TERMINATION OR SUSPENSION OF THE CONTRACT
  14
Tests and Inspections
  3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1,
  10.3.2, 11.4.1.1, 12.2.1, 13.5
TIME
  8
Time, Delays and Extensions of
  3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1,
  7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Time Limits
  2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
  4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1,
  9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5,
  11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14
Time Limits on Claims
  4.3.2, 4.3.4, 4.3.8, 4.4, 4.5, 4.6
Title to Work
  9.3.2, 9.3.3
UNCOVERING AND CORRECTION OF WORK
  12
Uncovering of Work
  12.1
Unforeseen Conditions
  4.3.4, 8.3.1, 10.3
Unit Prices
  4.3.9, 7.3.3.2
Use of Documents
  1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
Use of Site
  3.13, 6.1.1, 6.2.1
Values, Schedule of
  9.2, 9.3.1
Waiver of Claims by the Architect
  13.4.2
Waiver of Claims by the Contractor
  4.3.10, 9.10.5, 11.4.7, 13.4.2
Waiver of Claims by the Owner
  4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1,
  13.4.2, 14.2.4
Waiver of Consequential Damages
  4.3.10, 14.2.4
Waiver of Liens
  9.10.2, 9.10.4
Waivers of Subrogation
  6.1.1, 11.4.5, 11.4.7
Warranty
  3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2,

4. AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License
Number 1002744, which expires on 3/2/2003.

WFI0344

13.7.1.3
Weather Delays
    4.3.7.2
Work, Definition of
    1.1.3
Written Consent
    1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2, 9.8.5,
    9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
Written Interpretations
    4.2.11, 4.2.12, 4.3.6
Written Notice

2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5, 5.2.1,
8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4,
13.3, 14
Written Orders
    1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
    14.3.1

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License
Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
9

WFI0345

# ARTICLE 1 GENERAL PROVISIONS

## 1.1 BASIC DEFINITIONS

### 1.1.1    THE CONTRACT DOCUMENTS

The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements) . **If there is any conflict of discrepancy between or among the drawings, or between or among the specifications, then, unless otherwise directed by the Owner, the Contractor shall provide the better quality of, or the greater quantity of work or materials.**

**Insert A: 1.1.1.1 In the event of any conflict among the Contract documents, the Documents shall be construed according to the following priorities:**

**Insert B: See Article 1.1.1 of the Supplemental General Conditions**

**Insert C: Intentionally Omitted.**

**Insert D: Intentionally Omitted.**

**Insert E: Intentionally Omitted.**

**Insert F: Intentionally Omitted.**

**Insert G: Intentionally Omitted.**

**Insert H: Intentionally Omitted.**

### 1.1.2    THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### 1.1.3    THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

**Insert I: "The Work shall also include the roughing for and installation of any or all equipment furnished by the Owner, where shown on the drawings or noted in the Specifications"**

### 1.1.4    THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

### 1.1.5    THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### 1.1.6    THE SPECIFICATIONS

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### 1.1.7    THE PROJECT MANUAL

The Project Manual is a volume assembled for the Work which may include the bidding requirements, proposal requirements sample forms, Conditions of the Contract and Specifications.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

10

## 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

**1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

Insert J: 1.2.1.1. All Work mentioned or indicated in the Contract Documents shall be performed by the Contractor as part of this Agreement, unless it is specifically indicated in the Contract Documents that such Work is to be done by others.

**1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**1.2.3** Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

Insert K: 1.2.6. All indications or notations which apply to one of a number of similar situations, materials or processes shall be deemed to apply to all such situations, materials or processes.

Insert L: 1.2.9: All manufactured articles, materials, and equipment shall be applied, installed, connected, erected, used, cleaned and conditioned in accordance with the manufacturers written or printed directions and instructions unless otherwise indicated in the Contract Documents.

## 1.3 CAPITALIZATION

**1.3.1** Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to Paragraphs, Subparagraphs and Clauses in the document or (3) the titles of other documents published by the American Institute of Architects.

## 1.4 INTERPRETATION

**1.4.1** In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## 1.5 EXECUTION OF CONTRACT DOCUMENTS

**1.5.1** The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon ~~request.~~ written request of either the Owner or the Contractor.

**1.5.2** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

## 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE

**1.6.1** The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. ~~All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work.~~ The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
11

this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 2 OWNER
### 2.1 GENERAL
**2.1.1**    The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Subparagraph 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**2.1.2**    The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
**2.2.1**    The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.
Insert M: Owner shall provide evidence of adequate financing to complete the Work of the Contract including changes, to Contractor, at the execution of the Agreement and at reasonable intervals, upon reasonable request, during the course of the Work.

**2.2.2**    Except for permits and fees, including those required under Subparagraph 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**2.2.3**    The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**2.2.4**    Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

**2.2.5**    Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for the bidding and execution of the Work.

### 2.3 OWNER'S RIGHT TO STOP THE WORK
**2.3.1**    If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Paragraph 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A201-1997

12

WFI0348

benefit of the Contractor or any other person or entity, except to the extent required by Subparagraph 6.1.3.

## 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

**2.4.1**    If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies. the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order or a Construction Change Directive shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts. the Contractor shall pay the difference to the Owner.

## ARTICLE 3 CONTRACTOR

### 3.1 GENERAL

**3.1.1**    The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

**3.1.2**    The Contractor shall perform the Work in accordance with the Contract Documents, and Contractors submittals approved pursuant to 3.12.

**3.1.3**    The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract. or by tests, inspections or approvals required or performed by persons other than the Contractor.

### 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

**3.2.1**    Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Subparagraph 2.2.3. shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

**3.2.2**    Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

**3.2.3**    If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Subparagraphs 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Subparagraphs 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Subparagraphs 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

Insert N: 3.2.4. The Contractor shall give the Architect timely notice of any additional information required to define the Work in greater detail.

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

13

WFI0349

## 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

**3.3.1** The Contractor shall supervise and direct the Work. using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means. methods. techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures. the Contractor shall evaluate the jobsite safety thereof and. except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods. techniques. sequences or procedures. If the Contractor determines that such means. methods. techniques. sequences or procedures may not be safe. the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means. methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor. the Owner shall be solely responsible for any resulting loss or damage.

**3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

**3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## 3.4 LABOR AND MATERIALS

**3.4.1** Unless otherwise provided in the Contract Documents. the Contractor shall provide and pay for labor, materials, equipment. tools. construction equipment and machinery. water. heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**3.4.2** The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

**3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

Insert O: 3.4.4. "The phrase "provide" as used herein shall mean the Contractor shall furnish and install the item or items, complete including all connections and all other required items for the intended purpose of the item being installed"
Insert P: 3.4.5. "The Architect, in his review of any or equal or substituted item submitted by the Contractor, will not review the suitability of the item to be provided by the Contractor, if in the Architect's sole judgement the item submitted by the Contractor would be out of character or otherwise inconsistent with the design intent of the Architect's design"

## 3.5 WARRANTY

**3.5.1** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

Insert O: 3.5.7 The warranty provided in this Paragraph 3.5 shall be in addition to and not in limitation of any other warranty required by the Contract Documents or otherwise prescribed by law.
Insert R: 3.5.8. The Contractor shall procure and deliver to the Architect no later than the date of Final Completion, all special warranties required by the Contract Documents. Delivery by the Contractor shall constitute the Contractor's guarantee to the Owner that the warranty will be performed in accordance with its terms and conditions.

---

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W.. WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
14

WFI0350

## 3.6 TAXES
3.6.1    The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## 3.7 PERMITS, FEES AND NOTICES
3.7.1    ~~Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.~~ Contractor shall secure and pay for, the building permit for each component of the Project, but Contractor shall not be responsible for any delay due to failure to obtain permits which is beyond Contractor's reasonable control. The Contractor shall secure and pay for all trade permits and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

3.7.2    The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

3.7.3    It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

3.7.4    If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

## 3.8 ALLOWANCES
3.8.1    The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

3.8.2    Unless otherwise provided in the Contract Documents:

    .1    allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

    .2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the ~~Contract Sum but not in the~~ allowances;

    .3    whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Clause 3.8.2.1 and (2) changes in Contractor's costs under Clause 3.8.2.2.

3.8.3    Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

## 3.9 SUPERINTENDENT
3.9.1    The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case. The Contractor shall remove the Superintendent if requested to do so in writing by the Owner, and shall promptly replace him with a competent person reasonably acceptable to the Owner.

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
15

WFI0351

Insert S: 3.9.2. Contractor shall establish or shall direct the various Subcontractors to establish building grades, lines, levels, column, wall and partition lines required to lay out their work, consistent with he benchmark information provided by Owner.

Insert T: 3.9.3. The Contractor shall attend job meetings with the Architect and such other persons as the Architect may from time to time require to be present. The Contractor shall be represented by a principal, project manager, general superintendent or other authorized main office representative, as well as by the Contractor's own representative of any Subcontractor or subcontractor shall attend such meetings if the representative's presence is requested by the Architect. Such representatives shall be empowered to make binding commitments on all matters to be discussed at such meeting, including costs, payments, change orders, time schedules and manpower. Any notices required under the Contract may be served on such representatives. The Contractor and all subcontractors shall at all times afford any separate Contractor employed by Owner or Owner every reasonable opportunity for the installation of work and storage of materials.

## 3.10   CONTRACTOR'S CONSTRUCTION SCHEDULES

**3.10.1**   The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**3.10.2**   The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

**3.10.3**   The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

Insert U: 3.10.4. Updated Submittal and Construction Schedules shall be submitted once per month.

## 3.11   DOCUMENTS AND SAMPLES AT THE SITE

**3.11.1**   The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

## 3.12   SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**3.12.1**   Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**3.12.2**   Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**3.12.3**   Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**3.12.4**   Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Subparagraph 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

**3.12.5**   The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action. The Contractor shall review all submissions, including confirming material, quantities and dimensions, before

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 – 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

16

transmitting the submission to the Architect. The Architect may reject any and all submissions that do not have the Contractor's review stamp.

**3.12.6**  By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**3.12.7**  The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**3.12.8**  The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**3.12.9**  The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions. Unless such written notice has been given, the Architect's approval of a resubmitted shop drawing, product data, sample or similar submittal shall not constitute approval of any changes not requested on the prior submittal.

**3.12.10**  The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications. Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Subparagraph 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

**3.13    USE OF SITE**

**3.13.1**  The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment. The right of possession of the premises and the improvements made thereon by the Contractor shall remain at all times in the Owner. The Contractor's right to entry and use thereof arises solely from the permission granted by the Owner under the Contract Documents. The Contractor shall confine the Contractor's apparatus, the storage of material and the operations of the Contractor's workmen to limits indicated by law, ordinances, the Contract Documents and permits and/or directions of the Architect and shall not unreasonably encumber the premises with the Contractor's materials. The Owner shall not be liable to the Contractor, the Subcontractors, their employees or anyone else with respect to the conditions of the premises, except only for a condition caused directly and solely by the negligence of the Owner.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
17

WFI0353

Insert V: 3.13.2  Any damage to any area of the site caused by the Contractor or any of the Contractor's sub-contractors, shall be corrected and returned to a condition satisfactory to the Owner.

### 3.14  CUTTING AND PATCHING

**3.14.1**  The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**3.14.2**  The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### 3.15  CLEANING UP

**3.15.1**  The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials. Immediately prior to the Architect's inspection for Substantial Completion, the Contractor shall completely clean the premises. Concrete and ceramic surfaces shall be cleaned and washed. Resilient coverings shall be cleaned, waxed and buffed. Woodwork shall be dusted and cleaned. Sash, fixtures and equipment shall be thoroughly cleaned. Stains, spots, dust, marks, and smears shall be removed from all surfaces. Hardware and all metal surfaces shall be cleaned and polished. Glass and plastic surfaces shall be thoroughly cleaned by professional window cleaners. All damaged, broken or scratched glass or plastic shall be replaced by the Contractor at the Contractor's expense.

**3.15.2**  If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

### 3.16  ACCESS TO WORK

**3.16.1**  The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

### 3.17  ROYALTIES, PATENTS AND COPYRIGHTS

**3.17.1**  The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

### 3.18  INDEMNIFICATION

**3.18.1**  To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Paragraph 11.3, the Contractor shall indemnify and hold harmless the Owner, ~~Architect, Architect's consultants,~~ and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

**3.18.2**  In claims against any person or entity indemnified under this Paragraph 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 - 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

WFI0354

obligation under Subparagraph 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4   ADMINISTRATION OF THE CONTRACT
### 4.1 ARCHITECT
**4.1.1**   The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

**4.1.2**   Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**4.1.3**   If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

### 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
**4.2.1**   The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Paragraph 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

**4.2.2**   The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Subparagraph 3.3.1.

**4.2.3**   The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**4.2.4**   **Communications Facilitating Contract Administration.** ~~Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner~~ The Architect and Contractor shall endeavor to communicate with each other ~~through the Architect~~ <u>with copies to the Owner</u> about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner. ʼ

<u>**4.2.4.1**   Architect shall respond to all requests for information, requests for clarification, shop drawing submittals and other similar communications from Contractor, so as to cause no delay in the progress of the Work, which shall generally mean ten (10) days.</u>

**4.2.5**   Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

19

**4.2.6**   The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Subparagraphs 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**4.2.7**   The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review, which shall generally mean no more than ten (10) days. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Paragraphs 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**4.2.8**   The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Paragraph 7.4.

**4.2.9**   The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**4.2.10**   If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**4.2.11**   The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Paragraph 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

**4.2.12**   Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**4.2.13**   The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

## 4.3 CLAIMS AND DISPUTES

**4.3.1   Definition.** A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0356

**4.3.2   Time Limits on Claims.** Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

**4.3.3   Continuing Contract Performance.** Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Subparagraph 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**4.3.4   Claims for Concealed or Unknown Conditions.** If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Paragraph 4.4.

**4.3.5   Claims for Additional Cost.** If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.6.

**4.3.6** If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Paragraph 4.3.

**4.3.7   Claims for Additional Time**
**4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary. The Contractor shall have the burden of demonstrating the effect of the increased cost and any claim on the Contract time.

**4.3.7.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**4.3.8   Injury or Damage to Person or Property.** If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**4.3.9** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0357

**4.3.10  Claims for Consequential Damages.**  The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

.1  damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2  damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Subparagraph 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

## 4.4 RESOLUTION OF CLAIMS AND DISPUTES

**4.4.1    Decision of Architect.**  Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**4.4.2**    The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**4.4.3**    In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**4.4.4**    If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

**4.4.5**    The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

**4.4.6**    ~~When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor.~~ If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.4.7**    Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

22

WFI0358

**4.4.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

### 4.5 MEDIATION

**4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

Insert W: 4.5.1.2. Owner and Contractor agree that for all disputes arising out of or related to the interpretation of or compliance with the terms and conditions of this Agreement or the completion of the Project responsible persons selected by each party will meet together and use good faith to resolve the issue between them, within 15 days of the written request of either party. The holding of at least one such in person meeting (or the refusal of one party to attend such meeting, when requested) shall be a condition precedent to the initiation of any arbitration or litigation.

**4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### 4.6 ARBITRATION

**4.6.1** Any Claim arising out of or related to the Contract up to $500,000 in value, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days ~~after submission of the Claim to the Architect~~ be subject to arbitration, before a single arbitration. Prior to and as a condition precedent to arbitration or litigation, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5. All claims with a value in excess of $500,000 (for single claim or aggregate of all claims) shall be decided in a court of competent jurisdiction in the County and State where the Project is located, trial by jury being expressly waived.

**4.6.2** ~~Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.~~

**4.6.3** A demand for arbitration or litigation shall be made within ~~the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable, and in other cases within~~ a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

**4.6.4** ~~Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The~~

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 – 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

23

WFI0359

~~foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.~~

**4.6.5  Claims and Timely Assertion of Claims.**  The party filing a notice of demand for arbitration or litigation must assert in the demand or litigation all Claims then known to that party on which arbitration is permitted to be demanded.

**4.6.6  Judgment on Final Award.**  The award rendered by the arbitrator or arbitrators, if applicable, shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

# ARTICLE 5 SUBCONTRACTORS
## 5.1 DEFINITIONS
**5.1.1**    A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**5.1.2**    A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

## 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
**5.2.1**    Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through the Architect~~ the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The ~~Architect~~ Owner will promptly reply to the Contractor in writing stating whether or not the Owner ~~or the Architect~~, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

**5.2.2**    The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**5.2.3**    If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**5.2.4**    The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

## 5.3 SUBCONTRACTUAL RELATIONS
**5.3.1**    By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 — 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

## 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS

5.4.1   Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1   assignment is effective only after termination of the Contract by the Owner for cause pursuant to Paragraph 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2   assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

5.4.2   Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

## ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

6.1.1   The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Paragraph 4.3.

6.1.2   When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

6.1.3   The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

6.1.4   Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

Insert X: 6.1.5    Owner shall require its separate contractors to provide liability insurance in an amount not less than $1,000,000 naming Contractor as additional insured, provided that Contractor procures reciprocal certificate for the separate contractor.

### 6.2 MUTUAL RESPONSIBILITY

6.2.1   The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

6.2.2   If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A201-1997

25

partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**6.2.3**    The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

**6.2.4**    The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Subparagraph 10.2.5.

**6.2.5**    The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Subparagraph 3.14.

## 6.3 OWNER'S RIGHT TO CLEAN UP

**6.3.1**    If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may, <u>upon three (3) days' written notice,</u> clean up and the Architect will allocate the cost among those responsible, <u>in writing</u>.

**ARTICLE 7 CHANGES IN THE WORK** - *For Article 7 "Changes in the Work", reference Article 7 "Changes in the Work"*
*of the Supplemental General Conditions. Article 7.1.3. remains.*
**7.1 GENERAL**
~~7.1.1    Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.~~

~~7.1.2    A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.~~

~~Insert Y: 7.1.2.1:  For additive change orders, subcontractors shall be entitled to a total markup at all tiers of 10% for overhead and 5% for fee.  For deductive change orders, subcontractor shall not be required to credit Overhead or Fee.  Contractor shall be entitled to a 3.5% fee on the direct cost of change orders, plus any direct General Conditions Costs associated with such change.~~

**7.1.3**    Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

## 7.2 CHANGE ORDERS
**7.2.1**    A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

    .1    change in the Work;

    .2    the amount of the adjustment, if any, in the Contract Sum; and

    .3    the extent of the adjustment, if any, in the Contract Time.

**7.2.2**    Methods used in determining adjustments to the Contract Sum may include those listed in Subparagraph 7.3.3.

## 7.3 CONSTRUCTION CHANGE DIRECTIVES
**7.3.1**    A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below, expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
26

WFI0362

Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**7.3.2**    A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**7.3.3**    If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1    mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2    unit prices stated in the Contract Documents or subsequently agreed upon;

.3    cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4    as provided in Subparagraph 7.3.6.

**7.3.4**    Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**7.3.5**    A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**7.3.6**    If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Clause 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Subparagraph 7.3.6 shall be limited to the following:

.1    costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2    costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3    rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4    costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5    additional costs of supervision and field office personnel directly attributable to the change.

**7.3.7**    The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**7.3.8**    Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the

© AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

27

WFI0363

Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

7.3.9   When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

### 7.4 MINOR CHANGES IN THE WORK

7.4.1   The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

## ARTICLE 8 TIME

### 8.1 DEFINITIONS

8.1.1   Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

8.1.2   The date of commencement of the Work is the date established in the Agreement.  shall be established by a Notice to Proceed and receipt of the foundation permits.

8.1.3   The date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 9.8.

8.1.4   The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### 8.2 PROGRESS AND COMPLETION

8.2.1   Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

8.2.2   The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

8.2.3   The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

### 8.3 DELAYS AND EXTENSIONS OF TIME

8.3.1   If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

8.3.2   Claims relating to time shall be made in accordance with applicable provisions of Paragraph 4.3.

8.3.3   This Paragraph 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

## ARTICLE 9 PAYMENTS AND COMPLETION

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

28

WFI0364

## 9.1 CONTRACT SUM

**9.1.1** The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

## 9.2 SCHEDULE OF VALUES

**9.2.1** ~~Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.~~

## 9.3 APPLICATIONS FOR PAYMENT

**9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

**9.3.1.1** As provided in Subparagraph 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**9.3.1.2** Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

Insert Z: 9.3.4. Each Application for Payment requesting payment shall be accompanied by a waiver of lien from each Subcontractor and Supplier, as well as any other entity that sends a notice to Owner that it is supplying labor, materials or equipment to the Project, through the date of the previous application for payment.

## 9.4 CERTIFICATES FOR PAYMENT

**9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Subparagraph 9.5.1.

**9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
29

WFI0365

from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## 9.5 DECISIONS TO WITHHOLD CERTIFICATION

**9.5.1**    The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Subparagraph 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Subparagraph 9.4.1.  In the event Architect determines to make such revised Certificate for Payment, Architect shall also issue a written, itemized list of specific items for which it is withholding certification, the bases therefore and the specific dollar amounts withheld for each such item. All undisputed amounts shall be certified for payment by the Architect.  If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Subparagraph 3.3.2, because of:

.1    defective Work not remedied:

.2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor:

.3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

.4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5    damage to the Owner or another contractor;

.6    reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7    persistent failure to carry out the Work in accordance with the Contract Documents.

**9.5.2**    When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

## 9.6 PROGRESS PAYMENTS

**9.6.1**    After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**9.6.2**    The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, pursuant to the terms  reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**9.6.3**    The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

30

WFI0366

~~of the Work done by such Subcontractor.~~

**9.6.4**   Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**9.6.5**   Payment to material suppliers shall be treated in a manner similar to that provided in Subparagraphs 9.6.2, 9.6.3 and 9.6.4.

**9.6.6**   A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**9.6.7**   Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## 9.7 FAILURE OF PAYMENT
**9.7.1**   If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

## 9.8 SUBSTANTIAL COMPLETION
**9.8.1**   Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete <u>including a Temporary Certificate of Occupancy</u> in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**9.8.2**   When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**9.8.3**   Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**9.8.4**   When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**9.8.5**   The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below, expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
31

payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

Insert AA: **Intentionally Ommitted.**

## 9.9 PARTIAL OCCUPANCY OR USE

**9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Clause 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Subparagraph 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## 9.10   FINAL COMPLETION AND FINAL PAYMENT

**9.10.1** Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997

32

WFI0368

9.10.4  The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

.1  liens. Claims. security interests or encumbrances arising out of the Contract and unsettled;

.2  failure of the Work to comply with the requirements of the Contract Documents; or

.3  terms of special warranties required by the Contract Documents.

9.10.5  Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10  PROTECTION OF PERSONS AND PROPERTY
### 10.1  SAFETY PRECAUTIONS AND PROGRAMS
10.1.1  The Contractor shall be responsible for initiating. maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### 10.2  SAFETY OF PERSONS AND PROPERTY
10.2.1  The Contractor shall take reasonable precautions for safety of. and shall provide reasonable protection to prevent damage. injury or loss to:

.1  employees on the Work and other persons who may be affected thereby;

.2  the Work and materials and equipment to be incorporated therein. whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3  other property at the site or adjacent thereto. such as trees. shrubs. lawns. walks. pavements. roadways, structures and utilities not designated for removal. relocation or replacement in the course of construction.

10.2.2  The Contractor shall give notices and comply with applicable laws. ordinances. rules. regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage. injury or loss. Insert AB: Owner acknowledges that Contractor has not created or contributed to the creation of or existence of any hazardous or toxic material or any other type of hazard, contamination or pollution. latent or patent. or to the release thereof, or the violation of any law or regulation thereto, or to the release prior to the date of the commencement of performance of the Work (collectively the "Preexisting Conditions"). Therefore. Owner shall defend. indemnify and hold harmless Contractor. its subsidiaries and affiliates and any of their respective officers, directors, employees, agents and/or sureties from and against any claim, demand, cause of action, judgement or other obligation, including but not limited to those based in whole or part on strict liability. that the Contractor has become an owner, operator, generator or transporter or disposer of a hazardous substance. or other potentially responsible party under CERCLA or any other federal or state environmental laws, based on the preexisting Conditions, except to the extent the claim arises from the act or omission or misconduct of the Contractor or its suppliers, Subcontractors, agents and anyone for whose acts they may be responsible.
Insert AC: The responsibility for making any disclosures or reports to any third party and for taking any corrective, remedial or remediation actions regarding the Preexisting Conditions shall be solely that of the Owner except to the extent that the claim arises from act or omission or misconduct of the Contractor.

10.2.3  The Contractor shall erect and maintain. as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection. including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

10.2.4  When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W., WASHINGTON. D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
33

execution of the Work. the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**10.2.5**  The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor. a Subcontractor. or anyone directly or indirectly employed by any of them. or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them. or by anyone for whose acts either of them may be liable. and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 3.18.

**10.2.6**  The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**10.2.7**   The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

Insert AD: 10.2.9.  During the progress of the Work and at all times prior to the date of Substantial Completion or occupancy of the Work by the Owner, whichever is earlier, the Contractor shall provide temporary heat, ventilation, and enclosure, adequate to permit the Work to proceed in a timely fashion, and to prevent damage to completed Work or Work in progress, or to materials stored on the premises.  The permanent heating ventilation systems may be used for these purposes when available unless otherwise provided in the Contract Documents, with Contractor responsible for any damage to such system as a result of such use.

Insert AE: 10.2.10.  The Contractor shall provide and maintain in good operating condition suitable and adequate fire protection equipment and services.  The area within the site shall be kept orderly and clean, and all combustible rubbish shall be promptly removed from the site.

Insert AF: 10.2.11.  The Contractor shall at all times protect excavations, trenches, buildings and materials, from rain water, ground water, backup or leakage of sewers, drains, and other piping and from water of any other origin, and shall promptly remove any accumulation of water.  The Contractor shall provide and operate all pumps, piping and other equipment necessary to this end.  Nothing in this provision, however, shall be construed to preclude a claim for such costs or charges to the extent they arise out of circumstances which would entitle Contractor to a Change Order for a differing site condition or similar circumstance.

## 10.3   HAZARDOUS MATERIALS

**10.3.1**  If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance. including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall. upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**10.3.2**   The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Contractor shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

**10.3.3**  To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS. 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0370

expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**10.4**    The Owner shall not be responsible under Paragraph 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

**10.5**    If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

**10.6    EMERGENCIES**
**10.6.1**    In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Paragraph 4.3 and Article 7.

## ARTICLE 11  INSURANCE AND BONDS
**11.1    CONTRACTOR'S LIABILITY INSURANCE**
**11.1.1**    The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

    .1    claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

    .2    claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

    .3    claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

    .4    claims for damages insured by usual personal injury liability coverage;

    .5    claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

    .6    claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

    .7    claims for bodily injury or property damage arising out of completed operations; and

    .8    claims involving contractual liability insurance applicable to the Contractor's obligations under Paragraph 3.18.

**11.1.2**    The insurance required by Subparagraph 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, but in no event less than $10 Million Dollars Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0371

11.1.3  Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Paragraph 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Subparagraph 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

Insert AG: 11.1.4.  Said policy shall be endorsed to indicate that the term "Insured" shall include the Owner and be deemed to include their agents, boards, bureaus, departments and officers thereof in their official capacities.  The Contractor shall name the Owner as Additional Insured on the Contractor's General Liability policy for a period of two years beyond the date of Substantial Completion.

## 11.2    OWNER'S LIABILITY INSURANCE
11.2.1   The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## 11.3    PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
11.3.1   ~~Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability Insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Clauses 11.1.1.2 through 11.1.1.5.~~

11.3.2   ~~To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.~~

11.3.3   ~~The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Paragraph 11.1.~~

## 11.4    PROPERTY INSURANCE
11.4.1   Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

11.4.1.1   Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

11.4.1.2   If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
36

subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**11.4.1.3**  If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**11.4.1.4**  This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

Insert AH: 11.4.1.4.1  The Owner shall have power to adjust and settle a builder's risk loss with insurers, but shall not settle such loss without Contractor's consent, which shall not be unreasonably withheld.

**11.4.1.5**  Partial occupancy or use in accordance with Paragraph 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**11.4.2  Boiler and Machinery Insurance.** The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**11.4.3  Loss of Use Insurance.** The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

**11.4.4**  If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**11.4.5**  If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**11.4.6**  Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Paragraph 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**11.4.7  Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below, expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
37

effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**11.4.8**   A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Subparagraph 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**11.4.9**   If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Paragraph 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**11.4.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Paragraphs 4.5 and 4.6. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

**11.5    PERFORMANCE BOND AND PAYMENT BOND**
**11.5.1**   The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**11.5.2**   Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

## ARTICLE 12  UNCOVERING AND CORRECTION OF WORK
**12.1     UNCOVERING OF WORK**
**12.1.1**   If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**12.1.2**   If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

**12.2    CORRECTION OF WORK**
**12.2.1   BEFORE OR AFTER SUBSTANTIAL COMPLETION**
**12.2.1.1**   The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

**12.2.2   AFTER SUBSTANTIAL COMPLETION**

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A201-1997
38

**12.2.2.1**   In addition to the Contractor's obligations under Paragraph 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Subparagraph 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Paragraph 2.4.

**12.2.2.2**   The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

**12.2.2.3**   The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Paragraph 12.2.

**12.2.3**   The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**12.2.4**   The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

**12.2.5**   Nothing contained in this Paragraph 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Subparagraph 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## 12.3   ACCEPTANCE OF NONCONFORMING WORK
**12.3.1**   If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13  MISCELLANEOUS PROVISIONS
### 13.1   GOVERNING LAW
**13.1.1**   The Contract shall be governed by the law of the place where the Project is located.

### 13.2   SUCCESSORS AND ASSIGNS
**13.2.1**   The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Subparagraph 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**13.2.2**   The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### 13.3   WRITTEN NOTICE
**13.3.1**   Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

WFI0375

or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

Insert AI:

## 13.4    RIGHTS AND REMEDIES

**13.4.1**   Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**13.4.2**   No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

## 13.5    TESTS AND INSPECTIONS

**13.5.1**   Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals, which do not become requirements until after bids are received or negotiations concluded.

**13.5.2**   If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Subparagraph 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Subparagraph 13.5.3, shall be at the Owner's expense.

**13.5.3**   If such procedures for testing, inspection or approval under Subparagraphs 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**13.5.4**   Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**13.5.5**   If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**13.5.6**   Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

## 13.6    INTEREST

**13.6.1**   Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

Insert AJ: Refer to base contract for Interest rate on late payments agreed to by the Owner and the Contractor.

## 13.7    COMMENCEMENT OF STATUTORY LIMITATION PERIOD

**13.7.1**   As between the Owner and Contractor:

  .1   **Before Substantial Completion.** As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below, expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
40

deemed to have accrued in any and all events not later than such date of Substantial Completion.

.2 **Between Substantial Completion and Final Certificate for Payment.** As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3 **After Final Certificate for Payment.** As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

## ARTICLE 14  TERMINATION OR SUSPENSION OF THE CONTRACT
### 14.1  TERMINATION BY THE CONTRACTOR
**14.1.1**  The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

.1 issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

.2 an act of government, such as a declaration of national emergency which requires all Work to be stopped;

.3 because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Subparagraph 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

.4 the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Subparagraph 2.2.1.

**14.1.2**  The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Paragraph 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**14.1.3**  If one of the reasons described in Subparagraph 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

**14.1.4**  If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Subparagraph 14.1.3.

### 14.2  TERMINATION BY THE OWNER FOR CAUSE
**14.2.1**  The Owner may terminate the Contract if the Contractor:

.1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below, expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
41

WFI0377

.2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

.3    persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

.4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

**14.2.2**   When any of the above reasons exist, the Owner, ~~upon certification by the Architect that sufficient cause exists to justify such action,~~ may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, **and 30 days to cure, to the extent not previously provided** terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1    take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

.2    accept assignment of subcontracts pursuant to Paragraph 5.4; and

.3    finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**14.2.3**    When the Owner terminates the Contract for one of the reasons stated in Subparagraph 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**14.2.4**    If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

**14.3    SUSPENSION BY THE OWNER FOR CONVENIENCE**

**14.3.1**    The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**14.3.2**    The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Subparagraph 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

.1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

.2    that an equitable adjustment is made or denied under another provision of the Contract.

Insert AK: **14.3.4**  **In the event of a termination of this Contract for the convenience of the Owner, Contractor shall be entitled to all direct costs associated with such termination, (including all amounts earned under the Contract to the date of such termination including profit and overhead, but without any additional mark-up or premium) all costs of demobilizing the Contractor's forces and equipment, all costs associated with termination of subcontracts, purchase orders, leases and any other agreements into which Contractor has entered to facilitate the work.**

**14.4    TERMINATION BY THE OWNER FOR CONVENIENCE**

**14.4.1**    The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**14.4.2**    Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format A201-1997
42

WFI0378

.1   cease operations as directed by the Owner in the notice;

.2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

.3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**14.4.3**   In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable ~~overhead and~~ profit of 3.5% on the remaining Work not executed.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below. expiration as noted below. User Document: 154BERKA201 -- 11/15/2002. AIA License Number 1002744, which expires on 3/2/2003.

Electronic Format  A201-1997
43

WFI0379

## TABLE OF CONTENTS

| | PAGE NO. | ISSUE DATE | REV DATE |
|---|---|---|---|
| Title Page - Construction Bid Set | 1 | | |
| Title Page - Addednum 1 | 1 | 08.16.02 | |
| Title Page - Addednum 2 | 1 | 09.27.02 | |
| Table of Contents | 1-5 | 06.28.02 | 11.15.02 |

## GENERAL DOCUMENTS

| | | | PAGE NO. | ISSUE DATE | REV DATE |
|---|---|---|---|---|---|
| 1.) | List of Drawings ""*"" | | 1-6 | 07.12.02 | 11.15.02 |
| 2.) | Door Schedule | Doors | 1-8 | 08.09.02 | |
| | | Hardware | 1-7 | 08.09.02 | |
| 3.) | Finish Schedule | | 1-5 | 08.09.02 | |
| 4.) | Interior Designers Product Specifications Prepared by Concepts 4, Inc. dated June 4, 2002 | | 8 Pages | | |
| 5.) | AIA General Conditions of the Contract for Construction (AIA Document A201-1987) | | Not Bound Herein | | |
| 6.) | Owner/Contractors Supplemental Conditions | | Not Bound Herein | | |
| 7.) | Environmental Site Assessment & Hazardous Materials Survey ""*"" Prepared by TGG Environmental, Inc. dated March 2001 | | Not Bound Herein | | |
| 8.) | Foundation Engineering Report ""*"" Prepared by McPhail Associates, Inc. dated March 16, 2001 | | See Report | | |
| 9.) | Soil Disposition Report ""*"" Prepared by McPhail Associates, Inc. dated Dec. 26, 2001 | | See Report | | |
| 10.) | Food Service Equipment Specifications - Volume I and II ""**"" Prepared by Next Step Design dated July 15, 2002 | | Not Bound Herein | 08.02.02 "d" | |
| 11.) | Original Construction Drawings ""*"" Prepared by Ritchie Parsons and Taylor, dated circa 1925. | | Not Bound Herein | | |
| 12.) | Preliminary Lighting Fixture Schedule Prepared by Lighting Design Alliance, dated July 10, 2002. 6 Page Schedule + cover and cuts | | | 07.29.02 | |
| 13.) | Additional Chemical Testing Report Prepared by McPhail Associates, Inc. dated July 23, 2002 | | See Report | 07.30.02 | |
| 14.) | Program of Structural Tests and Inspections Prepared by McNamara/Salvia, Inc. no date. | | 6 Pages | 07.30.02 | |
| 15.) | Concrete Testing Reports Prepared by The Thompson & Lichtner Company, Inc., "Coring and Non-Destructive Testing" dated May 29, 2002 "Density Test of Topping Concrete" dated July 10, 2002 "Unit Weight of Concrete Slab" dated July 10, 2002 | | 10 Pages 1 Page 1 Page | 08.02.02 | |

| | | | |
|---|---|---|---|
| 16.) | Public Areas FF&E Schedule<br>Prepared by Concepts 4, Inc. dated August 7, 2002 | 5 Pages | 08.09.02 "e" |
| 17.) | Interior Design Sketches<br>Prepared by Concepts 4, Inc. dated August 9, 2002 | IDSK-001-A,B,C,D,E | 08.09.02 |
| 18.) | Public Areas Millwork Schedul<br>Prepared by Concepts 4, Inc. dated August 12, 2002 | 5 Pages | 08.16.02 |
| 19.) | Fire Protection Sketches<br>Prepared by Q&W Associates, Inc. dated August 16, 2002 | SKF-2,3,4 | 08.16.02 |
| 20.) | Electrical Sketches<br>Prepared by Q&W Associates, Inc. dated August 16, 2002 | SKE-1 through 27 | 08.16.02 |
| 21.) | Guestroom Responsibility Matrix<br>Prepared by Concepts 4, Inc. dated August 28, 2002 | 2 Pages | 09.27.02 |
| 22.) | Foundation Engineering Report Addendum<br>Prepared by McPhail Associates, Inc. dated Aug. 21, 2002 | See Report | 09.27.02 |
| 23.) | Concrete Vault Wall Inspection and Repair<br>Prepared by McNamara/Salvia dated Sept. 23, 2002<br>Memorandum (2 Pages) | SKS-10 through 14 | 09.27.02 |
| 24.) | Plumbing Sketches<br>Prepared by Q&W Associates, Inc. dated Sept. 19, 2002 | SKP-1 and 2 | 09.27.02 |
| 25.) | Landscape Project-Cost Estimate<br>Prepared by Weinmayr Assoc., Inc. dated Sept. 19, 2002 | 8 Pages | 09.27.02 |
| 26.) | Electrical Add-Alternate 1,2,3 and 4<br>Prepared by Q&W Associates, Inc. dated<br>Aug. 28, 2002<br>Sept. 3, 2002 | SKE-26 and 27<br>SKE-28 | 09.27.02<br>09.27.02 |
| 27.) | Basement Waterproofing Specification<br>Prepared by The Thompson & Lichtner Company, Inc.,<br>Dated September 6, 2002 | 8 Pages | 09.27.02 |
| 28.) | Value Engineering Modification 1<br>Prepared by The Architectural Team, Inc.<br>dated September 27, 2002 | ASK-012 | 09.27.02 |

WFI0381

## TECHNICAL SPECIFICATIONS

**DIVISION 1 - GENERAL REQUIREMENTS**
Section 01010 - Summary of Work ***          01010-1 to 01010-4     06.28.02
Section 01140 - Work Restriction              01140-1 to 01140-2
Section 01250 - Contract Modification Procedures ***   01250-1 to 01250-3
Section 01290 - Payment Procedures ***        01290-1 to 01290-5
Section 01310 - Project Management and Coordination ***  01310-1 to 01310-9   06.28.02
Section 01320 - Construction Progress Documentation ***  01320-1 to 01320-10  06.28.02
Section 01322 - Photographic Documentation ***   01322-1 to 01322-3   06.28.02
Section 01330 - Submittal Procedures          01330-1 to 01330-10
Section 01400 - Quality Requirements          01400-1 to 01400-7
Section 01420 - References                    01420-1 to 01420-16
Section 01500 - Temporary Facilities and Controls ***  01500-1 to 01500-14  06.28.02   08.16.02
Section 01600 - Product Requirements          01600-1 to 01600-7
Section 01700 - Execution Requirements ***    01700-1 to 01700-8   06.28.02
Section 01731 - Cutting and Patching          01731-1 to 01731-5
Section 01732 - Selective Demolition ***      01732-1 to 01732-10
Section 01770 - Closeout Procedures           01770-1 to 01770-7
Section 01781  - Project Record Documents     01781-1 to 01781-5
Section 01782 - Operation and Maintenance Data  01782-1 to 01782-8
Section 01820 - Demonstration and Training    01820-1 to 01820-5

**DIVISION 2 - SITEWORK**
Section 02200 - Earthwork ***                 03001-1 to 03001-17    06.19.02
Section 02350 - Caissons ***                  02350-1 to 02350-7     06.19.02
Section 02368 - Drilled Mini-Piles ***        02368-1 to 02368-8     06.19.02
Section 02600 - Paving and Surfacing ***      02600-1 to 02600-3     07.10.02
Section 02720 - Site Drainage and Utilities *** 02720-1 to 02720-9   07.10.02
Section 02800 - Site Improvements             02800-1 to 02800-17    08.16.02

**DIVISION 3 - CONCRETE**
Section 03001 - Concrete Work ***             03001-1 to 03001-44    05.10.02
Section 03331 - Cast-In-Place Architectural Concrete  03331-1 to 03331-13
Section 03360 - Shotcrete                     03360-1 to 03360-6     07.25.02
Section 03600 - Grout ***                     03600-1 to 03600-3     05.10.02

**DIVISION 4 - MASONRY**
Section 04230 - Reinforced Unit Masonry ***   04230-1 to 04230-13    05.01.02
Section 04231 - Calcium Silicate Masonry Units  04231-1 to 04231-9
Section 04720 - Cast Stone                    04720-1 to 04720-8
Section 04810 - Unit Masonry Assemblies       04810-1 to 04810-25
Section 04901 - Clay Masonry Restoration and Cleaning  04901-1 to 04901-17
Section 04902 - Stone Restoration and Cleaning  04901-1 to 04901-16

**DIVISION 5 - METAL**
Section 05120 - Structural Steel ***          05120-1 to 05120-19    05.10.02
Section 05300 - Metal Decking ***             05300-1 to 05300-9     05.10.02
Section 05400 - Structural Lightgage Metal Framing  05400-1 to 05400-6
Section 05500 - Metal Fabrications            05500-1 to 05500-18

**DIVISION 6 - WOOD & PLASTICS**
Section 06105 - Rough Carpentry               06105-1 to 06105-5

WFI0382

## DIVISION 7 - THERMAL & MOISTURE PROTECTION

| | |
|---|---|
| Section 07131 - Self-Adhering Sheet Waterproofing | 07131-1 to 07131-8 |
| Section 07180 - Traffic Coatings | 07180-1 to 07180-7 |
| Section 07210 - Building Insulation | 07210-1 to 07210-6 |
| Section 07218 - Spray-on Insulation | 07218-1 to 07218-3 |
| Section 07241- Exterior Insulation & Finish Systems – Class PB | 07241-1 to 07241-13 |
| Section 07420 - Composite Aluminum Building Panels | 07420-1 to 07420-5 |
| Section 07531 - EPDM Single-Ply Membrane Roofing | 07531-1 to 07531-12 |
| Section 07600 - Flashing and Sheet Metal | 07600-1 to 07600-4 |
| Section 07720 - Roof Accessories | 07720-1 to 07720-7 |
| Section 07811 - Sprayed Fire-Resistive Materials | 07811-1 to 07811-10 |
| Section 07841 - Through Penetration Firestop Systems | 07841-1 to 07841-8 |
| Section 07920 - Joint Sealants | 07920-1 to 07920-15 |

## DIVISION 8 - DOORS & WINDOWS

| | | |
|---|---|---|
| Section 08111 - Standard Steel Doors and Frames | 08111-1 to 08111-6 | |
| Section 08211 - Flush Wood Doors | 08211-1 to 08211-6 | |
| Section 08305 - Access Doors | 08305-1 to 08305-3 | |
| Section 08331 - Overhead Coiling Doors | 08331-1 to 08331-7 | |
| Section 08411 - Aluminum-Framed Entrances and Storefronts | 08411-0 to 08411-0 | |
| Section 08520 - Aluminum Windows | 08520-1 to 08520-9 | |
| Section 08710 - Finish Hardware | 08710-1 to 08710-14 | |
| Section 08711 - Guestroom Key-Card Access System & Hrdw. | 08711-1 to 08711-6 | 08.16.02 |
| Section 08800 - Glazing | 08800-1 to 08800-15 | |
| Section 08830 - Mirrored Glass | 08830-1 to 08830-5 | |

## DIVISION 9 - FINISHES

| | | | |
|---|---|---|---|
| Section 09255 - Gypsum Board Assemblies | 09255-1 to 09255-17 | | |
| Section 09262 - Sheathing | 09262-1 to 09262-4 | | |
| Section 09270 - Drywall Shaft Systems | 09270-1 to 09270-6 | | |
| Section 09300 - Tile | 09300-1 to 09300-11 | | |
| Section 09511 - Acoustical Panel Ceilings | 09511-1 to 09511-6 | | |
| Section 09650 - Resilient Flooring and Accessories | 09650-1 to 09650-7 | | |
| Section 09680 - Carpet | 09680-1 to 09680-6 | 08.12.02 | |
| Section 09720 - Wall Covering | 09720-1 to 09720-5 | 08.12.02 | 09.27.02 "T |
| Section 09900 - Painting | 09900-1 to 09900-16 | | |

## DIVISION 10 - SPECIALTIES

| | | |
|---|---|---|
| Section 10155 - Toilet Compartments | 10155-1 to 10155-5 | |
| Section 10200 - Louvers and Vents | 10200-1 to 10200-7 | |
| Section 10265 - Wall Surface Protection Systems | 10265-1 to 10265-6 | |
| Section 10350 - Flagpoles | 10350-1 to 10350-5 | 08.09.02 |
| Section 10500 - Metal Lockers | 10505-1 to 10505-4 | |
| Section 10520 - Fire Protection Specialties | 10520-1 to 10520-4 | 08.09.02 |
| Section 10536 - Awnings | 10536-1 to 10536-3 | |
| Section 10800 - Toilet and Bath Accessories (Misc. Accessories) | 10800-1 to 10800-3 | 09.27.02 |
| Accessories Schedules | 8 Pages | 09.27.02 |

## DIVISION 11 - EQUIPMENT

| | |
|---|---|
| Section 11160 - Loading Dock Equipment | 11160-1 to 11160-3 |
| Section 11170 - Solid Waste Handling Equipment | 11170-0 to 11170-0 |

## DIVISION 12 - FURNISHINGS
Not Used

## DIVISION 13 - SPECIAL CONSTRUCTION
Not Used

WFI0383

EXHIBIT 9

BOSTON, MA
TAI PROJECT #C0206
JULY 25, 2002 (Revised November 15, 2002)

**DIVISION 14 - CONVEYING SYSTEMS**
Section 14100 - Dumbwaiters                                          14100-1 to 14100-5
Section 14200 - Vibration Isolation of Elevator Equipment          14200-1 to 14200-2     08.09.02
Section 14210 - Electric Traction Elevators                         14210-1 to 14210-27
Section 14240 - Hydraulic Elevators                                 14240-1 to 14240-23
Section 14560 - Chutes   14560-1 to 14560-4

**DIVISION 15 - MECHANICAL**
Amendments - Section 15600 - Addendum 1                              15600-1 to 15600-3     08.16.02
Section 15400 - Plumbing ""**""                                      15400-1 to 15400-23    07.12.02
Section 15500 - Fire Protection ""**""                              15500-1 to 15500-21    07.12.02
Section 15600 - HVAC ""**""                                          15600-1 to 15600-75    07.12.02

**DIVISION 16 - ELECTRICAL**
Amendments - Section 16000 - Addendum 1                              16000-1 to 16000-4     08.16.02
Section 16000 - General Provisions ""**""                           16000-1 to 16000-85    07.12.02

**DIVISION 17 - CONTROLS**
Amendments - Section 17800 - Addendum 1                              17800-1 to 17800-2     08.16.02
Section 17800 - Building Automation System ""**""                  17800-1 to 17800-34    07.12.02

Note a to Table of Contents: Unless otherwise noted, all Sections and Documents have an origination date of June 28, 2002.

Note b to Table of Contents: "*" Sections or Documents shown with an asterisk have been previously included in either the Demolition Bid Package or the Structural Bid Package and have been included here so that this Project Manual will be complete without the need of referencing previous submissions. Dates shown correspond with the previous bid package dates current through latest Addenda. If Sections or documents have been revised from the two initial bid packages, they appear here emboldened and with a revision date of June 28, 2002.

Note c to Table of Contents: "**" Sections or documents shown with a double asterisk have an origination date other than June 28, 2002.

Note d to Table of Contents: "d" General Document 10 has been revised within the Table of Contents only and for the issue date only.

Note e to Table of Contents: "e" General Document 16 has been revised within the Table of Contents only and for the document date only.

Note f to Table of Contents: "f" Specification Section 09950 has been changed to 09720 within the Table Contents only so as to correlate with actual page numbers.  No changes have been made to the specification section. Page dates shall remain August 16, 2002.

WFI0384

EXHIBIT A

FIRST BOSTON THE HEADQUARTERS HOTEL
BOSTON, MA
TAT PROJECT #C0206
JUNE 28, 2002 (Revised November 15, 2002)

# LIST OF DRAWINGS

| SHEET# | DRAWING TITLE | ISSUE DATE | REV. DATE |
|---|---|---|---|
| TI.01 | TITLE SHEET | 07.12.02 | 09.27.02 |
| TI.02 | CODE DATA, SYMBOLS, MOUNTING HEIGHTS | 07.12.02 | 09.27.02 |
| | **CIVIL** | | |
| 1 | EXISTING CONDITIONS PLAN "**" | 10.25.01 | |
| 1 OF 2 | PROPOSED SITE PLAN "**" | 07.10.02 | |
| 2 OF 2 | SITE DETAILS "**" | 05.30.02 | |
| | **LANDSCAPE** | | |
| L-1 | LANDSCAPE PLAN | 00.00.00 | 07.12.02 |
| LD-1 | LANDSCAPE DETAILS | 00.00.00 | 08.16.02 |
| LD-2 | LANDSCAPE DETAILS | 00.00.00 | 08.16.02 |
| | **DEMOLITION** | | |
| DT.01 | TITLE SHEET "**" | 08.31.01 | |
| DS.01 | SITE SURVEY "**" | 02.09.01 | |
| D1.01 | SITE PLAN "**" | 08.31.01 | |
| D2.01 | SUB-BASEMENT DEMOLITION PLAN "**" | 08.31.01 | |
| D2.02 | BASEMENT DEMOLITION PLAN "**" | 08.31.01 | |
| D2.03 | FIRST FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.04 | SECOND FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.05 | THIRD FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.06 | FOURTH FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.07 | FIFTH FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.08 | SIXTH FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.09 | SEVENTH FLOOR DEMOLITION PLAN "**" | 08.31.01 | |
| D2.10 | ROOF DEMOLITION PLAN "**" | 08.31.01 | |
| D4.01 | EXISTING EAST BUILDING ELEV. BERKELEY STREET "**" | 08.31.01 | |
| D4.02 | EXISTING NORTH BUILDING ELEV. STUART STREET "**" | 08.31.01 | |
| D4.03 | EXISTING SOUTH BUILDING ELEV. STANHOPE STREET "**" | 08.31.01 | |
| D4.04 | EXISTING WEST BUILDING ELEV. "**" | 08.31.01 | |
| D4.05 | ELEVATION DEMOLITION DETAILS "**" | 08.31.01 | |
| | **ARCHITECTURAL** | | |
| A2.01 | BASEMENT LEVEL FLOOR PLAN | 07.12.02 | 08.16.02 |
| A2.02 | MEZZANINE LEVEL FLOOR PLAN | 07.12.02 | 08.16.02 |
| A2.03 | GROUND FLOOR PLAN | 07.12.02 | 08.16.02 |
| A2.04 | 1ST FLOOR PLAN | 07.12.02 | 08.16.02 |
| A2.05 | 2ND FLOOR PLAN | 07.12.02 | 09.27.02 |
| A2.06 | 3RD – 4TH TO FLOOR PLAN TYPICAL | 07.12.02 | 09.27.02 |
| A2.07 | 5TH – 7TH FLOOR PLAN TYPICAL | 07.12.02 | 09.27.02 |
| A2.08 | 8TH FLOOR PLAN | 07.12.02 | 09.27.02 |
| A2.09 | 9TH FLOOR PLAN | 07.12.02 | 09.27.02 |
| A2.10 | MECHANICAL PENTHOUSE / ROOF | 07.12.02 | 09.27.02 |
| A2.11 | MECHANICAL PENTHOUSE ROOF | 07.12.02 | 09.27.02 |
| A3.01 | SPECIFIC INTERIOR PARTITIONS | 07.12.02 | 08.16.02 |
| A3.02 | FLOOR / CEILING ASSEMBLIES | 07.12.02 | 09.27.02 |
| A3.03 | DOOR ELEVATIONS & DETAILS | 07.12.02 | 08.16.02 |
| A3.04 | WINDOW DETAILS | 07.12.02 | 08.16.02 |
| A3.05 | WINDOW DETAILS & SCHEDULES | 07.12.02 | 08.16.02 |
| A3.06 | MISCELLANEOUS DETAILS | 07.12.02 | |

WFI0385

JURYS BOSTON - THE HEADQUARTERS HOTEL
BOSTON, MA
TAT PROJECT #C0206
JUNE 28, 2002 (Revised November 15, 2002)

# LIST OF DRAWINGS

### ARCHITECTURAL CONTINUED

| | | | |
|---|---|---|---|
| A4.01 | BERKELEY STREET ELEVATION | 07.12.02 | 09.27.02 |
| A4.02 | STUART STREET ELEVATION | 07.12.02 | 09.27.02 |
| A4.03 | STANHOPE STREET ELEVATION | 07.12.02 | 08.16.02 |
| A4.04 | WEST FACADE ELEVATION – PROPERTY LINE | 07.12.02 | 08.16.02 |
| | | | |
| A5.01 | BUILDING SECTION / ELEVATIONS | 07.12.02 | |
| A5.02 | BUILDING SECTION / ELEVATIONS | 07.12.02 | |
| A5.03 | BUILDING SECTION / ELEVATIONS | 07.12.02 | 09.27.02 |
| A5.04 | EXTERIOR WALL SECTIONS | 07.12.02 | 08.16.02 |
| A5.05 | EXTERIOR WALL SECTIONS | 07.12.02 | 08.16.02 |
| A5.06 | EXTERIOR WALL SECTIONS | 07.12.02 | 08.16.02 |
| A5.07 | EXTERIOR WALL SECTIONS & DETAILS | 07.12.02 | 09.27.02 |
| A5.08 | ENLARGED PLAN DETAILS | 07.12.02 | 08.16.02 |
| A5.09 | ENLARGED PLAN DETAILS | 00.00.00 | 08.16.02 |
| A5.10 | ROOF DETAILS / EIFS DETAILS | 07.12.02 | 09.27.02 |
| A5.11 | ENLARGED PLAN DETAILS | 00.00.00 | 08.16.02 |
| A5.12 | ENLARGED PLAN DETAILS | 00.00.00 | 09.27.02 |
| A6.01 | STAIR 1 – PLANS, SECTIONS, & DETAILS | 07.12.02 | 09.27.02 |
| A6.02 | STAIR 2 & 3 – PLANS, SECTIONS, & DETAILS | 07.12.02 | 09.27.02 |
| A6.03 | ELEVATOR 1&2 AND DUMBWAITER, PLANS, SECTIONS, & DETAILS | 07.12.02 | 09.27.02 |
| A6.04 | ELEVATOR 3&4 PLANS, SECTIONS, & DETAILS | 07.12.02 | 09.27.02 |
| A6.05 | STAIR DETAILS | 07.12.02 | 09.27.02 |
| A6.06 | ELEVATOR DETAILS | 07.12.02 | 09.27.02 |
| A6.07 | LINEN CHUTE PLANS, SECTIONS, & DETAILS | 07.12.02 | 09.27.02 |
| A6.08 | STAIR DETAILS | 07.12.02 | |
| | | | |
| A7.01 | NOT USED | | |
| A7.02 | NOT USED | | |
| A7.03 | NOT USED | | |
| A7.04 | NOT USED | | |
| A7.05 | NOT USED | | |
| A7.06 | BATH ELEVATIONS | 07.12.02 | |
| A7.07 | NOT USED | | |
| A7.08 | NOT USED | | |
| A7.09 | NOT USED | | |
| A7.10 | NOT USED | | |
| A7.11 | NOT USED | | |
| A7.12 | NOT USED | | |
| A7.13 | NOT USED | | |
| A7.14 | MISCELLANEOUS ELEVATIONS | 07.12.02 | |
| | | | |
| A8.01 | REFLECTED CEILING PLAN- BASEMENT | 07.12.02 | |
| A8.02 | REFLECTED CEILING PLAN- MEZZANINE | 07.12.02 | |
| A8.03 | REFLECTED CEILING PLAN - GROUND FLOOR | 07.12.02 | |
| A8.04 | REFLECTED CEILING PLAN – 1ST FLOOR | 07.12.02 | |
| A8.05 | REFLECTED CEILING PLAN – 2ND FLOOR | 07.12.02 | |
| A8.06 | REFLECTED CEILING PLAN – 3RD TO 4TH FLOOR | 07.12.02 | |
| A8.07 | REFLECTED CEILING PLAN – 5TH – 6TH FLOOR | 07.12.02 | |
| A8.08 | REFLECTED CEILING PLAN – 7TH FLOOR | 07.12.02 | |
| A8.09 | REFLECTED CEILING PLAN – 8TH FLOOR | 07.12.02 | |
| A8.10 | REFLECTED CEILING PLAN – 9TH FLOOR | 07.12.02 | |
| | | | |
| A9.01 | LOBBY RENOVATION | 07.12.02 | |

WFI0386

JURY'S BOSTON – THE HEADQUARTERS HOTEL
BOSTON, MA
TAT PROJECT #C0206
JUNE 28, 2002 (Revised November 15, 2002)

# LIST OF DRAWINGS

|  |  |  |
|---|---|---|
|  | **INTERIOR DESIGN** |  |
| CS-1 | GEN. NOTES, SHEET INDEX, LEGENDS / SYMBOLS ETC. | 07.12.02 |
|  |  |  |
| FF-1 | GROUND FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 |
| FF-2 | FIRST FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 |
|  |  |  |
| RC-1 | GROUND FLOOR REFLECTED CEILING PLAN | 07.12.02 |
| RC-2 | FIRST FLOOR REFLECTED CEILING PLAN | 07.12.02 |
|  |  |  |
| FC-1 | GROUND FLOOR FLOOR COVERING PLAN | 07.12.02 |
| FC-2 | FIRST FLOOR FLOOR COVERING PLAN | 07.12.02 |
| KP-1 | GROUND FLOOR KEY PLAN | 07.12.02 |
| KP-2 | FIRST FLOOR KEY PLAN | 07.12.02 |
|  |  |  |
| ID-1.1 | HISTORIC LOBBY WALL ELEVATIONS | 07.12.02 |
| ID-1.2 | HISTORIC LOBBY WALL DETAILS | 07.12.02 |
| ID-1.3 | REGISTRATION DESK ELEVATIONS & DETAILS | 07.12.02 |
| ID-1.4 | REGISTRATION DESK SECTION | 07.12.02 |
| ID-1.5 | BUSINESS CENTER | 07.12.02 |
| ID-1.6 | MEETING ROOM WALL ELEVATIONS & TRIM DETAILS | 07.12.02 |
| ID-1.7 | PUB BAR & TRIM DETAILS | 07.12.02 |
| ID-1.8 | BRASSERIE ELEVATIONS & DETAILS | 07.12.02 |
| ID-1.9 | BRASSERIE ELEVATIONS & DETAILS | 07.12.02 |
| ID-1.10 | PUBLIC AREA RESTROOM STALL DIVIDER DETAILS | 07.12.02 |
| ID-1.11 | PUBLIC AREA RESTROOM ENLARGED PLAN / ELEVATIONS | 07.12.02 |
| ID-1.12 | LOBBY BAR | 07.12.02 |
| ID-1.12A | LOBBY BAR | 07.12.02 |
| ID-1.13 | PILASTER DETAILS @ LOBBY BAR & LOBBY LOUNGE | 07.12.02 |
| ID-1.14 | STAIR DETAIL | 07.12.02 |
| ID-1.15 | GRAND STAIR & RAILING | 07.12.02 |
| ID-1.16 | FIREPLACE & FOUNTAIN FEATURE | 07.12.02 |
|  |  |  |
| GR-1.1 | SECOND FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 |
| GR-1.2 | 3RD THRU 5TH FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 |
| GR-1.3 | 6TH THRU 7TH FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 |
| GR-1.4 | 8TH THRU 9TH FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 |
| GR-1.5 | PENTHOUSE FIXTURE & FURNISHING PLAN | 07.12.02 |
|  |  |  |
| GR-2.1 | BLOW-UP GUEST ROOM PLANS (KING ROOMS) | 07.12.02 |
| GR-2.2 | BLOW-UP GUEST ROOM PLANS (KING ROOMS) | 07.12.02 |
| GR-2.3 | BLOW-UP GUEST ROOM PLANS (DOUBLE ROOMS) | 07.12.02 |
| GR-2.4 | BLOW-UP GUEST ROOM PLANS (QUEEN/ADA/SUITES) | 07.12.02 |
|  |  |  |
| IE-1 | GUEST ROOM ELEVATIONS | 07.12.02 |
| IE-2 | GUEST ROOM ELEVATIONS | 07.12.02 |
| IE-3 | GUEST ROOM ELEVATIONS | 07.12.02 |
| IE-4 | GUEST ROOM ELEVATIONS | 07.12.02 |
| IE-5 | SUITES ELEVATIONS | 07.12.02 |
| IE-6 | CORRIDOR ELEVATIONS | 07.12.02 |
|  |  |  |
| D-1 | DETAILS | 07.12.02 |
| D-2 | DETAILS | 07.12.02 |
|  |  |  |
| T-1 | BATH PLANS / ELEVATIONS | 07.12.02 |
| T-2 | BATH PLANS / ELEVATIONS | 07.12.02 |
| T-3 | BATH PLANS / ELEVATIONS | 07.12.02 |

WFI0387

EXHIBIT A

Case 1:05-cv-11375-MLW    Document 17-12    Filed 06/15/2006    Page 9 of 12

JURYS BOSTON THE HEADQUARTERS HOTEL
BOSTON, MA
TAT PROJECT #C0206
JUNE 28, 2002 (Revised November 15, 2002)

# LIST OF DRAWINGS

## INTERIOR DESIGN CONTINUED

| | | | |
|---|---|---|---|
| T-4 | BATH PLANS / ELEVATIONS | 07.12.02 | |
| T-5 | SUITES BATH PLANS / ELEVATIONS | 07.12.02 | |
| | | | |
| LD-1 | GROUND FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 | |
| LD-2 | GROUND FLOOR REFLECTED CEILING PLAN | 07.12.02 | |
| LD-3 | FIRST FLOOR FIXTURE & FURNISHING PLAN | 07.12.02 | |
| LD-4 | FIRST FLOOR REFLECTED CEILING PLAN | 07.12.02 | |

## VERTICAL TRANSPORTATION

| | | | |
|---|---|---|---|
| VT01 | GENERAL ELEVATOR INFORMATION | 07.12.02 | 08.16.02 "c" |
| VT02 | PIT, HOISTWAY, MACH. RM. PLANS AND HSTWY SEC. ELEV. 1 AND 2 | 07.12.02 | 08.16.02 "c" |
| VT03 | PIT, HOISTWAY, MACH. RM. PLANS AND HSTWY SEC ELEV. 3 | 07.12.02 | 08.16.02 "c" |
| VT04 | PIT, HOISTWAY, MACH. RM. PLANS AND HSTWY. SEC. ELEV. 4 | 07.12.02 | 08.16.02 "c" |

## FOOD SERVICE

| | | | |
|---|---|---|---|
| FS-1 | FOOD SERVICE GRND. FLR. EQUIPMENT PLAN "**" | 07.15.02 | 07.15.02 |
| FS-2.1 | FOOD SERVICE EQUIPMENT SCHEDULE "**" | 07.15.02 | 07.15.02 |
| FS-2 | FOOD SERVICE IST FLR. EQUIPMENT PLAN "**" | 07.15.02 | 07.15.02 |
| FS-2.2 | FOOD SERVICE EQUIPMENT SCHEDULE "**" | 07.15.02 | DELETED |
| FS-3 | FOOD SERVICE 1ST FLOOR EQUIPMENT PLAN "**" | 06.14.02 | DELETED |
| FS-SC-1 | FOOD SERVICE GRND. FLR. SPECIAL CONDITIONS PLAN "**" | 07.15.02 | 07.15.02 |
| FS-SC-2 | FOOD SERVICE IST FLR. SPECIAL CONDITIONS PLAN "**" | 07.15.02 | 07.15.02 |
| FS-SC3 | FOOD SERVICE 1ST FLOOR SPECIAL CONDITIONS "**" | 06.14.02 | DELETED |
| FS-M1 | FOOD SERVICE MECHANICAL HOOD PLAN "**" | 07.15.02 | 07.15.02 |
| FS-M2 | FOOD SERVICE MECHANICAL HOOD PLAN "**" | 07.15.02 | 07.15.02 |
| FS-P1 | FOOD SERVICE GRND. FLR. PLUMBING ROUGH-IN PLAN "**" | 07.15.02 | 07.15.02 |
| FS-P2 | FOOD SERVICE IST FLR. PLUMBING ROUGH-IN PLAN "**" | 07.15.02 | 07.15.02 |
| FS-P2.1 | FOOD SERVICE PLUMBING ROUGH-IN SCHEDULE "**" | 07.15.02 | 07.15.02 |
| FS-P3 | FOOD SERVICE 1ST FLOOR PLUMBING ROUGH-IN PLAN "**" | 06.14.02 | DELETED |
| FS-E1 | FOOD SERVICE GRND. FLR. ELECTRICAL ROUGH-IN PLAN "**" | 07.15.02 | 07.15.02 |
| FS-E2 | FOOD SERVICE IST FLR. ELECTRICAL ROUGH-IN PLAN "**" | 07.15.02 | 07.15.02 |
| FS-E2.1 | FOOD SERVICE ELECTRICAL ROUGH-IN SCHEDULE "**" | 07.15.02 | 07.15.02 |
| FS-E2.2 | FOOD SERVICE ELECTRICAL ROUGH-IN SCHEDULE "**" | 07.15.02 | DELETED |
| FS-E3 | FOOD SERVICE 1ST FLOOR ELECTRICAL ROUGH-IN PLAN "**" | 06.14.02 | DELETED |
| FS-FAB.1 | FOOD SERVICE CUSTOM FABRICATION DETAILS | 00.00.00 | 07.15.02 |
| FS-FAB.2 | FOOD SERVICE CUSTOM FABRICATION DETAILS | 00.00.00 | 07.15.02 |
| FS-SR.1 | FOOD SERVICE "STERO" MECHANICAL PLAN "**" | 07.15.02 | 07.15.02 |
| FS-PS1 | FOOD SERVICE POWER SOAK DETAILS "**" | 07.15.02 | |
| FS-BD.1 | FOOD SERVICE BAR DIE WALL DETAILS | 00.00.00 | 07.15.02 |

## STRUCTURAL

| | | | |
|---|---|---|---|
| SL1 | GENERAL NOTES "**" | 07.08.02 | 08.16.02 |
| | | | |
| S2.1 | FOUNDATION PLAN "**" | 04.04.02 | 08.16.02 |
| S2.2 | BASEMENT FRAMING PLAN "**" | 07.08.02 | 09.02.02 |
| S2.3 | MEZZANINE FLOOR FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.4 | GROUND FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.4A | GRND FLR & BSMT CAISSON REINFORCING FRAMING PLAN | 00.00.00 | 08.16.02 |
| S2.5 | FIRST FLOOR FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.6 | 2ND FLOOR FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.7 | 3RD THRU 7TH FLOOR FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.8 | 8TH FLOOR/EXISTING ROOF FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.9 | 9TH FLOOR FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.10 | ROOF/PENTHOUSE FRAMING PLAN "**" | 07.08.02 | 08.16.02 |
| S2.11 | PENTHOUSE ROOF FRAMING PLAN "**" | 07.08.02 | 08.16.02 |

WFI0388

# LIST OF DRAWINGS

### STRUCTURAL CONTINUED

| | | | |
|---|---|---|---|
| S3.1 | COLUMN SCHEDULE & BASE PLATE DETAILS "*" | 07.08.02 | 08.16.02 |
| S3.2 | MOMENT FRAME ELEVATIONS I "*" | 07.08.02 | |
| S3.3 | MOMENT FRAME ELEVATIONS II "*" | 07.08.02 | 08.16.02 |
| S4.1 | TYPICAL CONCRETE DETAILS SHEET I "*" | 07.08.02 | |
| S4.2 | TYPICAL CONCRETE DETAILS SHEET II "*" | 07.08.02 | 08.16.02 |
| S4.3 | TYPICAL CONCRETE DETAILS SHEET III "*" | 07.08.02 | 08.16.02 |
| S4.4 | TYPICAL MASONRY DETAILS SHEET I "*" | 07.08.02 | |
| S4.5 | TYPICAL MASONRY DETAILS SHEET II "*" | 07.08.02 | |
| | | | |
| S5.1 | TYPICAL STEEL DETAIL SHEET I "*" | 07.08.02 | 08.16.02 |
| S5.2 | TYPICAL STEEL DETAIL SHEET II "*" | 07.08.02 | |
| S5.3 | TYPICAL STEEL DETAIL SHEET III "*" | 07.08.02 | 08.16.02 |
| S5.4 | TYPICAL STEEL DETAIL SHEET IV "*" | 07.08.02 | |
| S5.5 | TYPICAL STEEL DETAIL SHEET V "*" | 07.08.02 | 08.16.02 |
| S5.6 | DELETED "*" | | |
| | | | |
| S6.1 | SECTIONS AND DETAIL SHEET I "*" | 07.08.02 | 08.16.02 |
| S6.2 | SECTIONS AND DETAIL SHEET II "*" | 07.08.02 | 08.16.02 |
| S6.3 | SECTIONS AND DETAIL SHEET III "*" | 07.08.02 | 08.16.02 |
| S6.4 | SECTIONS AND DETAIL SHEET IV "*" | 07.08.02 | 08.16.02 |
| S6.5 | SECTIONS AND DETAIL SHEET IV | 00.00.00 | 08.16.02 |
| S6.6 | SECTIONS AND DETAILS SHEET VI | 00.00.00 | 09.02.02 |

### MECHANICAL

| | | | |
|---|---|---|---|
| M-1 | HVAC LEGEND | 07.12.02 | |
| M-2 | HVAC SUB-BASEMENT | 07.12.02 | 08.16.02 |
| M-3 | HVAC MEZZANINE FLOOR | 07.12.02 | 08.16.02 |
| M-4 | HVAC GROUND FLOOR | 07.12.02 | 08.16.02 |
| M-5 | HVAC FIRST FLOOR | 07.12.02 | 08.16.02 |
| M-6 | HVAC, SECOND FLOOR PLAN | 07.12.02 | 08.16.02 |
| M-7 | HVAC TYPICAL FLOOR 3-7 | 07.12.02 | 08.16.02 |
| M-8 | HVAC 8TH FLOOR | 07.12.02 | 08.16.02 |
| M-9 | HVAC 9TH FLOOR PLAN | 07.12.02 | 09.27.02 |
| M-10 | HVAC MECHANICAL PENTHOUSE | 07.12.02 | 09.27.02 |
| M-10.1 | HVAC MECHANICAL ROOF PLAN | 00.00.00 | 09.27.02 |
| M-11 | HVAC CHILLED WATER FLOW DIAGRAM | 07.12.02 | 08.16.02 |
| M-12 | HVAC HOT WATER FLOW DIAGRAM | 07.12.02 | 08.16.02 |
| M-13 | HVAC DETAILS | 07.12.02 | |
| M-14 | HVAC DETAILS | 07.12.02 | |
| M-15 | HVAC DETAILS | 07.12.02 | |
| M-16 | HVAC DETAILS | 07.12.02 | |
| M-17 | VENTILATION DETAILS | 07.12.02 | 08.16.02 |
| M-18 | HVAC SCHEDULES | 07.12.02 | 08.16.02 |

### PLUMBING

| | | | |
|---|---|---|---|
| P-1 | PLUMBING LEGEND & SCHEDULES | 07.12.02 | 08.16.02 |
| P-2 | PLUMBING BASEMENT LEVEL | 07.12.02 | |
| P-3 | PLUMBING MEZZANINE FLOOR | 07.12.02 | |
| P-4 | PLUMBING GROUND FLOOR | 07.12.02 | 08.16.02 |
| P-5 | PLUMBING FIRST FLOOR | 07.12.02 | |
| P-6 | PLUMBING SECOND FLOOR | 07.12.02 | |
| P-7 | PLUMBING, TYPICAL FLOOR PLAN FLOORS 3-7 | 07.12.02 | 08.16.02 |
| P-8 | PLUMBING, 8TH FLOOR | 07.12.02 | 09.27.02 |
| P-9 | PLUMBING, 9TH FLOOR | 07.12.02 | 09.27.02 |
| P-10 | PLUMBING, MECHANICAL PENTHOUSE | 07.12.02 | 09.27.02 |
| P-11 | PLUMBING SANITARY RISER DIAGRAM | 07.12.02 | 08.16.02 |

WFI0389

JURY'S BOSTON – THE HEADQUARTERS HOTEL
BOSTON, M
TAT PROJECT #C020
JUNE 28, 2002 (Revised November 15, 2002

# LIST OF DRAWINGS

### PLUMBING CONTINUED

| | | | |
|---|---|---|---|
| P-12 | PLUMBING WATER RISER DIAGRAM | 07.12.02 | 08.16.02 |
| P-13 | PLUMBING WATER RISER DIAGRAM | 07.12.02 | |
| P-14 | PLUMBING KITCHEN PLAN | 07.12.02 | |
| P-15 | PLUMBING DETAILS | 07.12.02 | 08.16.02 |

### FIRE PROTECTION

| | | | |
|---|---|---|---|
| FP-1 | FIRE PROTECTION LEGEND, DETAILS, & SCHEDULES | 07.12.02 | |
| FP-2 | FIRE PROTECTION BASEMENT FLOOR PLAN | 07.12.02 | |
| FP-3 | FIRE PROTECTION MEZZANINE FLOOR PLAN | 07.12.02 | |
| FP-4 | FIRE PROTECTION GROUND FLOOR PLAN | 07.12.02 | |
| FP-5 | FIRE PROTECTION FIRST FLOOR PLAN | 07.12.02 | |
| FP-6 | FIRE PROTECTION TYPICAL FLOORS 2-5 | 07.12.02 | |
| FP-7 | FIRE PROTECTION TYPICAL FLOORS 6-7 | 07.12.02 | |
| FP-8 | FIRE PROTECTION TYPICAL FLOORS 8-9 | 07.12.02 | |
| FP-9 | FIRE PROTECTION MECHANICAL PENTHOUSE PLAN | 07.12.02 | |
| FP-10 | FIRE PROTECTION RISER DIAGRAM | 07.12.02 | |

### ELECTRICAL

| | | | |
|---|---|---|---|
| E-1 | ELECTRICAL LEGEND & SITE PLAN | 07.12.02 | 08.16.02 |
| E-2 | ELECTRICAL LIGHTING PLAN, BASEMENT FLOOR | 07.12.02 | |
| E-3 | ELECTRICAL POWER PLAN, BASEMENT LEVEL | 07.12.02 | 08.16.02 |
| E-4 | ELECTRICAL LIGHTING PLAN, MEZZANINE FLOOR | 07.12.02 | 08.16.02 |
| E-5 | ELECTRICAL POWER PLAN, MEZZANINE FLOOR | 07.12.02 | 08.16.02 |
| E-6 | ELECTRICAL, LIGHTING PLAN, GROUND FLOOR | 07.12.02 | 08.16.02 |
| E-6A | ELECTRICAL, LIGHTING PLAN, GROUND FLOOR | 00.00.00 | 09.16.02 |
| E-7 | ELECTRICAL, POWER PLAN, GROUND FLOOR | 07.12.02 | 08.16.02 |
| E-8 | ELECTRICAL, LIGHTING PLAN, FIRST FLOOR | 07.12.02 | 08.16.02 |
| E-8A | ELECTRICAL LIGHTING PLAN FIRST FLOOR | 00.00.00 | 09.16.02 |
| E-9 | ELECTRICAL, POWER PLAN, FIRST FLOOR | 07.12.02 | 08.16.02 |
| E-10 | ELECTRICAL LIGHTING PLAN TYPICAL FLOORS 2-7 | 07.12.02 | 08.16.02 |
| E-11 | ELECTRICAL, POWER PLAN TYPICAL FLOORS 2-7 | 07.12.02 | |
| E-12 | ELECTRICAL, LIGHTING PLAN – FLOOR 8 | 07.12.02 | 08.16.02 |
| E-12.1 | ELECTRICAL, LIGHTING PLAN – FLOOR 9 | 00.00.00 | 08.16.02 |
| E-13 | ELECTRICAL POWER PLAN FLOOR 8 | 07.12.02 | 08.16.02 |
| E-13.1 | ELECTRICAL POWER PLAN FLOOR 9 | 00.00.00 | 08.16.02 |
| E-14 | ELECTRICAL LIGHTING PLAN MECHANICAL PENTHOUSE | 07.12.02 | 09.30.02 |
| E-15 | ELECTRICAL POWER PLAN MECHANICAL PENTHOUSE | 07.12.02 | 09.30.02 |
| E-16 | ELECTRICAL POWER RISER DIAGRAM | 07.12.02 | 08.16.02 |
| E-17 | ELECTRICAL FIRE ALARM RISER DIAGRAM | 07.12.02 | 08.16.02 |
| E-18 | ELECTRICAL PANEL SCHEDULES | 07.12.02 | 09.16.02 |
| E-19 | ELECTRICAL PANEL SCHEDULES | 07.12.02 | 09.16.02 |
| E-20 | ELECTRICAL PANEL SCHEDULES | 07.12.02 | 08.16.02 |
| E-21 | ELECTRICAL FIXTURE SCHEDULE'S RISER DIAGRAM | 07.12.02 | 00.00.02 |
| E-22 | ELECTRICAL FIXTURE SCHEDULE | 00.00.00 | 00.00.02 |

Note **a** to List of Drawings: "**\***" Drawings shown with an asterisk have been previously included in either the Demolition Bid Package or the Structural Bid Package and have been included here so that this Project Manual will be complete without the need of referencing previous submissions. All dates shown correspond with the previous bid package dates current through latest Addenda.

Note **b** to List of Drawings: "**\*\***" Drawings shown with a double asterisk have an origination date other than July 12, 2002.

Note **c** to List of Drawings: "c" Vertical Transportation drawings were issued under Addendum 1 without a revision date. The drawings have been reissued solely to clarify the revision date. No changes have been made to drawings since Addendum 1.

P:\C0206\Specifications\Bidset_6-28-02\Addendum 03 - Contract\LOD_10.15.02-Rev 3.doc

WFI0390

## EXHIBIT B

## HEADQUARTERS HOTEL
### Qualifications & Assumptions

### November 15, 2002

## General Items

1) We have assumed the owner will provide testing and inspection.

2) We have included the following allowances:

| | |
|---|---:|
| PTZ Camera installation | $25,000 |
| Landscaping/Hardscape | $178,000 |
| Cleaning & Repointing Exterior Façade | $192,400 |
| Interior Ornamental Stair | $150,000 |
| Misc. Steel for Slab Openings | $30,000 |
| Exterior Canopies | $70,000 |
| Lobby Finish Allowance | $750,000 |
| Waterproofing Basement Slab and Walls | $68,000 |
| Lamping for owner furnished light fixtures | $25,000 |
| Water discharge fees | $25,000 |
| Fireplace appliance and associated duct work | $10,000 |
| Hoisting/dumpsters/cleaning for Owner FF&E | $50,000 |

Allowance budgets above include all labor, materials, taxes, equipment, delivery, unloading, overhead and profit.

3) We have not included any provisions for an Owner and Architect's field offices/equipment.

4) Precondition and vibration monitoring of the surrounding or adjacent structures will be provided by the Owner. Video survey and final as built survey are by general contractor.

5) Removal, replacement and premiums for exposure to or handling of hazardous or contaminated materials requiring controlled disposal is not included other than those items listed in TGG's Environmental Assessment Report date March, 2001. We have not included costs associated with lead paint abatement.

6) We have assumed all work associated with the gas service outside the building, including any relocation, will be provided by the Gas Company.

7) We have not included any Utility Company backcharges.

8) Suffolk Construction is responsible to maintain a clean, safe and secure site during the construction operation. Suffolk has not included costs for an on site security service upon the commencement of Owner's FF&E installation.

1

WFI0391

9) We have included costs associated with providing temporary or short-term parking for 2 cars for 18 months for local residents totaling $12,000.

10) Our estimate assumes that the final specifications will provide for alternative manufacturer's to be considered subject to the Architect's approval.

11) The attached "Value-Engineering" dated November 15, 2002, is considered part of this Exhibit 'B'.

## Sitework

1) Removal and replacement of hazardous soils, any obstructions or uncharted utilities is not included. We have included excavation and removal of urban fill for all work as defined in the contract drawings. Over excavation and removal of additional urban fill, if deemed necessary by the Soils and/or Structural Engineer, is not included.

2) All existing granite curbing along Stanhope, Berkeley and Stewart Streets will be reused.

3) We have not included asphalt paving at Stanhope, Berkeley and Stewart Streets beyond the patching required at utility work.

4) A pile load test is included in our pricing. To include additional load test, if required, will cost $20,000.

5) We have not included performing any traffic signal work or traffic signage. We have included an allowance of $25,000 to provide one traffic surveillance camera (PTZ Camera).

6) The landscape/hardscape allowance includes the following scope: brick pavers, trees, tree grates, exterior (site) lighting, refurbishing/replacement of exterior lighting, pole mounted lighting/light poles, planters, plantings, stamped concrete at plaza, stamped concrete at Stuart Street entry, new concrete sidewalks, removal and resetting of existing flagpole, new flagpole, banner pole and mounting (banner by others), new stone stairs at Berkeley Street, cast iron balustrade at stone rail, stainless steel rails at plaza steps and steel rails at entry steps.

7) Landscaping Isabella Park has been included in our base contract. Should the work not be required by the City of Boston. Suffolk Construction will offer a credit to the Owner of $25,000.

## Concrete

1) We have not included any provisions for the modification of adjacent foundations.

2) We have not included underpinning of existing structures or foundations.

3) We have included the spread footing "alternate" at the new patio retaining walls.

4) We have included use of shotcrete full height at all concrete columns to be reinforced.

2

WFI0392

## Masonry

1) Our pricing assumes that the cornice at the roof level requires no structural or terracotta repair work or modifications.

2) Our pricing includes an allowance of $192,400 to wash down and repoint the exterior façade. This allowance should cover a complete wash down of the existing façade and repointing of approximately 20% of the exterior façade. Pricing to be finalized upon clear delineation of limits of work.

3) We have included disassembling, removal, 16 months of off-site storage, reconditioning, and re-installation of the exterior granite balustrade as part of our base cost. Our pricing assumes that the balustrade system will be salvageable using reasonable precautions and care during disassembly and storage. Suffolk has allowed for 20% of system to be unsalvageable. If quantities exceed this percentage, Suffolk will notify the architect and Owner to review and discuss alternate method/means/materials for this work that may result in additional costs.

## Structural Steel

1) An allowance of $30,000 is included for miscellaneous supports and framing for slab opening reinforcement that is not detailed or shown on structural drawings.

## Miscellaneous Metals

1) We have included an allowance of $150,000 for the ornamental lobby stair. This allowance includes stair structure, concrete, risers, railing system, landings, waterproofing, painted finish, and opaque glass stair treads.

2) We have included an alternate standard rail design at the ships ladder to meet applicable codes.

3) All exterior steel has been included as galvanized – no color galvanizing has been included.

4) We have not included overhead bracing for the toilet partitions. We assume toilet partitions are floor and wall mounted.

## Rough/Finish Carpentry

1) We have included Dens Glass sheathing as backup for the metal panel cornices.

2) Guest room trim is paint grade.

3) Corridor baseboard, chair rail and baseboard are included as paint grade.

4) Built-out wall casings, cornice and applied wall panels are included as paint grade at unit entrance doors.

5) We have included an allowance of $750,000 for finish upgrades at the common areas on the

3

ground and first floors. Reference attached Ground and First Floor Finishes qualification worksheet dated November 15, 2002, for clarification to the scope of work.

## Waterproofing/Roofing

1) We have included self-adhering membrane at the perimeter of all windows, exterior doors, relieving angles and lintels. Air barrier is included as 15 lb. felt paper behind all brick and metal wall panels. Membrane will be included behind wall panels at the 8th and 9th floor outside corners only.

2) We have included an allowance for preparation and waterproofing the basement slabs and walls of $68,000. Suffolk will review alternate waterproofing means and methods to reduce material/labor costs with the anticipation of saving a minimum of $8,000.

3) We have included lead coated copper at the lintels and relieving angles at new construction.

4) We have included standard Kynar color at all roof related flashings. Final color selection to be approved by the Architect.

5) Metal roofing at duct enclosure at 2nd floor roof and other roof related metals (copings, flashings) to be .032 aluminum.

6) We have included mechanically fastening the second layer of roof insulation to the existing metal deck in lieu of asphalt adhesion.

7) Roof curbs for rooftop equipment will be provided in accordance with Division 15.

## Spray-on Fireproofing

1) We have included low density fireproofing at all concealed areas, and medium density at all areas to be left exposed.

2) We have included spray-fireproofing the structural steel columns to achieve fireproofing in lieu of 2-hr. drywall enclosures.

## Doors & Windows and Metal Panels

1) Guest room entry doors to be factory painted solid core MDF " Millenium" door as indicated on Concept 4 Sketch ID SK0001 issued with Addenda 1.

2) We have assumed that the existing window frames will be left in-place and have assumed that the new windows will be designed to be installed using the existing frames. Contractor and Architect to coordinate profile details.

3) All window framing to have a factory applied baked enamel finish in standard color aluminum with a 2-year warrantee. Final color selection to be approved by the Architect.

4

WFI0394

4) We have included metal panels with some adjustment to the layout and joint spacing.

5) We have not included on site water or air infiltration testing of windows. As part of the submittal process, Suffolk will provide factory performed test information and results.

6) Large windows at 9th and 10th floor are included as fixed over hopper windows. At 8th floor, four units will not have operable windows (windows are included as fixed). Typical windows are included as aluminum, double-hung. All glazing to have Pyrolitac Low-E glass with an STC rating of 35.

7) Stuart Street entrance and vestibule doors are included as aluminum.

8) The Berkeley Street entry doors and vestibule have been included as full lite aluminum with painted custom color.

9) We have included mirror glass at employee and common area bathrooms only. Guest room bath mirrors to be furnished and installed by others as part of the FF&E Package. Mirrors in guest rooms to be framed in the field with single piece of M5 molding to be furnished and installed by GC.

10) Glass openings on the basement and first floor level along Berkeley Street are included per contract drawings and specifications. Windows on the basement and first floor along Stuart Street are carried as shown on the drawings except these will be fixed.

11) We have included all hardware to be manufactured by Yale. Hardware in the common areas will be carried as Grade 1 standard duty.

12) Door closures, except for approximately 8 openings at high finish areas, are included with painted aluminum finish.

13) We have not included panic hardware at the electric closets.

14) Guestroom bedroom, bathroom, and closet doors are included as Grade 2 cylindrical type locksets. Guest room entry doors to have fully mortised TESA locksets.

## Drywall

1) We have included 7/8" furring and gypboard at ceilings currently indicated to receive plaster skim coat. All ceilings to have a smooth finish.

2) 4ml poly vapor barrier is included in lieu of foil-backed sheetrock along the exterior walls.

## Finishes

1) We have included a paint grade windowsill and skirt with drywall returns at windows jambs and headers.

WFI0395

2)   We have included an allowance of $3.50/sft. (material only) for marble at the guestroom baths and walls. Installation of marble is included as part of our base contract value. We have included a 4" base tile only at top of tub in bathrooms that include a stall shower. Floor and wall tile to be installed perpendicular to walls and floors.

3)   We have assumed that the vinyl wall covering and carpet materials will be provided by the Owner as part of the FF&E package. We have included labor costs in our proposal to install both the vinyl wall covering and carpet.

4)   We have not included rubber stair treads at the concrete stairs.

5)   We have not included pre-priming walls that receive vinyl wall covering. Vinyl wall covering will be installed using strippable adhesive.

6)   We have included VCT and vinyl base at Employee Dining room and Egress corridor. No poured epoxy flooring is included.

7)   We have included painted concrete at the laundry room floors.

8)   We have not included the wood ceiling in the business center.

9)   We have included standard char rail, one-piece crown moldings and 4"wood base at the Conference rooms.

10)  We have included a stepped soffit in the conference rooms.

## Specialties and Equipment

1)   We have assumed that the Commercial Laundry equipment will be provided by owner.

2)   We have assumed that the Commercial Food Service Equipment and Kitchen Exhaust Hood will be furnished and installed by the Owner.

3)   We have assumed that all window treatments will be provided as part of the Owner's FF&E Package.

4)   We have included a $50,000 allowance for all hoisting, cleaning and dumpsters associated with the Owner's FF&E packages.

5)   Interior decorative signage is assumed to be provided as part of the Owner's FF&E package. We have included all interior signage required by code (i.e. exit, electric room, fire command center, etc.)

## Elevators

1)   We have not included the specified $15,000 cab upgrade allowance for the freight elevator.

2)   For Elevator #3, we have included all hoist way frames and doors to be baked enamel from

6

WFI0396

stainless steel, sills to be aluminum, and frames to be bolted (in lieu of welded).

3)  We have not included the elevator management system.

4)  We have not included the fascia on elevator #3 at the upper floors.

5)  We have eliminated the second car station on elevator #3

6)  We have included baked enamel frames and doors in lieu of satin bronze, and aluminum sill in lieu of nickel at guest room levels only.

## Fire Protection

1)  We have not included any fire protection above any suspended ceilings.

2)  We have included a wet system throughout the building, a dry system at the loading dock area, and a chemical system at the IT Room.

3)  We have included upright heads at all areas without ceilings and concealed heads at all finished areas.

4)  We have included the use of CPVC sprinkler piping as allowable by code.

## Plumbing

1)  We have included all costs for dewatering and pumping during the course of construction. We have included an allowance of $25,000 for water discharge fees that may be required by the City of Boston or MWRA.

2)  We have included using the TOTO GMAX Drake CST7445 or TOTO MS854114 in lieu of the specified Kohler Toilet.

## HVAC

1)  The automatic temperature controls (non-DDC for fan coil units – standard unit mounted t'stats) all other HVAC equipment will be controlled via DDC.

2)  We have included an alternate Building Automation System. To include the building automation system originally specified in section 17800(dated July 12, 2002), the add would be $240,000.

3)  We have included $10,500 for costs associated with the existing Trigen Steam Line removal.

4)  We have eliminated the use of return air duct at all horizontal fan coil units. We will utilize ceiling plenum as a return). All wiring above the ceiling is carried as plenum rated. To include ducted returns as originally designed, the add would be $20,000.

WFI0397

5) We have carried electric cabinet unit heaters in lieu of hot water type. To include hot water type unit heaters as originally designed, the add would be $12,000.

6) We have carried an alternate manufacturer for the hot water boilers as floor space allows. To include manufacturer as originally specified, the add would be $8,000.

7) Reduce horizontal toilet exhaust duct and use wall grilles where acceptable to Engineer. Utilize sub-ducts at shaft penetrations eliminating fire dampers where accepted to Engineer. To revert back to original design, the add would be $8,000.

8) Eliminate (7) fan coil units on first floor and combine zones. To add back units as originally designed, the add would be $ 24,000.

9) We have not included INN-Com (digital) thermostats at fan coil units. Upgrade pricing to follow.

10) Vitaulic piping will be used for all piping 2.5" diameter or larger. Copper piping will be used for all piping less than 2.5" diameter.

## Electrical

1) We have included sleeving of slabs in the electric/telephone rooms on each floor for the telephone system/equipment to be provided by others.

2) We have assumed that local utility will provide all work associated with the primary service distribution and transformer.

3) We have excluded all wiring and equipment for audio/visual and security systems.

4) We have included a temporary power service using a pad-mounted transformer supplied by NSTAR. We have included all costs from the transformer to the building (including the cost of the temporary transformer). We have not included any costs associated with providing temporary electric (primary) service to the transformer.

5) We have assumed that the light fixtures as shown on the Electrical drawings govern over those shown on the architectural drawings. Our pricing reflects this assumption. We have also included a $25,000 allowance to lamp owner furnished light fixtures.

6) We have included the installation of the conference room projector screens. Screens to be supplied by the Owner as part of FF&E.

7) We have assumed that the hotel room panel boards and contactors will be deleted. All homeruns to be pulled to centrally located electric room and service panel. We have included two circuits per unit. To revert back to the original design, the add would be $98,000.

8) Arc fault circuit breakers have not been included and do not appear to be required. However, should the engineer require these type of circuits, add $6,000.

WFI0398

9)    We have assumed that the electric risers will be changed from 480v to 208v. To revert back to original design, the add would be $48,000.

10)   We have included furnishing and installing (2) underground transformer vaults for 208v service to be built in accordance with NSTAR specifications.

11)   We have included one outlet per unit for a trouser press. The trouser press circuit will not be a dedicated circuit. We anticipate (4) trouser press outlets to share one circuit.

9

WFI0399

# Headquarter Hotel
## Back Bay, Boston

November 15, 2002

## Interior Finish Estimate for Ground and First Floors
The finish items listed below are based on the preliminary schematic plans dated July 12, 2002

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| G001 | Vestibule | | |
| | Wall covering | Venetian plaster | w/Allow |
| | Flooring material | Stone ? | w/Allow |
| | | wood base | w/Allow |
| | | | |
| G002 | Elevator Lobby | | |
| | Wall covering | Venetian plaster | w/Allow |
| | Flooring material | Stone 8 | w/Allow |
| | Fin Carp | Architrave | w/Allow |
| | | Labor | w/Allow |
| G003 | Elec. Closet | | |
| | | | |
| G005 | Ground Fl. Bar | | |
| | Wall covering | Venetian plaster | w/Allow |
| | Flooring material | Carpet | w/Allow |
| | | ST-8 | w/Allow |
| | | CT-1 | w/Allow |
| | | | |
| | Finish carpentry | Materials | w/Allow |
| | | Labor : | |
| | | Crown Molding | w/Allow |
| | | Casing | w/Allow |
| | | Wood veneer | w/Allow |
| | | Armrest | w/Allow |
| | | Round columns clad with wood | w/Allow |
| | | 3/4 round columns, clad with wood collar | w/Allow |
| | | 1/2 round colimn, clad with wood collar | w/Allow |
| | | Crown Molding at bar | w/Allow |
| | | Bar & Back Bar (ID. 1.7) | w/Allow |
| | | Paddle shaped drink rail at base of stair | w/Allow |
| | | Curved drink rail at terrace entry | w/Allow |
| | | Drinkrail with dog leg angle at base of stair | w/Allow |
| | | Ledge behind banquette | w/Allow |
| | | Illumintaed ledge at base of stairway | w/Allow |
| | | Window and door casing | w/Allow |
| | | base molding | w/Allow |
| | | Pilasters at perimeter pub walls | w/Allow |
| | Miscellaneous | Knoll textile acrylic panels | w/FFE |
| | | Granite top | w/Allow |
| | | Cast Stone | w/Allow |
| | | cast Concrete Fireplace | w/Allow |
| | | Split face limestone (ground and 1st included) | w/Allow |

WFI0400

| Rm # | Room Title | Description | |
|---|---|---|---|
| | | Portuguese Limestone @ fireplace | w/Allow |
| | | Stainless steel door faces | w/Allow |
| | | 1/2" Tempered glass Shelf's | w/Allow |
| | | Cast glass surface (glass wall) | w/Allow |
| G006 | Main Elev. Lobby | | |
| | Wall covering | Venetian plaster | w/Allow |
| | Flooring material | Carpet | w/Allow |
| | | ST-4 | w/Allow |
| | Finish carpentry | Materials | none |
| G007 | Brassiere | | |
| | Wall covering | Venetian plaster | w/Allow |
| | Flooring material | Carpet | w/Allow |
| | | ST-8 | w/Allow |
| | ceiling | New Gyp Board Ceiling | w/Base |
| | | Note: 4 soffits | w/Base |
| | | 6 single sloped ceilings | w/Allow |
| | Finish carpentry | Materials | w/Allow |
| | | Labor : | |
| | | Buffet with wood veneer soffit and trim | w/Allow |
| | | wood wainscot at perimeter | w/Allow |
| | | 3" Chairrail at wainscot | w/Allow |
| | | 8" Base at wainscot | w/Allow |
| | | Pilasters w/millwork finish to inc. 8" base | w/Allow |
| | | Corner pilasters with 8" base | w/Allow |
| | | Ledge behind banquette | w/Allow |
| | | Ledge adjacent to corner banquette | w/Allow |
| | | Cased opening to service station | w/Allow |
| | | Millwork dividers at booths, banquettes | w/Allow |
| | | 6" casing at terrace windows | w/Allow |
| | | Wine cabinets | w/FFE |
| | | Dividing millwork | w/Allow |
| | | Doors at tarrace to be cased | w/Allow |
| | | Service station | w/Allow |
| | | 8" high wood base at private dining | w/Allow |
| | Miscellaneous | Glass tiled column | w/Allow |
| | | Back painted Glass wall panels | w/Allow |
| | | Stone Tiles | w/Allow |
| | | Stone Top (2) | w/Allow |
| | | Chain Mail | w/Allow |
| | | Beede Curtain | w/Allow |
| | | Upholstered wall panels | WFFE |
| | | sheer drapery | WFFE |
| | Light fixtures | DP14 | In Base |
| | | TAV3 | In Base |
| | | RAV1 | In Base |
| | | SLV1 | In Base |
| | | 4 projectors | In Base |
| | | DP15 | In Base |
| | | SLF1 | In Base |

WFI0401

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|

**G008    Main Kitchen**

| | | | |
|---|---|---|---|
| | Flooring material | Epoxy Floor material | In Base as Quarry |
| | | Epoxy base | In Base |
| | ceiling | | In Base |
| NOTE | | no finish indicated - I | |
| | Finish carpentry | | In Base |
| | Miscellaneous | | In Base |
| | Light fixtures | | In Base |

**G009    S. Elev. Lobby**

| | | | |
|---|---|---|---|
| | Flooring material | VCT | In Base |
| | ceiling | Acoustic | In Base |
| | Light fixtures | | In Base |

**G010    Health club**

| | | | |
|---|---|---|---|
| | Wall Treatment | | |
| | Flooring material | Carpet | In Base |
| | | Premium for hi density cushion sports floor | NIC |
| | ceiling | ACT 2'x 2' | In Base |
| | | New Gyp Board Ceiling | In Base |
| | Finish carpentry | Materials | In Base |
| | | Labor : | |
| | |   4" casing at entry door on both sides | In Base |
| | |   4" casing at windows | w/Allow |
| | Miscellaneous | mirrors | In Base |
| | Light fixtures | Cove light | In Base |
| | | Light Box | In Base |
| | | 4 incandescent down light | In Base |
| | | 1 Fluorescent down light | In Base |

**G011    W Bathroom**

| | | | |
|---|---|---|---|
| | Wall Treatment | VWC labor | in Base |
| | | Venetian Plaster | w/Allow |
| | | Tile - $10.per sf | In Base |
| | | Mosaic | w/Allow |
| | Flooring material | ST-8   ( Premium over tile in base at $10.per sf) | w/Allow |
| | ceiling | New Gyp Board Ceiling | In Base |
| | Finish carpentry | Materials | w/Allow |
| | | Labor : | |
| | |   Wood bathroom partitions (stalls) | w/Allow |
| | |   Wood Veneer | w/Allow |
| | |   Casing at entry door, 4" at both sides | In Base |
| | |   ceiling cove molding | w/Allow |
| | |   wood trim at top, wood splash and apron trim | w/Allow |
| | |   Framed full mirror 8" frame | w/Allow |

WFI0402

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| | Miscellaneous | Stone Counter | In Base |
| | | Framed Floating Mirror | w/Allow |
| | | Chain mail | w/Allow |
| | | Kohler Bateau sink | In Base |
| | | Upholstered fabric wall | w/FFE |
| | | Steel Rod | w/Allow |
| | Light fixtures | Light Cove | In Base |
| | | 5 Fluorescent down light | In Base |
| | | | |
| G012 | M Bathroom | | |
| | Wall Treatment | VWC labor | in Base |
| | | Venetian Plaster | w/Allow |
| | | Tile - $10.per sf | In Base |
| | | Mosaic | w/Allow |
| | Flooring material | ST-8  ( Premium over tile in base at $10.per sf) | w/Allow |
| | ceiling | New Gyp Board Ceiling | In Base |
| | Finish carpentry | Materials | w/Allow |
| | | Labor : | |
| | | Wood bathroom partitions (stalls) | w/Allow |
| | | urinary partitions | w/Allow |
| | | Wood Trim | w/Allow |
| | | Wood Veneer | w/Allow |
| | | Casing at entry door, 4" at both sides | in Base |
| | | ceiling cove molding | w/Allow |
| | | wood trim at top, wood splash and apron trim | w/Allow |
| | | Framed full mirror 8" frame | w/Allow |
| | Miscellaneous | Stone Counter | In Base |
| | | Framed Floating Mirror | w/Allow |
| | | Chain mail | w/Allow |
| | | Kohler Bateau sink | w/Base |
| | | Steel Rod | w/Allow |
| | Light fixtures | Light Cove | w/Base |
| | | Fluorescent down light | w/Base |
| | | | |
| G013 - G019 | Main Office and Office Suite | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | Carpet  Labor | In Base |
| | | Vinyl base | In Base |
| | ceiling | Acoustic | In Base |
| | Finish carpentry | closet shelf and pole | In Base |
| | Light fixtures | | w/Base |

WFI0403

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| G020 | Em.  Dining | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | VCT | In Base |
| | | VCT | In Base |
| | ceiling | Acoustic | In Base |
| | | | |
| G021 | Ser. Corridor | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | VCT | In Base |
| | | Poured Epoxy Floor | w/Allow |
| | | Integral Epoxy base | w/Allow |
| | ceiling | Acoustic | In Base |
| | | | |
| G022 | Loading dock | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | Sealed concrete | In Base |
| | | vinyl base | In Base |
| | ceiling | Gypboard - painted | In Base |
| G023 | Storage | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | Sealed concrete | In Base |
| | | vinyl base | In Base |
| | ceiling | Acoustic | In Base |
| | | | |
| G024 | Beer cooler | | |
| | | | |
| G025 | Egress  Corridor | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | VCT and Base | In Base |
| | | Poured Epoxy Floor | w/Allow |
| | | Integral Epoxy base | w/Allow |
| | ceiling | Acoustic | In Base |
| | | | |
| G026 | Laundry. Room | | |
| | Wall Treatment | Paint walls and floor | In Base |
| | Flooring material | Poured Epoxy Floor | w/Allow |
| | | Integral Epoxy base | w/Allow |
| | ceiling | Acoustic | In Base |
| G027 | Corridor | | |
| | Wall Treatment | Vinyl wallcovering labor | In Base |
| | Flooring material | ST-8 | w/Allow |
| | ceiling | New Gyp Board Ceiling | w/Base |
| | Finish carpentry | Materials | w/Allow |
| | | Labor : | |
| | | Drink Rail  /Shelf at corridor | w/Allow |
| | | wood base | w/Allow |

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|

**101 E. Vestibule**

| | | | |
|---|---|---|---|
| | Wall covering | Existing to remain | In Base |
| | | remove wood trim | In Base |
| | | remove window | In Base |
| | | patch holes to match existing stone | In Base |
| | | fill existing openings & finish with stored | In Base |
| | | stone to match existing | In Base |
| | | remove existing mounting strips | In Base |
| | Flooring material | Existing to remain | In Base |
| | | Clean or Remove and replace stone treads | w/Allow |
| | | Remove, restore & reinstall heating grates | w/Allow |
| | ceiling | Existing to remain - Clean | w/Allow |
| | | Paint | w/Base |
| | Finish carpentry | Existing to remain | none |
| | Miscellaneous | Existing to remain | none |
| | Light fixtures | | |
| | | DP1 | w/Base |

**102 Main Lobby**

| | | | |
|---|---|---|---|
| | Wall covering | Existing to remain/ to be cleaned | In Base |
| | Flooring material | Existing to remain  clean | In Base |
| | | new stone base at apholstered panels | w/Allow |
| | ceiling | Existing to remain | In Base |
| | Finish carpentry | Furnish | w/Allow |
| FD105 | intall | Mirror panels | w/Allow |
| | | Casing at mirror panels | w/Allow |
| | | Casing with wood jambs at apholstered panels | w/Allow |
| | | Casings and jamb trim at entry to lounge | w/Allow |
| | | Casing at wood panel at artwork | w/Allow |
| | | Wood panel at artwork | w/Allow |
| | | Subframing at niches ( labor and materials) | w/Allow |
| | | Casing at panel at niche | w/Allow |
| | | wood panels at niche walls | w/Allow |
| | | Wood panel at niches | w/Allow |
| | | 8" base moldings | w/Allow |
| | | 5" casings at doors and windows | w/lounge |
| | | millwork pillasters with flared top | w/Allow |
| | Miscellaneous | Black etched tempered glass at top of niche | w/Allow |
| | | apholstered wall panels | w/Allow |
| | Light fixtures | | |
| | | RAV4 | In Base |
| | | RAL2 | In Base |
| | | SLF1 | In Base |
| | | DP2 | In Base |
| | | SLV1 | In Base |
| | | GAV1 | In Base |
| | | DT1 | In Base |
| | | SLF1 | In Base |

WFI0405

| Rm # | Room Title | Description | |
|------|-----------|-------------|--|

**103 Reception**

| | | | |
|--|--|--|--|
| | Wall treatment | not indicated | w/Allow |
| | Flooring material | ST-5 | w/Allow |
| | | ST-2 | w/Allow |
| | | MT 3 | w/Allow |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | Reception desk | w/Room 108 |
| | | wood panels at niche | w/Room 102 |
| | Miscellaneous | | |
| | Light fixtures | | |
| | | RAV5 | In Base |
| | | SLV1 | In Base |
| | | SLL1 | In Base |

**104 Concierge**

| | | | |
|--|--|--|--|
| | Wall Treatment | not indicated (paint) | w/Allow |
| | Flooring material | Carpet | w/Allow |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | Casings | w/Allow |

**105 Front Desk**

| | | | |
|--|--|--|--|
| | Wall Treatment | not clear | w/Allow |
| | Flooring material | Carpet | w/Allow |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish Carpentry | Materials | w/Allow |
| | Install | Wood veneer  (pair) doors | w/Allow |
| FD 101 | | Registration Counter framing | w/Allow |
| FD 101 | | Registration counter equipment modules | w/Allow |
| FD 102 | | Registration back wall | w/Allow |
| | | Wood doors - 1 acting, 1 false | w/Allow |
| | | Inset existing repousse panel into doors | w/Allow |
| | | Wood shelf with nosing at ADA counter | w/Allow |
| | | Wood shelf with nosing at base of back wall | w/Allow |
| | | Wood Base | w/Allow |
| | | Wood cove molding  - 10" | w/Allow |
| | | Wood cove molding  - 8" | w/Allow |
| | Miscellaneous | | |
| FD 101 | | Limestone top, with chiseled edge | w/Allow |
| FD 101 | | Glass insert on wood top | w/Allow |
| | | Chisseled Stone at back wall | w/Allow |
| FD 101 | | Patte de terre Art work | w/ FF and E |
| | Light fixtures | | |
| | | Light box behind wood wall | In Base |
| | | RAV2 | In Base |

WFI0406

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| 106 | Hotel lounge | | |
| | Wall covering | not indicated | |
| | Flooring material | | |
| | | Carpet inset | w/Allow |
| | | ST-2 12 x 12 | w/Allow |
| | | ST-2 6 x 12 | w/Allow |
| | | ST-2 16 x 12 | w/Allow |
| | ceiling | New Gyp Board ceiling | In Base |
| | | Barrel vault & sloped ceiling | In Base |
| | Finish carpentry | none indicated | w/Allow |
| | | Casings at windows | w/Allow |
| | Finish carpentry | door casing, 4" (pair) | w/Allow |
| | Light fixtures | | In Base |
| 107 | Back Office | | |
| | Wall treatment | Paint | In Base |
| | Flooring material | Carpet | In Base |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | door casing, 4" - L and M | w/Allow |
| 108 | Buss. Center | | |
| | Wall Treatment | Upholstered Wall Panels | w/Allow |
| | Flooring material | Carpet labor | w/Base |
| | ceiling | Wood Paneling | w/Allow |
| | | Small wood slat ceiling barrel vaults | deleted |
| | | Large wood slat barrel vault ceiling | deleted |
| | | New gyp board ceiling (soffit) | In Base |
| | Finish carpentry | Wood Paneling | w/Allow |
| | | Desk | w/Allow |
| | | Library shelving | w/Allow |
| | | Bowfront base cabinet at buss. Ctr. | w/Allow |
| | | Wood Work counters at buss. Ctr | w/Allow |
| | | Wood wall panels | w/Allow |
| | | Crown moldings 8" | w/Allow |
| | Miscellaneous | Mirror | w/Allow |
| | | plaster | In Base |
| | Light fixtures | RAV2 | In Base |
| | | DW1 | In Base |
| 110 | Conf. Room A | | |
| | Wall covering | WC labor | In Base |
| | Flooring material | Carpet Labor | In Base |
| | ceiling | Acoustical tiles | In Base |
| | | New Gyp Board ceiling | In Base |
| | Finish carpentry | | |
| | | Wood base 4" | In Base |
| | | Crown molding - one piece | In Base |
| | | Wardrobe and coffee bar | w/FFE |
| | | Casing at door 4" | In Base |

WFI0407

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| | | Casing at doors 4" (pair doors) | In Base |
| | | Casing at windows 3" | w/Allow |
| | Miscellaneous | Drapery pocket | In Base |
| | Light fixtures | RFF2 ,RFF1, and DP6 | In Base |
| 109,111 119 | Conference room corridors | 109, 111, 114,115,118,119,120 | |
| | Wall covering | WC labor | In Base |
| | Flooring material | Carpet Labor | In Base |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | Crown molding 3" | In Base |
| | | Base molding 5" | In Base |
| | | Cove molding at ceiling vaults 7" | w/Allow |
| | Miscellaneous | | |
| | Light fixtures | RFF1 | In Base |
| | | DP7 | In Base |
| 112 | Closet | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | VCT | In Base |
| | | vinyl base | In Base |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | | none |
| 113 | Closet | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | VCT | In Base |
| | | vinyl base | In Base |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | | none |
| 115 | Conf. Storage | | |
| | Wall Treatment | Paint | In Base |
| | Flooring material | sealed concrete | In Base |
| | | VCT | In Base |
| | | vinyl base | In Base |
| | ceiling | Acoustical tiles | In Base |
| | Finish carpentry | | none |

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| 117 | Conf. Room B | | |

|  | Wall covering | WC | In Base |
|--|---------------|------|---------|
|  | Flooring material | Carpet | In Base |
|  | ceiling | Acoustical tiles | In Base |
|  |  | New Gyp Board ceiling | In Base |
|  | Finish carpentry | Materials | In Base |
|  |  | Premium for special charail and crownmolding | In Base |
|  |  | Adjustment | In Base |
|  |  | Labor : | In Base |
|  |  | Wood chairail 5" | In Base |
|  |  | Wood base 4" | In Base |
|  |  | Crown molding  - one piece | In Base |
|  |  | Wardrobe | w/FFE |
|  |  | Stone Counter | w/Allow |
|  |  | Buffet counter | w/FFE |
|  |  | Coffee counter | w/FFE |
|  |  | Stained window sills | w/Allow |
|  |  | Casing at doors 4" (pair doors) | In Base |
|  |  | Casing at windows 3" | |
|  | Miscellaneous | Drapery pocket | w/Allow |
|  |  |  | w/Allow |
|  | Light fixtures | RFF2 | In Base |
|  |  | RFF1 | In Base |
|  |  | SLF3 | In Base |

| 121 | Men's room | | |
|-----|-----------|------|---------|
|  | Wall covering | VWC  Labor | In Base |
|  |  | Tile (back wall of stalls at $10.per/sf) | In Base |
|  |  | Venetian Plaster | w/Allow |
|  | Flooring material | ST-8 ( premium over tile at $10/per/sf) | w/Allow |
|  | ceiling | New Gyp Board ceiling | In Base |
|  | Finish carpentry | Materials | w/Allow |
|  |  | Labor : | |
|  |  | Wood partitions | w/Allow |
|  |  | Wood panels | w/Allow |
|  |  | Crown molding | w/Allow |
|  |  | ceiling cove molding | w/Allow |
|  |  | wood trim at top, wood splash and apron trim | w/Allow |
|  |  | Framed full mirror 8" frame | w/Allow |
|  |  | casings at doors | In Base |
|  | Miscellaneous |  | |
|  |  | Chain mail | w/Allow |
|  |  | Kholer "Bateau" sink | In Base |
|  |  | Mosaic | w/Allow |
|  |  | Framed floating fixed mirror | w/Allow |
|  |  | Stone top | In Base |
|  |  | Steel rod | w/Allow |
|  |  | wall mirror over sinks | In Base |
|  | Light fixtures | RAV2 | In Base |

WFI0409

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| | | DP11 | In Base |
| | | SLF3 | In Base |
| 122 | Women's room | | |
| | Wall covering | VWC  Labor | In Base |
| | | Tile (back wall of stalls at $10.per/sf) | In Base |
| | | Venetian Plaster | w/Allow |
| | | Wood panels | w/Allow |
| | | Fabric wall  ? | w/Allow |
| | Flooring material | ST-8 ( premium over tile at $10/per/sf) | w/Allow |
| | | stone  base  (premium over $10/per/sf for tile) | w/Allow |
| | ceiling | New Gyp Board ceiling | In Base |
| | | 1 barrel vault | w/Allow |
| | Finish carpentry | Materials | w/Allow |
| | | Labor : | |
| | | Wood partitions | w/Allow |
| | | Crown molding | w/Allow |
| | | ceiling cove molding | w/Allow |
| | | wood trim at top, wood splash and apron trim | w/Allow |
| | | 8" frame at mirror | w/Allow |
| | | casings at doors | In Base |
| | Miscellaneous | | w/Allow |
| | | Chain mail | w/Allow |
| | | Kholer "Bateau" sink | In Base |
| | | Mosaic | w/Allow |
| | | wall mirror over sinks | In Base |
| | | Stone top | In Base |
| | | Steel rod | w/Allow |
| | Light fixtures | RAV2 | In Base |
| | | DP12 | In Base |
| | | SLF3 | In Base |
| 123 | Gallery | | |
| | Wall treatment | paint | In Base |
| | Flooring material | Carpet | In Base |
| | | ST-2 16" x 12" | w/Allow |
| | | ST-5 | w/Allow |
| | ceiling | New Gyp Board ceiling | In Base |
| | Finish carpentry | Materials | w/Allow |
| | | Labor  - Crown Molding | w/Allow |
| | Light fixtures | RAV2 | In Base |
| | | RFF1 | In Base |
| | | DP7 | In Base |
| 124 | Conf. Room E | | |
| | Wall treatment | WC | In Base |
| | Flooring material | Carpet | In Base |
| | ceiling | Acoustical tiles | In Base |
| | | New Gyp Board ceiling | In Base |
| | Finish carpentry | Materials | In Base |

WFI0410

| Rm # | Room Title | Description | |
|------|-----------|-------------|--|
| | | Allow for Special crown and Chairrail | NIC |
| | | Labor : | In Base |
| | | Wood chairail 5" | In Base |
| | | Wood base 4" | In Base |
| | | Crown molding  - one piece | In Base |
| | | Wardrobe | w/FFE |
| | | Coffee counter | w/FFE |
| | | Casing at doors 4" | In Base |
| | | Casing and sills at windows 3" | w/Allow |
| | Miscellaneous | Drapery pocket | |
| | Light fixtures | | In Base |
| | | | In Base |

**125 Conf. Room D**

| | | | |
|------|-----------|-------------|--|
| | Wall covering | WC | |
| | Flooring material | Carpet | In Base |
| | ceiling | Acoustical tiles | In Base |
| | | New Gyp Board ceiling | In Base |
| | Finish carpentry | Materials | In Base |
| | | Wood chairail 5" | In Base |
| | | Wood base 4" | In Base |
| | | Crown molding  - one piece | In Base |
| | | Wardrobe | In Base |
| | | Coffee counter | w/FFE |
| | | Casing at doors 4" | w/FFE |
| | | Casing and sills at windows 3" | In Base |
| | Miscellaneous | Drapery pocket | w/Allow |
| | Light fixtures | | In Base |
| | | | In Base |

**126 Conf.  Room C**

| | | | |
|------|-----------|-------------|--|
| | Wall covering | WC | |
| | Flooring material | Carpet | In Base |
| | ceiling | Acoustical tiles | In Base |
| | | New Gyp Board ceiling | In Base |
| | Finish carpentry | Materials | In Base |
| | | Premium for special chair rail and crown | In Base |
| | | Wood chairail 5" | NIC |
| | | Wood base 4" | In Base |
| | | Crown molding  - one piece | In Base |
| | | Wardrobe | In Base |
| | | Coffee counter | w/FFE |
| | | Casing at doors 4" (pair) | W/FFE |
| | | Casing  and sills at windows 3" | w/FFE |
| | Miscellaneous | Drapery pocket | w/Allow |
| | Light fixtures | | In Base |
| | | | In Base |

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|

**127 Service. elev. Lobby**

| | | |
|---|---|---|
| Wall covering | | |
| Flooring material | VCT | In Base |
| | ST-2 12" x 16" | w/Allow |
| | Base | w/Allow |
| ceiling | New Gyp Board ceiling | In Base |
| Finish carpentry | | none |
| Miscellaneous | | none |
| Light fixtures | | In Base |

**128 Elevator Lobby**

| | | |
|---|---|---|
| Wall Treatment | not indicated | |
| Flooring material | MT-3 | w/Allow |
| | ST-5 | w/Allow |
| | ST-2 | w/Allow |
| | base | w/Allow |
| ceiling | New Gyp Board ceiling | In Base |
| Finish carpentry | Crown molding | w/Allow |
| | Architrave tat elevator door | w/Allow |
| | Architrave at door to lobby | w/Allow |
| Miscellaneous | | w/Allow |
| Light fixtures | | In Base |

**129 Stair Lobby**

| | | |
|---|---|---|
| Wall Treatment | not indicated | |
| Flooring material | ST-2 12" x 16" | w/Allow |
| | base | w/Allow |
| ceiling | New Gyp Board ceiling | w/Allow |
| Finish carpentry | | In Base |
| Miscellaneous | Glass Treads | w/Allow |
| | Copper tube Handrail | w/Stair Allow |
| | Submerged proof lighting | w/Stair Allow |
| Light fixtures | RAV2 | w/Stair Allow |
| | RAV3 | In Base |
| | | In Base |

**130 Upper Bar**

| | | |
|---|---|---|
| Wall covering | Mural Finish | |
| Flooring material | Carpet insert | w/Allow |
| | ST-2 | w/Allow |
| | VCT | w/Allow |
| ceiling | New Gyp Board ceiling FLAT | w/Allow |
| | New Gyp Board ceiling SLOPED | In Base |
| Finish carpentry | Bar and back bar | In Base |
| | Materials | w/Allow |
| | Wood Veneer | w/Allow |
| | Pilasters with flared cap w/inset | w/Allow |
| | Pilasters with flared cap without inset | w/Allow |
| | | w/Allow |

November 15, 2002

WFI0412

| Rm # | Room Title | Description | |
|------|-----------|-------------|---|
| | | illuminated glass capital | w/Allow |
| | | POS station at dumbwaiter | w/Allow |
| | | Drapery pocket | In Base |
| | | Service station with hand sink | w/Allow |
| | | Guard rail at stairway | w/Stair Allow |
| | | Base molding 8" high | w/Allow |
| | | Window and door casing | w/Allow |
| | | wood venner column wraps | w/Allow |
| | | flared wood column top | w/Allow |
| | | wood base at column wraps | w/Allow |
| | | Wood casing at vestibule entry from Stuart St | w/Allow |
| | Miscellaneous | Backlit glass Panels behind bar | w/Allow |
| | | 36 Glass Jewels | WFFE |
| | | painted mural at bar | w/Allow |
| | | Art glass sphere | w/FFE |
| | | 1" glass shelves | w/Allow |
| | | cast glass wall treatment | w/FFE |
| | | Granite stone bar top | w/Allow |
| | | Split face limestone walls | w/Allow |
| | | Honed Limestone Hearth | w/Allow |
| | | Portuguese Limestone at pilasters | w/Allow |
| | | Stone magic Cast stone | w/Allow |
| | Light fixtures | | In Base |

WFI0413

Suffolk Construction Co., Inc.

VALUE ENGINEERING LIST
Headquarter's Hotel

Updated - 11/15/2002

Page 1

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| **EXTERIOR CONSTRUCTION** | | | | | |
| 1. Reduce allowance to clean and repoint exterior façade | (25,000) | Allowance reduced from $ 167,400 to $142,400. Rejected as of 10/03/02 | | (25,000) | |
| 2. Use EIFS in lieu of metal panel at mechanical penthouse wa | (75,000) | SC: WE NEED TO GET TAT COMFORTABLE WITH THIS RWA - Pending as of 09/12/02 SCCI reviewing reduced scope indicated as part of Addenda 2 Revised scope includes use of Aluminum clad cornice at the 9th floor roof, and at the 10 th floor roof above metal panels.and Accepted as of 10/17/02 | (75,000) | | |
| 2a Use EIFS in lieu of metal at cornice along Berkeley and Stuart Street at areas that are changed to EIFS | (25,000) | Accepted after discussion and approval in concept by GK as of 10/17/02. Per ASK 012. | (25,000) | | |
| 3. Eliminate inswinging patio doors at Berkeley Street and use single hung unit at a size to match existing masonry | (26,400) | SC: I WOULD LIKE TO HAVE TATS VIEWS ON THE SUBMISSION RWA - Pending as of 09/12/02 Rejected as of 10/03/02 Accepted as of 11/14/02 | (26,400) | | |
| 4. Eliminate fixed units at Stuart Street and use double hung units to match existing masonry openings. | (4,400) | SC: DITTO RWA - Pending as of 09/12/02 Rejected as of 10/03/02 | | (4,400) | |
| 5. Eliminate in swinging casement windows at ground floor windows facing Berkeley Street and use double hung units | (4,800) | SC: DITTO RWA - Pending as of 09/12/02 | | (4,800) | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0414

Suffolk Construction Co., Inc.

VALUE ENGINEERING LIST
Headquarter's Hotel

Updated -11/15/2002

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|-------|-------------------|-----------|----------|----------|---------|
| 6. Use single hung windows in lieu of double hung windows | 0 | Rejected as of 10/03/02 10/08/02 Current budget is based on manufacturer that offers no savings to use single hung window. We are currently pricing the use of alternate window manufacturers who offer more standard paint colors. 10/30/02. Alternate manufacturer will provide a "grey paint" close to the standard Alucabond grey with single hung windows in lieu of double hung , at a premium cost. We feel we can "buy" this alternate window at our budget for windows. | | | |
| 7. Use aluminum"wrought iron " fencing in lieu of reconditioned stone ballistrade at coutyard areas | (45,000) | 11/12/02  Gary Kane to provide revised sketch for pricing and preliminary review with BRA by 11/19/02 | | | (45,000) |
| INTERIOR CONSTRUCTION & FINISHES | | | | | |
| 1. Use porcelain tile (8"x 8") in lieu of marble tile at guest room baths and baseboard | (67,500) | Number needs to be confirmed *Porcelain tile will not be acceptable for a Five-Star. We will select a lower cost marble at the $4.00 per SF.* SC: I BELIEVE WE WILL PREPARE TO ENTERAIN A MIX OF MARBLE AND PROCELIN TILE WHICH WILL BRING SOME SAVINGS BUT NOT THE NUMBER INDICATED | | (67,500) | |

2002-11-15Headquarters Value Engineering Response.xls

Page 2

WFI0415

Suffolk Construction Co., Inc.

**VALUE ENGINEERING LIST**
**Headquarter's Hotel**

Updated -11/15/2002

Page 3

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| 1b | Reduce allowance for material to 3.50 per square foot | (67,500) | RWA - Rejected as of 09/12/02 RWA - Number reduced to reflect only the additional savings since Item 1 b has been accepted | | | |
| 1c | Reduce allowance for material to 3.00 per square foot | (22,500) | Accepted as of 10/03/02 | (67,500) | | |
| | | | Suffolk will foward 5 samples of marble to Concept 4 for review. Acceptable to SC if ok'd by Concepts 4 as of 10/17/02 | | | |
| | | | 10/30/02 Samples on route from China- to be delivered to Concepts 4 on Thursday 10/31/02.  Samples held up in transport.. Concept 4 samples ( 3.50 persf) received last week.   Additional 3.00 sf samples in transport. 11/12/02 Item rejected until further sample review | | | |
| 2. | Eliminate crown moldings in guest room sleeping areas | (95,000) | Crown molding is critical to design quality of room and window treatment is designed with crown as a cornice. SC: CROWN MOULDINGS ARE TO REMAIN IN THE GUESTROOMS.  WE MIGHT LOOK AT SIMPLIFYING THE PRO-FORM WHICH MIGHT SAVE US SOME MONEY Rejected as of 10/03/02 | | (22,500) (95,000) | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0416

Suffolk Construction Co., Inc.

**VALUE ENGINEERING LIST**
**Headquarter's Hotel**

Updated -11/15/2002

| | TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|---|
| 3. | Eliminate crown moldings in guest room baths | (40,000) | *Possible... but not recommended* SC: AS PER ITEM 2 - WE CAN CONSIDER THIS Pending as of 10/03/02 | | | (40,000) |
| 4. | Eliminate trim at mirrors at guest room walls | (40,000) | *Creates a design entry feature to the guestroom cannot be removed. Balances size of closet opposite.* RWA - Pending as of 09/12/02 Rejected as of 10/03/02 | | (40,000) | |
| 4a | Use alternate wood trim (M5 ) at perimeter of mirrors at guest rooms ( maintaining overall width of mirror unit) | (5,100) | Saves 9000 in trim costs, offset by 3900 in increased mirror costs Accepted as of 10/03/02 | (5,100) | | |
| 5. | Eliminate crown moldings in corridors | (16,400) | *Possible — should remain in elevator lobbies and in highest level ceiling transition areas remove in others possible but not recommended* SC: TO REMAIN - DETAILS OF PROFILE TO BE EXAMINED RWA - Pending as of 09/12/02 | | (16,400) | |
| 5a | Reduce extent of crown moldings at corridors | (21,600) | Reduce extent of crown moldings per discussion- Accepted as of 10/03/02 | (21,600) | | |
| 5b | Use paint grade trim at corridors ( baseboard, chair rail and crown moldings | (16,000) | Accepted during conversation with SC on 10/25/02 | (16,000) | | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0417

Suffolk Construction Co., Inc.

VALUE ENGINEERING LIST
Headquarter's Hotel

Updated -11/15/2002

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| 6.  Simplify built out trim at guest room entry door casings | (40,000) | *Possible – architrave can be reduced but five-star look will be compromised* SC:  AS PER ITEM 5. RWA - Pending as of 09/12/02 Rejected as of 10/03/02 SCCI to provide alternate price to use stalin grade at guest room entry trim Rejected as of 10/03/02 | | (40,000) | |
| 7.  Reduce complexity of guest room bath vanities | (55,000) | *Can be done – we will provide alternative sketches for contractor to alternatively price* SC:  CONCEPTS 4 ARE REVIEWING THE PROPOSED DETAILS TO AFFECT SAVINGS RWA - Pending as of 09/12/02 SCCI to price alternate detail to be issued by Concept 4. Savings accepted and anticipated  as of 10/17/02 10/30/02 Stone type, and questions answered– Subcontractors currently pricing to confirm savings anticipated. 11/12/02  Subcontractor pricing wil net approximatley 75,000. Per Concept 4 concept B 9/23 (revised 10/29) | (55,000) | | |
| 8.a  Eliminate shower surround units from bathrooms that currently have both  surround units and tub.. | | *Four fixture baths are a huge differentiator from four to five star property* SC: WE WILL REVIEW THE DETAILS WITH A VIEW TO AFFECTING SAVINGS RWA - Pending as of 09/12/02 Rejected as of 10/03/02 | | (101,500) | |

or

2002-11-15Headquarters Value Engineering Response.xls

WFI0418

**Suffolk Construction Co., Inc.**

**VALUE ENGINEERING LIST**
**Headquarter's Hotel**

Updated -11/15/2002

Page 6

| | TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|---|
| 8. | Eliminate tub units from bathrooms that currently have shower surround units and tub. | TBD | SC: FOUR FIXTURE UNIT BATHROOMS TO REMAIN | | | |
| 9. | Use paint grade millenium door in lieu of stain grade maple | (21,600) | Profile to match Millenium # 1203 shown in elevation on ID SK-001 -A<br><br>*C4's original recommendation was the paint grade Millennium door but operations (Steve Bodi) requested stain grade doors to avoid painting. The stain door cost could be reduced by going to applied moldings rather than stile and rail door.* SC: SEE CONCEPTS 4 COMMENT. Accepted as of 10/03/02 | (21,600) | | |
| 10. | Eliminate upgrade in budget for hardware | (15,000) | SC: WE NEED TO REVIEW THIS WITH TAT AS IT ONLY APPLIES TO THE PUBLIC AREAS<br><br>RWA - Pending as of 09/12/02<br><br>SCCI waiting for completed hardware schedule and revised hardware set schedule; Savings accepted as of 10/17/02 | (15,000) | | |
| 11. | Use melamine shelf units in guest bedoorms in lieu of plastic laminate | (5,000) | Accepted as of 10/17/02 | (5,000) | | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0419

Suffolk Construction Co., Inc.

VALUE ENGINEERING LIST
Headquarter's Hotel

Updated -11/15/2002

Page 7

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| **SPECIALTIES** | | | | | |
| 1.  Eliminate Towel warmers | (49,000) | Budget includes $300 ea @220 for warmers and approximately $50 ea for power RWA - Reduce budget form 350ea to 125 ea @ 224 units as of 09/12/02 RWA - Accepted as of 10/03/02 | (49,000) | | |
| 1a   Eliminate electric feed of towel warmers | (17,000) | Eliminate electric feed to towel warmers Pending as of 10/03/02 Accepted as of 10/17/02 | (17,000) | | |
| 1b   Add outlet for Trowser press in guestrom | 13,500 | 10/30/02 Added Scope 11/12/02 Value adjusted and added | 13,500 | | |
| **EQUIPMENT** | | | | | |
| 1.  Eliminate dumbwaiter | (30,000) | *How do you serve food to the upper level bar that is hot?* RWA - Rejected as of 09/12/02 | | (30,000) | |
| 2.  Eliminate laundry chute | (21,000) | RWA - Rejected as of 09/12/02 | | (21,000) | |
| 2a   Use aluminized steel in lieu of stainless steel in laundry chut | (4,000) | RWA - New Item RWA - Rejected as of 10/04/02 | | (4,000) | |
| **ELEVATORS** | | | | | |
| 1.  Use painted baked enamel frames and doors in lieu of satin bronze, and use aluminum sills in lieu of nickel | (12,440) | At guest levels only it can be changed to baked enamel frames, G & 1 need to remain bronze. SC: WILL BE CONSIDERED RWA - Accepted as of 10/03/02 | (12,440) | | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0420

**Suffolk Construction Co., Inc.**

**VALUE ENGINEERING LIST**
**Headquarter's Hotel**

Updated -11/15/2002

Page 8

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| 2. Eliminate second car station on elevator #4 | (1,500) | SC: ARE TO REMAIN AS PROVIDED RWA - Rejected as of 09/12/02 | | (1,500) | |
| 3. Eliminate lobby signal faceplate allowance | (8,000) | SC: ARE TO REMAIN AS PROVIDED RWA - Rejected as of 09/12/02 | | (8,000) | |
| **FIRE PROTECTION** | | | | | |
| 1. Use CPVC plastic piping in lieu of steel for sprinkler piping | (15,000) | Use of CPVC is allowable per code 11/12/02  Accepted | (15,000) | | |
| 2. Eliminate the Inergen fire protection system. | (15,000) | The IT room is currently serviced by a wet system as well as the Inergen system. 11/13/02  Rejected | | (15,000) | |
| **HVAC** | | | | | |
| 1. Use 2 pipe vertical fan coil system with electric auxiliary heat in lieu of 4 pipe system | (150,000) | To be confirmed  *In a three star hotel this would be acceptable, on north side I'm freezing and you're hot on the south side with the sun. Guest complaints and not a five- or four-star solution*  SC:  NO CHANGE - 4 PIPE SYSTEM TO REMAIN  RWA - Rejected as of 09/12/02 | | (150,000) | |
| 2 Use heat pump system in lieu of fan coil units - vertical at the guest rooms, and horizontal at the common areas- | (75,000) | 11/12/02  Item Rejected | | (75,000) | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0421

Suffolk Construction Co., Inc.

**VALUE ENGINEERING LIST**
**Headquarter's Hotel**

Updated -11/15/2002

Page 9

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| **PLUMBING** | | | | | |
| 1. Eliminate falling water faucet and "salad bowl" type lavatory . Use an undermount bowl and stainless steel faucet | (50,000) | We will provide alternate design but you are reducing the special features of the room and heading to 3-star property again. What is making you different in the guest room from Marriott to justify your SC: AN ALTERNATIVE IS BEING EXAMINED WITH A VIEW TO AFFECTING SOME SAVINGS RWA - Pending as of 09/12/02 Savings anticipated as of 10/17/02 10/30/02 Sink type and faucet type questions answered-- Subcontractors currently pricing to confirm savings anticipated. | (50,000) | | |
| 1a Use new Concept 4 designated Kohler top mount Revival sink and K-3106 in lieu of originally specified K2804P lav and K-T196-CP | 46,700 | Savings of 3,300 is $46,700 short of goal. | | 46,700 | |
| 1b Use alterate Concept 4 designated Kohler top mount Revival sink and K-452-4C lieu of specified | 6,000 | Savings of $44,000 is $6,000 short of goal 11/12/02 Added funds to offset shortfall | 6,000 | | |
| 2. Use alternate toilets - Kohler - K3322-0 in guest rooms in lieu of Kohler - K3384-0 | (18,000) | SC: WE CAN CONSIDER USING ALTERNATIVE TOILETS PROVIDING THE FLUSHING MECHANISM IS SATISFACTORY. RWA - Accepted as of 09/12/02 | (18,000) | | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0422

Suffolk Construction Co., Inc.

VALUE ENGINEERING LIST
Headquarter's Hotel

Updated - 11/15/2002

Page 10

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| 2a. Use alternate manufacturer for toilets - TOTO MS854114-0 in lieu of Kohler - K3384-0 | (14,000) | stated savings is in addition ot Item 2<br>Ok<br>SC: AS PER ITEM 2<br>RWA - Accepted as of 09/12/02 | (14,000) | | |
| 2b. Use the Gmax Toto Drake CST744S Toilet in lieu of toilet identified in number 2a | 0 | No additional Savings<br>Prefered flushing mechanism<br>Accepted specified toilet as of 10/17/02 | | | |
| 3. Use alternate tub  -  Briggs 2030 in lieu of Kohler  K715 | (9,000) | OK<br>SC: WE ARE PREPARED TO CONSIDER<br>RWA - Rejected as of 10/04/02 | | (9,000) | |
| 4. Use alternate shower head - K- 7351 -CP In lieu of K9528-C | (38,000) | Owner choice<br>SC: WE NEED TO REVIEW THE ALTERNATIVE HEAD WITH PETER HILARY<br>RWA - Rejected as of 10/04/02 | | (38,000) | |
| 5 Include furnish and installing a Speekman S2000 shower head at all tub showers in lieu of the K 9528-CP | (20,000) | 11/12/02  Item accepted | (20,000) | | |
| 5b Include furnish and installing a Speekman S2000 shower head at all remaining showers (stall type )in lieu of the K 95 | TBD | 11/14/2002 Item rejected | | TBD | |

2002-11-15Headquarters Value Engineering Response.xls

WFI0423

Suffolk Construction Co., Inc.

Updated -11/15/2002

**VALUE ENGINEERING LIST**
**Headquarter's Hotel**

| TRADE | APPROXIMATE VALUE | COMMENTS: | Accepted | Rejected | Pending |
|---|---|---|---|---|---|
| **ELECTRICAL** | | | | | |
| 1. Reduce allowance value for light fixtures not currently scheduled | 0 | Current allowance is 150,000 Proposed allowance is 100,000 *We will advise in followup email suggest allowance.* SC: AGREED TO REDUCE ALLOWANCES TO $100,000 RWA.- Accepted as of 09/12/02 Elimination of allowance incorporated in revised Electrical Line Item on schedule of values. | | 0 | |
| 1a Eliminate $50,000 allowance for light fixtures. Add allowance of $25,000 for lamping owern furnished item. | | 10/30/02 Current Electrical budget includes $50,000 for fixtures not yet defined. We suggest reducing this allowance to $25,000. 11/12/02 Item accepted | Reduction to item cost reflected in schedule of | | |
| 2. Use romex wiring within the guest room floors | (25,000) | Acceptable as of 10/17/02 | (25,000) | | |
| 3. Use alternate supplier and fixtures for those to be furnished and installed by the electrical subcontractor | TBD | 10/30/2002 -still waiting for complete fixture package in order to get complete alternate fixture pricing. | | | TBD |
| 4. Provide alternate fire alarm system | TBD | | | | |
| 5. Add ceiling mounted speaker in each guestroom bath | 33,150 | Added scope alternate | | | 33,150 |
| **TOTAL** | (1,259,840) | Totals: | (529,140) | (721,900) | (51,850) |

WFI0424

RECEIVED

AUG 0 2 2004

ACE Westchester Specialty Group
Claim Department - Atlanta

WFI0425

## SUFFOLK CONSTRUCTION COMPANY, INC.
### SUBCONTRACT

THIS AGREEMENT, made as of the __16th__ day of __January__ __,200_3_ , by and between
__DJ PLUMBING AND HEATING. INC.__
of __250 NORTH STREET. B1. DANVERS. MA 01923__
("Subcontractor") and Suffolk Construction Company, Inc., of 65 Allerton Street, Boston, MA 02119, (the "Contractor").

WHEREAS, the Contractor has undertaken the construction of __HEADQUARTERS HOTEL. 154 BERKELEY STREET__
__BOSTON. MASSACHUSETTS__
(the "Project") in accordance with the provisions of a construction contract (the "General Contract") between the Contractor and
__JURY'S DOYLE__
of __C/O JURY'S WASHINGTON HOTEL. 1500 NEW HAMPSHIRE AVENUE. WASHINGTON, DC__ , (the "Owner").

NOW, THEREFORE, in consideration of the agreements contained in this Subcontract, the Subcontractor and Contractor mutually agree as follows:

### DEFINITIONS

The following words and phrases shall have the meanings set forth opposite them:

"Bonds are Required" when the box next to "Yes" is marked:          Yes          No ✔

"Completion Date" shall mean __APRIL 1, 2004__

"State" shall mean the state in which the Project is located.

"Subcontract Sum" shall mean __ONE MILLION SEVEN HUNDRED TWENTY-FIVE THOUSAND DOLLARS AND__
__NO CENTS****************************************************__ ($ 1.725.000.00**************** ).

"Work" shall mean the work described in Article 1 for __PLUMBING__
_____ and in Exhibit B.

### INDEX TO SUBCONTRACT

Article 1:      The Work
Article 2:      Time of Commencement and Substantial Completion
Article 3:      Subcontract Amount
Article 4:      Payment
Article 5:      Time
Article 6:      Extensions
Article 7:      Bonds
Article 8:      Subcontract Terms and Conditions
    8.1.        Scope of Work
    8.2.        Performance of Work
    8.3.        Dependence of Work
    8.4.        Statutory and Regulatory Compliance
    8.5.        Equal Opportunity Compliance/Nondiscrimination
    8.6.        Contractor's Rights and Remedies
    8.7.        Assignment
    8.8.        Indemnification
    8.9.        Insurance
    8.10.       Warranty
    8.11        Mechanics Liens
    8.12        Claims
    8.13        Changes

4/02

1

WFI0873

8.14    Cooperation
8.15    Records
8.16    Disputes
8.17    Miscellaneous (Including Discipline, Safety, Stored Materials, Clean up, Rights of Offset, Maintenance of Equipment, Signage, Names in Event of Emergency, Effective Date, Confidentiality of Information, Jurisdiction, Waiver, Separability)

Article 9:    Final Agreement

Exhibit "A"    List of Contract Documents (may be omitted)

Exhibit "B"    The Work

Exhibit "C"    Form Payment and Performance Bonds [if Bonds are required]

## ARTICLE 1. THE WORK.

The Subcontractor agrees to furnish, provide and install all labor, supervision, materials, equipment, plant, supplies, tools, scaffolding, hoisting, transportation, layout (including engineering where necessary), unloading and handling, work and other services, and everything else required to perform and complete the Work required by the General Contract between the Contractor and the Owner as specified in the applicable sections of the specifications, together with all other related plans and Contract Documents (as defined in this Subcontract). All of the foregoing is to be furnished and performed in accordance with the General Contract and the Contract Documents referred to in the General Contract, including the drawings, plans and specifications and addenda thereto prepared by the architect (the "Architect"), the General Conditions of the Contract for Construction and (if any) the Supplementary General Conditions and Special General Conditions, all of which are collectively referred to as the "Contract Documents". The Contract Documents are enumerated in Exhibit "A" to this Subcontract. Terms used in this Subcontract which are defined in the Contract Documents shall have the same meanings as designated in the Contract Documents. The Subcontractor agrees to be bound to the Contractor with respect to the Work by all the terms of the Contract Documents, and further agrees to assume to the Contractor with respect to the Work, all obligations and responsibilities which the Contractor has assumed to the Owner with respect to the Work except to the extent that provisions in the Contract Documents are by their terms or by law applicable only to Contractor.

In the event of any conflict among the Contract Documents, the Documents shall be construed according to the following priorities:

| | |
|---|---|
| First Priority: | This Subcontract |
| Second Priority: | Exhibit "B" – The Work |
| Third Priority: | All other Exhibits |
| Fourth Priority: | Change Order with later date having greater priority |
| Fifth Priority: | Owner/Contractor Agreement |
| Sixth Priority: | Drawings |
| Seventh Priority: | Specifications |
| Eighth Priority: | Supplementary General Conditions (If any) |
| Ninth Priority: | General Conditions |

## ARTICLE 2: TIME OF COMMENCEMENT AND SUBSTANTIAL COMPLETION.

Contractor shall give the Subcontractor a forty-eight (48) hour notice to proceed upon which Subcontractor shall man the project in accordance with Contractor's construction schedule (as it may be reasonably amended from time to time). Subject to authorized adjustments, the Work shall be substantially completed not later than the Completion Date.

## ARTICLE 3: SUBCONTRACT SUM.

The Contractor agrees to pay the Subcontractor as full payment for all work, labor, materials, taxes, fees and all other matters to be performed or furnished by the Subcontractor under this Subcontract, the total price and sum of the Subcontract.

4/02

2

## ARTICLE 4: PAYMENT.

Within ten (10) days after Contractor's receipt of good funds from Owner, Contractor shall pay to Subcontractor ninety percent (90%) of the value of the Work properly performed during the previous month. Receipt of progress and/or final payments by the Contractor from the Owner with respect to the Work shall be, in each instance, a condition precedent to the Subcontractor's rights to receive payment from Contractor. The Subcontractor's applications for partial payments and final payment ("Requisitions") are to be submitted to the Contractor in the form set forth in one of the exhibits incorporated through Exhibit "A" and/or in the manner required by the Contractor. Each Requisition must be supported by such data substantiating the Subcontractor's right to payment as the Contractor, Owner, Owner's Lender and/or Architect may require, including releases of lien from all subcontractors, laborers and materialmen of the Subcontractor, confirming that they have been paid through the date of the Subcontractors last requisition. As a condition precedent to final payment, Contractor shall require the Subcontractor to provide evidence (including releases) that all payroll, materials, equipment, sub-subcontractors and suppliers have been paid in full for work on the Project.

Prior to submission of the first Requisition, the Subcontractor will deliver to the Contractor, for review and approval, a detailed breakdown of the Subcontract Amount showing a Schedule of Values for the various parts of the Work. Once accepted, this Schedule of Values will be used as a basis for payment of the Subcontractor's monthly Requisition. If the Owner agrees to pay for stored materials, Subcontractor may include stored materials in its Requisition upon complying with the Owner's requirements and providing adequate insurance coverage and transferring title to those materials free and clear of all liens. Requisitions shall be submitted monthly on or before the 25th day of the month or on a schedule to be furnished to the Subcontractor by the Contractor. Failure to submit any such Requisition on a timely basis may result in the postponement of payment under such Requisition until payment on the next Requisition is due. The Subcontractor shall only be entitled to payment in the amount approved by the Contractor and the Architect or Owner with respect to said Requisitions. The value of any materials, equipment and Work included in a Requisition for payment which is found unacceptable by the Contractor or the Architect may be deducted from that or any subsequent Requisition.

Retainage held on the Subcontractor shall be reduced at Substantial Completion as and when Owner releases retainage to Contractor. Retainage shall be paid to Subcontractor less such amounts as the Architect or Contractor shall determine for all incomplete Work and unsettled claims as provided for in the Contract Documents. Retainage shall be paid upon Contractor's receipt of such retainage from the Owner, with receipt of such retainage from Owner being a condition precedent to Contractor's obligation to pay retainage.

In addition to the foregoing requirements, final payment, constituting the entire unpaid balance of the Subcontract Amount, shall be due only when the Subcontractor shall execute and deliver to the Contractor a final release and lien waiver, in form satisfactory to the Contractor, of all claims of the subcontractor against the Owner and Contractor, an affidavit listing all sub-subcontractors, materialmen, and union benefits payments (where applicable) and certifying that there are no liens, claims or demands by sub-subcontractors, materialmen, laborers, other employees or third persons, and a certificate from the appropriate state and local taxing authority evidencing payment of all applicable taxes and provide all as-built drawings, maintenance manuals and warranties necessary or required in connection with the Work. The Subcontractor's acceptance of final payment shall constitute full and final settlement of all obligations of the Owner and Contractor to the Subcontractor with respect to this Subcontract, except those claims which Subcontractor has specifically reserved in writing, with amounts of each such claim specified. Failure to specify the amount of any claim so reserved shall constitute a waiver of such claim.

## ARTICLE 5: TIME.

The Subcontractor agrees to perform the Work diligently and to provide a sufficient number of properly skilled and supervised workmen in accordance with the directions of the Contractor and in compliance with the job schedules of the Contractor. It is specifically understood that time is of the essence for the performance of the Subcontractor's obligations under this Subcontract.

## ARTICLE 6: EXTENSIONS.

The Subcontractor agrees that it shall have no claim for money damages or additional compensation for delay no matter how caused, but for any delay or increase in the time required for performance of this Subcontract not due to the fault of the Subcontractor, the Subcontractor shall be entitled only to an extension of time for performance of its Work. Written notice of all claims for any extension of time shall be submitted to Contractor within ten (10) days of the date when Subcontractor knows (or should know) of the event which causes such delay, or such claim shall be considered waived by Subcontractor.

4/02

WFI0875

## ARTICLE 7: BONDS.

If Bonds are Required (as determined from the first page of this Subcontract), the Subcontractor shall, prior to commencing work under the Subcontract, execute and deliver to the Contractor performance and payment bonds each in the penal sum equal to the Subcontract Amount and in the form attached hereto as Exhibit "C" and with sureties acceptable to the Contractor. The Subcontractor's failure to furnish any required bonds within ten (10) days of the execution of this Subcontract shall be grounds for termination of this Subcontract, at the sole discretion of Contractor.

## ARTICLE 8: SUBCONTRACT TERMS AND CONDITIONS.

**8.1 Scope of Work.** The intent of the Contract Documents is to include all items necessary for the proper execution of the Work. The Contract Documents are complementary, and what is required by one shall be binding as if required by all. Items omitted from the Contract Documents shall be included within the scope of the Work if they are required by applicable law, regulation, or code, if they are reasonably inferable from the intent of the Contract Documents or if they are necessary to produce the intended results.

**8.2 Performance of Work.** The Subcontractor agrees to perform, obtain, furnish and provide at its expense all work, labor, materials, tools and equipment necessary to complete the Work in a good and workmanlike manner, in accordance with the Contract Documents to the full satisfaction of the Architect, Contractor and Owner and in compliance with the directions and job schedule of the Contractor and in proper cooperation with the Contractor and other subcontractors, so as not to delay or otherwise interfere with or obstruct their work.

The Subcontractor agrees to proceed at once to prepare all required shop drawings, samples, certificates and similar information which will meet with the approval of the Contractor and Architect, and to furnish said required submissions within two (2) weeks of the execution of this Subcontract or such other reasonable period of time as is specified in writing by the Contractor. By submitting shop drawings and samples, the Subcontractor represents that the Subcontractor has determined and coordinated all field and shop measurements, field construction criteria, catalog numbers and similar data and that the Subcontractor has checked and coordinated each shop drawing and sample with the requirements of the Work and Contract Documents. The Subcontractor shall give the Contractor notice of, and opportunity to be present at, all inspections and testing with reference to the Work. The Subcontractor agrees that the Architect shall have the authority to reject Work which does not conform to the Contract Documents. The Subcontractor shall, within twenty-four (24) hours or such reasonable time as the Contractor allows, at its own cost and expense, repair or replace all Work or materials rejected by the Architect, Contractor, or Owner as defective or failing to conform to the Contract Documents, whether such defect is observed before or after Final Completion of the Work and whether or not fabricated, installed or completed.

**8.3 Dependence of Work.** If the Subcontractor determines that any previous work required to be performed under the Contract Documents or any portion of work on which the Subcontractor's Work is dependent is not in accordance with the Contract Documents, the Subcontractor shall, prior to commencing that portion of the Work, promptly notify the Contractor in writing.

**8.4 Statutory and Regulatory Compliance.** The Subcontractor shall promptly notify the Contractor and Architect in writing of any variance between the Contract Documents and applicable laws, statutes, ordinances, regulations and building codes of the locality in which the Work is done, as well as any conflict among the Contract Documents which the Subcontractor discovers or should have discovered (based on the experience of experienced subcontractors performing the type of work described in Exhibit B) by reasonable study of said Contract Documents. If the Subcontractor proceeds without instructions from the Contractor, the Subcontractor shall do so at its own risk. Any instruction to the Subcontractor shall be given in writing, and any claims of the Subcontractor derived from such instructions shall be governed by Paragraph 8.12.

If the Subcontractor performs any Work knowing it to be contrary to any applicable law, ordinance, rule, regulation or building code, the Subcontractor shall assume full responsibility for and shall bear all costs attributable to that Work. The Subcontractor shall defend, indemnify and hold harmless the Contractor and Owner for any loss or damage resulting from such violation.

The Subcontractor shall, at its own cost and expense, apply for and obtain all necessary licenses and permits and shall pay all fees and inspections necessary for the proper execution and completion of its Work. The Subcontractor shall pay all sales, consumer, use and all other applicable taxes for the Work or portions of the Work, and shall provide reasonable evidence of such payment.

4/02

4

WFI0876

**8.5 Equal Opportunity Compliance/Non-Discrimination.** During the performance of this Subcontract, the Subcontractor agrees as follows:

**8.5.1** The Subcontractor will not discriminate against any employee or applicant for employment because of race, creed, color, sex, national origin, ancestry, age, religion or liability for services in the armed forces of the United States. The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during their employment without regard to their race, religion, color, sex or national origin. Such action shall include, but not be limited to, employment, promotion, demotion or transfer, recruitment or recruitment advertising, lay-off or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship. The Subcontractor agrees to post in conspicuous places available to employees and applicants for employment notices to be provided by the Contractor setting forth the requirements of the Equal Opportunity Clause.

**8.5.2** The Subcontractor will, in all solicitations or advertisements for employees placed by or on behalf of the Subcontractor, state that all qualified applicants will receive consideration for employment without regard to race, religion, sex, national origin, ancestry, age, or liability for services in the armed forces of the United States.

**8.6 Contractor's Rights and Remedies.**

**8.6.1** The Contractor shall have the right, without invalidating this Agreement, to make changes in the Work to be performed under this Subcontract. Such changes may consist of (i) changes in the scope of the Work as such is defined in the Contract Documents; (ii) changes in the Work (including deletions of portions of the Work) ordered by the Contractor; or (iii) changes in the Work which occur as a result of the Subcontractor's default in the performance of its obligations under this Subcontract. Adjustment of the Subcontract Amount for the changes described in (i) and (ii) above shall be determined according to the manner set forth in the Contract Documents for reimbursement of Change Orders; adjustment of the Subcontract Amount for the changes described in (iii) shall be determined in the manner set forth in Paragraph 8.6.2

**8.6.2** If the Subcontractor at any time defaults in any of its obligations under this Subcontract, neglects to carry out the Work in accordance with the Contract Documents, fails to supply a sufficient number of properly skilled workmen or materials of the proper quality or quantity, fails in any respect to prosecute the Work promptly or diligently, or fails to maintain the Contractor's job schedules the Contractor may, after twenty-four (24) hours' written notice to the Subcontractor (unless Subcontractor cures such default within said period or, if more time is required to complete the cure, commences such cure within said period and diligently and promptly completes such cure) and without prejudice to any other remedy he may have (i) provide any such labor and materials and deduct the cost thereof from any money due or thereafter becoming due to the Subcontractor or (ii) terminate the employment of the Subcontractor and enter upon the Project and take possession of all materials and equipment whatsoever thereon, including, without limitation, all materials stored on or off site, and employ any other person or persons to finish the Work and provide materials therefor. If the Contractor undertakes to correct such deficiencies provided in (i) of this Paragraph or to terminate this Subcontract as provided in (ii) of this Paragraph, the Subcontractor shall not be entitled to receive any further payments under this Subcontract until all work at the Project is completed.

In the event the Contractor undertakes to correct the Subcontractor's deficiencies pursuant to (i) above and not terminate this Subcontract, appropriate Change Order(s), under Paragraph 8.13, shall be issued, deducting from the payment then or thereafter due (a) all of the Contractor's direct and indirect costs of correcting such deficiencies or completing the Work and (b) the cost to the Contractor of any delay made necessary by the Subcontractor's default, neglect, failure or termination; whereupon the Subcontract Amount shall be appropriately reduced by any of the above costs. If the cost of such remedial action shall exceed the unpaid balance of the Subcontract Amount, the Subcontractor shall promptly pay such difference to the Contractor. If the cost of completing the Work of this Subcontract exceeds the unpaid balance of the Subcontract Amount, the Subcontractor shall promptly pay such difference to the Contractor.

**8.6.3** Additionally, the Contractor shall have the right to terminate this Subcontract pursuant to the provisions of Paragraph 8.6.2 if the Subcontractor (i) shall file for bankruptcy protection or generally become involved in financial difficulties so that he is unable to pay his debts generally as they become due or (ii) shall suffer adverse changes in his financial position which substantially impede the Subcontractor's performance under this Subcontract.

4/02

5

WFI0877



8.6.4  In the event of a termination of the Work not caused by a default of the Subcontractor, including those caused by the failure or refusal of the Owner to approve the Subcontract or the failure of the Owner and Contractor to enter into a General Contract, the Subcontractor shall be compensated for the cost of the work completed prior to termination and to the amount for which the Contractor is first compensated by the Owner.  Receipt of payment from Owner for such termination shall be a condition precedent to Subcontractor=s right to receive payment hereunder.  Any claims of the Subcontractor arising out of the Subcontractor's termination pursuant to this paragraph shall be governed by Paragraph 8.12.

**8.7  Assignment.**

8.7.1  Assignment by Contractor.  The Contractor may assign its rights and obligations under this Subcontract to the Owner and/or Owner's lenders.  The Contractor shall remain primarily liable under this Subcontract for the performance of all the Contractor's obligations set forth in this Subcontract until the time such assignment becomes effective, whereupon the Contractor shall be relieved of any and all of its obligations under this Subcontract, the Subcontractor agreeing to accept such assignee and the substitution of the Contractor and shall look solely to the assignee for payment.  It is agreed that in the event of such assignment the Subcontractor shall remain bound by the terms of this Subcontract.
In the event of a termination of the General Contract between the Owner and the Contractor for any reason, this Subcontract may, at the sole option of the Owner or its lender providing construction financing, be assigned to the Owner or any lender providing construction financing or assigned to another contractor, and the Subcontractor shall continue to work as though this Subcontract was with the assignee.  Said assignment shall become effective only upon written notice by the Owner or such lender that the Owner or such other contractor is assuming this Subcontract.  The Subcontractor shall execute any instruments necessary to confirm such assignment.  By executing this Subcontract, the Subcontractor confirms and assents to the aforementioned rights of assignment and assumption.

8.7.2  Assignment by the Subcontractor.  The Subcontractor acknowledges and agrees that neither this Subcontract nor the Work, nor any part of the Work, nor the Subcontractor's right to receive payment under this Subcontract shall be assigned nor sublet without the prior written consent of the Contractor, and any attempt to do so shall constitute an abandonment by the Subcontractor of this Subcontract and an additional cause for termination pursuant to Paragraph 8.6.  Any such assignment shall be void, and the assignee shall acquire no rights in this Subcontract or to any payment due under this Subcontract.  No sub-subcontract or assignment by the Subcontractor shall under any circumstances operate to relieve the Subcontractor of its obligations under this Subcontract.

8.8  Indemnification.  To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, Owner, Architect and their respective agents, officers, employees and partners (hereinafter collectively "Indemnitees") from and against all claims, damages, losses, expenses (including, but not limited to reasonable attorneys' fees), liabilities, interest, judgments which (i) are attributable to injury, sickness, disease, or death or to injury or to destruction or damage to property (other than the Work itself), including loss of use therefrom and (ii) are caused in whole or in part by any default or negligent act or omission of the Subcontractor, its sub-subcontractor(s) or anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified under this Subcontract.  The aforesaid indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor Workmen's Compensation, Disability Benefit Acts or other employee benefit acts.  The Subcontractor shall provide in the policy of comprehensive general liability insurance required by this Subcontract a contractual indemnity endorsement which insures Subcontractor's liability under the provisions of this Paragraph.

4/02

6

WFI0878

8.9 Insurance.

8.9.1 The Subcontractor shall purchase and maintain such insurance as will protect itself from claims set forth below, which may arise out of, or result from its operations under this Subcontract, whether such operations be by itself, or by any sub-subcontractor, or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable, including coverage for the following:

1) Claims under Worker's or Workmen's Compensation Disability Benefits, and other Employee Benefit Acts required by the state in which the project is located, whether or not Subcontractor utilizes leased employees or labor services for its Work;

2) Claims for damages because of Bodily Injury, occupational sickness or disease, or death of its employees or other persons;

3) Claims for damages, other than to the Work itself, because of injury to, or destruction of tangible property, including loss of use resulting therefrom;

4) Claims for damages because of Bodily Injury, or death of any person, or property damage, arising out of the ownership, maintenance, or use of any motor vehicle; and

5) "COMPLETED OPERATIONS" Coverage which shall remain in effect for a minimum of one (1) year after acceptance of the Contractor's completed work by the Owner, or throughout the guarantee period, whichever is longer. (A Specific Endorsement may be required to all Subcontractor's Liability Insurance Policies, showing this extension of coverage).

6) Claims which may arise out of or result from explosion, collapse or underground (XCU) operation

8.9.2 The Limits of Liability Shall Not be Less Than The Following:

**GENERAL LIABILITY**

| | |
|---|---|
| Bodily Injury & Property Damage | $1,000,000.00 per occurrence |
| General Aggregate | $1,000,000.00 per project |
| Products & Completed Operations | $1,000,000.00 annual aggregate |
| Automobile Liability | $1,000,000.00 Combined single limit |
| Employers Liability/ Worker's Compensation | $ 500,000.00 each accident or statutory limits |
| | $ 500,000.00 disease per employee or statutory limits |
| | $ 500,000.00 disease policy aggregate or statutory limits |
| Umbrella Liability | $3,000,000.00 per occurrence |
| | $3,000,000.00 per project aggregate |

8.9.4 The insurance required by Subparagraph 8.9.1 above shall include Contractual Liability Insurance Coverage, applicable to the Subcontractor's obligations under paragraph 8.8 of this Agreement.

8.9.5 Certificates of Insurance acceptable to the Contractor and/or the Owner, shall be filed with the Contractor prior to commencement of the Work. These Certificates of Insurance shall contain a provision that coverage afforded under the applicable policies will not be canceled, altered, or amended, or not renewed, until at least thirty (30) days prior written notice has been given the Contractor. This thirty (30) day notice requirement must also appear, by Endorsement, on all Subcontractor's policies. The Subcontractor, if requested, shall provide to Contractor copies of its complete insurance policies, certified if requested, which evidence coverages required by this Agreement. ( Insurance coverages must be provided in a format acceptable to Contractor by insurance companies licensed to do business in the State, and acceptable to the Contractor and/or the Owner.

4/02

7

WFI0879

**8.9.6** The Subcontractor shall name the "Contractor, the Owner and/or any other interested parties as designated by the Owner", as Additional Insureds on a primary, non-contributing basis on all Liability Policies of the Subcontractor, throughout the duration of the Project on ISO form D CG 2010 (11/85 ed.), or its equivalent , and shall continue to so name those entities on those policies upon their renewal for the additional two (2) years after acceptance of the Contractor's completed work by the Owner.

**8.9.7** Property Insurance Coverage may be provided by the Owner, and may be limited to coverage for the Owner, Mortgagee and Contractor only, and limited to the perils of Fire, Lightning, Explosion (excluding Steam Boilers), Wind, Hail, Riot or Civil Commotion. Each Subcontractor may be responsible for any deductible amount assessed on any covered property loss, if insured.

**8.9.8** The Subcontractor, and/or sub-subcontractors and/or suppliers who supply materials for the work, shall be solely responsible for, and pay for the protection of and insuring the materials at all times, including while stored off premises and while the materials are in transit to the job site, until incorporated into the Work and transferred to and accepted by the Owner. If materials and equipment are to be paid for prior to incorporation into the Work and transfer to the Owner, the Subcontractor shall purchase and maintain insurance coverages on the property, in a format protecting the property, regardless of its location, for the "All Risk or Risks of Physical Loss" type perils, which are to include Weather damage, Theft, Vandalism, and Malicious Mischief. Any Deductible Clause chosen shall be the sole responsibility of the Subcontractor, and shall be subject to the written approval of the Contractor and/or the Owner. This insurance shall be in a format acceptable to the Contractor and/or the Owner, and shall insure for the "Replacement Cost" of the materials with no Co-Insurance applicable. The Contractor and/or the Owner, As Their Interest May Appear, shall be the "Loss Payee" on any such policy, if so requested. Evidence of coverage, acceptable to the Contractor and/or the Owner, shall be provided by the Subcontractor prior to payment being made by the Contractor and/or the Owner for the materials.

**8.9.9** At all times, and under all conditions, the Subcontractor is solely responsible for any and all of its equipment, tools, ·materials, and the like, which are not intended to be incorporated into the work, whether owned, leased, rented, borrowed, or otherwise.

**8.10 Warranty.** The Subcontractor warrants to the Contractor, Architect and Owner that all materials and equipment furnished under this Subcontract shall be new unless otherwise specified in the Contract Documents and that all of the Work shall be of good quality, free from fault and other defects and in conformance with the Contract Documents. All work not conforming to these requirements, including substitutions not properly approved, may be considered defective. The Subcontractor shall execute a written guaranty and warranty applicable to all phases of the Work in accordance with this Subcontract and all other applicable provisions of the Contract Documents pertaining to warranties and guarantees.

Warranties shall commence as of the date of the Final Completion of all work at the Project and shall continue for a period of no less than one year unless a longer period is otherwise provided in the Contract Documents or unless the manufacturer provides a longer warranty. All guarantees shall be enforceable directly by the Owner if the Owner so elects. The Subcontractor warrants and guarantees that title to all work, materials and equipment covered by a Requisition shall vest with the Contractor on or before the receipt of payment by the Subcontractor, free and clear of all liens, claims, security interests or encumbrances (hereinafter referred to as "liens"); and that no work, materials or equipment covered by a Requisition shall have been acquired by the Subcontractor or any other person performing the Work at the site or furnishing materials and equipment for the Project, subject to an agreement under which an interest therein or lien thereon is retained by the seller or otherwise imposed by the Subcontractor or such other person.

The Subcontractor further warrants that the materials and equipment furnished under this Subcontract shall not infringe any valid patent, copyright or trademark and that the Subcontractor shall indemnify and hold harmless the Contractor, Owner and Architect from and against any loss or damage, including attorneys' fees, which results directly or indirectly from any infringement, or any action or claim of infringement.

4/02

WFI0880

**8.11 Mechanics Liens.** Subcontractor hereby agrees to defend, indemnify and hold harmless Contractor, Owner and any applicable sureties from and against any laborer's, material men's or other similar lien or bond claim filed or asserted by Subcontractor or any of its sub-subcontractors, materialmen or suppliers (of any tier) in connection with the Work. In the event that such lien or bond claim is filed, Subcontractor shall , upon forty-eight (48) hours' written notice, cause such lien or bond claim to be released and discharged, or file a bond to secure discharge of such lien or bond claim.   In the event that Subcontractor shall fail to do so, Contractor shall have the right to pay all sums necessary to obtain the release of such lien or claim and discharge or to file a bond in lieu of such lien (including reasonable attorneys' fees , bond or other premiums and costs). Contractor shall have the right to deduct all amounts so incurred from the Subcontract Amount.

**8.12 Claims.** The Subcontractor shall not make any claims for additional compensation for any work performed by the Subcontractor or for damages sustained by the Subcontractor by reason of any act or omission of the Contractor, Owner, or Architect during the performance of this Subcontract unless such work is done pursuant to, or such damages are sustained as a result of, a written order from the Contractor and such claim is made in the manner set forth in the Contract Documents. Notice of all such claims (including disputes over the scope of work and requests for extensions of time) shall be given to the Contractor in writing within ten (10) business days (unless a shorter period is specified in the Contract Documents) after the occurrence of the event giving rise to such claim, or the claim shall be considered waived and abandoned by the Subcontractor. In connection with any such claims, the Contractor agrees to allow the Subcontractor to use the Contractor's name in procedures set up in the Contract Documents or as provided by law for the prosecution of such claims. The Contractor further agrees, upon reasonable notice, to include any claims of the Subcontractor in any action brought by the Contractor against the Owner. The Subcontractor agrees to become a party to and be bound by any legal and/or arbitration proceedings involving the Contractor, the Architect, or the Owner to the extent that such proceedings involve any of the rights or obligations of the Subcontractor. The Subcontractor agrees to be bound by the results of any proceedings in the same manner that the Contractor is bound by such results under the Contract Documents.

Contractor's superintendents and other field personnel are not authorized to approve a change to this Subcontract or extra work under this Subcontract.  Contractor's superintendents and field personnel can verify the amount of time and materials Subcontractor devotes to work, for which the Subcontractor claims it is entitled to extra compensation, but such verification shall not constitute agreement that the work in question is extra work entitling Subcontractor to additional compensation.  The Contractor's project manager is authorized to approve changes (increases or decreases) involving amounts up to $15,000; larger amounts require the approval of Contractor's project executives, vice presidents, or the President.

In the event of a claim, dispute or any other matter in question arising out of or related to the provisions of this Paragraph 8.12, the Subcontract or the breach thereof, the Subcontractor shall carry on the Work and maintain the job progress schedule as directed by the Contractor during any proceedings to settle the dispute, unless otherwise directed by the Contractor in writing. In no event shall delay in the resolution of any dispute excuse the prompt performance of the Work.  The Subcontractor understands that no officer, employee or other representative of the Owner or Contractor has authority to waive compliance with this provision, except for the President or a Vice President.

**8.13 Changes.** All changes to this Subcontract and all changes in the scope of the Work, except those resulting from Subcontractor's default in the performance of its obligations under this Subcontract, shall be confirmed in a writing signed by the Contractor and Subcontractor after the ordering of such change, pursuant to Paragraph 8.6.1 by the Contractor.

**8.14 Cooperation.** The Subcontractor agrees to procure materials and supplies from such sources and to perform all of its Work on the Project with labor and subcontractors that will work harmoniously with other elements of labor involved in the construction of the Project.

In the event any labor dispute or difficulty is created by or results from the operations of the Subcontractor in connection with the Work, and causes or results in a delay, interference or stoppage of any portion of the Work, or any portion of the work of Contractor or any other subcontractor, and such delay or interruption continues in the aggregate for two (2) or more business days, the Contractor may terminate this Subcontract pursuant to Paragraphs 8.6.2 and/or 8.6.3 of this Subcontract and the Contractor shall have all of the rights and remedies provided in this Subcontract or at law. The Subcontractor expressly agrees not to participate in or accede to any stoppage in the Work which may result from any labor dispute.

4/02

WFI0881

**8.15 Records.** To the extent required by law or the Contract Documents with respect to all or any portion of the Work and in any case with respect to each Change Order (Paragraph 8.13), the Subcontractor shall keep separate and accurate records of accounts in a manner acceptable to the Contractor with respect to all of its costs directly allocable to the Work and shall, upon request by the Contractor, make such records, invoices and other information pertaining to the Work available for inspection by the Owner and Contractor or other designee. Such records shall be maintained in such a manner as to permit all costs incurred in connection with each Change to be specifically identified.

To the extent required by law or the Contract Documents, payrolls and other records for all laborers and mechanics employed in the construction of the Project shall be maintained during the course of the Work and preserved for a period of three (3) years following Final Acceptance. Payroll records shall contain the name, address, social security number, hourly wage, daily and weekly number of hours work, gross wages earned, deductions made, actual wages paid and benefits, if any, paid. To the extent required by law or the Contract Documents the Subcontractor and all sub-subcontractors shall, on a weekly basis, provide copies of such payroll records to the Contractor. To the extent required by law or the Contract Documents, the Subcontractor and all sub-subcontractors shall provide the Contractor with monthly reports in a form and manner acceptable to the Contractor which shall set forth the total number of workmen employed on the Project, as well as the total number of minority and female workers and apprentices, and any other such records required by the Contract Documents, all such totals itemized by trade classifications.

**8.16 Disputes.** Notwithstanding any provision contained in any Contract Documents requiring arbitration, Subcontractor agrees that any specific dispute under this Subcontract with a claim less than $50,000.00 shall be submitted to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, upon Contractor's election. Each such dispute which is submitted to arbitration shall be heard before the American Arbitration Association in the State, which shall be Boston, Massachusetts in the case of projects located in Massachusetts or states served by the Boston office of the American Arbitration Association, unless the Contractor and Subcontractor agree on some other location. All disputes (single or aggregate) which exceed $50,00.00 or where injunctive relief is sought, shall be decided by a court of competent jurisdiction, trial by jury being expressly waived, unless the parties agree otherwise.

The Subcontractor agrees, upon Contractor's written demand, to become a party to and be bound by any arbitration proceeding involving the Contractor, the Architect or the Owner to the extent that such proceedings involve any of the rights or obligations of the Subcontractor under this Subcontract.

Contractor and Subcontractor agree to attempt in good faith to resolve any dispute arising out of or relating to this Subcontract by non-binding mediation with a mediator mutually agreed to by Contractor and Subcontractor. Mediation shall be initiated by a written request from the Contractor or Subcontractor to the other specifying the dispute(s) to be mediated. Such mediation shall be a condition precedent to the commencement of litigation or arbitration, unless delay would irrevocably prejudice Contractor or Subcontractor in which event the litigation or arbitration, as the case may be, may be commenced but shall be stayed pending commencement of such procedure, which shall mean the first joint session with the mediator, the dispute shall be determined in accordance with the provisions of the first paragraph of this Paragraph 8.16. The fees and expenses of the mediator shall be borne equally by the Contractor and Subcontractor.

**8.17 Miscellaneous.**

**8.17.1 Discipline.** The Subcontractor shall at all times enforce strict discipline and good order among its employees and the employees of its sub-subcontractors and suppliers and shall not employ on the Work any unfit person or anyone not skilled in the task assigned to him or her. The Subcontractor agrees to remove from the Work any worker or supervisor against whom Contractor, Owner or Architect has reasonable objection.

**8.17.2 Safety.** Provision of a safe and healthy work site for Subcontractor's employees (including the provision of all required training and/or appropriate personal protective equipment) is Subcontractor's sole responsibility. The Subcontractor shall comply with all provisions of the regulations adopted thereunder, the State's Right to Know Law, OSHA regulations and all safety requirements of all applicable laws, ordinances, regulations, rules and orders of the locality in which the Work is done and shall hold the Contractor and Owner harmless from any and all fines, penalties, claims, damages, or losses resulting in a violation of the provisions of this Paragraph. The Subcontractor agrees to insert this clause in each of its sub-subcontracts and enforce the same.

4/02

WFI0882



**8.17.3 Off-Site Storage.** The Subcontractor shall confine operations at the site to areas permitted by law, ordinance, permit and the Contract Documents, as such areas may be approved by the Contractor. All applicable storage sites, both on and off site locations, shall be subject to inspection at any reasonable time by representatives of the Owner, Architect or Contractor. The Subcontractor shall assume the risk of loss or damage to any materials, equipment, trailers or tools stored on-site, and the Contractor shall have no liability to the Subcontractor for the security of any property, tools, equipment, materials or work the Subcontractor stored on or off site.

**8.17.4 Clean-up.** The Subcontractor shall, at its own expense, keep the Project free from accumulation of waste materials or rubbish caused by its operation and shall remove the same in accordance with the directives of the Contractor and in accordance with the cleaning requirements of the Contract Documents as it applies to its Work. Subcontractor shall broom clean its work site regularly and as may be required by the Contractor. On a daily basis, Subcontractor shall remove all its waste materials and rubbish from and about the Project to a centrally located dumpster provided by others (unless Exhibit B provides otherwise), as well as all its tools, construction equipment, machinery and surplus materials.

**8.17.5 Right of Offset.** Any sum or sums chargeable to the Subcontractor under any provision of this Subcontract (except to the extent of personal injury or other damages covered by Subcontractor's insurance where Subcontractor's insurer acknowledges coverage and assumes all liability), may, at the election of the Contractor, be deducted from any payments otherwise due or to become due to the Subcontractor under this or any other subcontract between the Contractor (including any subsidiary or affiliate of Contractor, any entity which is at least fifty percent owned or controlled by the owners of Contractor, or any joint venture in which Contractor or any of the foregoing is a venturer) and the Subcontractor with any remaining amounts due to Contractor to be paid by Subcontractor, or the Contractor may sue the Subcontractor and recover damages.

**8.17.6 Maintenance of Equipment.** The Subcontractor warrants and shall insure that all construction tools, equipment, temporary facilities and other items used by the Subcontractor in accomplishing the Work, whether purchased, rented or otherwise provided by or to the Subcontractor, are in a safe, sound and good condition and capable of performing the functions for which they are intended and are maintained in conformance with applicable laws, regulations, manufacturer's recommendations and good engineering practice.

**8.17.7 Signage.** The Subcontractor shall not, without the Contractor's and Owner's prior written consent, install or maintain any sign, trademark or advertisement or other identification symbol in or about the Project. The Contractor and Owner shall have the right, at the Subcontractor's expense and without notice to the Subcontractor, to remove any sign, trademark, advertisement or other identification symbol installed in violation of this Paragraph.

**8.17.8 Names in Event of Emergency.** The Subcontractor shall furnish the Contractor and the Architect in writing the names, addresses and telephone numbers of members of the Subcontractor's organization to be called in the event of an out-of-hours emergency at the Project site.

**8.17.9 Effective Date.** This Subcontract, and all terms and conditions hereunder (including, but not limited to indemnification and insurance obligations), shall take effect as of the date that Subcontractor performs any of the Work, whether on or off the Project site.

**8.17.10 Confidentiality of Information.** The Subcontractor shall keep all information relating to the Project and the Subcontractor's Work and all information supplied to the Subcontractor by the Contractor or Owner as confidential and proprietary information of the Contractor, Owner and Architect and shall not permit its release to other parties or make any public announcement or publicity releases without the Contractor's and Owner's written authorization.

**8.17.11 Jurisdiction.** The validity, interpretation and performance of this Contract shall be governed by the laws of the State in which the Project is located.

**8.17.12 Waiver.** No action or failure to act by the Owner, Architect, Contractor or Subcontractor shall constitute a waiver of any right or duty afforded any of them under the Contract Documents, nor shall any such action or failure to act constitute an approval of or acquiescence to any breach under this Subcontract except as may be specifically agreed to in writing.

4/02

11

WFI0883

**8.17.13 Separability.** The duties and obligations imposed by the Contract Documents and this Subcontract and the rights and remedies available thereunder shall be in addition to and not in limitation of any duties, obligations, rights and remedies otherwise imposed or available by law. Should any provision of this Subcontract be invalid as a matter of law, such invalidity shall affect only such provision and shall not invalidate or affect remaining provisions of this Subcontract.

## ARTICLE 9: FINAL AGREEMENT.

It is understood that this Subcontract, including all instruments incorporated into this Subcontract by reference, constitutes the full and complete agreement now existing between the parties.

SUFFOLK CONSTRUCTION COMPANY, INC.

By: _____

Walter K. McDonough
Vice President / General Counsel

DJ PLUMBING AND HEATING, INC.

By: _____

David Johanson

**RECEIVED**

JAN 3 0 2004

SUFFOLK CONSTRUCTION CO., INC.

4/02

12

WFI0884

# *Common Policy Dec ⸳ rations*

ACE USA



Company Name:  **Westchester Fire Insurance Company**
SYM: **BRX**        Policy ID:  **I20517694**

Named Insured & Mailing Address

Producer's Name & Address

**JURY'S DOYLE HOTEL, LLC &**
**SUFFOLK CONSTRUCTION CO.**
**154 BERKLEY STREET**
**BOSTON, MA  02116**

**SWETT & CRAWFORD**
**2 WALL STREET**
**10TH FLOOR**
**NEW YORK, NY  10005**

## General Policy Information

Policy Period:  **18 Months**

Business Description:  **Hotel Operator**

When Coverage Begins:  **10/11/2002**  12:01 A.M. Standard Time At Named Insured's Address

When Coverage Ends:  **07/31/2004**  12:01 A.M. Standard Time At Named Insured's Address

**In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

The premium for this policy is indicated below next to the applicable Coverage Form(s).

| Coverage Form | Premium |
|---|---|
| **Builders Risk Xtra** | $ **159,696** |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
| **Total Premium :** | $ **159,696** |
| Minimum Earned Premium : | $ **39,924** |

## Attached Forms Information

**BB-5W59, MA-608255, ALL-10884, ALL-10750, BB-610306, BB-8U61a**

## Authorization Information

Countersigned At:

Date:

Authorized Agent:

**These Declarations together with the Commercial Inland Marine Coverage Part Declarations, Common Policy and Commercial Inland Marine Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to a part thereof, complete the above numbered policy.**

WFI0025

*Inland Marine*
*Builders Risk Declarations*

ACE USA

SYM: **BRX**    Policy ID:    **120517694**
Named Insured & Mailing Address

**JURY'S DOYLE HOTEL, LLC &**
**SUFFOLK CONSTRUCTION CO.**
**154 BERKLEY STREET**
**BOSTON, MA  02116**

Producer's Name & Address

**SWETT & CRAWFORD**
**2 WALL STREET**
**10TH FLOOR**
**NEW YORK, NY  10005**

## General Policy Information

The Named Insured is:    **Corporation**

Business Description:    **Hotel Operator**

Policy Period:    **18 Months**

When Coverage Begins:  **10/11/2002**  12:01 A.M. Standard Time At Named Insured's Address

When Coverage Ends:  **07/31/2004**  12:01 A.M. Standard Time At Named Insured's Address

**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

## I. Description of Covered Property

A.  Covered Property is:    **Renovation**

B.  Construction will be:
| | % Frame | % Non-Combustible |
| | % Masonry | % Fire Resistive |
| **100** % Other: | **Masonry Non Combustible** | |

C.  Intended Occupancy:    **Hotel**

D.  Projected Completion Date:  **04/11/2004**

## II. Limits of Insurance

A.  **Covered Property at Scheduled Locations**

| Location(s) | Value at the Completion Date | Limit of Insurance |
|---|---|---|
| **154 Berkley Street** | $   **Not Covered** | $   **Not Covered** |
| **Boston, MA 02116** | | |

If Renovation:

| | | |
|---|---|---|
| 1. Actual Cash Value of Existing Structure | $ | **25,000,000** |
| 2. Value of Improvements and Betterments | $ | **30,000,000** |

WFI0026



ACE USA

SYM: **BRX**    Policy ID:    **I20517694**

## II. Limits of Insurance
(Continued)

B. Covered Property While in Transit                          $ 1,000,000

C. Covered Property While at Temporary Location(s)    $ 500,000

D. Soft Costs Coverage          Monthly Limits    $ Not Covered

                                           Occurrence Limit    $ Not Covered

E. Loss of Rents Coverage       Monthly Limits    $ Not Covered

                                           Occurrence Limit    $ Not Covered

F. Business Income Coverage     Monthly Limits    $ Not Covered

                                           Occurrence Limit    $ Not Covered

G. <u>Additional Limits of Insurance:</u> The limits of insurance for the following are provided in the form.  Increased limits may be purchased for an additional premium.
The new limits will be shown in this schedule, if applicable.

   1.  Debris Removal                              $ No Increase

   2.  Valuable Papers and Records          $ No Increase

H. All Covered Property in Any One Occurrence    $ 55,000,000

## III. Extensions of Coverage

When an "X" appears in the following block(s), the following exclusion(s) is deleted: if a separate limit applies to an extension of coverage, the most we will pay in any one occurrence is the lesser of the amount of insurance shown in Section II., Limits of Insurance or the adjacent limit of insurance.

☒ Earth Movement Exclusion B.1.c.    Occurrence Limit    $ 10,000,000

                                                          Aggregate Limit    $ 10,000,000

☒ Flood Exclusion B.1.d.                  Occurrence Limit    $ 10,000,000

                                                          Aggregate Limit    $ 10,000,000

## IV. Deductibles

*Covered Causes of Losses*                                           Deductible Amount

A.  Applicable to loss or damage in any one occurrence caused by earth movement, if covered.    $ 25,000 or
                                                                                                      _____ %

B.  Applicable to loss or damage in any one occurrence caused by flood, if covered.    $ 25,000 or
                                                                                                      _____ %

C.  Applicable to any loss of Soft Costs.    $ Not Covered
                                                       _____ Days

D.  Applicable to any loss of Business Income or Loss of Rents.    $ Not Covered
                                                       _____ Days

E.  Applicable to loss or damage in any one occurrence caused by all other covered causes of loss.    $ 25,000

WFI0027

ACE USA 

SYM: **BRX**     Policy ID:     **I20517694**

**V.   Loss Payee(s)**     *Name and Address*     *Interest in Covered Property*

_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____

**VI.   Equipment Breakdown Option**     ☐ Yes     ☒ No

**VII.   Reporting Option**     ☐ Yes     ☒ No

If "Yes" block is checked, one of the following reporting options will apply:

☐ **Values at Risk Reporting Form Endorsement**

☐ **Completed Value Reporting Form Endorsement**

☐ **Other:**

Reporting Frequency:     ☐ **Annual**
                        ☐ **Semi-Annual**
                        ☐ **Quarterly**
                        ☐ **Monthly**

Premium Deposit:                  $ _____

Minimum Earned Premium:           $ _____

Reporting Rate:                    _____     per $100.

WFI0028

ACE USA

SYM: **BRX**        Policy ID:    **I20517694**

## VIII. Non-Reporting Option

[X] **Yes**        [ ] **No**

Non-Reporting Premium:                    $ _____ **159,696**

## IX. Attached Forms Information

**CC-3R19 Endorsement (A), BB-609899, BB-5W60b, BB-5W61, BB-5W58a**

## X. Authorization Information

Countersigned At:

Date:

Authorized Agent:

WFI0029

# ACE USA Builders Risk Ordinance Or Law Coverage Endorsement

**General Policy Information**

| | |
|---|---|
| Named Insured: | **JURY'S DOYLE HOTEL, LLC &** |
| Endorsement Number: | |
| Policy Symbol: | **BRX** |
| Policy Number: | **I20517694** |
| Policy Period: | **10/11/2002 to 07/31/2004** |
| Effective date of Endorsement: | **10/11/2002** |
| Issued by:<br>(Name of Insurance Company) | **Westchester Fire Insurance Company** |

**This Endorsement changes the policy - Please read it carefully**
This endorsement changes your policy as follows:

**Endorsement Information**

### SCHEDULE

| Description of Covered Property | **Renovation & Addition of 2 new flrs to a 9 story masonry non-combustible bldg into hotel at 154 Berkley St., Boston, MA** |
|---|---|
| Coverage A | [x] |
| Coverage B - Limit of Insurance | $ 2,500,000 |
| Coverage C - Limit of Insurance | $ 2,500,000 |
| Description of Covered Property | |
| Coverage A | [ ] |
| Coverage B - Limit of Insurance | $ |
| Coverage C - Limit of Insurance | $ |



Page 1 of 4
Form BB-609899 (7/97)

WFI0030

**Endorsement Information**
(continued)

| Description of Covered Property |
|---|
| Coverage A ☐ |
| Coverage B - Limit of Insurance $ |
| Coverage C - Limit of Insurance $ |

Each Coverage - Coverage A, Coverage B and Coverage C - applies only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the Building property identified for that Coverage(s) in the Schedule.

## I.  Coverage

**1.  Coverage A - Coverage For Loss to the Undamaged Portion of the Building**

If a Covered Cause of Loss occurs to covered Building property, we will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of any ordinance or law that is in force at the time of loss and that:

a.  Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

b.  Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises.

Coverage A is included within the Limit of Insurance shown in the Declarations as applicable to the covered Building coverage.  Coverage A does not increase the applicable Limit of Insurance for covered Building property.  Any payment under Coverage A will count against the Limit of Insurance for covered Building property.

**2.  Coverage B - Demolition Cost Coverage**

If a Covered Cause of Loss occurs to covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law that is in force at the time of loss.

The Coinsurance Agreement does not apply to Demolition Cost Coverage.

**3.  Coverage C - Increased Cost of Construction Coverage**

a.  If a Covered Cause of Loss occurs to the Covered Property, we will pay for the increased cost to:

(1)  Repair or reconstruct damaged portions of that Building property; and/or



WFI0031

**I.  Coverage**
(Continued)

(2) Reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required;

when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law that is in force at the time of loss.

However:

(1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

(2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Agreement does not apply to Increased Cost Construction Coverage.

**II.  Loss Payment**

1. When Coverage A applies, loss to the building, including loss in value of the undamaged portion of the building due to enforcement of an ordinance or law, will be determined as follows:

   If the property is repaired or replaced, on the same or another premises, we will not pay more than the lessor of:

   a. The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured;  or

   b. The Limit of Insurance shown in the Declarations as applicable to the covered Building property.

2. Coverage B - Demolition Cost Coverage will be determined as follows:

   We will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises;  or

   b. The applicable Limit of Insurance shown for coverage B in the Schedule above.

3. Coverage C - Increased Cost of Construction Coverage will be determined as follows:

   a. We will not pay under Coverage C:

      (1) Until the property is actually repaired or replaced, at the same or another premises;  and

Page 3 of 4
Form BB-609899 (7/97)



WFI0032

**II. Loss Payment**
(Continued)

  (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

 b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage C is the lesser of:

  (1) The increased cost of construction at the same premises; or

  (2) The applicable Limit of Insurance shown for Coverage C in the Schedule above.

 c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of:

  (1) The increased cost of construction at the new premises; or

  (2) The applicable Limit of Insurance shown for Coverage C in the Schedule above.

**III. Coverage Information**

**III.** If this endorsement is attached to a policy which provides coverage on previously existing building(s) or structure(s) to which renovation, remodeling or other work is being done, this endorsement does not apply to the previously existing building(s) or structure(s).

**IV.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**V.** Under this endorsement we will not pay for loss due to any ordinance or law that:

 (1) You were required to comply with before the loss, even if the building was undamaged; and

 (2) You failed to comply with such ordinance or law before the loss.

**VI.** We will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, or contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", including asbestos or asbestos containing materials.

Authorized Agent



Page 4 of 4
Form BB-609899 (7/97)

WFI0033

# ACE USA General Endorsement

## General Policy Information

Named Insured: **JURY'S DOYLE HOTEL, LLC** &

Policy Symbol: **BRX**             Policy Number: **I20517694**

Endorsement Number: **A**          Effective date of Endorsement: **10/11/2002**

Policy Period: **10/11/2002 to 07/31/2004**

Issued by:             **Westchester Fire Insurance Company**
(Name of Insurance Company)

**This Endorsement changes the policy - Please read it carefully**
This endorsement modifies insurance provided under the following:

_____ COVERAGE FORM

## Endorsement Information

ADDITIONAL EXCLUSION - FUNGUS, WET ROT, DRY ROT AND BACTERIA

A.   The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly
by any of the following. Such loss or damage is excluded regard-
less of any cause or event that contributes concurrently or in any
sequence to the loss:

"Fungus", Wet Rot, Dry Rot and Bacteria - Presence, growth,
proliferation, spread or activity of "fungus", wet rot or dry
rot or bacteria. But if "fungus" wet rot, dry rot or bacteria
results in a "specified

cause of loss", we will pay for the loss or damage caused by that
"specified cause of loss". This exclusion does not apply when
"fungus", wet or dry rot or bacteria results from fire or lightning.

Enforcement of any ordinance or law which requires the demolition,
repair, replacement, reconstruction, remodeling or remediation of
property due to contamination by "pollutants" or due to the presence,
growth, proliferation, spread or any activity of "fungus", wet or
dry rot or bacteria; or

The cost associated with the enforcement of any ordinance or law
which requires any insured or others to test for, monitor, clean
up, remove, contain, treat, detoxify or neutralize, or in any way
respond to, or assess the effects of "pollutants", "fungus", wet
or dry rot or bacteria. (Cont'd. at the back of this page).



Page 1
Form CC-3R19 (7/97)

WFI0034

**Endorsement
Information**
(Continued)

B. The following is added to the Definitions

"Fungus" means any type or form of fungus, including mold or
mildew, and any mycotoxins, spores, scents or byproducts produced
or released by fungi.

_____
Authorized Agent



WFI0035

# ACE USA Property & Casualty Claims Directory

| Claim Office | Location | Primary Fax Numbers |
|---|---|---|
| Atlanta Inland Marine Claims | P.O. Box 100008 Roswell, GA 30077 | Fax:      678.795.4095<br>          888.763.7999<br>Back-up Fax:<br>          678.795.4081<br>          888.982.2333 |



WFI0036

# ACE USA Builders Risk XTRA Coverage Form

**Coverage Information**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **you** and **your** refer to the **Named Insured** shown in the Declarations. The words, **we, us** and **our** refer to the **Company** providing this insurance.

Other words and phrases that appear in italic have special meanings. Refer to F. DEFINITIONS section in this Coverage Form.

**A. Coverage**

We will pay for *loss* to Covered Property from any one of the Covered Causes of *Loss*.

### 1. COVERED PROPERTY

We will cover the building(s) or structure(s) at the location(s) described in the Declarations while in the course of construction, reconstruction or renovation provided a Limit of Insurance is shown in the Declarations.
Covered property includes:
   a. Property of every kind and description that you own or are liable for that is intended to become a permanent part of the building or structure described in the Declarations. This includes building excavations.
   b. If not covered by other insurance, *temporary structures* on site, including cribbing, scaffolding and construction forms.
   c. Property in transit that is intended to become a permanent part of the building or structure described in the Declarations, providing a separate Limit of Insurance is shown for such coverage in the Declarations.

### 2. PROPERTY NOT COVERED

Covered Property does not include:
   a. land (including land on which the property is located) or water; or
   b. the following property when outside of buildings:
      (1) Lawns, trees, shrubs or plants, except as provided under Automatic Extensions of Coverage, 4.g.
      (2) Radio or television antennas, including their lead-in wiring, masts or towers; or
   c. property while airborne; or
   d. property while waterborne, unless in transit on ferries, lighters, or railroad car floats; or
   e. property while located underwater, except while in transit through tunnels; or
   f. machinery, tools or contractors' equipment not intended to become a permanent part of the building or structure; or
   g. property in storage which is not specifically allocated to or not identified with the location(s) described in the Declarations.



WFI0037

**A. Coverage**
(Continued)

**3. COVERED CAUSES OF LOSS**

Covered Causes of *Loss* means risks of direct physical *loss* to Covered Property, except those causes of *loss* listed in the Exclusions.

**4. AUTOMATIC EXTENSIONS OF COVERAGE**

Any amounts that we pay under the following Extensions of Coverage shall be in addition to the Limits of Insurance shown in the Declarations unless stated otherwise.

**a. Debris Removal Expense**

(1) We will pay the expense you incur to remove debris of Covered Property caused by or resulting from a Covered Cause of *Loss* that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:
   (a) The date of direct physical *loss*; or
   (b) The end of the policy period.

(2) The most we will pay under this Coverage Extension is $25,000. This is in addition to any other limits we pay. Additional limits may be provided if specifically shown in the Declarations.

(3) This Coverage Extension does not apply to the cost to:
   (a) Extract *pollutants* from land, air, or water; or
   (b) Remove, restore or replace polluted land, air, or water.

(4) This Coverage Extension does not apply to Business Income, Loss of Rents, or Soft Costs coverage.

**b. *Pollutant Clean Up***

(1) We will pay up to $25,000 in each annual policy period for expense you incur for *clean-up* of *pollutants* from land, air, or water at *your premises*. The presence, release, discharge or dispersal of the *pollutants* must be caused by a covered cause of *loss* not otherwise excluded. The expenses must be reported to us within 180 days after the date of the direct physical *loss* or the expiration date of this policy, whichever comes first.

(2) This Coverage Extension does not apply to Business Income, Loss of Rents, or Soft Costs coverage.

**c. Preservation of Property**

If it is necessary to move Covered Property from the described *premises* to preserve it from *loss* from a Covered Cause of *Loss*, we will pay for the cost of removal and any direct physical *loss* to that property:

(1) While it is being moved or while temporarily stored at another location; but

(2) Only if the *loss* occurs within 10 days after the property is first moved.

Payment under this Coverage Extension will not exceed the amount we would have paid if the Covered Property had not been removed.

Payment under this Coverage Extension will not increase the applicable Limit of Insurance.



WFI0038

**A.    Coverage**
(Continued)

**d.  Fire Department Service Charge**
When a fire department is called to save or protect covered property from a Covered Cause of *Loss*, we will pay up to $25,000 for your liability for fire department service charges:
    (1)  Assumed by contract or agreement prior to *loss*; or
    (2)  Required by local ordinance.

The deductible does not apply to this extension.

**e.  Collapse**
We will pay for the direct physical *loss* to covered property involving collapse of a building or structure or any part of a building or structure caused only by one or more of the following:
    (1)  any *specified cause of loss* or breakage of building glass, all only as insured against in this coverage part;
    (2)  hidden decay;
    (3)  hidden insect or vermin damage;
    (4)  weight of people or personal property;
    (5)  weight of rain that collects on a roof;
    (6)  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.
    (7)  faulty design, plans, specifications or workmanship, in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

    But we will not pay the cost of making good or restoring property which is or was defective or faulty in design, plans, specifications or workmanship.

We will not pay for *loss* to:
outdoor radio or television antennas, including their lead-in wiring, masts, or towers; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces caused by items 2, 3, 4, 5, 6 and 7 under this section, entitled Collapse, unless the *loss* is a direct result of the collapse of a building.

Collapse, as used here, does not include settling, cracking, shrinking, bulging or expansion.

Payment under this Additional *Coverage* will not increase the applicable Limit of Insurance.

**f.  Valuable Papers and Records**
If any of your valuable papers or records, such as blueprints, plans, drawings or data processing media are lost or damaged due to a Covered Cause of *Loss*, we will pay up to $25,000 for cost you incur to research, replace or restore those valuable papers or records.  Additional limits may be provided if a Limit of Insurance is specifically indicated in the Declarations.



WFI0039

**A.    Coverage**
(Continued)

**g.  Trees, Shrubs, Plants, Lawns**
We will pay for *loss* to trees, shrubs, plants and lawns if they are damaged or destroyed by fire, lightning, explosion, riot or civil commotion, or an aircraft. The maximum amount we will pay is $250 for *loss* (including debris removal) to any single tree, shrub or plant and $25,000 for all *losses* from any one *occurrence*.

The Deductible does not apply to this extension.

**h.  Automatic Increase in Insurance**
(1) If coverage under this policy is specific on one or more structures, this provision applies separately to each structure.
(2) We will increase automatically and directly the specific Limit of Insurance or limits on each of your covered structures with any increase in the appropriate Building Cost Modifier published by the American Appraisal Company. Our calculation of any increase will begin on the effective date of this policy or on the effective date of any change in any specific Limit of Insurance, whichever is later. You will pay any increase in premium that results from any increase in such coverage limits.
(3) This provision for automatic increase in coverage shall not modify or waive the provisions of any coinsurance agreement applicable to buildings. The increased Limit(s) of Insurance provided by this provision shall be used in applying the provisions of any such coinsurance agreement in the adjustment of *loss*.

This Coverage Extension does not apply to the value of Existing Structures indicated in Section II.A.1. of the Declarations.

**i.   Water Damage, Other Liquids, Powder or Molten Material Damage**
If *loss* caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which such substance escapes. However, we will not pay the cost to repair any defect to a system or appliance itself, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:
(1) Results in discharge of any substance from an automatic fire protection system; or
(2) Is directly caused by freezing.

**j.   Sidewalks, Curbs, Gutters, Streets or Parking Lots**
We will pay for *loss* to sidewalks, curbs, gutters, streets, parking lots or other paved surfaces. The maximum amount we will pay is $25,000 (including debris removal) for all *losses* from any one *occurrence*.

**B.    Exclusions**

1.  We will not pay for *loss* caused directly or indirectly by any of the following. Such *loss* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss*. But we will cover resulting fire or explosion arising out of any of these excluded causes except war.

a.  The enforcement of any ordinance or law:
(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris.



WFI0040

**B.   Exclusions**
(continued)

b.   The failure of power or other utility service supplied to the covered location, however caused, if the failure occurs away from the covered location.

But if *loss* by a Covered Cause of *Loss* results, we will pay for that resulting *loss.*

c.   Earthquake, landslide, mudslide, mudflow, volcanic eruption, earth sinking (other than *sinkhole collapse*), rising, shifting, mine subsidence, or other earth movement unless a specific limit is indicated for this coverage in the Declarations.  But if *loss* by fire, explosion, or volcanic action results, we will pay for that resulting *loss.*  If earth movement coverage is so indicated, we will consider any *loss* caused by earthquake or volcanic eruption occurring within a 168 hour period to be a single *occurrence* or *loss.*

Volcanic action means direct *loss* resulting from the eruption of a volcano when the *loss* is caused by:
(1) Airborne volcanic blast or airborne shock waves;
(2) Ash, dust, or particulate matter; or
(3) Lava flow.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical *loss* to the described property.

This exclusion will not apply to property in transit.

d.   Flood, meaning:
The overflow from a stream or any other body of water.  Flood also means surface water, waves, tidal waves or movements or spray from any of these, whether driven by wind or not.

This exclusion will not apply to property in transit.

e.   Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, foundations, walls, floors, basements, doors, windows, or other openings.

f.   Governmental Action, meaning:
Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

g.   Nuclear Hazard, meaning:
Nuclear reaction or radiation, or radioactive contamination, however caused.

But if *loss* by fire results, we will pay for that resulting *loss.*



**B.  Exclusions**
(Continued)

    h.  War and Military Action, meaning:

       (1)  War, including undeclared or civil war;

       (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

       (3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2.  We will not pay for *loss* caused by or resulting from any of the following, except as provided under Automatic Extensions of Coverage.

    a.  Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances, or wires.

       But if *loss* by fire results, we will pay for that resulting *loss*.

    b.  Delay, *loss* of use or *loss* of market, interruption of business or any consequential *loss* of any nature.

    c.  Penalties for noncompletion of, or delay in completion of, any contract or failure to comply with contract conditions.

    d.  (1)  Wear and tear;

       (2)  Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;

       (3)  Settling, cracking, shrinking, or expansion;

       (4)  Mechanical breakdown, including rupture or bursting caused by centrifugal force.  However, this does not apply to any resulting *loss* caused by elevator collision;

       (5)  The following causes of *loss* to covered property:

         (a)  Dampness or dryness of atmosphere;

         (b)  Changes in or extremes of temperature;

         (c)  Marring or scratching.

       (6)  Insects, vermin, rodents and other animals.

       But if *loss* from *Specified Causes of Loss* or building glass breakage results, we will pay for that resulting *loss*.

    e.  Water, or other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

       (1)  You use reasonable care to maintain heat in the building or structure; or

       (2)  You drain the equipment and shut off the water supply if the heat is not maintained.

    f.  Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose whether or not such persons are acting alone or in collusion with others, and whether or not such act occurs during the hours of employment.

       This exclusion does not apply to carriers for hire or acts of destruction by your employees; but does apply to *theft* by employees.



**B. Exclusions**
(Continued)

g.  Mysterious disappearance or unexplained *loss*.

h.  Shortage disclosed upon taking inventory.

i.  Collapse, except as provided for in Coverage Extensions. But if *loss* by a Covered Cause of *Loss* results in collapse at the location(s) described in the Declarations, we will pay for that resulting *loss*.

j.  Testing of boilers, fired or unfired pressure vessels, refrigerating or air conditioning systems, ovens, stoves, furnaces, and any mechanical or electrical machines, appliances, apparatus, wiring or devices. But, this exclusion does not apply to the testing of sprinkler systems, plumbing, piping systems, gas lines, air conditioning lines, elevators, or escalators.

k.  Asbestos, including *loss*, damage, or *clean-up* caused by or resulting from asbestos or asbestos containing materials.

l.  The presence, release, discharge or dispersal of *pollutants* unless the presence, release, discharge or dispersal is itself caused by fire, lightning, windstorm or hail, explosion, riot or civil commotion, vehicles or aircraft, sonic boom, smoke, vandalism and malicious mischief, sprinkler leakage, *sinkhole collapse*, or volcanic action.

m.  Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if *loss* by fire or combustion explosion results, we will play for that resulting *loss*. We will also pay for *loss* caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

n.  Rain, snow, ice or sleet, whether driven by wind or not, to Covered Property, unless located within a fully enclosed structure and then only for such *loss* that is caused by or results from rain, snow, ice or sleet entering through an opening caused by a Covered Cause of *Loss* not otherwise excluded.

3.  We will not pay for *loss* caused by or resulting from the following, except as provided under Coverage Extensions. But if *loss* from a Covered Cause of *Loss* results, we will pay for that resulting *loss*.

a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Section B.1. above to produce the *loss*.

b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or government body.

c.  Faulty, inadequate or defective:
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation, or remodeling; or
(4) Maintenance;
of part or all of any property on or off the described *premises*.



WFI0043

## C.  Deductible

We will not pay for *loss* in any one *occurrence* until the amount of the adjusted *loss* exceeds the deductible shown in the Declarations.  We will then pay the amount of the adjusted *loss* in excess of the Deductible, up to the applicable Limit of Insurance.

If the deductible shown in the Declarations is a percentage, the deductible amount will be that percentage of the applicable Limit of Insurance.

## D.  Limits of Insurance

1.  The most we will pay for *loss* in any one *occurrence* is the applicable Limit of Insurance shown in the Declarations.

2.  The most we will pay for *loss* in any one *occurrence* for Automatic Extensions of Coverage is the Limit of Insurance applicable to the Coverage Extension.

3.  In no event will our liability for all *loss* to Covered Property caused by or resulting from Earth Movement or Flood occurring in any single policy year exceed the aggregate limit shown in the Declarations.

## E.  Additional Conditions

The following conditions apply in addition to the Common Policy and Inland Marine Conditions.

1.  **Valuation - How We Settle a *Loss***
    If the damaged or destroyed property is new construction, we will pay the actual cost of repairing, replacing, or rebuilding the property with materials of similar kind and quality.

    If the damaged or destroyed property is in the process of renovation, we will pay:
    a.  The *actual cash value* of the existing structure, if the value is included in the Limits of Insurance, section II.A.1., described in the Declarations; and
    b.  The cost of labor and materials that have been added up to the time of *loss*.

    If profits and overhead are included in the total value of the job you furnish us in calculating your premium, we will include these items in the *loss* adjustment.  This does not apply to determining the value of existing structures.

2.  **When Coverage Begins and Ends**
    Coverage will begin on the inception date shown on the Builders Risk Declarations and will end on the earliest of the following:
    a.  When your financial interest in the property ends; or
    b.  When the purchaser accepts the property as complete; or
    c.  The expiration date shown on the Declarations; or
    d.  The date the policy is canceled; or
    e.  The date you abandon the construction.

3.  **Coinsurance Agreement**
    All Covered Property, except property in transit and property at temporary storage locations, must be insured for its projected full value at time of completion, as of the time of *loss* or you will incur a penalty.



WFI0044

**E.  Additional Conditions**
(Continued)

The penalty is that we will pay only the proportion of any loss that the Limit of Insurance at any location described in the Declarations bears to the projected full value of all property at the location described in the Declarations at date of completion.

**4.  Occupancy Clause**

The building under construction may not be more than 50% occupied without our written consent and proper rate adjustment. You may, however, install or store machinery and equipment.

**5.  Mortgage Holders**

a.  The term mortgage holder includes trustee.

b.  We will pay for covered *loss* of or damage to buildings or structures to each mortgage holder shown in the mortgage holder schedule in their order of precedence, as interests may appear.

c.  The mortgage holder has the right to receive *loss* payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holer will still have the right to receive *loss* payment if the mortgage holder:
(1)  Pays any premium due under this policy at our request if you have failed to do so.
(2)  Submits a signed, sworn proof of *loss* within 60 days after receiving notice from us of your failure to do so; and
(3)  Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

All terms of this policy will then apply directly to the mortgage holder.

e.  If we pay the mortgage holder for any *loss* and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:
(1)  The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
(2)  The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgage holder at least:
(1)  15 days before the effective date of cancellation, if we cancel for your non-payment of premium; or
(2)  60 days before the effective date of cancellation, if we cancel for any other reason.



WFI0045

**E.  Additional Conditions**
(Continued)

g.  If we do not renew the policy, we will give written notice to the mortgage holder at least 60 days before the expiration date of this policy.

**F.  Definitions**

1.  **Actual Cash Value** means the present-day value of property measured in cash, arrived at by taking the replacement cost at the time of *loss* and deducting for depreciation brought about by physical wear and tear and obsolescence where applicable.

2.  **Clean-up** includes testing, monitoring, removal, containment, treatment, detoxification, or neutralization.

3.  **Loss** means accidental *loss* or damage.

4.  **Occurrence** means an accident, including continuous or repeated exposure to the same event, that results, during the policy period, in *loss* to Covered Property. Such *loss* must be neither expected nor intended by the insured.

5.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

6.  **Premises** means a plot of ground, a building or a portion of a building that you use to conduct your business activities. "Your premises" means the premises described by the addresses listed in Section II, Limits of Insurance in the Declarations.

7.  **Temporary Structure** means office trailers, storage sheds, and property of a similar nature.

8.  **Theft** means the unlawful taking of personal property or Covered Property without the owner's consent and includes pilferage, looting, larceny, burglary, and robbery.

9.  **Sinkhole Collapse** mens the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.

10. **Specified Causes of Loss** mean the following: Fire, lightning, explosion, windstorm or hail, smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; *sinkhole collapse*; volcanic action; falling objects; weight of snow, ice or sleet; *water damage*.

11. **Water Damage** means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.



WFI0046

# ACE USA Builders Risk XTRA Common Policy & Inland Marine Conditions

These are Conditions which apply to the entire policy, including any endorsements. However, endorsements can also change these Conditions, so be sure to check any endorsements you have.

**General Conditions**

## A. CANCELLATION

1. You may cancel this insurance by sending to us or our authorized representative advance written notice of the date cancellation is to take effect.
2. We may cancel this insurance by sending you notice. The notice will state the effective date of cancellation which ends the policy period. We will mail or deliver the notice of cancellation. If mailed, proof of mailing will be sufficient proof of notice. In either case, we will send the notice to your last mailing address known by us.
3. If we cancel for nonpayment of premium, we will send you at least 15 days notice. If we cancel for any other reason, we will send you at least 60 days notice.
4. If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

## B. CHANGES

Notice to any of our agents or knowledge possessed by any such agent will not:

1. change any part of this policy;
2. remove any provisions from the policy; or
3. keep us from enforcing any of the rights this policy gives us.

There is only one way to change the terms of this policy: by including a written endorsement issued by us to form a part of this policy.

## C. CONFORMITY WITH LAW

If any of the terms of this policy (and forms attached to it) conflict with the statutes of the state in which the policy is issued, the policy is amended to conform with such statutes.

## D. COVERAGE TERRITORY

We cover property wherever located within the United States or Canada, except that we do not cover property in transit by water or by air to and from Alaska or to and from Hawaii.



WFI0047

**General Conditions**
(Continued)

**E. FAILURE TO DISCLOSE, MISREPRESENTATION OR FRAUD**
This entire policy is void if:

1. You have concealed or misrepresented any material fact or circumstances concerning this insurance, or
2. You make any attempt to defraud us either before or after a *loss*.

**F. INSPECTION AND AUDIT**
While this policy is in effect, we can, at any reasonable time, inspect your business property and operations. If we do, however, neither our inspection nor any report of it can serve as a representation that your property or operations are safe or that they comply with any law, rule or regulation.

We can also, at any reasonable time, examine and audit your books and records for anything we believe might relate to this insurance. We have the right to examine and audit your books and records for three years after your policy expires.

**G. NO BENEFIT TO BAILEE**
No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**H. PREMIUMS**
You agree to pay the premium shown in the Declarations on the first day this policy takes effect. If you are paying the premium in installments, you agree to pay the first installment on this day and the remainder of the installments when they are due.

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**I. RENEWAL**
We have the option of continuing the policy from year to year. We will base the premium for each renewal on our rules and rates that are current at the time of renewal.

**J. SOLE AGENT**
If more than one person or organization is insured under this policy, the first one named in the Declarations will act on behalf of all others.

**K. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**
You agree not to transfer any legal rights or interest you have in this policy without our prior written consent. However, if you are an individual and you die, we will provide the following coverage:

1. We will cover your legal representative who is performing his or her duties as representative, against any claims for *loss* covered under this policy.
2. We will cover any person who has temporary legal custody of your property, but only until a qualified legal representative is appointed.



WFI0048

**Loss Conditions**

**A. ABANDONMENT**

You cannot abandon property to us in order to claim a total *loss*.

**B. APPRAISAL**

If we cannot agree with you on the amount of *loss*, either of us can demand that the following procedure be used to settle the amount:

1. You or we will request in writing that the dispute be submitted to appraisal within 60 days from the time we receive the proof of *loss*. Each will then select an appraiser and notify the other of that choice within 20 days of the initial request.
2. The appraisers will select an impartial umpire. If they cannot agree on an umpire within 30 days, either you or we can ask an umpire be appointed by a judge of the court of record in the county where the property is located.
3. The appraisers will appraise each item for its value at the time of *loss* and the amount of *loss*. If they cannot agree, they will submit any differences to the umpire. An agreement in writing by any two of these three will determine the amount of the *loss*.
4. You will pay your appraiser and we will pay ours. Each will share equally any other costs of the appraisal and the umpire.
5. Neither you nor we will surrender our rights by any act you or we take relating to an appraisal.

**C. DUTIES IN THE EVENT OF *LOSS***

If there is a *loss* to your Covered Property, you have the following responsibilities:

1. Notify us or our agent as soon as it is reasonably possible. Failure to comply with this provision will result in denial of the claim. Notice to us will be considered notice to the agent and vice versa. If the *loss* is the result of a crime, notify the police immediately.
2. Take all reasonable steps to protect the Covered Property from further damage.
3. Separate the damaged from the undamaged property to the extent that this is possible. Then provide a complete inventory of the damaged and the undamaged property. The inventory should include the original cost of the property, its *actual cash value*, and the amount of *loss* you are claiming.
4. Give us a signed and sworn proof of *loss* that states:
   a. The time and origin of the *loss*;
   b. The interest you and anyone else have in the property;
   c. The *actual cash value* of each item and the amount of *loss* it suffered;
   d. Any other insurance on the property; whether valid or not;
   e. Any legal rights of others to the property.
5. You must also give us a copy of the descriptions and schedules in all policies of the Covered Property that was destroyed or damaged. And you must exhibit to us or any person we designate whatever remains of the property.
6. You must provide us with the proof of *loss* and any other required documents within 60 days of the *loss* unless we give written permission to extend this period. You must also permit us to examine and copy any of your books and records at any reasonable time and place that we choose. And you, your employees and your agents must, if we require you to, submit to examination under oath and sign a copy of this examination.



WFI0049

**LossConditions**
(Continued)

**D. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same *loss*, we will not pay more than the actual amount of the *loss*, or the Limit of Insurance applicable to the most specific coverage, whichever is less.

**E. OTHER INSURANCE**

If a covered *loss* is also covered under other insurance available to you, we won't pay for any *loss* until the other insurance is used up. However, if the other insurance is purchased specifically to apply in excess of the coverage limits of this policy, we will pay for a covered *loss* under this policy.

**F. OUR OPTIONS AFTER A LOSS**

If you have a *loss*, we can:

1. Take all or part of the property at its agreed or appraised value; or
2. Pay for the loss in cash; or
3. Repair, rebuild, or replace the destroyed or damaged property with other property of like kind and quality within a reasonable time. We will tell you our intentions to do so within 30 days after receiving your proof of loss; or
4. Make any adjustments or payments to others if they own the property that was destroyed or damaged.

**G. PAYMENT OF LOSS**

We will pay within 30 days after:

1. We reach an agreement with you or the owner of the property; or
2. The entry of a final court judgement; or
3. The filing of an appraisal award.

**H. PRIVILEGE TO ADJUST WITH OWNER**

In the event of a covered *loss*, at our option, we may settle the *loss* with the owner of the property. A release from the owner of the property will satisfy any claim of yours. We are not obligated to provide a defense for legal proceedings brought against you. However, if we elect to do so, the expense of this defense will be at our cost.

**I. RECOVERIES**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned or retained by you, the *loss* amount will be adjusted accordingly based upon the amount you received for the recovered property.

If we have already paid you the *loss* amount at the time of any salvage or recovery, the amount you receive for the recovered property will accrue entirely to our benefit until you have paid any amounts owed to us as a result of the adjustment to the *loss* amount.



WFI0050

**LossConditions**
(Continued)

**J.   SETS OR PARTS**

   1.  **Sets**

   The *loss* of an article which is part of a set will not be considered a *loss* of the entire set.  Therefore, if there is a *loss* to Covered Property which is part of a set, we will pay a fair portion of the total value of the set.

   2.  **Parts**

   If *loss* is to a part of Covered Property that consists of several parts, we will pay for only the lost or damaged part.

**K.   SUITS AGAINST US**

   You agree not to bring suit against us unless you have complied with all the terms of this policy.  Any such suit must be brought within 24 months of the *loss*.  However, the period of time for bringing suit may be changed by the laws of the state in which the Covered Property is located.

   If there is a *loss* to your Covered Property, both you and we may have certain obligations.

**L.   TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

   If we pay a claim under this policy, we are entitled, to the extent of our payment, to take over your related rights of recovery from other people and organizations.  You have an obligation not to make it harder for us to enforce these rights.   You agree to sign any papers, deliver them to us, and do anything else that is necessary to help us exercise our rights.

   But you may waive your rights against another party in writing:

   1.  Prior to *loss* to Covered Property; or
   2.  After a *loss* to your Covered Property only if, at time of *loss*, that party is one of the following:
       a.  Someone insured by this insurance;
       b.  A business firm;
           (1)  owned or controlled by you; or
           (2)  that owns or controls you; or
       c.  Your tenant.

   This will not restrict your insurance.



# Electronic Data Amendment Endorsement

## General Policy Information

| | |
|---|---|
| Named Insured: | **JURY'S DOYLE HOTEL, LLC &** |
| Endorsement Number: | |
| Policy Symbol: | **BRX** |
| Policy Number: | **I20517694** |
| Policy Period: | **10/11/2002 to 07/31/2004** |
| Effective date of Endorsement: | 10/11/2002 |
| Issued by:<br>(Name of Insurance Company) | **Westchester Fire Insurance Company** |

**This Endorsement changes the policy - Please read it carefully**
This endorsement modifies insurance provided under the following:
**Builders Risk Xtra Coverage Form.**

## Endorsement Information

A.  This endorsement replaces and supersedes any and all contrary policy provisions. This policy does not insure against loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

1.  "Electronic Data" by any cause whatsoever (including but not limited to "Computer Virus"); and/or
2.  "Electronic Media" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data";

regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data" or "Electronic Media".

This exclusion does not apply to loss or damage to "Electronic Data" or "Electronic Media" caused by or resulting from the Perils of Fire; Lightning; Explosion; Windstorm or Hail; Smoke; Aircraft or Vehicles; Riot and Civil Commotion; Willful or malicious physical loss or damage by a means other than "Computer Virus"; Leakage from fire extinguishing equipment; Sinkhole collapse; Falling Objects, Weight of snow, ice or sleet, Water Damage; Building glass breakage; Sonic Boom; Flood, Earth Movement or Volcanic Action, if and to the extent such Perils are already covered by this or by any underlying policy.

_____
Authorized Agent

WFI0052

**Endorsement Information**
(Continued)

B.  Definitions

1.  "Electronic Data" means facts, concepts, information or data, including
compilations thereof, in a form useable or intended for use or processing by
"Computers" or for storage on "Electronic Media". "Electronic Data" includes but
is not limited to files, programs, applications, operating systems, and other
coded instructions for the processing, calculation and storage of facts, concepts
and information by "Computers".

2.  "Electronic Media" means any physical device that holds, stores, contains or
transfers "Electronic Data", and includes but is not limited to disks, drives,
films, tapes, records, drums, or cells.

3.  "Computers" includes but is not limited to mainframes, servers, workstations
and portable "Computers", personal information managers, wide and local area
network hardware, electronic and electromechanical equipment, data
processing equipment, electronic controls for machinery, electronically
programmed memory chips, and electronically controlled communication
equipment.

4.  "Computer Virus" means instructions, code, applications or any software
program that has the ability or is suspected to have the ability to damage,
destroy, erase, corrupt, alter, or prevent access to "Electronic Data", "Electronic
Media" or "Computers" or to disrupt or interfere with the operations of
"Computers".

WFI0053

# Terrorism Exclusion Endorsement

**General Policy Information**

Named Insured: **JURY'S DOYLE HOTEL, LLC &**

Endorsement Number:

Policy Symbol: **BRX**

Policy Number: **I20517694**

Policy Period: **10/11/2002 to 07/31/2004**

Effective date of Endorsement: **10/11/2002**

Issued by: **Westchester Fire Insurance Company**
(Name of Insurance Company)

**This Endorsement changes the policy - Please read it carefully**
This endorsement modifies insurance provided under the following:

**Endorsement Information**

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A.  Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly resulting from or arising out of or in any way related to any:

1. "Act of Terrorism"; or

2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism."



Page 1 of 2
FormALL-10750(10/01)

WFI0054

**Endorsement Information**
(Continued)

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in sequence to the loss, injury, damage, expense, cost, or legal obligation.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

B.    As used in this endorsement:

"Act of Terrorism" means an activity that:

1.  Involves any violent act or any act dangerous to human life, tangible or intangible property, and that causes damage to property or injury to persons or causes a threat thereof; and

2.  Appears to be intended, in whole or in part, to:

   a.   Initimidate or coerce a civilian population; or

   b.   Disrupt any segment of a nation's economy; or

   c.   Influence the policy of a government by initimidation or coercion; or

   d.   Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

   e.   Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

Authorized Agent

WFI0055

# ACE USA Certain Computer-Related Losses Exclusion Endorsement

**General Policy Information**

Named Insured:                          **JURY'S DOYLE HOTEL, LLC &**

Endorsement Number:

Policy Symbol:                          **BRX**

Policy Number:                          **I20517694**

Policy Period:                          **10/11/2002 to 07/31/2004**

Effective date of Endorsement:          **10/11/2002**

Issued by:                              **Westchester Fire Insurance Company**
(Name of Insurance Company)

**This Endorsement changes the policy - Please read it carefully**
This endorsement changes your policy as follows:

**Endorsement Information**

A.  We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

   1.  The failure, malfunction or inadequacy of:

      a.  Any of the following, whether belonging to any insured or to others:

         (1) Computer hardware, including microprocessors;
         (2) Computer application software;
         (3) Computer operating systems and related software;
         (4) Computer networks;
         (5) Microprocessors (computer chips) not part of any computer systems; or
         (6) Any other computerized or electronic equipment or components; or

      b.  Any other products, and any services, data or functions, whether belonging to any insured or to others, that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement;

      due to the inability to correctly recognize, process, distinguish, interpret or accept one or more years, dates or times, such as the inability of computer software to recognize the year 2000.



Page 1 of 2
Form BB-610306 (5/98)

**WFI0056**

**Endorsement Information**
(CONTINUED)

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded cause of loss as described in Paragraph A. of this endorsement results in one of the following causes of loss, we will pay only for the loss or damage caused by such covered cause of loss: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; sonic boom; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage; elevator collision resulting from mechanical breakdown; theft.

1. Falling objects does not include loss or damage to:

   a. Personal property in the open; or

   b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

2. Weight of snow, ice or sleet does not include loss or damage to:

   a. Gutters and downspouts; or

   b. Personal property outside of buildings or structures.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than sump pump system including its related equipment and parts) containing water or steam.

C. We will not pay for repair, replacement or modification of any items in Paragraphs A.1.a and A.1.b of this endorsement to correct any deficiencies or change any features.



WFI0057

# ACE USA Signature Endorsement

**General Policy
Information**

| | |
|---|---|
| Named Insured: | **JURY'S DOYLE HOTEL, LLC &** |
| Endorsement Number: | |
| Policy Symbol: | **BRX** |
| Policy Number: | **I20517694** |
| Policy Period: | **10/11/2002 to 07/31/2004** |
| Effective date of Endorsement: | **10/11/2002** |
| Issued by:<br>(Name of Insurance Company) | **Westchester Fire Insurance Company** |

**Endorsement
Information**

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE
REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE
DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

### INDEMNITY INSURANCE COMPANY OF NORTH AMERICA
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

### BANKERS STANDARD FIRE AND MARINE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

### BANKERS STANDARD INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

### ACE INDEMNITY INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

### ACE AMERICAN INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

### ACE PROPERTY AND CASUALTY INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

GEORGE D. MULLIGAN, Secretary

SUSAN RIVERA, President



Page 1 of 2
Form BB-8U61a (12/95)

WFI0058

**Endorsement Information**
(Continued)

**INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**PACIFIC EMPLOYERS INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

GEORGE D. MULLIGAN, Secretary

SUSAN RIVERA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1133 Avenue of the Americas, 32nd Floor, New York, NY 10036

GEORGE D. MULLIGAN, Secretary

BRIAN E. DOWD, President

Authorized Agent



Page 2 of 2
Form BB-8U61a (12/95)

**WFI0059**

# ACE USA General Endorsement

**General Policy Information**

Named Insured: **JURY'S DOYLE HOTEL, LLC &**

Policy Symbol: **BRX**                    Policy Number: **I20517694**

Endorsement Number: **1**              Effective date of Endorsement: **11/26/2002**

Policy Period: **10/11/2002 to 07/31/2004**

Issued by:                      **Westchester Fire Insurance Company**
(Name of Insurance Company)

**This Endorsement changes the policy - Please read it carefully**

This endorsement modifies insurance provided under the following:

**Builders Risk Xtra** _____ COVERAGE FORM

**Endorsement Information**

In consideration of the additional premium of $10,972., the
Terrorism Exclusion Endorsement ACE0207 (01/03) is hereby
added to the policy.

All other terms and conditions remain unchanged.

_____
Authorized Agent



Page 1
Form CC-3R19 (7/97)

WFI0060

Exclusions

Cov Prop

Declarations

# ACE USA General Endorsement

**General Policy
Information**

Named Insured: **JURY'S DOYLE HOTEL, LLC &**

Policy Symbol: **BRX**                    Policy Number: **I20517694**

Endorsement Number: **2**            Effective date of Endorsement: **04/11/2004**

Policy Period: **10/11/2002 to 07/31/2004**

Issued by:              **Westchester Fire Insurance Company**
(Name of Insurance Company)

**This Endorsement changes the policy - Please read it carefully**
This endorsement modifies insurance provided under the following:

**Builders Risk Xtra** _____ COVERAGE FORM

**Endorsement
Information**

In consideration of an additional premium of $33,185., it
is hereby understood and agreed that this policy is amended
to expire 07/31/04/

All other terms and conditions remain unchanged.

_____
Authorized Agent

WFI0062

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WESTCHESTER FIRE INSURANCE
COMPANY, as subrogee of JURYS DOYLE
HOTEL GROUP USA, LTD. d/b/a
JURYS DOYLE HOTEL, LLC

      *Plaintiff,*

v.

DJ PLUMBING & HEATING, INC.,

      *Defendant.*

No. 05-cv-11375-MLW

### DEFENDANT DJ PLUMBING & HEATING, INC.'S RULE 7.1 CERTIFICATION

I certify that on March 27, 2006, in the presence of the Court, the parties conferred and were unable in good faith to resolve or narrow the issue that is the subject of this motion to dismiss.

Respectfully submitted,

DJ PLUMBING & HEATING, INC.,

By its attorneys,

/s/ Kurt M. Mullen
John Stadler, BBO No. 548485
jstadler@nixonpeabody.com
Kurt M. Mullen BBO No. 651954
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110-2131
(617) 345-1000

Dated:  June 15, 2006

BOS1602635.1

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 15, 2006.

/s/ Kurt M. Mullen
Kurt M. Mullen