## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WESTCHESTER FIRE INSURANCE
COMPANY, as subrogee of JURYS DOYLE
HOTEL GROUP USA, LTD. d/b/a
JURYS DOYLE HOTEL, LLC

        *Plaintiff,*

v.

        No. 05-cv-11375-MLW

DJ PLUMBING & HEATING, INC.,

        *Defendant.*

## DEFENDANT DJ PLUMBING & HEATING, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant DJ Plumbing & Heating, Inc. ("DJ Plumbing") respectfully submits this

memorandum of law in support of its motion to dismiss Plaintiff Westchester Fire Insurance

Company's ("Westchester") First Amended Complaint (the "Amended Complaint") pursuant to

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. DJ

Plumbing's motion is based on the Amended Complaint as well as the various construction

contracts and the builder's risk insurance policy referenced in the Amended Complaint, all of

which are attached as exhibits to DJ Plumbing's Motion as produced by Westchester in

connection with its Fed. R. Civ. P. 26(a)(1) initial disclosures. In summary, Westchester's

subrogation claim against DJ Plumbing is barred as a matter of Massachusetts law by the waiver

of subrogation provision in the applicable construction contracts.

## PRELIMINARY STATEMENT

The Amended Complaint consists solely of one count through which Westchester seeks to recover in subrogation from DJ Plumbing for insurance payments that Westchester made under a "builder's risk" insurance policy to Jurys Doyle Hotel Group USA ("Jurys Doyle"), the owner of the Jurys Hotel in Boston, Massachusetts. Westchester made those payments for alleged property damage to the hotel during the renovation and conversion of the Jurys Hotel in May 2004. Westchester alleges that such property damage (flooding from a broken water supply pipe) was caused by DJ Plumbing's "willful and wanton misconduct, gross negligence, carelessness, and recklessness" in connection with its work as a subcontractor on the renovation project.

Westchester's action fails to state a claim and should be dismissed because Westchester is barred as a matter of law from bringing any subrogation claims against DJ Plumbing to recover the insurance payments that Westchester made with respect to the alleged property damage. Specifically, under the terms of the comprehensive risk allocation program set forth in the applicable construction contracts as described below, both Westchester and the owner of the Jurys Hotel expressly agreed to waive all subrogation claims against all contractors and subcontractors, including DJ Plumbing, for any damage to the hotel during construction and for which Doyle was compensated under Westchester's builder's risk policy.

Waiver of subrogation clauses are common features in American Institute of Architect ("AIA") standard form construction contracts entered into between and among sophisticated parties such as those involved in this action. They are designed to allocate and shift to the building owner's insurer the risk of all damage to the construction property during the project.

The purpose of such risk allocation is to allow the contracting parties to avoid work interruptions and protracted delays and costly litigation over whether any of the parties is responsible for the property damage. See Haemonetics Corp, v. Brophy & Phillips Co., Inc., 23 Mass. App. Ct. 254, 501 N.E.2d 524 (1986). Waiver of subrogation provisions are readily distinguishable from exculpatory releases which exempt and immunize a party from all liability for its future conduct and leave the injured party without any legal recourse for the harm sustained. In contrast, waiver of subrogation clauses do not deprive the owner of a building being constructed or renovated of legal recourse for damage to the property. In fact, under the terms of the standard waiver of subrogation provision which is at issue here, the owner of the property has direct recourse against its insurer for any damage to the property during the project. Because waiver of subrogation clauses are risk allocating and not exculpatory mechanisms, they are fully enforceable as a matter of Massachusetts law and public policy.

Westchester attempts to circumvent the clear and unambiguous language of the standard waiver of subrogation clause by alleging in this case that DJ Plumbing's conduct was grossly negligent, careless, reckless, wanton and willful and in violation of various governmental building and plumbing codes. In proceeding in this fashion, Westchester apparently contends (as its counsel has explicitly contended in other cases brought in various jurisdictions throughout the country) that the waiver of subrogation clause does not bar claims based on conduct beyond ordinary negligence. Westchester's argument is baseless and has been rejected by an overwhelming majority of the courts that have addressed it. Those courts have enforced waiver of subrogation provisions, even in the face of the type of claim asserted here by Westchester, because the provisions are broadly framed so the parties can avoid costly and protracted litigation for damage to the project property. Significantly, the waiver of subrogation clause at

issue here is not limited by its terms to ordinary negligence claims and there is no basis in Massachusetts law or public policy for narrowly interpreting the clause to bar claims sounding solely in negligence.

Allowing Westchester to proceed against DJ Plumbing for gross negligence and willful and wanton misconduct would be contrary to Massachusetts law, which has long recognized the validity, and value to the construction industry, of these standard provisions that promote project harmony by shifting all liability for property damage to the building owner's insurer.  If, as Westchester suggests, a builder's risk insurer can evade the bar of the waiver of subrogation provision and force litigation to proceed through discovery and trial simply by asserting gross negligence as a theory of liability, the contracting parties will be stripped of the substantial benefit of their bargain in undertaking the hotel project—namely, avoiding the expense and distraction of lengthy litigation.  A ruling that waiver clauses do not bar gross negligence claims would lead to substantial legal uncertainty for the construction industry and unnecessary litigation expense and delays on construction projects undertaken in Massachusetts.

## STATEMENT OF FACTS

### The Alleged Property Damage and Subrogation Claim

Westchester brings this suit as subrogee of Jurys Doyle and seeks reimbursement from DJ Plumbing for money that Westchester paid to Jurys Doyle for property damage to a building owned by Jurys Doyle and located in Boston, Massachusetts ("the Jurys Hotel").  See Motion To Dismiss, Ex. 1 at ¶ 20.  Westchester alleges that the property damage at the Jurys Hotel (flooding from a broken water supply pipe in May 2004) was caused by DJ Plumbing while it performed plumbing work as a subcontractor in connection with the renovation and conversion of the Jurys Hotel.  Id. at ¶¶ 17, 19.

In the Amended Complaint, Westchester specifically alleges that DJ Plumbing had a "duty to design, install, inspect and test the water supply pipe in a good, safe and workmanlike manner, and to make sure that the installation was free from hazardous defects that could cause failure and flooding," and that DJ Plumbing's work "violated applicable building and plumbing codes and demonstrated a flagrant disregard for the most fundamental and basic plumbing industry customs and practices." Id. at ¶¶ 22, 23. Westchester further alleges that the pipe failure and resulting property damage were caused by DJ Plumbing's willful and wanton misconduct, gross negligence, carelessness, recklessness and violations of building and plumbing codes. Id. at ¶ 24.

### The Construction Contracts and Waiver of Subrogation Clause

On or about June 15, 2002, Jurys Doyle contracted with Suffolk Construction Company ("Suffolk"), as general contractor, to renovate the Jurys Hotel (the "Jurys/Suffolk contract"). Id. at ¶ 8. (The Jurys Doyle/Suffolk contract as produced by Westchester in its initial disclosures in this action is attached to DJ Plumbing's Motion to Dismiss as Exhibit 2.) Suffolk then subcontracted with DJ Plumbing to perform the plumbing work in connection with the renovation and conversion of the Jurys Hotel (the "Suffolk/DJ Plumbing subcontract"). See Ex. 1 at ¶ 9. (The Suffolk/DJ Plumbing subcontract as produced by Westchester in its initial disclosures is attached to DJ Plumbing's Motion to Dismiss as Exhibit 3.)

The Jurys/Suffolk contract consists of three standard contract forms created by the American Institute of Architects ("AIA") and commonly used by parties to construction projects throughout the United States: (1) the "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum," Form A101-1997 (Ex. 2, WFI 0305-0310); (2) the "General Conditions of the Contract for Construction," AIA Form A201-1997 (the

"General Conditions") (Ex. 2, WFI 0337-0425); and (3) the "Supplemental General Conditions,"

Modifying AIA A201 (1997 Edition) (Ex. 2, WFI 0311-0336).

The Jurys/Suffolk contract expressly provides that any damage to the hotel sustained

during the renovation project would be compensated for under the "builder's risk" insurance

which Jurys Doyle was required to purchase with respect to the project.  See Ex. 2 at WFI 0372.

Specifically, Section 11.4.1 of the General Conditions in the Jurys/Suffolk contract (AIA

Standard Form A201-1997) provides in relevant part that "the Owner shall purchase and

maintain . . . property insurance written on a builder's risk, "all-risk" or equivalent policy form . .

. . This insurance shall include the interests of the Owner, the Contractor, Subcontractors and

Sub-subcontractors in the Project."  Id.

The Jurys/Suffolk contract also provides that the parties waive any right to bring suit

against each other and their subcontractors with respect to any liability or claim for damages

arising from their activities to the extent such damages were covered by the builder's risk

insurance policy.  In particular, Section 11.4.7 of the General Conditions of the Jurys/Suffolk

contract, under the heading "Waivers of Subrogation,"  provides in pertinent part that:

> **The Owner [Jurys Doyle] and Contractor [Suffolk] waive all
> rights against** (1) each other **and any of their subcontractors**,
> sub-subcontractors, agents and employees, each of the other . . .
> **for damages** caused by fire or other causes of loss **to the extent
> covered by property insurance obtained pursuant to this
> Paragraph 11.4** or other property insurance applicable to the
> Work, except such rights as they have to proceeds of such
> insurance held by the Owner as fiduciary. . . .  A waiver of
> subrogation shall be effective as to a person or entity even though
> that person or entity would otherwise have a duty of
> indemnification, contractual or otherwise, did not pay the
> insurance premium directly or indirectly, and whether or not the
> person or entity had an insurable interest in the property damaged.

See Ex. 2 at WFI 0373-74 (emphasis supplied).

The provisions of the Jurys/Suffolk contract, including the waiver of subrogation clause, are applicable to subcontractors on the project such as DJ Plumbing. Section 5.3.1 of the General Conditions of that contract provides that "the Contractor shall require each Subcontractor . . . to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner . . . ." See Ex. 2 at WFI 0360. Similarly, Article 1 of the Suffolk/DJ Plumbing subcontract provides that DJ Plumbing's work will be performed in accordance with the "Contract Documents," which are defined to specifically include the documents comprising the Jurys/Suffolk contract. See Ex. 3 at WFI 0874.

Westchester's Builder's Risk Policy

Pursuant to Section 11.4.1 of the General Conditions in the Jurys/Suffolk contract, Jurys Doyle purchased a builder's risk insurance policy from Westchester with respect to the Jurys Hotel project, under Policy No. I20517694, effective October 11, 2002 through July 31, 2004 (the "Westchester builder's risk policy"). See Ex. 1 at ¶ 4. (The Westchester builder's risk policy as produced by Westchester in its initial disclosures is attached to DJ Plumbing's Motion to Dismiss as Exhibit 4.) Subsection L of the "Loss Conditions" section of Westchester builder's risk policy, entitled "Transfer of Rights of Recovery Against Others to Us," provides that if Westchester pays a claim under the policy, it is entitled "to the extent of [its] payment, to take over [Jurys Doyle's] related rights of recovery from other people and organizations." See Ex. 4 at WFI 0051. However, that same section of the Westchester policy expressly grants Jurys Doyle, as policyholder, the right to waive any subrogation rights that it, and Westchester as subrogee, may have with respect to the Jurys Hotel project. See id. (providing that the

policyholder "may waive [its] rights against another party in writing: 1. Prior to *loss* to Covered Property . . .) (emphasis in original).

**ARGUMENT**

In this subrogation action Westchester seeks to skirt the clear and unambiguous language in the Jurys/Suffolk contract by arguing that the waiver of subrogation agreed to by Jurys Doyle in connection with the hotel project, and to which Westchester is bound by the terms of its builder's risk policy, is somehow limited in scope to ordinary negligence claims and does not bar its claim of gross negligence and similar tortious conduct against DJ Plumbing. This argument has no basis in Massachusetts law or public policy and should be rejected by this Court.

## A.    STANDARD OF REVIEW FOR MOTION TO DISMISS

In considering DJ Plumbing's motion to dismiss for failure to state a claim, this Court must accept all factual allegations in the Amended Complaint as true, give Westchester the benefit of all reasonable inferences, and determine whether the pleading "so read, limns facts sufficient to justify recovery on any cognizable theory of the case." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998) (citation omitted). In support of its motion, DJ Plumbing has attached as exhibits several documents – the Jurys/Suffolk contract, the Jurys/DJ Plumbing subcontract and Westchester builder's risk insurance policy. Because the Amended Complaint expressly refers to and is dependent on those documents, which are submitted to this Court as produced by Westchester in its initial disclosures, the documents "effectively merge[] into the pleadings" and this Court can review them in deciding DJ Plumbing's motion. Id. at 17; see also 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 1997) ("explaining that courts may consider '[u]ndisputed documents alleged or referenced in the complaint' in deciding a motion to dismiss") (cited in Beddall, 137 F.3d at 17); Branch v.

Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion") (cited in Beddall, 137 F.3d at 17).

In this action Westchester invokes only this Court's diversity jurisdiction. See Ex. 1 at ¶ 5. In these circumstances, Massachusetts substantive law applies to the question of whether Westchester as a matter of law is barred by the waiver of subrogation provision from seeking recovery in this action for DJ Plumbing's alleged gross negligence and other asserted tortious conduct. See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994). The Massachusetts Supreme Judicial Court has not yet squarely decided whether waiver of subrogation clauses in construction contracts bar claims for gross negligence, recklessness, and wanton and willful misconduct, as opposed to ordinary negligence claims. However, this Court in resolving DJ Plumbing's motion may make "an informed prophecy of what the court would do in the same situation," seeking "guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996) (citations omitted).

**B. BY THE TERMS OF ITS INSURANCE POLICY, WESTCHESTER IS BOUND BY JURYS DOYLE'S CONTRACTUAL AGREEMENT TO WAIVE ANY AND ALL SUBROGATION CLAIMS AGAINST DJ PLUMBING WITH RESPECT TO DAMAGE TO THE JURYS HOTEL.**

Under Massachusetts law, "[t]he interpretation of an insurance contract is no different from the interpretation of any other contract, and [courts] must construe the words of the policy in their usual and ordinary sense." Hakim v. Massachusetts Insurers Insolvency Fund, 424 Mass.

- 10 -

275, 281, 675 N.E.2d 1161, 1164 (1997) (citations omitted).  Courts "read the policy as written and 'are not free to revise it or change the order of the words.'" Id. at 281, 675 N.E.2d at 1164-65 (citation omitted).  Furthermore, "[w]hen the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms." Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427, 649 N.E.2d 1123, 1127 (1995) (citation omitted).  Put another way, "[w]hen the policy language is plain and admits of only one reasonable construction, a reviewing court must give effect to that construction." Lexington Ins. Co. v. General Accident Ins. Co. of America, 338 F.3d 42, 47 (1st Cir. 2003) (citation omitted).

As described above, the builder's risk policy that Westchester issued to Jurys Doyle as owner of the insured property expressly grants to Jurys Doyle the right to waive, "Prior to Loss to Covered property," both its own and Westchester's right to seek recovery in subrogation against any contractor involved in the Jurys Hotel project. See WFI 0051.  By agreeing to Section 11.4.7 of the General Conditions of the Jurys/Suffolk contract, Jurys Doyle in fact waived its own and Westchester's subrogation rights.  Section 11.4.7 provides that Jurys Doyle and Suffolk "**waive all rights against** (1) each other and **any of their subcontractors**, sub-subcontractors, agents and employees, each of the other . . . for damages caused by fire or other causes of loss **to the extent covered by property insurance obtained pursuant to this Paragraph 11.4** . . . ." (emphasis supplied).  See Ex. 2 at WFI 0373-74.

It is well-settled that "[g]enerally, an insurer, as the insured's subrogee, is bound by an otherwise enforceable limitation of liability clause contained in a contract." See 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 224:96 (3d ed. 2005).  "Accordingly, when a contract contains a waiver of subrogation between the parties, the clause precludes an insured party's insurer from bringing a subrogation action against one of the parties to the contract, or

against a person or entity covered by the waiver." Id.; see also 1 Jeffrey W. Stempel, Stempel on

Contracts § 11.05 (3d ed. 2006) ("[b]ecause an insurer's right of subrogation generally attaches

at the time of the policyholder's loss, a policyholder's release of the third party prior to the loss

(e.g., by a pre-construction contract) is good against the insurer"). Likewise, a policyholder's

waiver of subrogation is valid where an insurer voluntarily "provide[s] for a waiver of its

subrogation rights indirectly by acknowledging the insured's power to waive the insurer's

subrogation rights." 16 Couch on Insurance at § 224:143.

Consequently, Westchester agreed to allow Jurys Doyle to waive, and Jurys Doyle did

waive, all subrogation rights which both Westchester and Jurys Doyle had with respect to

property damage to the Jurys Hotel and for which Westchester compensated Jurys Doyle.


### C.  THE WAIVER OF SUBROGATION CLAUSE IN THE JURYS/SUFFOLK CONTRACT IS ENFORCEABLE AS A MATTER OF LAW AND BARS ALL CLAIMS AGAINST DJ PLUMBING.

The waiver of subrogation clause at issue in this case is a standard provision in the

commercial construction contract forms created by the AIA. Both Jurys Doyle and Suffolk

bargained for and accepted the AIA waiver of subrogation clause as a term of their contract for

the renovation of the Jurys Hotel. That waiver clause was incorporated as part of the terms of

the Suffolk/DJ Plumbing subcontract. See Ex. 2 at WFI 0360.

The "Waiver of Subrogation" provision of the Jurys/Suffolk contract clearly shifts and

allocates to Westchester's builder's risk policy all liability for property damage associated with

the project. The waiver clause is broadly crafted and does not carve out any exception for claims

of gross negligence, willful and wanton misconduct, carelessness, recklessness or violations of a

statutory duty, all as collectively alleged in Count 1 of Westchester's Amended Complaint.

The Massachusetts Court of Appeals has consistently held that the AIA standard waiver of subrogation provision is fully enforceable against the contracting parties and bars subrogation claims by builder's risk insurers against subcontractors that allegedly caused damage to the construction property. For example, in Haemonetics Corp. v. Brophy & Phillips Co., Inc., 23 Mass. App. Ct. 254, 501 N.E.2d 524, the Massachusetts Appeals Court enforced a waiver of subrogation clause in the 1976 version of the AIA standard construction documents that contained terms similar to those in the Jurys/Suffolk contract. In Haemonetics, a builder's risk insurer attempted to recoup money it had paid a property owner for damage from a fire that resulted from a construction subcontractor's allegedly negligent performance. Affirming the trial court's grant of summary judgment in favor of the subcontractor based on the waiver of subrogation clause, the Haemonetics Court held that enforcing the terms in the construction contract and the insurance policy was consistent with out-of-state case law and "with the policy underlying the use of waiver of subrogation clauses in construction contracts." Id. at 257-58, 501 N.E. 2d at 526.

Quoting favorably from decision of the United States Court of Appeals for the Second Circuit in Tokio Marine & Fire Ins. Co. v. Employers Ins., 786 F.2d 101, 104 (2d Cir. 1986), the Appeals Court in Haemonetics explained that "[a] waiver of subrogation is useful in [construction] projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance." 23 Mass. App. Ct. at 258, 501 N.E.2d at 526. The court further noted that, because the builder's risk insurance policy "contained a provision making specific reference to the possibility of a waiver by the

owner of its subrogation rights," the "result, therefore, should come as no surprise to the insurance company, the real party in interest." Id. at 258, 501 N.E.2d at 526.

It is thus now well-established in Massachusetts that the AIA standard waiver of subrogation provision is enforceable under Massachusetts law and bars builder's risk insurers from asserting subrogation claims against subcontractors who are alleged to have caused damage to the construction property for which the insurer has provided coverage. See Fortin v. Nebel Heating Corp., 12 Mass. App. Ct. 1006, 429 N.E.2d 363 (1981) (holding that the 1967 and 1970 version of the AIA standard waiver of subrogation clause at issue there applied only to general contractors and not to subcontractors, but observing in dictum that had the 1976 version been used by the parties, the builder's risk insurer would have been barred from bringing a subrogation claim against the subcontractor); see also Suffolk Constr. Co., Inc. v. Superior Fire Protection Installation Co., LLC, 03-CV-10689-MEL (D. Mass. Apr. 13, 2003) at 5 n.1, attached hereto as Exhibit A (noting that negligence claim brought by property owner against subcontractor would be "unambiguously barred by the [AIA] Waivers of Subrogation provision").

**D.    WESTCHESTER'S CLAIM IS BARRED BY THE WAIVER OF SUBROGATION CLAUSE EVEN IF DJ PLUMBING'S CONDUCT IS CAST AS GROSSLY NEGLIGENT, RECKLESS, WANTON AND WILLFUL, AND VIOLATIVE OF SAFETY CODES.**

In this action Westchester seeks to evade the bar of the waiver of subrogation clause by asserting that DJ Plumbing was grossly negligent, violated various statutory duties under state building and plumbing codes and engaged in reckless, willful and wanton conduct in performing its work on the hotel project. In proceeding in this fashion, Westchester apparently contends (as its counsel has explicitly contended in other cases brought in various jurisdictions throughout the

country) that the waiver of subrogation clause does not bar claims based on conduct going beyond ordinary negligence. No Massachusetts appellate court has ruled on the specific issue of whether the AIA standard waiver of subrogation clause bars claims of the type asserted here by Westchester. However, Massachusetts precedent strongly suggests that enforcement of the waiver clause to bar Westchester's claims in this action would be consistent with, and would not violate, Massachusetts law and public policy.

Waiver of subrogation clauses are common features of commercial construction contracts between and among sophisticated parties such as those involved in this action. See Haemonetics, 23 Mass. App. Ct. at 257-58, 501 N.E.2d at 526. These clauses serve two essential purposes for the construction industry: first, they require building owners to purchase property insurance for the benefit of themselves and all of the other parties involved in the construction projects; second, they allocate and shift to the building owner's insurer the risk of all damage to the construction property during the project so that the building owner and contractors can avoid work interruptions, protracted delays and costly litigation over whether any of the contracting parties is responsible for the property damage. Id. at 257-58, 501 N.E.2d at 526; see also Reliance Nat'l Indem. v. Knowles Indus. Services, Corp., 868 A.2d 220 (Me. 2005) ("We have held that 'waivers of subrogation are encouraged by law and serve important social goals: encouraging parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation and facilitating and preserving economic relations and activity'").

A number of courts across the country have addressed the argument by builder's risk insurers that waiver of subrogation provisions are contractual exculpatory clauses that should not be enforced and should not bar claims for gross negligence, willful and wanton misconduct, and violations of statutory duties (many of those cases were brought by the law firm of Cozen &

O'Connor, counsel for Westchester in this case). The overwhelming majority of those courts have rejected that argument, instead holding that waiver of subrogation provisions are clearly distinguishable from exculpatory agreements because they do not deprive the injured party, the property owner, of all legal recourse or compensation for damage during the construction project, but simply allocate the risk of loss of damage to the property owner's insurer. See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73 (2d Cir. 2005); Federal Ins. Co. v. U.S. Distributing, Inc., 2004 U.S. Dist. LEXIS 27775 (N.D.N.Y. 2004); Reliance Nat'l, 868 A.2d 220 (Maine); Behr v. Hook, 787 A.2d 499 (Vt. 2001). In reaching this conclusion, those courts have emphasized that waiver of subrogation clauses are not exculpatory because the contracting parties have agreed that subrogation claims are barred only to the extent that builder's risk insurance is available to pay for damage to the construction property.[1]

Because waiver of subrogation clauses are not exculpatory in nature, courts generally have deemed them enforceable as a matter of public policy, even as to claims based on alleged gross negligence, recklessness, willful and wanton misconduct, and violations of public safety codes.[2] For example, the Maine Supreme Judicial Court in Reliance Nat'l, 868 A.2d 220,

---

[1]   Courts in other states that do not enforce contractual exculpatory clauses have reached the same conclusion. See Best Friends Pet Care, Inc. v. Design Learned, Inc., 823 A.2d 329, 334 (Conn. App. Ct. 2003) (holding that state statute barring exculpatory provisions in construction contracts is inapplicable to AIA standard waiver of subrogation clause; ordinary negligence claim at issue held barred); Chadwick v. CSI, Ltd., 629 A.2d 820, 825-26 (N.H. 1993) (waiver of subrogation provisions in construction contracts are not designed to unilaterally relieve one party from the affects of its future negligence, thereby foreclosing another party's avenue of recovery; rather such provisions are aimed at ensuring that damages incurred during construction project are covered by appropriate insurance; ordinary negligence claim at issue held barred).

[2]   Some Massachusetts courts have held that contractual exculpatory clauses are unenforceable with respect to gross negligence claims. See e.g., Gillespie v. Papale, 541 F. Supp. 1042, 1046 (D. Mass. 1982); Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass. App. Ct. 17, 19, 687 N.E.2d 1263, 1265 (1997). Those decisions, however, involved claims for personal injury in which the defendants asserted that plaintiffs who had sustained personal injuries were barred from recovering damages by reason of the release of liability forms that they executed before their injuries. Those releases granted a complete exemption of liability for defendants and deprived plaintiffs of legal recourse for injuries they sustained, even as a result of defendant's gross negligence. Consequently, those decisions are wholly inapposite to the question presented on DJ Plumbing's motion—whether the standard waiver of subrogation clause in construction contracts bars a
*(Footnote continued on next page)*

recently affirmed summary judgment in favor of a contractor being sued in subrogation by a builder's risk insurer, holding that gross negligence claims are barred by the AIA standard waiver of subrogation clause. In that case the court rejected the builder's risk insurer's argument (represented by one of the law firms representing Westchester here) that the waiver of subrogation provision was an exculpatory clause, and thus unenforceable, with respect to claims for gross negligence or willful and wanton misconduct. Id. at 226. After first noting that a claim of "[g]ross negligence or willful and wanton misconduct generally render[] exculpatory provisions void" under Maine law, the Court held that the principle was inapposite to waiver of subrogation clauses, explaining that "[i]n cases involving waivers of subrogation . . . there is no risk that an injured party will be left uncompensated, and it is irrelevant to the injured party whether it is compensated by the grossly negligent party or an insurer." Id. (citing St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 317 F. Supp. 2d 336 (S.D.N.Y. 2004), aff'd., 409 F.3d 73 (2d Cir. 2005)).[3]

The Reliance Nat'l Court set forth two basic public policy reasons for enforcing waiver of subrogation clauses to bar claims for gross negligence and willful and wanton misconduct:

> First, waivers of subrogation deter litigation among parties to complicated construction contracts. . . . Significantly, as counsel for [the contractor] observed during oral argument, the real injured party in this case – the Church – is not a party to this appeal because the waiver of subrogation did what it was intended to do: it allowed the Church to resolve its claims quickly. The Church was made whole to the limits of its insurance and it was not divested of a remedy. Were we to hold that parties cannot bar

---

*(Footnote continued from previous page)*
builder's risk insurer from asserting a subrogation claim for property damage allegedly caused by a subcontractor's gross negligence or other misconduct.

[3]    After Reliance Nat'l was decided, the United States Court of Appeals for the Second Circuit affirmed the district court's decision in St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, holding that New York courts would most likely find that the AIA standard waiver of subrogation bars claims of gross negligence.

> subrogated claims for gross negligence or willful and wanton
> misconduct, these benefits will evaporate, as the parties will have
> the incentive to litigate the question of whether a heightened
> standard of negligence applies.
>
> Second, waivers of subrogation have a beneficial economic effect
> that furthers the public interest.  They help parties avoid the higher
> costs that result from having multiple insurance policies and
> overlapping coverage. . . .  In addition, because insurers can
> account for such waivers when setting premiums . . . there is still
> an economic incentive for parties to refrain from committing gross
> negligence or willful and wanton misconduct.

868 A.2d at 227 (citations omitted); see also St. Paul Fire & Marine Ins. Co., 409 F.3d at 84

(applying New York law, distinguishing between common law limits on exculpatory clause for

grossly negligent conduct and risk allocation purpose of waiver of subrogation clause, and noting

public policy of ensuring compensation of injured party and avoiding of costly litigation through

waiver of subrogation); Behr, 787 A.2d at 503-504 (applying Vermont law, concluding public

policy served by allocation of risk to builder's risk insurer in that parties can avoid "the prospect

of extended litigation which would interfere with construction," and further noting that allowing

an exception for gross negligence would cause future subrogating insurers to "merely . . . alleg[e]

gross negligence and trust[] that the trial court would allow the jury to determine if the

defendants' conduct sunk to that uncertain level").

　　　There is no reason to believe the Massachusetts Supreme Judicial Court would not follow

the logic and holdings of the Maine and Vermont highest courts and the United States Court of

Appeals for the Second Circuit on the issue presented in this case.  Indeed, there is substantial

basis for concluding that the Massachusetts Supreme Judicial Court would enforce a waiver of

subrogation clause even if cast in terms of gross negligence, willful and wanton misconduct, and

violations of building and plumbing codes, as alleged here by Westchester.  In particular, in

Cyran v. Ware, 413 Mass. 452, 597 N.E.2d 1352 (1992), the Massachusetts Supreme Judicial

Court held that a plaintiff whose negligence action is barred as a matter of law cannot avoid a

Rule 12(b)(6) motion to dismiss by alleging gross negligence.  In Cyran, plaintiff homeowners

alleged in an amended complaint that the municipal fire department had been grossly negligent

in fighting a fire at plaintiffs' home, leading to a loss of real and personal property.  Id. at 452,

597 N.E.2d at 1352.  Affirming the trial court's dismissal of the suit on the basis that it was

barred by the "public duty" rule, the Supreme Judicial Court rejected the plaintiffs' claim that the

action should survive because the amended complaint alleged gross, rather than ordinary,

negligence.  Specifically, the Court explained that:

> The allegation in the plaintiffs' complaint that the firefighters
> committed gross negligence does not change this conclusion.
> There is no reference in [M.]G. L. c. 258, § 2, to gross negligence
> as a basis for liability.  A public duty rule which excludes liability
> for ordinary negligence also must logically exclude it for gross
> negligence.  Were the rule otherwise, every complaint involving
> negligence in fire protection would allege gross negligence to
> avoid dismissal, a situation which would, in effect, swallow the
> rule and encourage unpredictable results based on reactions by fact
> finders to which side of "the fuzzy line separating gross from
> simple negligence" given conduct might fall.

Id. at 456 n.3, 597 N.E.2d at 1354 n.3 (citation omitted).

Similarly, Westchester should not be permitted to render the waiver of subrogation clause

unenforceable simply by claiming that the property damage for which it seeks subrogation

recovery was the result of a contractor's alleged failure to comply with governmental building

and plumbing codes.  Courts in other jurisdictions have held that, in view of the substantial

economic benefits of waiver of subrogation provisions, and in particular the assurance given that

damage to the project property during the construction will be remedied without protracted

litigation, there are no compelling public policy reasons not to enforce the clauses even as to

claims based on alleged code violations.  See Federal Ins. Co., 2004 U.S. Dist. LEXIS at *17.

Just as Massachusetts law does not permit Westchester to dress up its claim as one for gross negligence and willful wanton misconduct to evade the bar of the waiver of subrogation clause, so too does Massachusetts law not allow Westchester to trump the waiver clause by asserting violations of building and plumbing codes.[4]

## CONCLUSION

Jurys Doyle, Suffolk and DJ Plumbing contractually agreed to shift and allocate responsibility for any property damage associated with the Jurys Hotel project to Westchester, the builder's risk insurer for the project. Underlying this risk allocation program was the parties' desire to "eliminate[] the need for lawsuits, and yet protect[] the contracting parties from loss by bringing all property damage under the all risks builder's property insurance." See Haemonetics, 23 Mass. App. Ct. at 258, 501 N.E.2d at 526. Because the waiver of subrogation clause at issue here is not an exculpatory clause, but rather a contractual mechanism to allocate risk and assure prompt compensation to the injured party, it is enforceable as a matter of Massachusetts law and public policy to bar both ordinary negligence claims as well as Westchester's claim against DJ Plumbing for alleged gross negligence, recklessness, willful and wanton misconduct, and violations of building and plumbing codes.

---

[4]    The Massachusetts Supreme Judicial Court held in Henry v. Mansfield Beauty Academy, Inc., 353 Mass. 507, 233 N.E.2d 22 (1968), that a party may not by contract exempt others for liability for harm arising from violations of statutory duties. The Henry decision involved a defendant's attempt to defeat a personal injury claim by invoking an exculpatory clause in a lease agreement. Henry did not present a situation, as at issue here, where the parties to commercial construction contracts have bargained to allocate all of the risk of damage to the construction property to a builder's risk insurer that is required to remedy any damage to the property during the project. Most important, the Henry case involved a claim for personal injury for which the plaintiff would have been deprived of any compensation had the waiver been held enforceable.

For the foregoing reasons, DJ Plumbing respectfully requests that this Court dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

DJ PLUMBING & HEATING, INC.,

By its attorneys,

/s/ Kurt M. Mullen
John Stadler, BBO No. 548485
jstadler@nixonpeabody.com
Kurt M. Mullen BBO No. 651954
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110-2131
(617) 345-1000

Dated:  June 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 15, 2006.

/s/ Kurt M. Mullen
Kurt M. Mullen

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
SUFFOLK CONSTRUCTION COMPANY, )
INC.,                         )
                              )
     Plaintiff,               )
                              )
          v.                  )          03-CV-10689-MEL
                              )
SUPERIOR FIRE PROTECTION      )
INSTALLATION COMPANY, LLC,    )
                              )
     Defendant/Third-Party    )
     Plaintiff,               )
                              )
          v.                  )
                              )
THE RELIABLE AUTOMATIC        )
SPRINKLER COMPANY, INC.,          )
                              )
                              )
          Defendant.              )
_____)
```

MEMORANDUM AND ORDER

LASKER, D.J.

     Suffolk Construction Company, Inc. ("Suffolk"), a

Massachusetts company, sues Superior Fire Protection

Installation Company ("Superior"), a Connecticut company,

under diversity jurisdiction for damages resulting from an

allegedly faulty sprinkler system.

     Suffolk's complaint alleges the following: Suffolk

1

was hired as the general contractor to construct the Marriott Crown Colony Hotel (the "Project") in Quincy, Massachusetts. Suffolk entered into a subcontract with Superior to furnish and install a fire protection system.  On April 20, 2001, testing was performed on the fire protection system.  During the testing, a sprinkler head located in the ceiling of the fire command center discharged water, causing extensive damage to the property.

At the time of the incident, Suffolk was insured by the Allianz Insurance Company ("Allianz").  Allianz paid Suffolk $344,300 for claims arising from the incident. Suffolk brings this action in subrogation, and Allianz is the real party in interest.

Suffolk sues for negligence (Count I), breach of contract (Count II), breach of express warranty (Count III), and breach of implied warranty (Count IV).  Superior brings a third-party complaint against the Reliable Automatic Sprinkler Co., Inc. ("Reliable"), a New York company, for indemnification (Count I), breach of contract/breach of warranty (Count II), and negligence/contribution (Count IV).

Superior moves for judgment on the pleadings, and/or for summary judgment.  The motion is GRANTED.

2

<u>I.</u>

The dispute between the parties centers on whether Suffolk contractually waived its right to bring claims against Superior.  The General Contract executed by Suffolk (the "Contractor") and Mark Development Company (the "Owner") provides, in pertinent part:

> 11.4.47.  Waivers of Subrogation.  The Owner and Contractor <u>waive all rights against (1) each other and any of their subcontractors</u>, <u>agents and employees, each of the other,</u> and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees <u>for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work,</u> except such rights as they have to proceeds of such insurance held by the Owner as fiduciary.  The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of the other parties enumerated herein.  The policies shall provide such waivers of subrogation by endorsement or otherwise.  A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the

> person or entity had an insurable interest
> in the property damaged.

General Contract, Exh. A. to Def.'s Statement of Material

Facts, § 11.4.7 (emphasis added).  The Subcontract, which

governs the agreement between Suffolk and Superior, does not

include a waiver of subrogation.  However, it provides that:

"[e]xcept as expressly modified in this Subcontract, the

Contract Documents form a part of the Subcontract as fully as

if reproduced in this Subcontract."  Subcontract, Exh. A to

Faulkner Aff., Art. 1.  Superior asserts (and Suffolk has not

disputed) that the Subcontract has not been expressly modified

in any respect regarding subrogation.

Superior argues that the Waivers of Subrogation

provision in the General Contract bars the present claim.

Suffolk urges an alternative interpretation of the provision:

that Suffolk waived its rights against the Owner and the

Owner's subcontractors, but not against its own

subcontractors.  Suffolk places particular emphasis on four

words in the first sentence of the provision: "The Owner and

Contractor waive all rights against (1) each other and any of

their subcontractors, agents and employees, each of the other

. . . ." General Contract, § 11.4.7 (emphasis added).  These

final four words, Suffolk contends, limit the scope of the

provision and allow the present claim to be brought against

4

Superior.

The phrase at issue is standard language utilized by the American Institute of Architects ("AIA"), and regularly appears in construction contracts.  However, despite a considerable body of case law interpreting such contracts, the question raised by the present case is a matter of first impression.[1]  The only relevant judicial interpretation of the provision's language can be found in Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau, in which the Second Circuit summarized a provision identical to the one at issue here:

> Paragraph 11.3.6 of the General Conditions
> of the Contract for Construction added a
> standard "waiver of subrogation" provision,
> which provided that [the owner] and [the

---

[1]  In the usual case, the insured party is the property owner rather than the general contractor; thus, the plaintiff brings a claim not against its own subcontractor but against the subcontractor of the other party – a claim unambiguously barred by the Waivers of Subrogation provision.  See, e.g., Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau, 786 F.2d 101 (2d Cir. 1986); See also, Fortin v. Nebel Heating Corp., 12 Mass. App. Ct. 1006, 429 N.E.2d 363 (1981) (observing in dictum that had the contract included the standard AIA language, insured owner would have waived negligence claims against subcontractor).  In Richmond Steel,Inc. v. Legal and General Assurance Society, Ltd., 821 F. Supp. 793 (D.P.R. 1993), an insured general contractor brought a claim on behalf of its insurance company against its own subcontractor; however, in contrast to the present case, in Richmond Steel the subcontract itself included the AIA language, with the general contractor and subcontractor explicitly waiving their rights against each other.

general contractor] waived all claims
against each other and, inter alia, <u>all</u>
<u>subcontractors</u> "to the extent covered by
insurance obtained pursuant to this
Paragraph 11.3.

<u>Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau</u>,
786 F.2d 101, 104 (2d Cir. 1986) (emphasis added).  The
particular words at issue here were not disputed in <u>Tokio</u>
<u>Marine</u>, and thus the court's interpretation, insofar as it
relates to claims by an insured party against its own
subcontractors, must be treated as dictum.  Nevertheless, it
may be noted that the court, with no hesitation, read the
phrase as barring claims against <u>all</u> subcontractors.

A common-sense reading of the provision as a whole
supports this interpretation.  Although it may be possible for
a property owner to have its own subcontractors, the far more
common scenario is for subcontractors to be hired by a general
contractor.  Here, where the general contractor was the party
obligated to obtain insurance, the inclusion of subcontractors
in the waiver provision would be virtually meaningless if it
did not relate to claims by the general contractor.
Furthermore, the provision is extremely broad in scope,
obligating the Owner and Contractor to waive their rights not
only against each other and the subcontractors, agents, and
employees but also against "the Architect, Architect's

6

consultants, separate contractors described in Article 6 . . . and any of their subcontractors, sub-subcontractors, agents and employees." It also obligates the parties to require the "Architect, Architect's consultants, separate contractors described in Article 6 . . . and the subcontractors, sub-subcontractors, agents and employees of any of them," to waive claims against all of the various parties enumerated in the provision. There is no reason to conclude that, in such a broadly-worded waiver, claims by the general contractor against its own subcontractors should be uniquely exempt.

Furthermore, the General Contract, taken as a whole, evinces an intent to place any risk of loss on insurance rather than on the assets of the parties. Under the General Contract, the General Contractor (Suffolk) was obligated to obtain "all risks" insurance for the Work, and to "effect insurance which will protect the interests of himself, his subcontractors and the sub-subcontractors in the Work." Ex. D to Def.'s Reply Brief, § B.1. Superior, in contrast, was required under the Subcontract to obtain coverage only for "Claims for damages, other than to the Work itself because of injury or destruction from tangible property, including the loss of use resulting therefrom." Subcontract § 8.9.1.5

7

(emphasis added).[2]  Courts have cited contractual obligations
to obtain all risks insurance as evidence of an intent to
waive subrogation.  See Richmond Steel, Inc. v. Legal and
General Assurance Society, Ltd., 821 F. Supp. 793, 801 (D.P.R.
1993) ("An obligation on [a party] to get insurance means that
the parties would look to that insurance for
protection")(citation omitted); Tokio Fire & Marine, 786 F.2d
at 105 (noting that the purpose of a waiver of subrogation
provision is to require one of the parties to the contract to
provide property insurance for all of the parties)(citation
omitted).

In this light, the reasonable interpretation of the
disputed phrase is that the waiver of subrogation was intended
to extend to each party's own subcontractors.  Hence,

_____

[2]  Although the Subcontract requires Superior to indemnify
Suffolk, no conflict arises between the indemnification and
insurance provisions.  The waivers of subrogation provision
provides that

> [a] waiver of subrogation shall be
> effective as to a person or entity even
> though that person or entity would
> otherwise have a duty of indemnification,
> contractual or otherwise, did not pay the
> insurance premium directly or indirectly,
> and whether or not the person or entity had
> an insurable interest in the property
> damaged.

General Contract § 11.4.7.

Suffolk's claim against Superior has been contractually
waived.

Accordingly, the Motion is GRANTED, and judgment on
the pleadings is granted to Superior, dismissing the complaint
as to it.

It is so ordered.

Dated:     April 13, 2003
           Boston, Massachusetts     ___/s/ Morris E. Lasker___
                                           U.S.D.J.

9