IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTCHESTER FIRE INSURANCE COMPANY : 
as subrogee of JURYS DOYLE HOTEL GROUP    : 
USA, LTD.  d/b/a JURYS DOYLE HOTEL, LLC   :   CIVIL ACTION NO. 05-11375-MLW
                                                                            :
                        Plaintiff                   :
                                                                            :
      v.                                              :
                                                                            :
DJ PLUMBING & HEATING, INC.              :
                                                                            :
                   Defendant             :

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Westchester Fire Insurance Company (hereinafter "Westchester"), as subrogee of Jurys Doyle Hotel Group USA, LTD d/b/a Jurys Doyle Hotel, LLC, by and through its undersigned counsel, hereby responds in opposition to the Motion to Dismiss filed by Defendant, DJ Plumbing & Heating, Inc. (hereinafter "DJ Plumbing"), pursuant to FED. R. CIV. P. 12(b)(6).

For the reasons more fully set forth in Westchester's Memorandum of Law, Westchester respectfully submits that DJ Plumbing is not entitled to the relief sought by its Motion to Dismiss.  DJ Plumbing's motion is substantively without merit.  A motion to dismiss for failure to state a claim may only be granted if there are no facts in support of plaintiff's claim under which the plaintiff would be entitled to relief.  Baldwin v. Tessier, 05-10898-DPW, 2006 U.S. Dist. LEXIS 12535 (D. Mass. March 22, 2006).  Westchester's First Amended Complaint properly alleged a cause of action upon which relief can be granted.  Accordingly, DJ Plumbing's motion pursuant to FED. R. CIV. P. 12(b)(6) should be denied.

WHEREFORE, Westchester respectfully requests that DJ Plumbing's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) be denied.

Respectfully submitted,

WESTCHESTER FIRE INS. CO.
JURYS DOYLE HOTEL GROUP USA, LTD.
D/B/A JURYS DOYLE HOTEL, LLC

By their attorneys,

_____/s/ Sean P. O'Donnell_____
Kevin J. Hughes, Esquire (Admitted Pro Hac Vice)
Sean P. O'Donnell, Esquire (Admitted Pro Hac Vice)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2089
Facsimile:  (215) 665-2013

PATRICK J. LOFTUS, III
9 Park Street
Boston, MA 02127
617-723-7770
BBO# 303310

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTCHESTER FIRE INSURANCE COMPANY : 
as subrogee of JURYS DOYLE HOTEL GROUP :
USA, LTD.  d/b/a JURYS DOYLE HOTEL, LLC :  CIVIL ACTION NO. 05-11375-MLW
                                                 :
                      Plaintiff           :
                                                     :
       v.                                      :
                                                     :
DJ PLUMBING & HEATING, INC.            :
                                                     :
                    Defendant      :

**PLAINTIFF'S MEMORANDUM OF LAW  IN OPPOSITION TO
DEFENDANT DJ PLUMBING & HEATING, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

         Plaintiff, Westchester Fire Insurance Company (hereinafter "Westchester"), by

and through its counsel, submits this Memorandum of Law in Opposition to the Motion to

Dismiss of Defendant, DJ Plumbing & Heating, Inc. (hereinafter "DJ Plumbing").

**I.     INTRODUCTION**

         On May 12, 2004, thousands of  gallons of water flooded into the basement and sub-

basement of the newly renovated Jurys Doyle Hotel located at 154 Berkeley Street in Boston,

Massachusetts.  DJ Plumbing was the plumbing subcontractor responsible for designing and

installing the water supply system for the hotel.  Following an investigation, it was determined

that the massive water leak was the result of DJ Plumbing's egregiously poor workmanship in

designing and the installing water supply piping from the Boston municipal water system to the

hotel's plumbing system.  Plaintiff's plumbing and engineering experts determined that DJ

Plumbing failed to connect the building's main water supply pipe which ran from the city's

water main into the hotel's sub-basement.  As a result, when the main water valve was opened,

thousands of gallons of water were pumped directly into the sub-basement and basement of  the

building.  The water filled the sub-basement and the basement, damaging the building' electrical

system and causing in excess of $1.3 million in property damage. Westchester insured the building and paid Jurys Doyle the fair, reasonable and necessary cost to repair the building. Pursuant to the terms of the insurance policy Westchester issued to Jurys Doyle, and pursuant to Massachusetts law, Westchester is subrogated to Jurys Doyle's rights to pursue claims against the parties responsible for causing the damage.

Based on plaintiff's investigation, the work performed by DJ Plumbing demonstrated a flagrant disregard for basic plumbing industry standards, customs and practices and violated applicable provisions of the Massachusetts Plumbing Code. The workmanship exhibited a level of incompetence so extreme that it could not have been performed by a licensed and skilled plumber. The workmanship was so manifestly improper that counsel for defendant DJ Plumbing suggested that the failure was actually caused by sabotage by unidentified third parties.

The Massachusetts State Plumbing Code, and the licensing requirements it imposes on plumbers, reflects the public policy of the Commonwealth of Massachusetts to protect its citizens and their property from injuries arising out of a failure to perform plumbing work properly and to use properly skilled and trained workers to perform the work. Defendant DJ Plumbing filed this Motion to Dismiss seeking immunity from liability for its code violations and grossly negligent and willful and wanton misconduct based on an exculpatory clause in the construction contract between plaintiff's insured, Jurys Doyle Hotel Group USA, Ltd. d/b/a Jurys Doyle Hotel, LLC (hereinafter "Jurys Doyle") and the general contractor for the renovation project, Suffolk Construction. For the reasons set forth more fully in the analysis section of this brief, plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

## II.     PRELIMINARY STATEMENT

DJ Plumbing brings this motion to dismiss Westchester's First Amended Complaint on the basis that Westchester has failed to state a viable claim for relief. DJ Plumbing

asserts that a waiver of subrogation in the prime construction contract between Jurys Doyle and Suffolk Construction precludes all potential claims by Westchester claims against contractors or subcontractors involved in the hotel construction project.  The Massachusetts courts have not yet addressed the effect of waivers of subrogation against claims of statutory violations and gross negligence.  However, Massachusetts law regarding code violations and gross negligence contradicts DJ Plumbing's arguments.  In its motion, DJ Plumbing asserts that waivers of subrogation are distinguishable from exculpatory clauses and, as such, bar all claims for damage arising from *any* conduct by a contractor or subcontractor, including grossly negligent, reckless, wanton and willful, and even intentional conduct, as well as violations of safety codes.  DJ Plumbing's arguments are not only without any basis in, but actually run contrary to established Massachusetts law.  The meager support DJ Plumbing finds for its arguments come from two out-of-state decisions, both of which are distinguishable from the case at hand.

DJ Plumbing initially contends, without citing any Massachusetts cases, that under law, waivers of subrogation bar *all* claims against contractors or subcontractors.  This unsupported statement ignores the overwhelming majority of cases in Massachusetts dealing with code violations and gross negligence, which have repeatedly held that it is contrary to the public policy of Massachusetts to allow individuals to escape liability for their code violations or grossly negligent acts.

DJ Plumbing is asking this Court to release it from liability for damages caused by its own grossly negligent, reckless, wanton and willful conduct, and statutory violations, while, in the same breath, attempting to argue that waivers of subrogation are not exculpatory clauses because they merely attempt to allocate risk.  DJ Plumbing's Memorandum of Law ironically fails to address the fact that waivers of subrogation purport to allocate risk by

*exculpating* contractors and subcontractors of any and all liability for their actions.  It is this facet

of exculpatory provisions with which Massachusetts public policy is primarily concerned, and

precedent is clear that parties may not contractually release themselves from liability for code

violations and gross negligence.  The argument further ignores the fact that if DJ Plumbing is

held accountable for its acts, OneBeacon Insurance Company, DJ Plumbing's commercial

general liability insurer, will indemnify DJ Plumbing against any adverse judgment.

        Furthermore, DJ Plumbing contends that allowing claims for grossly negligent,

reckless, wanton and willful conduct, and statutory violations to survive the bar of waiver would

deprive DJ Plumbing of its benefit of the bargain.  using DJ Plumbing's analysis, even a

contractor that *intentionally* damaged property during a construction project would be relieved of

liability for any damage it caused.  This is contrary to the public policy of Massachusetts.

Moreover, this convoluted argument ignores the owner's entitlement to its benefit of the bargain,

which is a safe and properly constructed building built in compliance with the contract.  Here, DJ

Plumbing breached its contract and misrepresented material facts when entering into the contract

and therefore abdicated any benefit of the bargain to which it may formerly have been entitled.

        DJ Plumbing cannot be allowed to escape liability for damages resulting from its

disregard of basic industry standards, customs, and statutory duties, as it is attempting to do in

this motion.  In order to comport with Massachusetts precedent and public policy, this Court

must deny DJ Plumbing's Motion to Dismiss.

**III.**    <u>**ARGUMENT**</u>

    **A.**    **Standard for Motion to Dismiss.**

        A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) may be granted only if

there are no facts in support of plaintiff's claim under which the plaintiff would be entitled to

relief.  Baldwin v. Tessier, 05-10898-DPW, 2006 U.S. Dist. LEXIS 12535 (D. Mass. March 22,

2006) (citing McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005)).

For the purposes of reviewing a motion to dismiss, the court must "assume the truth of all well-

pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of

liability."  Id. (citing Redondo-Borges v. U.S. Dept. Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir.

2005)).  In order to survive a motion to dismiss, a complaint must merely contain a short and

plain statement demonstrating that plaintiff is entitled to relief.  Id. (citing Redondo-Borges, 421

F.3d at 5).  Even if Westchester's complaint survives this motion to dismiss, DJ Plumbing is not

left without further recourse as Westchester still bears the burden of establishing the factual

allegations asserted in the complaint and must demonstrate sufficient evidence of record to

overcome a motion for summary judgment.

> **B.  Waivers of Subrogation Do Not Bar Claims for Statutory Violations or Gross Negligence.**
>
>> **1.  A Waiver of Subrogation is an Exculpatory Provision.**

Massachusetts case law and public policy dictate that provisions releasing a party

from liability for its wrongful acts are treated as exculpatory.  Exculpatory provisions are

contractual provisions which "release[] a party from liability for his wrongful acts."  Sylvia v.

Johnson, 691 N.E.2d 608, 609 (Mass. App. Ct. 1998).  A waiver of subrogation attempts to

"avoid[] disruption and disputes among the parties to a project" *by relieving contracting parties*

*of any liability for their own wrongful acts* and shifting that liability onto an insurer.

Haemonetics Corp. v. Brophy & Phillips Co., Inc., 501 N.E.2d 524, 526 (Mass. App. Ct. 1986)

(citing Tokio Marine & Fire Co., Ltd. v. Employers Ins. of Wasau, 786 F.2d 101, 104 (2d Cir.

1986)).  Therefore, waivers of subrogation are, by definition, exculpatory.

Furthermore, the public policy of Massachusetts dictates that waivers of subrogation be construed as exculpatory clauses because they allow parties to act without fear of liability or reprisal for any losses resulting from their actions and retract any incentive to exercise even the most minimal degree of care. See Gillespie v. Papale, 541 F.Supp. 1042 (D. Mass. 1982); Zavras v. Capeway Rovers Motorcycle Club, Inc., 687 N.E.2d 1263 (Mass. App. Ct. 1997); Travelers Indem. Co. of Ill. v. TGI Friday's, Inc., No. 98-2777-C (Suffolk County Super. Ct. Jan. 28, 2000). Thus, the *effect* of a waiver of subrogation, which DJ Plumbing fails to address, is to release a culpable party from liability - the same as an exculpatory clause.

Courts within this jurisdiction, as well as persuasive decisions outside Massachusetts, have recognized AIA waivers of subrogation as exculpatory clauses. The Massachusetts Appeals Court, when discussing AIA waivers of subrogation, recognized that "such provisions 'must be construed as providing mutual *exculpation* to the bargaining parties who (between themselves) . . . have agreed to look solely to the insurance and not to . . . the opposing party.'" Fortin v. Nebel Heating Corp., 429 N.E.2d 363, 364 (Mass. App. Ct. 1981) (citing Brodsky v. Princemont Constr. Co., 354 A.2d 440 (Md. Ct. Spec. App. 1976)) (emphasis added). Furthermore, the reasoning of the highest Vermont court, in a decision which Defendant notably urges this Court to follow, also recognizes an AIA waiver of subrogation to be exculpatory: "such clauses are intended to allows [sic] the parties 'to *exculpate* each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance.'" Behr v. Hook, 787 A.2d 499, 503 (Vt. 2001) (internal citations omitted) (emphasis added); (Def.'s Mem. of Law at 17).

Other courts have explicitly held that a waiver of subrogation clause is an exculpatory provision. See Federal Ins. Co. v. Richard I. Rubin & Co., Inc., 92-4177, 1993 WL

489771 (E.D. Pa. Nov. 15, 1993).  In Richard I. Rubin & Co., Inc., the court relied on the Third

Circuit's reasoning that the requirement of an owner to insure work without subrogation rights

effectively insulates contractors or subcontractors "from liability[,] regardless of culpability."  Id.

at *4 (citing PPG Indus., Inc. v. Ashland Oil Co. – Thomas Petroleum Transit Div., 592 F.2d

138, 145 (3d Cir. 1978)).  Therefore, waivers of subrogation are clearly exculpatory provisions.

### 2.    Waivers of Subrogation Do Not Bar Claims for Violations of Statutory Duties in Massachusetts.

Because Westchester has properly alleged that DJ Plumbing failed to comply with

applicable building and safety ordinances, rules, regulations, building codes and plumbing codes,

Westchester's claim is not subject to the waiver and may proceed to be adjudicated upon its

merits.  (First Am. Compl. ¶15).  The Supreme Judicial Court of Massachusetts has held that a

contractual exculpatory clause cannot shield a party from liability when that party has violated a

statutory duty.  Henry v. Mansfield Beauty Acad., Inc., 233 N.E.2d 22, 24 (Mass. 1968).  In

Henry, the plaintiff was injured by a student of the Academy while receiving a permanent; the

plaintiff had signed an agreement releasing the Academy from liability before receiving the

treatment.  Id.  Nonetheless, the Academy had failed to properly register the student with the

state in accordance with state code.  Id.  The court held that the code violation alone was enough

to preclude the defendant from receiving the benefit of the release provision.  Id. at  24.  Several

more recent Massachusetts decisions have reiterated this principle.

In Fed. Ins. Co. v. Cogswell, Judge Lasker of the District Court of Massachusetts

held that claims for damages resulting from alleged statutory violations were not barred as a

matter of law by a waiver of subrogation provision.  03-CV-10920 (USDC Mass. Feb. 15, 2005).

In that case, because there were specific allegations that defendant was negligent in meeting

National Fire Protection Association inspection standards, public policy precluded the defendant

"from exculpating itself from liability for negligence in a task that affects the public interest and safety." Id. Similarly, in TGI Friday's, Inc., the court denied a motion for summary judgment because of a factual dispute regarding whether there had been violations of the fire safety code. No. 98-2777-C. Moreover, the Massachusetts Appeals Court has noted that even where mere negligence is alleged, Massachusetts case law cautions against enforcing releases from liability for public policy reasons, and in circumstances such as violations of statutory duty, declines to do so. Zavras, 687 N.E.2d at 1265 (citing Henry, 233 N.E.2d 22). Thus, because Westchester has properly alleged that DJ Plumbing violated applicable building and safety ordinances, rules, regulations, building codes and plumbing codes, and because this court must accept all well pled allegations as true, these claims are not barred by the waiver of subrogation.

### 3.     Exculpatory Provisions, Including Waivers of Subrogation, Do Not Bar Claims for Gross Negligence in Massachusetts.

Massachusetts case law mandates that Plaintiff's claim for gross negligence is not barred by an exculpatory waiver of subrogation. By Defendant's own admission, the "Massachusetts Supreme Judicial Court has not yet squarely decided whether waiver of subrogation clauses in construction contracts bar claims for gross negligence, recklessness, and wanton and willful misconduct, as opposed to ordinary negligence claims." (Def.'s Mem. of Law at 9). Defendant devotes two and one half pages of its Memorandum of Law to establishing that waivers of subrogation are enforceable in Massachusetts. (Def.'s Mem. of Law at 11-13). Westchester, however, does not dispute that such waivers are enforceable against claims of ordinary negligence - but ordinary negligence is not the issue here. Massachusetts law is clear that parties may not exculpate themselves from their own gross negligence. See TGI Friday's, Inc., No. 98-2777-C. This consistent approach to exculpatory clauses in Massachusetts dictates the same application to waivers of subrogation. In Gillespie, the Massachusetts district court

interpreting Massachusetts law held that "while a release [from liability] is effective to bar a suit for ordinary negligence, it does not bar suits for *gross* negligence." 541 F.Supp. at 1046 (emphasis added). The Massachusetts Appeals Court has also held that "while a party may contract against liability for harm caused by its negligence, it may not do so with respect to its *gross* negligence." <u>Zavras</u>, 687 N.E.2d 1263 (emphasis added).

      Defendant contends that waivers of subrogation should bar all claims for grossly negligent, reckless, wanton, and willful conduct because such waivers are "common features of commercial construction contracts" and serve "essential purposes for the construction industry." (Def.'s Mem. of Law at 14). Defendant further contends that "Massachusetts precedent strongly suggests that enforcement of the waiver clause to bar Westchester's claims in this action would be consistent with . . . Massachusetts law and policy," but does not cite a single Massachusetts case in support of this contention. Instead, Defendant relies solely on decisions by the Maine Supreme Judicial Court and the Vermont Supreme Court to support the proposition that waivers of subrogation are enforceable as a matter of public policy, even against claims of gross negligence, because the waivers are not exculpatory in nature. (Def.'s Mem. of Law at 15); <u>see</u> <u>Reliance Nat'l Indem. v. Knowles Indus. Services Corp.</u>, 868 A.2d 220 (Me. 2002); <u>Behr</u>, 787 A.2d 499. These cases, however, are distinguishable from the case at hand.

      The reasoning of the court in <u>Knowles Indus. Services Corp.</u> is unpersuasive because the Maine court was subject to precedential constraints not present in Massachusetts. There, despite a waiver of subrogation clause, a church's insurer brought subrogation claims for willful and wanton misconduct against a subcontractor that caused a fire which destroyed the church. <u>Knowles Indus. Services Corp.</u>, 868 A.2d 220. The court held that waivers of subrogation were enforceable, even against claims of gross negligence; however, the court's

holding was constrained by Maine case law. Id. The court noted the split among courts

adjudicating factually similar claims and, significantly, noted that allowing claims of gross

negligence to escape the bar of the waiver requires a court to recognize varying degrees of

negligence. Id. at 226. Maine, however, "rejected the concept of gradations of negligence" long

ago. Id. at 227 (citing Cratty v. Samuel Aceto & Co., 116 A.2d 623, 627 (1955)). Conversely,

Massachusetts has embraced the concept of gross negligence. In Altman v. Aronson, the

Supreme Judicial Court distinguished gross negligence from ordinary negligence by describing it

as "very great negligence, or the absence of slight diligence, or the want of even scant care."

Zavras, 687 N.E.2d at 1265-66 (citing Altman v. Aronson, 121 N.E. 505 (Mass. 1919)). The

concept of gross negligence survives in Massachusetts today. Gillespie, 541 F. Supp. at 1046

(citing Markarian v. Simonian, 369 N.E.2d 718, 721 (Mass. 1977)). Thus, the reasoning of the

Maine court in enforcing the waiver of subrogation against claims of gross negligence does not

apply in Massachusetts.

   Contrary to Defendant's assertions, the Vermont Supreme Court's holding in

Behr does not stand for the proposition that claims of gross negligence are barred by waivers of

subrogation for public policy reasons. 787 A.2d 499; (Def.'s Mem. of Law at 17). In Behr, a

subrogating insurer alleged that a subcontractor caused a fire by leaving a propane heater burning

unattended. The contracts at issue were standard AIA contracts. Id. Significantly, the court

noted that *plaintiffs waived their claim for gross negligence* when they failed to renew the claim

of gross negligence in their response to defendant's motion for summary judgment and when

they stated at the summary judgment hearing that there were no such claims. Id. at 504, n.2. The

court's holding painstakingly differentiates that "*in the context of this case*, the instant waiver-of-

subrogation provision does not violate public policy," and clearly points to the conclusion that,

had the allegations of gross negligence been maintained, public policy would have dictated a different result. Id. at 504 (emphasis added).

Defendant also cites to, but does not discuss, a Second Circuit opinion applying New York law, which held that parties may insure themselves against liability for their own gross negligence. See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73 (2d Cir. 2005). Nonetheless, this clearly does not comport with Massachusetts public policy.

Substantial case law from other jurisdictions supports the proposition that waivers of subrogation do not bar claims for gross negligence, despite Defendant's unsupported statement that "the overwhelming majority" of courts across the country have rejected this argument. See (Def.'s Mem. of Law. at 14-15). For example, in Colonial Properties Realty Ltd. P'ship v. Lowder Constr. Co., Inc., the court held that a waiver of subrogation clause within an AIA contract did not bar claims for gross negligence. 567 S.E.2d 389 (Ga. Ct. App. 2002). In so holding, the court determined that a waiver of subrogation was an exculpatory clause and that "exculpatory clauses do not relieve a party from liability for acts of gross negligence or willful or wanton conduct." Id. at 394 (internal citations omitted). Similarly, the Ninth Circuit has held that parties should not be able to shield themselves contractually from liability for gross negligence. Royal Ins. Co. of Am. v. Southwest Marine, 194 F.3d 1009 (9th Cir. 1999). The court anchored its holding in public policy: "[a] term exempting a party from liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." Id. at 1016 (citing RESTATEMENT (SECOND) CONTRACTS § 195(1) (1979)). Additionally, a federal district court applying Texas law also recently recognized that AIA waivers of subrogation do not bar claims for gross negligence. See Royal Surplus Lines Ins. Co. v. Weis Builders, Inc. 04-440-C, 2006 U.S. Dist. LEXIS 16316 (W.D. Ky. Apr. 3, 2006). Therefore, it is clear from both

Massachusetts case law and persuasive decisions from other jurisdictions that waivers of

subrogation do not bar claims for gross negligence.

    **4.**    **Public Policy Prohibits Enforcement of Waivers of Subrogation**
                **Against Claims of Gross Negligence and Statutory Violations**

          Under DJ Plumbing's analysis, waivers of subrogation allocate financial risk to a

builder's risk insurer while, at the same time, releasing contractors and sub-contractors from *any*

responsibility for their own actions.  Because the parties transferring the risk will be held

harmless for all losses resulting from their own negligence, there is no incentive for those parties

to exercise even a minimal degree of care.  See Richard I. Rubin & Co., Inc., 1993 WL 489771

(citing Warren City Lines, Inc., 287 A.2d 149).  If this Court accepts Defendant's arguments that

every loss, regardless of cause, should be covered by the waiver of subrogation, there is actually

a perverse disincentive for contractors to perform their services in accordance with even basic

standards of care.  Under such a construction, contractors would escape liability for damages

resulting from their own flagrant disregard of basic standards, damages resulting from willful

and wanton misconduct, and even from damages resulting from intentional acts.  In some

situations, it may actually benefit the contractor to sabotage its own work.  For example, if a

contractor wishes to evade its contractual obligations without breaching the contract or if the

contractor would like to extend the duration of the project, and get paid twice for the same work,

or if the contractor cut costs by hiring unlicensed workers, he could do so without fear of paying

for any of the damage resulting from this misconduct.

          The Pennsylvania Supreme Court has persuasively articulated that releasing

contractors from liability "creates a particularly dangerous situation for the public where (1) the

party transferring the risk is better able to prevent the loss or reduce the risk associated with the

loss, or (2) where the party to whom the risk has been transferred does not fully realize the

responsibility which it has received." Id. (citing Warren City Lines, Inc., 287 A.2d at 152).

These cautions are easily illustrated by the facts alleged here.   First, DJ Plumbing was the party

in the best position to prevent the loss or reduce the risk of loss arising from its plumbing work

in the Jurys Doyle Hotel because it was the party doing the work.  Without the threat of potential

liability for gross negligence or statutory violations, there is no incentive for DJ Plumbing to

exercise any degree of care in its work.  Second, because DJ Plumbing's actions were grossly

negligent and in violation of certain statutory duties, if Westchester is forced to insure damage

resulting from DJ Plumbing's actions, it would be paying for damage outside the scope of the

risk it originally contracted to insure.  Builders risk insurers assess projects and potential claims

arising out of ordinary negligence, but can not account for damages arising out of flagrant

disregard for industry standards or customs, gross negligence or willful and wanton misconduct.

Thus, sound public policy supports the argument that insurers should be able to assert

subrogation claims against subcontractors for gross negligence and violation of statutory duties

in order to give subcontractors an incentive to exercise a minimal degree of care in their work

and to allow insurers to properly evaluate the risk they are insuring.

     If waivers of subrogation are construed to bar claims for gross negligence and

violation of statutory duties, the resulting failure by contractors and subcontractors to exercise

even the most minimal degree of care in their work could potentially cause even *greater* delays

in construction than the litigation of such claims.  The facts at hand are illustrative of this

principle.  DJ Plumbing's gross negligence and failure to comply with statutory duties while

installing the water supply pipe at the Jurys Doyle Hotel resulted in severe damage and

destruction to the hotel.  The subsequent delay in the hotel's renovation could have been

prevented if DJ Plumbing had exercised some minimal degree of care or felt compelled to

comply with its statutory duties in the performance of its work.

  **C.**  **DJ Plumbing is Not Entitled to the Benefit of the Waiver of Subrogation Clause Because it Breached its Contract and Misrepresented Material Facts.**

    **1.**  **<u>DJ Plumbing is Not Entitled to Enforce the Waiver of Subrogation Against Westchester Because it Breached its Contract.</u>**

    DJ Plumbing breached its contractual obligation to perform its work in a good and

workmanlike manner and to the full satisfaction of the owner, as well as its obligation to perform

its work in compliance with all applicable laws, ordinances, rules, regulations and building

codes.  The relevant contract provisions are:

> **8.2  Performance of Work**.  The Subcontractor agrees to perform, obtain, furnish
> and provide at its expense all work, labor, materials, tools and equipment
> necessary to complete the work in a good and workmanlike manner, in
> accordance with contract documents to the full satisfaction of the Architect,
> Contractor and Owner . . . so as not to delay or otherwise interfere with or
> obstruct the work.

> **8.4  Statutory and Regulatory Compliance.** . . . If Subcontractor performs any
> work knowing it to be contrary to any applicable law, ordinance, rule, regulation,
> or building code, the Subcontractor shall assume full responsibility for and shall
> bear all costs attributable to that work.  The Subcontractor shall defend, indemnify
> and hold harmless the Contractor and Owner for any loss or damage resulting
> from such violation.

(Def.'s Mot. to Dismiss, Ex. 3 at WFI0876).  Because this Court must accept all well pled

allegations as true and because Plaintiff has properly alleged conduct in violation of these

provisions of the contract, there is no question that for purposes of this motion DJ Plumbing

breached its contractual obligations and is liable for the resulting damage.

A Massachusetts court recently held that one party may assert substantial non-

performance of a condition precedent "as a defense to any proceeding against it on the

[contract]."  Coral Sys. v. Lucent Technologies, Inc., 2001-01914, 2005 Mass. Super. LEXIS 94,

at *14 (Feb. 25, 2005) (citing United Nat'l Indem. Co. v. Sangiuliano, 119 A.2d 35, 37 (N.J. Sup.

Ct. 1955)).  Similarly, the court further explained that a provision may be a condition precedent

"if the nature of the agreement or the purpose of the provision at issue supports the conclusion

that one party's liability is expressly conditioned upon the other party's required conduct."  Id. at

*14-15 (citing United Nat'l Indemnity Co., 119 A.2d at 39).  Here, the contractual provisions at

issue are clearly conditions precedent because Jurys Doyle's financial liability to DJ Plumbing is

expressly conditioned upon DJ Plumbing's performance of the conditions.  Therefore, it logically

follows that DJ Plumbing's substantial non-performance of these conditions precedent may be

asserted as a defense to DJ Plumbing's insistence on the enforcement of the waiver of

subrogation.

> **2.     The Subcontract Between Suffolk Construction and DJ Plumbing,
> Including The Waiver of Subrogation Clause Which it Purports to
> Incorporate by Reference, is Null and Void Because DJ Plumbing
> Misrepresented Material Facts.**

DJ Plumbing misrepresented material facts when it entered into the construction

subcontract.  Misrepresentation is an affirmative defense to enforcement of a waiver of

subrogation.  In Knowles Indus. Services Corp., a decision Defendant urges this Court to follow,

the court recognized misrepresentation as an affirmative defense to enforcement of a waiver of

subrogation.  868 A.2d at 224.  Although an assertion of misrepresentation did not survive there

because the plaintiff failed to make a prima facie showing of misrepresentation, the court noted

that the question of whether the defendant had misrepresented its qualifications and intentions was material with regard to enforcement of the waiver.  Id.

Plaintiff Westchester, has made a prima facie showing of misrepresentation under Massachusetts law.  In order to establish misrepresentation in Massachusetts, plaintiff must allege (1) a false statement of (2) material (3) fact made (4) to induce the plaintiff to act and (5) reasonably relied upon by the plaintiff to his detriment.  Rodi v. S. New England Sch.of Law, 389 F.3d 5, 13 (1st Cir. 2004) (citing Zimmerman v. Kent, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991)).  Furthermore, a plaintiff need not assert intent to deceive, nor knowledge of the falsity of the statement to establish misrepresentation.  Zimmerman, 575 N.E.2d at 77, 81-82 (citing Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975); Nickerson v. Matco Tools Corp., 813 F.2d 529, 530 (1st Cir. 1987)).

Here, Westchester alleges that DJ Plumbing made false statements with regard to its use of properly licensed, skilled and supervised workmen to perform work and services; that it would perform its work in a good and workmanlike manner in accordance with all applicable national, state, and local building and plumbing codes, and plumbing industry standard customs and practices; and that it would supply a sufficient number of properly skilled, licensed and qualified workmen for the job.  (First Am. Compl. ¶¶ 10-13 Def.'s Mot. to Dismiss, Ex. 3, §§ 8.2, 8.4 at WF10876).  These allegations concern issues material to the contract and the work, and are factual statements which induced Suffolk Construction to enter into a contract with DJ Plumbing to perform work and services for Jurys Doyle.  Furthermore, Jurys Doyle reasonably relied upon the fact that DJ Plumbing's work would be performed in the proper manner and in accordance with all relevant regulations and Jurys Doyle suffered extensive loss because of its reliance on DJ Plumbing's statements.  Therefore, because DJ Plumbing misrepresented material

facts when entering into the construction contract, DJ Plumbing forfeited any benefit of the

waiver of subrogation clause and is liable for the damage it caused at the Jurys Doyle Hotel.

**<u>CONCLUSION</u>**

DJ Plumbing seeks to contravene Massachusetts precedent and public policy in its

motion to dismiss by arguing that waivers of subrogation are enforceable against all claims,

*regardless* of the cause.  But DJ Plumbing fails to cite to a single Massachusetts case in support

of its broad assertions.  Westchester has directed the Court to Massachusetts cases demonstrating

that contractual clauses releasing a party from liability for breaching a statutory duty or contrary

to the public policy of this Commonwealth.  If this Court allows DJ Plumbing to escape liability

for damage caused by its own flagrant disregard for plumbing industry customs and standards

and statutory duties, it will be encouraging all contractors and subcontractors working in

Massachusetts to similarly ignore industry standards and customs, codes, ordinances and other

building and safety regulations when completing their work.

For all the reasons set forth above, plaintiff respectfully requests that  DJ

Plumbing's Motion to Dismiss be denied.

Respectfully submitted,

WESTCHESTER FIRE INS. CO. a/s/o
JURYS DOYLE HOTEL GROUP USA, LTD.
D/B/A JURYS DOYLE HOTEL, LLC

By their attorneys,

_____/s/ Sean P. O'Donnell_____
Kevin J. Hughes, Esquire (Admitted Pro Hac Vice)
Sean P. O'Donnell, Esquire (Admitted Pro Hac Vice)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2089
Facsimile:  (215) 665-2013

and
PATRICK J. LOFTUS, III
9 Park Street
Boston, MA 02127
617-723-7770
BBO# 303310

PHILADELPHIA\2676237\1 152046.000

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                SUPERIOR COURT
                                                            CIVIL ACTION
                                                            NO. 98-2777-C

## TRAVELERS INDEMNITY COMPANY OF ILLINOIS

### vs.

## TGI FRIDAY'S, INC., and others[1]

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a subrogation action in which the plaintiff, Travelers Indemnity Company of Illinois ("Travelers"), seeks to recover compensation for damages from the defendant, TGI Friday's, Inc. ("Friday's"), a tenant in the Exeter Street Theater Building, for fire damage allegedly caused by Friday's gross negligence while operating a restaurant in the building. Traveler's insured the building for the lessor and paid them the insurance claim resulting from the fire in the leased premises. Travelers alleges that because of Friday's gross negligence in causing the fire, the waiver of subrogation clause in Friday's commercial lease and the implied co-insured doctrine should not apply. Friday's now moves for summary judgment and entry of separate and final judgment asserting that, absent an express provision in the lease establishing Friday's liability for loss from a negligently started fire, the lessor's insurance is deemed held for the mutual benefit of both the lessor and the lessee, Friday's commercial lease contains an express anti-subrogation clause, and Friday's is a coinsured under the lease. For the reasons stated below, Friday's motion for summary judgment is DENIED.

---

[1] New England Hood and Duct Cleaning Co., Inc., New England Fire Equipment Company, Inc., and Joao Caldeira, d/b/a John's Cleaning Service.

## BACKGROUND

The undisputed material facts from the summary judgment record are as follows:

Travelers insured R.L. (America), Inc. ("RLA") for the premises owned by RLA known as the Exeter Street Theater Building ("the Building"). Friday's operated a restaurant ("the demised premises") in a portion of the Building. RLA and Friday's executed a commercial lease agreement on the demised premises that was in effect in August of 1995.[2]

On August 31, 1995 a fire arose in Friday's kitchen damaging the building. Pursuant to its insurance policy with RLA, Travelers paid RLA for damages allegedly suffered as a result of the fire. The fire arose from the sauté stove in Friday's kitchen when workers of John's Cleaning Service, cleaners hired by Friday's, were cleaning the stove. Friday's employees had previously instructed employees of John's Cleaning Service to cover the sauté stove with a layer of aluminum foil and turn the stove on as a cleaning procedure to burn the grease off the stove.

Employees of John's Cleaning Service regularly noticed that grease dripped from the exhaust hood over the sauté stove on previous occasions when they used this burn-off cleaning procedure. In fact, in March 1995, this dripping grease ignited while John's Cleaning Service employees were burning off the sauté stove. During that fire, a Friday's manager was present and assisted in extinguishing the fire with handheld extinguishers in the kitchen.

At the time of the August fire, the exhaust hood and duct system in Friday's kitchen was again laden with accumulations of grease. The kitchen exhaust hood was equipped with a wet chemical automatic fire suppression system, which did not activate at the time of the August 1995 fire. New England Fire Equipment Co., Inc. inspected this fire suppression system for Friday's.

---

[2] Although Friday's and RLA are not the original signors to the Lease, Article XIX, section 9 of the original lease states that all lease provisions are for the benefit of all assigns.

Friday's hired New England Duct and Cleaning Co., Inc. to clean Friday's exhaust hoods and duct systems in the kitchen on a quarterly basis as set by Friday's.

Travelers now seeks to subrogate against Friday's for the amount it paid on the claim for fire damage to the Building, despite anti-subrogation provisions in the lease, claiming Friday's gross negligence caused the fire.

The applicable lease provisions pertaining to liability and insurance for damage to the demised premises are as follows:

Article VII, § 1:  Additional Rent—Insurance:  At present, the building of which the demised premises are a part, is insured as a theatre, without restaurant facilities.  It is possible that as a result of the installation by Tenant of the restaurant facilities in the demised premises, as provided in this lease, insurance premiums for the same insurance coverage on the said building will be increased.  Tenant specifically covenants and agrees to pay to Landlord any excess of insurance premiums on insurance from time to time carried by Landlord on the said building over the premiums which would be payable with respect to such insurance on said building if only a theatre were located in said building without a restaurant facility.  Such reimbursement by Tenant to Landlord shall be made within thirty (30) days after Landlord has furnished Tenant with evidence of the increase in such premiums showing the amount thereof, and reasonable evidence that such increases are caused by such restaurant facility.

Article X, Section 2(f): Tenant shall not perform any act or carry on any practice which may injure the demised premises or any part of the building of which the demised premises are a part....

Article XI, Section 1: Maintenance of the Demised Premises:  Landlord's obligation of maintenance and repair shall be limited solely to the following:  (i) repairs to the structural portions of the exterior of the demised premises...provided said repairs are not required by any misuse by Tenant.  Tenant shall be obligated to keep the demised premises in a neat and clean condition and in good order and repair....

Article XIV: Insurance:
Section 1:  Landlord shall keep the demised premises insured against loss or damage by fire....
Section 2:  Tenant agrees that it shall keep its fixtures, merchandise and equipment insured against loss or damage by fire...it is understood

3

and agreed that Tenant assumes all risk of damage to its own property arising form any cause whatsoever, including...loss by theft or otherwise.

Section 3: Insofar as and to the extent that the following provisions may be effective without invalidating or making it impossible to secure insurance coverage obtainable from responsible insurance companies doing business in the Commonwealth of Massachusetts (even though extra premium may result therefrom): Landlord and Tenant mutually agree that with respect to any loss which is covered by insurance then being carried by them, respectively, the one causing such loss shall have no liability to the one carrying such insurance and suffering said loss hereby releases the other of and from any and all claims with respect to such loss; and they further mutually agree that their respective insurance companies shall have no right of subrogation against the other on account thereof...in the improbable event that an extra premium is payable by either party as a result of this provision, the other party shall reimburse the party paying such premium the amount of such extra premium.

Addendum: Landlord grants to Tenant the right to place its heating, ventilation and air conditioning equipment ("HVAC") at said...Building in the demised premises [and] shall be responsible for any damage caused by [the] equipment and/or operation of the same....

## DISCUSSION

This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Mass. R. Civ. P. 56(c); Highlands Inc. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). A moving party who does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the non-moving party's claim, or demonstrates that the non-moving party's evidence is insufficient to establish an essential element of its case. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The adverse party may defeat the motion by alleging specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file establishing the existence of a genuine issue for trial. See Mass. R. Civ. P. 56(e). The nonmoving

4

hazard liability premium rendered lessee coinsured under policy). Since the record is devoid of such facts, however, such a determination cannot be made at this stage.

Friday's also asserts that since Article XIV, section 3 of the lease bars a subrogation action against them as a result of damage to the demised premises, Traveler's cannot maintain this action. Traveler's, however, asserts that Friday's gross negligence and violation of fire and safety codes caused the fire, which would preclude application of the waiver of subrogation clause in the lease on public policy grounds. Indeed, Massachusetts law prohibits enforcement of contractual exculpatory clauses in connection with claims of gross negligence. See Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass. App. Ct. 17, 19 (1997); Gillespie v. Papale, 541 F. Supp. 1042, 1046 (D. Mass. 1982). The Supreme Judicial Court has also held that a contractual exculpatory clause "cannot serve to shield the defendant from responsibility for violation of a statutory duty." Henry v. Mansfield Beauty Academy, Inc., 353 Mass. 507, 511 (1968). Since the parties dispute whether Friday's was grossly negligent and violated fire safety codes, and there is a claim, but no tangible support yet advanced, that Friday's contributed to paying the landlord's insurance premiums, Traveler's and Friday's have raised genuine and material issues of fact for trial. Summary judgment is DENIED to Friday's.

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for summary judgment is **DENIED**.

John C. Cratsley
Justice of the Superior Court

DATED: January 28 , 2000

6

LEXSEE 1993 U.S. DIST. LEXIS 16191

**FEDERAL INSURANCE COMPANY, et. al., v. RICHARD I. RUBIN & CO., INC., et. al.**

**CIVIL ACTION NO. 92–4177**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1993 U.S. Dist. LEXIS 16191*

**November 15, 1993, Decided**
**November 15, 1993, Filed; November 16, 1993, Entered**

**JUDGES:** [*1] BUCKWALTER

**OPINIONBY:** BY THE COURT; RONALD L. BUCKWALTER

**OPINION: MEMORANDUM**

BUCKWALTER, J.

November 15, 1993

**I. INTRODUCTION**

Defendants E/R Associates, Richard I. Rubin & Co., Inc., The Equitable Life Assurance Society of the United States, Equitable Real Estate Investment Management, Inc., Pan American Office Investments, Inc., USA One Associates, USA One BV and USA Two BV's (collectively referred to as "Owner/Manager defendants") move for summary judgment against plaintiffs, West American Insurance Company, Royal Insurance Company, Vigilant Insurance Company, Federal Insurance Company, The Continental Corporation Sun Insurance Company, Inc., Marine Indemnity Insurance Company, Pennsylvania Manufacturer;s Association, Underwriters at Lloyd's of London, Aetna Life and Casualty Insurance Company and American Home Assurance Company (collectively known as "tenant's insurers" or "plaintiffs"). Due to the reasons discussed below, the motion is denied.

**II. BACKGROUND**

This litigation arose as a result of the fire at the One Meridian Plaza building which began on February 23, 1991. The underlying facts of this case were reported at length at *In re One Meridian Plaza Fire Litig, 820 F. Supp. 1460 (E.D. Pa. 1993)*. [*2] In the present motion Owner/Manager defendants ask the court to grant summary judgement against the insurance companies of the building's tenants who have collected insurance proceeds due to fire damage.

Owner/Manager defendants assert that clauses found in its leases with tenants required tenants to procure insurance to protect against property damage. In these clauses, the tenants waived any rights of subrogation that their insurance companies might have against the landlords for negligence. The tenants, therefore, should look only to their insurance companies for relief, and the insurance companies have no right to sue the Owner/Manager defendants to recover money paid to the tenants.

Tenant's insurers make numerous arguments challenging defendant's motion. They argue that the waiver of subrogation rights is contrary to public policy because it relieves the defendant of liability where they violated regulations designed to protect human life. If the waiver is not void as against public policy, plaintiffs argue that the waiver does not cover reckless or wanton conduct by the defendants, does not apply to their breach of contract claim, and does not apply to pre–lease behavior of [*3] defendants.

**III. Discussion**

**A. Standard of Review**

Summary judgment is proper under *Fed.R.Civ.P. 56(c)*, if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Katz v. Aetna Casualty and Surety Co., 972 F.2d 53, 55 n.5 (3d Cir.1992)*. The moving party bears the initial burden of identifying the absence of a genuine issue of material fact but need not refute the non–moving party's claim. The

non–moving party then has the burden of going beyond the pleadings and producing specific facts indicating that there is a genuine issue for trial. If it fails to do so, summary judgment will be granted in favor of the moving party. *Celotex, 477 U.S. at 323–24.* [*4] The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).*

This case is brought under diversity and the law of Pennsylvania applies. See *Erie R.R. v. Tompkins 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).*

**B. Clauses Void as Against Public Policy**

Tenants' insurers have admitted that some of the leases between the insured tenants and Owner/Manager defendants contain clauses allowing the insured tenants to waive rights of subrogation under certain circumstances. After reviewing the lease clauses and Tenants' insurers' response to defendant's request to admit, I find that some of the insured tenants did waive their right to subrogation as a matter of law. However, not all the leases contain identical clauses. Considering only the undisputed facts between the parties, a majority of the tenants' leases contain the following relevant [*5] clause:

> Waiver of Subrogation. Landlord and Tenant hereby release the other from any and all liability or responsibility to the other or anyone claiming through or under them by way of subrogation or otherwise for any loss or damage to property covered by any fire and extended coverage insurance then in force, even if such fire or other casualty shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible; provided, however, that this release shall be applicable and in force and effect only to the extent of and with respect to any loss or damage occurring during such time as the policy or policies of insurance covering said loss shall contain a provision to the effect that this release shall not adversely affect or impair said insurance or prejudice the right of the insured to recover thereunder. If at any time the fire insurance carriers issuing fire insurance policies to Landlord or Tenant shall exact and additional premium for the inclusion of such or similar provisions, the party whose insurance carrier had demanded the premium (the "Notifying Party") shall give the other party

hereto notice thereof. In such event, [*6] if the other party requests, the Notifying Party shall require the inclusion of such or similar provisions by its fire insurance carrier, and the requesting other party shall reimburse the Notifying Party for any such additional premiums for the remainder of the term of this Lease. If at any time any such insurance carrier shall not include such or similar provisions in any fire or extended coverage insurance policy, then, as to loss covered by that policy, the release set forth in this section 19 shall be deemed of no further force of effect. The party whose policy no longer contains such provision shall notify the other party that the provision is no longer included in the policy, but a failure or delay in giving such notice shall not affect such termination of the release set forth in this Section. During any period while the foregoing waivers of right of recovery are in effect, the party hereto as to whom such waivers are in effect shall look solely to the proceeds of such policy to compensate itself for any loss occasioned by the fire or other casualty which is an insured risk under such policies. n1

> n1 *A few of the remaining tenants contain waiver of subrogation clauses with different wording while some leases do not appear to have any such waiver.*

[*7]

*Because not all tenants' leases are identical, disputed facts remain about (1) whether particular tenants' leases contained a waiver of subrogation clause, or (2) whether certain tenants' insurance policies contained "a provision to the effect that this release shall not adversely affect or impair said insurance or prejudice the right of the insured to recover thereunder." Before I single out individual tenants to survive the motion for summary judgment based on these grounds, I will address plaintiff's argument that the waiver of subrogation clauses were void as against public policy because they protected the Owner/manager defendants from liability where they allegedly violated statutes or regulations designed to protect human life.*

*Under contract law, parties with equal bargaining power can make valid contractual provisions to shift risks or escape liability. An exculpatory clause is a contractual clause releasing one party from liability for his wrongful acts.*

In Pennsylvania, exculpatory clauses are valid under three conditions: "First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private [*8] affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion." Topp Copy Prods., Inc. v. Singletary, 626 A.2d 98, 99 (Pa. 1993)(citations omitted). The court held that the language of such a clause must be clear and listed guidelines to interpret exculpatory clauses:

1) the contract language must be construed strictly, since exculpatory language is not favored by law;

2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no interference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and

4) the burden of establishing immunity is upon the party invoking protection under the clause.

Id.(citation omitted). In Topp, the court held an exculpatory clause in commercial lease releasing landlord "from any and all liability" valid and enforceable.

Contracts have been held to violate public policy when they involve a matter of interest to the [*9] public or the state. Such matters of interest to the public of the state include the employer–employee relationship, public service, public utilities, common carriers, hospitals, airports, and release from liability resulting from a violation of a statute or regulation designed to protect human life. Leidy v. Deseret Enterprises, Inc., 252 Pa. Super. 162, 381 A.2d 164 (1977). In Boyd v. Smith, 372 Pa. 306, 94 A.2d 44 (Pa. 1953), the Pennsylvania Supreme Court declared an exculpatory clause void as against public policy because it would relieve the landlord from liability after violating a statute requiring apartments to be equipped with some form of fire escape.

In the present case, Owner/Manager defendants claim that the waiver of subrogation rights is not an exculpatory clause and therefore, not subject to the strict scrutiny applied by Pennsylvania courts. The Third Circuit characterized an exculpatory clause as one that "precludes recovery by the victim of the negligence." Jamison v. Ellwood Consol. Water Co., 420 F.2d 787, 798 (3d Cir. 1970). The court [*10] contrasted an exculpatory clause with an indemnification provision noting that the latter "in no way affects the victim's rights of recovery. Rather it merely determines who among the parties shall bear the ultimate cost of the victim's claim." Id.

The question before this Court is whether the waiver of subrogation rights is an exculpatory clause. A district court, considering Illinois law, found a waiver of subrogation clause n2 not to be "a true exculpatory clause. With it the parties agree to shift most of the risk of the property loss to a third party, namely the ... insurance company." Bastian v. Wausau Homes, Inc., 635 F.Supp 201, 203 (N.D.Ill 1986)(plaintiffs brought suit under implied warranty, negligence, and strict liability for defective heater allegedly casing fire). The Third Circuit court considered a waiver of subrogation rights n3 and considered the intent, if not the language to be exculpatory. PPG Industries, Inc. v. Ashland Oil Co.–Thomas Petroleum Transit Div. 592 F.2d 138, 145 (3d Cir. 1978). The court reasoned that

n2 XIII. Waiver of Subrogation. Buyer hereby waives all claims for recovery from seller for any loss or damage to any buyer's property insured under valid or collectible insurance policies to the extent of any recovery collectible under such insurance.

[*11]

n3 Hull and P&I insurance will be carried with a first class underwriter by Carrier [Ashland] for Carrier's account. Cargo insurance will be assumed or carried by Shipper [PPG] for his own account, with waiver of subrogation to the carrier.

requiring the cargo owner to insure the goods providing there shall be no subrogation is an effective way of insulating the carrier from liability regardless of culpability. The cargo owner can be expected to make a claim against his insurance company in anticipation of reasonably prompt payment rather than proceeding to contest the matter with the carrier. If the insurance company pays the claim, it cannot sue the carrier and, thus, the matter is at an end.

Id. This reasoning mirrors a Pennsylvania case where the court considered an indemnity clause n4 and stated:

The widespread use of property and liability insurance does not invalidate the policy argument against contracts transferring responsibility for the violation of public safety measures enacted or authorized by the legis-

lature. If all that were involved was the [*12] shifting of ultimate loss from one insurer to another, we would not be concerned with private transfer of risk by contractual agreement. It is an unescapable fact, however, that the party transferring the risk has no incentive to use reasonable care when it is held harmless for all losses resulting from its own negligence, and its insurer has no incentive to provide the transferor with loss prevention services or inspection. This creates a particularly dangerous situation for the public where 1) the party transferring the risk is better able to prevent the loss or reduce the risk associated with the loss, or 2) where the party to whom the risk has been transferred does not fully realize the responsibility which it has received.

Warren City Lines, Inc. v. United Refining Co., 220 Pa. Super. 308, 287 A.2d 149, 151–52 (1971). In Warren, a gasoline explosion occurred after an alleged violation of a state fire code regulation. Following the courts' reasoning in PPG Industries and Warren, I find that the rules enunciated therein governing interpretation and applicability of exculpatory clauses apply in this case.

n4  shall indemnify and save harmless the Emblem Oil Company of and from any and all liability for loss, damage, injury or other casualty to persons or property, caused or occasioned by any leakage, fire or explosion of petroleum products stored in or dispensed from said equipment, or in any way growing out of or resulting from the installation and operation of said equipment, whether the same results from negligence or otherwise.

[*13]

Owner/Manager defendants further argue that because only damage to property is involved in the present case, the waivers can not be void as against public policy for violation of a statute designed to protect human health and safety. In Warren, the court addressed the question "whether the negligent violation of a duly promulgated regulation intended for the protection of the public will invalidate an exculpatory clause where injury to property rather than persons has resulted." The court found an exculpatory clause that relieved the defendant of liability for failure to comply with fire regulations was void because it was designed to protect human life although only damage to property resulted. Warren, 287 A.2d at 151 (1971). Therefore, it is irrelevant what harm ultimately occurred if the court finds a violation of a regulation aimed at protecting human health and safety.

In order for plaintiffs to survive this motion for summary judgment, they must provide sufficient facts to create a genuine issue of material fact as to whether the Owner/Manager defendants violated a statute or regulation aimed at public safety. The plaintiffs [*14] allege that the defendants have violated numerous statutes dealing with fire safety measures in high rise buildings. The executive summary completed by the fire department after an investigation of the fire reveals that settings of the PRV (pressure reducing valves) were too low and "not in accordance with the Building Code or the National Fire Protection Association Standard #14." Fire Marshall's Executive Summary at 2. The fire department further found that the practice of electrical supply found in the building would not be permissible under the current building code. Id. Plaintiffs cite further violations of the Philadelphia fire code based on the executive summary and deposition testimony.

Based on these violations cited by the fire department and other evidence found in the report and deposition testimony, there is a question of fact of whether the building owners violated any statute or regulations designed to protect human life. Pennsylvania law dictates that contracts exculpating actions that violate such statutes are void as against public policy. Therefore, because the parties dispute whether Owner/Manager defendants violated code provisions, and plaintiffs have [*15] supplied sufficient facts to support their allegations at least for summary judgment purposes, I will deny defendants' motion.

An order follows.

### ORDER

AND NOW, this 15th day of November, 1993, upon consideration of Defendant's Motion for Summary Judgment, it is ORDERED THAT the motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

RONALD L. BUCKWALTER, J.

# E N D O R S E M E N T

FEDERAL INSURANCE COMPANY v. COGSWELL SPRINKLER COMPANY, INC.
03-CV-10920-MEL

LASKER, D.J.

       Defendant Cogswell Sprinkler Company, Inc. ("Cogswell")
moves for summary judgment on all claims relating to damages
resulting from the rupture of a water-filled fire sprinkler
system at a facility owned and operated by New England
Rehabilitation Services of Central Massachusetts ("NERS").  In
the alternative, Cogswell moves for partial summary judgment on
the claims related to its inspection services of the sprinkler
system.

       The focus of this summary judgment motion is a
provision contained in a Fire Protection System Inspection
Agreement ("the Agreement") that was executed between Cogswell
and NERS.  The Agreement is a standard form agreement provided by
Cogswell to a Subscriber - in the instant case NERS - on the
reverse side of which is a provision labeled "Terms and
Conditions".  Cogswell contends that under the express terms of
this provision NERS waived any and all claims it may have against
Cogswell.  Therefore, maintains Cogswell, plaintiff Federal
Insurance Company ("Federal"), who sues as a subrogee of NERS, is
precluded as a matter of law from pursuing its claims for
negligence in the design, installation and inspection of the
sprinkler system.

       However, the language of the provision fails to support
the contention that Federal is contractually precluded from
recovery.  First, Federal's claims for damages resulting from
Cogswell's alleged negligence in designing and installing the
sprinkler system are not barred as a matter of law by the
provision at issue.  The Agreement expressly states on its front
page that "[t]his Agreement ... is for the inspection and testing
of the Fire Protection Systems located on [NERS'] premises."
Moreover, neither the provision, nor the Agreement as a whole,
seek to incorporate any reference to the designing or
installation of a sprinkler system.  Therefore, the provision
cannot be construed to read that Cogswell is shielded from
liability for damages resulting from the failure of a sprinkler
system which it designed and installed.

       Second, Federal's claims for damages resulting from
Cogswell's alleged negligence in inspecting the sprinkler system
are not barred as a matter of law by the provision.  Under the

1

circumstances of this case, public policy prohibits Cogswell from shielding itself from responsibility for violation of a statutory duty.  See Henry v. Mansfield Beauty Academy, Inc., 353 Mass. 507, 511 (1968).  Both parties recognize that the Massachusetts State Building Code, which is enforced under M.G.L. ch. 143 § 3A and derives its regulatory authority under ch. 143 § 94, has incorporated by reference the National Fire protection Association ("NFPA") standards.  See 780 Code Mass. Regs. §901.1; §901.4.  The NFPA standards are the authoritative industry standards, whose purpose, inter alia, is to "provide requirements that ensure a reasonable degree of protection for life and property from fire through minimum inspection, testing, and maintenance methods for water-based fire protection systems." NFPA 25 § 1-2.1.  Given that it is specifically alleged that Cogswell was negligent in meeting the NFPA inspection standards, public policy precludes Cogswell from exculpating itself from liability for negligence in a task that affects public interest and safety.

Accordingly, defendant's motion for summary judgment and, in the alternative, for partial summary judgment, is DENIED.

It is so ordered.


Dated:      February 15, 2005
            Boston, Massachusetts      /s/ Morris E. Lasker
                                          U.S.D.J.

## <u>CERTIFICATION OF ELECTRONIC FILING</u>

I hereby certify that on the 28th day of July, 2006, I did cause a true and correct copy of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint to be filed and served electronically via ECF to counsel for defendant and by regular mail addressed as follows:

John S. Stadler, Esquire
Nixon Peabody, LLP
100 Summer Street
Boston, MA 02110-2131

BY:___/s/ Sean P. O'Donnell_____
SEAN P. O'DONNELL