UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, as subrogee of JURYS DOYLE HOTEL GROUP USA, LTD. d/b/a JURYS DOYLE HOTEL, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>DJ PLUMBING & HEATING, INC.,<br><br>*Defendant.* | No. 05-cv-11375-MLW |

**DEFENDANT DJ PLUMBING'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

In accordance with the Order of this Court entered on April 19, 2006, Defendant DJ Plumbing & Heating, Inc. ("DJ Plumbing") respectfully submits this reply memorandum in further support of its motion to dismiss Plaintiff Westchester Fire Insurance Company's ("Westchester's") First Amended Complaint (the "Amended Complaint"), which consists of one count for gross negligence.

In its Amended Complaint, Westchester asserts but one count (for alleged gross negligence) against DJ Plumbing. However, Westchester in its opposition brief goes far beyond the scope of its pleading, ominously alleging that DJ engaged in "misrepresentation," "breach of contract," "extreme incompetence," and "manifestly improper workmanship." Westchester even goes so far as to demand in Section IV of its brief that the AIA standard waiver clause be held void because DJ Plumbing allegedly breached its construction contract and made material

10076864.1

misrepresentations with respect to its work on the project. These vituperative assertions[1] are irrelevant to the pending motion because the Amended Complaint does not contain any claim for breach of contract or misrepresentation. Tellingly, Westchester saw fit not to bring any claims in this action for such alleged conduct. This Court should reject Westchester's arguments based on these irrelevant and immaterial unpleaded facts. As the First Circuit has noted, "[d]espite the highly deferential reading . . . [a court] accord[s] a litigant's complaint under Rule 12(b)(6), [a court] need not credit bald assertions, . . . unsubstantiated conclusions, or outright vituperation. . . . A plaintiff may not rest on subjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (citations omitted; internal quotation marks omitted).[2]

With respect to the merits of DJ Plumbing's motion, Westchester does not, nor can it, cite any case in which a Massachusetts court has refused, either as a matter of Massachusetts law or public policy, to enforce the standard AIA waiver of subrogation clause of the type at issue here.

---

[1] The first two pages of Westchester's brief bear the accusatory ring of Mr. Potter's (Lionel Barrymore) rant in *It's A Wonderful Life* wherein he charges George Bailey (Jimmy Stewart) with "malfeasance, defalcation, and misfeasance" in handling the Savings and Loan's business affairs. Westchester's "introductory" indictment against DJ Plumbing rings as hollow as Mr. Potter's; tellingly, in its Opposition Westchester fails to cite any of the allegations in its Amended Complaint.

[2] By making allegations far outside the scope of its Amended Complaint, Westchester clearly intends to divert attention from the merits of DJ Plumbing's motion. As further evidence of its zeal in that effort, Westchester asserts, in the very first paragraph of the Introduction to its opposition brief, that "Plaintiff's plumbing and engineering experts determined that DJ Plumbing failed to connect the building's water supply pipe which ran from the city's water main into the hotel's sub-basement." This scandalous charge is directly refuted by Westchester's own Amended Complaint, which expressly states in Paragraph 16 that "[p]rior to May 12, 2004 [the date of the flooding], DJ Plumbing installed a water supply pipe *connecting* the public water main to the domestic plumbing system inside the premises." See Ex. 1 to DJ Plumbing's Motion to Dismiss (emphasis supplied). Not content with making claims directly contradicted by the allegations of its Amended Complaint, Westchester further claims in its Introduction, with no factual basis in the record, that DJ Plumbing's workmanship was so "manifestly improper" that DJ Plumbing's own counsel suggested the water pipe failure at the Jurys Hotel was caused by "sabotage." Westchester itself does not put any stock in these outrageous allegations, by which it insinuates that intentional and criminal activity was afoot, because it made insurance payments to the Jurys Hotel owner for the construction damages allegedly caused by DJ Plumbing's work, notwithstanding an exclusion in its insurance policy that bars coverage for losses caused by "dishonest or criminal acts." See Ex. 4 to Motion to Dismiss at WFI 0042. These "introductory" statements in Westchester's opposition brief are specious on their face and, unfortunately, preview Westchester's baseless arguments on the merits of DJ Plumbing's motion.

Indeed, Westchester admits that no Massachusetts court has yet ruled that claims in subrogation for gross negligence and statutory violations can be asserted notwithstanding the bar of the standard AIA waiver clause.  See Opposition at 3.  For the reasons discussed below and in DJ Plumbing's initial memorandum, the AIA standard waiver provision is lawful and fully enforceable to bar Westchester's claims based on either alleged gross negligence or violations of building or plumbing codes.  The AIA provision is part of an arrangement, agreed to by sophisticated parties as a result of arms-length negotiation, designed both to eliminate the need for protracted and expensive litigation in construction projects, as well as to protect the contracting parties (including the property owner) during construction by shifting to the property owner's insurer *some* of the risks of damage that are associated with construction.

Massachusetts courts have long recognized that obviating litigation between and among contractors and owners, while providing compensation to the owner of property that might be damaged during construction activities, are the virtues of this type of contractual arrangement for projects like the Jurys Hotel project at issue here.  See Haemonetics Corp. v. Brophy & Phillips Co., Inc., 23 Mass. App. Ct. 254, 501 N.E.2d 524 (1986).  In view of the substantial economic benefits that these waiver clauses provide for all of the contracting parties, and in particular the assurance that damage to the project property during construction will be remedied without protracted litigation, there are no compelling legal or public policy reasons for this Court to refuse to enforce the waiver clause, whether those claims are cast as ordinary negligence, gross negligence, or violations of building and plumbing codes.

In opposing dismissal of its claim against DJ Plumbing, Westchester makes essentially two arguments.  First, Westchester contends that the AIA waiver of subrogation provision should be construed as an exculpatory clause because it purportedly exonerates and immunizes DJ

Plumbing from all liability for all damage that may have resulted from its work on the Jurys Hotel construction project. Second, Westchester argues that enforcement of the waiver clause to bar Westchester's gross negligence claim is not authorized by Massachusetts law, and would be contrary to Massachusetts public policy, because contractors, if so immunized from liability, would be emboldened to commit tortious acts on construction sites with impunity. Each of these arguments is baseless as a matter of law and public policy and should be rejected.

    A.    **BECAUSE THE AIA WAIVER CLAUSE DOES NOT IMMUNIZE OR EXCULPATE THE CONTRACTING PARTIES FROM ALL LIABILITY FOR THEIR CONDUCT ON CONSTRUCTION PROJECTS, IT IS ENFORCEABLE AS A MATTER OF LAW TO BAR WESTCHESTER'S GROSS NEGLIGENCE CLAIM.**

In arguing that the standard AIA waiver clause should be treated as an unenforceable exculpatory provision, Westchester completely ignores the express terms of that clause. That clause makes clear that the contracting parties are <u>not</u> exculpated, immunized, released or exonerated for <u>all</u> damage that they might cause on a project. Although the waiver clause by its terms shifts to the property owner's insurer the liability for certain damage to the *property* arising during the construction project, such shifting or allocating of liability is *only to the extent* that the insurance policy provides coverage for such property damage. <u>See</u> Ex. 2 to Motion to Dismiss at WFI 0373-74. Consequently, to the extent that any of the costs associated with the property damage are <u>not</u> covered by the property owner's insurance policy, then liability is <u>not</u> shifted away from the construction parties. In fact, Westchester's policy itself provides that certain costs associated with property damage, as set forth in the "Limits of Insurance," "Exclusions" and "Deductible" provisions in the policy, are <u>not</u> covered. <u>See e.g.</u>, Ex. 4 to Motion to Dismiss at WFI 0027, 0042 (no coverage under the policy for certain "soft costs," "loss of rents," loss of "business income," "loss of use," "delay" or "loss of market" associated

with any property damage). Consequently, DJ Plumbing and the parties involved in the Jurys Hotel construction project remained liable and at risk for various costs associated with property damage that are not covered by Westchester's property insurance policy.

Most important, the AIA standard waiver clause does <u>not</u> immunize or exculpate the contracting parties from liability for any personal injuries that might be caused by their work on the project. Indeed, the Westchester insurance policy is a *property* insurance policy and does not provide any insurance coverage for personal injury or bodily injury sustained during the construction project. Under the terms of the AIA waiver clause at issue here, DJ Plumbing remains liable for any personal injuries caused by its work on the project, and such liability is not shifted to any other party or its insurer.

In view of its express terms, the AIA standard waiver provision at issue here is readily distinguishable from the exculpatory clauses that some Massachusetts courts have refused to enforce. First and foremost, the Massachusetts cases cited by Westchester to support its argument do not involve construction projects and the AIA standard waiver of subrogation clause at issue here. Moreover, the Massachusetts cases cited by Westchester are inapposite because they involve either (1) broad releases signed by plaintiffs in which they waived "any and all claims" that they might later assert against other parties, including claims for property damage and personal injury; see <u>Federal Ins. Co. v. Cogswell Sprinkler Co., Inc.</u>, 03-CV-10920-MEL (D. Mass. Feb. 15, 2005); <u>Gillespie v. Papale</u>, 541 F. Supp. 1042 (D. Mass. 1982); <u>Henry v. Mansfield Beauty Academy</u>, 353 Mass. 507, 233 N.E.2d 22 (Mass. 1968); and <u>Zavras v. Capeway Rovers Motorcycle Club, Inc.</u>, 44 Mass. App. Ct. 17, 687 N.E.2d 1263 (1997); or (2) a landlord and commercial tenant who agreed to release each other from "any and all claims" they might have against each other for damage to the leased premises, but who had also agreed to

obtain their own separate insurance for any future damage, see Travelers Indem. Co. of Ill. v. TGI Friday's, Inc., No. 98-2777-C (Mass. Super. Ct., Jan. 28, 2000). In contrast to those decisions, the parties in this case agreed to shift to Westchester, the Jurys Hotel's property insurer, liability for some of the costs associated with damage to the project property during construction.

Furthermore, as detailed in DJ Plumbing's initial memorandum, most of the courts in other jurisdictions that have addressed this issue have held that the AIA waiver clause bars gross negligence or statutory violation claims because it does not shift all liability away from the contracting parties, but rather shifts liability only "to the extent" that the damage is covered by the property owner's insurance policy. See St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 86 (2d Cir. 2005) (noting importance of "distinguish[ing] between [complete] exculpatory clauses and indemnity contracts that simply shift the source of compensation without restricting the injured party's ability to recover") (citation omitted; internal quotation marks omitted); Reliance Nat'l Indem. v. Knowles Indus. Svcs., Corp., 868 A.2d 220, 224 (Me. 2005) (noting that trial court granted partial summary judgment "to the extent that the Church's damages were covered by property insurance"); Behr v. Hook, 787 A.2d 499, 503 (Vt. 2001) (noting that courts have allowed waiver of subrogation provisions "on public policy grounds because they limit a party's recovery only to property loss . . . and only to the extent that [the loss] was covered by insurance") (citations omitted; internal quotation marks omitted); Federal Ins. Co. v. Distributing, Inc., 2004 U.S. Dist. LEXIS 27775 (N.D.N.Y. 2004).

Westchester's strained efforts to distinguish the decisions supporting DJ Plumbing's position are unavailing. Westchester first asserts at pages 9-10 that neither the Maine Supreme Judicial Court in Knowles nor the Vermont Supreme Court in Behr ruled on the merits of the

issue presented here. Westchester's argument misses the mark because both of those courts expressly adopted the rationale for enforcing the AIA waiver clause to bar claims for gross negligence and statutory violations. See Knowles, 868 A.2d at 226-27; Behr, 787 A.2d at 502-505. Westchester next asserts at page 11 of its brief that the Second Circuit's holding in Universal Builders that the AIA waiver clause bars gross negligence was based on its determination that under New York law persons may insure damages caused by gross negligence, which Westchester states "does not comport with Massachusetts law." As discussed below, Westchester is flatly wrong on this point because under Massachusetts statutory law, insurance may be obtained for damages caused by gross negligence.[3]

**B.    ENFORCEMENT OF THE AIA WAIVER CLAUSE TO BAR WESTCHESTER'S CLAIM IS CONSISTENT WITH, AND DOES NOT VIOLATE, MASSACHUSETTS PUBLIC POLICY.**

Similarly misguided is Westchester's fall back argument that enforcement of the AIA standard waiver clause to bar gross negligence claims would violate Massachusetts public policy because it would "allow parties to act without fear of liability or reprisal" and would "retract any incentive to exercise even the most minimal degree of care." See Opposition at 6, 12. In making

---

[3]    Westchester asserts that "[s]ubstantial case law from other jurisdiction supports the proposition that waivers of subrogation do not bar claims for gross negligence." See Opposition at 11. However, with one stray exception – Colonial Properties Realty LP v. Lowder Constr. Co., Inc., 567 S.E.2d 389 (Ga. Ct. App. 2002) – the cases cited by Westchester are inapposite to the issue presented here. Specifically, the United States Court of Appeals for the Ninth Circuit in Royal Ins. Co. of America v. Southwest Marine, 194 F.3d 1009, 1014 n.3 (9th Cir. 1999), was construing a repair order (not an AIA contract) which provided that "Owner accepts the risk of *all* losses hereafter occasioned by the acts or omissions of Contractor . . . and agrees to purchase, and maintain such insurance against such risks as Owner deems prudent and shall look *only* to said insurance for compensation or damages . . . ." (Emphases added.) Here, in contrast, the AIA standard waiver clause shifts the contracting parties' liability *only to the extent* that property damage has occurred and is covered by Westchester's policy.

Likewise, in Royal Surplus Lines Ins. Co. v. Weis Builders, Inc., 2006 U.S. Dist. LEXIS 16316, *5-6 (W.D. Ky., Apr. 3, 2006), the court expressly noted that the parties had drafted their own "Waiver of Claims" provision and had omitted the "standard" AIA waiver of subrogation provision at issue here. Based on the omission of the AIA standard provisions, the court concluded that claims for post-construction damages (which are not at issue in this case) were not barred by the parties' waiver. Id. at *13. In view of the absence of the standard AIA clause, the court reinstated all of the property insurer's subrogation claims, including its claim for gross negligence. Id. at *13-14, 16.

- 8 -

this argument, Westchester falsely presumes that the AIA waiver clause releases and exculpates the contracting parties from all responsibility for their conduct on the project site.

As explained above, the AIA standard waiver provides for only a limited shifting to the builder's risk insurer the responsibility for damage to the property, leaving the contracting parties liable for certain costs of property damage that are not covered by property insurance, as well as for the entirety of any personal injury claims. In these circumstances, it is preposterous for Westchester to assert that contractors and subcontractors, involved in multi-million dollar construction projects such as Jurys Hotel renovation project, will be emboldened to act without even a minimal degree of care simply because insurance may be available to cover some of damages arising from their conduct.

It is similarly farcical for Westchester to suggest that enforcing the AIA waiver clause as to gross negligence claims would encourage contractors to engage in misconduct and sabotage their own work as a means of extending the project and getting "paid twice for the same work." Opposition at 12. In making such apocalyptic claims, Westchester again ignores the plain fact that the AIA standard waiver clause does not immunize and exculpate contractors involved in such major projects from all liability, and that the property insurance available under these typical construction arrangements is not sufficient to protect contractors involved in large-scale commercial construction from bankruptcy and financial ruin should they set out to commit mayhem and sabotage on project sites. To enforce the AIA standard clause at issue here, and have Westchester bear responsibility for certain costs of damage to the Jurys Hotel during construction (as all parties and Westchester expressly agreed by contract would be the result), will not induce or cause contractors or building owners to act in the various and nefarious ways conjectured by Westchester.

Stripped of its rhetorical excess and ominous scenarios, the essence of Westchester's public policy argument is that no person or entity in Massachusetts should be permitted to secure insurance for grossly negligent or reckless conduct because such insurance somehow will encourage policyholders to engage in such conduct. Westchester's argument, however, is directly contradicted by Massachusetts law and public policy. Indeed, the Massachusetts courts and legislature have made clear that a party may be insured for gross negligence or reckless conduct, provided such conduct is not intentional. Specifically, Massachusetts General Law c. 175, § 47 cl. Sixth provides that an insurance company may "insure . . . (b) any person against legal liability for loss or damage . . . on account of any damage to property of another, *except that no company may insure any person against legal liability for causing injury . . . by his deliberate or intentional crime or wrongdoing . . . .*" (Emphasis added.) While an insurer may further limit the coverage available under its policy,[4] G.L. c. 175, § 47 cl. Sixth (b), "codifies the entire public policy of the Commonwealth that would bear on the insurability of losses caused by a reckless disregard of the lawfulness of conduct." Andover Newton Theological Sch., Inc. v. Continental Cas. Co., 409 Mass. 350, 351 n.1, 353 n.2, 566 N.E.2d 1117, 1118 n.1, 1119 n.2 (1991).

Moreover, the Massachusetts Supreme Judicial Court has held that "although reckless disregard as to the lawfulness of one's conduct may be wil[l]ful conduct for the purposes of [certain statutes or criminal law], it is not conduct known by the actor to be unlawful and,

---

[4] Westchester had the opportunity but chose not to exclude coverage under its policy for damages caused by gross negligence or reckless conduct. Westchester and its insured, Jurys Hotel, also had the opportunity, but chose not to modify the waiver of subrogation clause to make clear that it would not bar subrogation claims based on alleged gross negligence or statutory violations. Thus, this lawsuit is a transparent attempt by Westchester to rewrite the terms of the parties' construction contracts as well as the Westchester policy. If Westchester is allowed to proceed in this fashion, it will have succeeded not only in evading its responsibilities under the risk allocation arrangement agreed to by all parties, but will also have retained the benefits of the approximately $160,000 in premiums paid to it for the policy. See Ex. 4 to Motion to Dismiss at WFI0025.

therefore, is not deliberate or intentional wrongdoing. Indifferent or reckless wrongdoing is not deliberate or intentional wrongdoing" for purposes of G.L. c. 175, § 47 cl. Sixth (b). Id. at 352, 556 N.E.2d at 1118-19. The First Circuit has similarly noted that G.L. c. 175, § 47 cl. Sixth (b) "only proscribes coverage of acts committed with the *specific* intent to do something the law forbids." Andover Newton Theological Sch., Inc. v. Continental Cas. Co., 930 F.2d 89, 92 n.3 (1st Cir. 1991) (emphasis in original).

Quite clearly, then, insurance for gross negligence is not prohibited as a matter of Massachusetts law or public policy. The Massachusetts courts and legislature have thus rejected the notion offered by Westchester here that the availability of insurance for gross negligence creates "a perverse disincentive for contractors to perform their services in accordance with even basic standards of care." See Opposition at 12. Indeed, in this very case Westchester made insurance payments to the Jurys Hotel with respect to the claimed property damage and did not deny the claim based on any argument that the damage was not covered because it was caused by gross negligence or reckless conduct. Nor did Westchester take the position with Jurys Hotel that its claim was not covered because the damages were caused by any alleged intentional conduct by DJ Plumbing. Viewed in the light of all of these circumstances, there is no factual or legal basis for Westchester's contention that Massachusetts public policy forbids enforcement of the AIA waiver clause in this case.

In contrast to Westchester's policy arguments, there are compelling public policy reasons for this court to enforce the AIA standard waiver provision and dismiss Westchester's gross negligence claim. The courts have recognized that these waiver clauses "serve important social goals: encouraging parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation and facilitating and preserving economic relations and

activity." Reliance Nat'l Indem. v. Knowles Indus. Services, Corp., 868 A.2d at 225-26 (citation omitted; internal quotation marks omitted).

Allowing Westchester to proceed against DJ Plumbing for gross negligence would be contrary to Massachusetts law, which has long recognized the validity, and value to the construction industry, of these standard provisions that promote project harmony and insure that the building owner has recourse during the project for damage to the project property. Haemonetics Corp. v. Brophy & Phillips Co., Inc., 23 Mass. App. Ct. 254, 501 N.E.2d 524. Westchester should not be permitted to circumvent the unambiguous terms of the parties' construction contracts and its insurance contract simply by invoking the specter of gross negligence or building code violations. See Cyran v. Ware, 413 Mass. 452, 456 n.3, 597 N.E.2d 1352, 1356 n.3 (1992). A ruling that the standard AIA waiver clauses does not bar gross negligence claims would lead to substantial legal uncertainty for the construction industry and impose unnecessary litigation expense and delays on construction projects undertaken in Massachusetts.

## CONCLUSION

For the reasons stated in its initial memorandum and this Reply, DJ Plumbing respectfully requests that this Court dismiss with prejudice Plaintiff's Amended Complaint.

Respectfully submitted,

DJ PLUMBING & HEATING, INC.,

By its attorneys,

/s/ Kurt M. Mullen
John Stadler, BBO No. 548485
jstadler@nixonpeabody.com
Kurt M. Mullen BBO No. 651954
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110-2131
(617) 345-1000

Dated:  August 18, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 18, 2006.

/s/ Kurt M. Mullen
Kurt M. Mullen